Tara J. Schleicher, OSB #954021
TSchleicher@fwwlaw.com
Peter C. McKittrick, OSB #852816
PMcKittrick@fwwlaw.com
Christopher L. Parnell, OSB #054352
CParnell@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044

        Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 10-35333-tmb11 |
| Salpare Bay, LLC, | |
|           Debtor. | DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT (SEPTEMBER 7, 2010APRIL 8, 2011) |

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

# TABLE OF CONTENTS

**I.    INTRODUCTION AND SUMMARY OF PLAN** .................................................. 1
A.      INTRODUCTION ...................................................................................... 1
B.      SUMMARY OF PLAN ............................................................................. 3
C.      BRIEF EXPLANATION OF CHAPTER 11 ................................... ~~4~~6

**II.    VOTING PROCEDURES AND CONFIRMATION OF A PLAN.** ............... ~~5~~7
A.      BALLOTS AND VOTING DEADLINE .......................................... ~~5~~7
B.      PARTIES ENTITLED TO VOTE ...................................................... ~~7~~9
C.      VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN ............. ~~8~~10
D.      "CRAM DOWN" OF THE PLAN ................................................... ~~8~~10
E.      CONFIRMATION HEARING ........................................................ ~~9~~10

**III.   BACKGROUND AND GENERAL INFORMATION** ............................... ~~9~~11
A.      PROPERTY DEVELOPMENT ......................................................... 9
B.      MANAGEMENT ................................................................................ 14
C.      FINANCIAL PERFORMANCE ....................................................... 15

**IV.    THE BANKRUPTCY CASE** ....................................................................... ~~15~~18
A.      THE FILING ................................................................................... ~~15~~18
B.      POST –PETITION DEVELOPMENTS ......................................... ~~15~~18

**V.     ASSETS AND LIABILITIES** ...................................................................... ~~16~~19
A.      ASSETS .......................................................................................... ~~16~~19
1.      Real Property. ..................................................................... ~~16~~19
2.      Other Property .................................................................... 16
B.      LIABILITIES .................................................................................. ~~17~~20
C.      UNSECURED CREDITORS ........................................................ ~~17~~20
D.      ADMINISTRATIVE EXPENSES ................................................ ~~17~~21

**VI.    DESCRIPTION OF PLAN OF REORGANIZATION** ............................... ~~18~~21
A.      UNCLASSIFIED CLAIMS ........................................................... ~~18~~21
B.      CLASSIFIED CLAIMS ................................................................. ~~19~~22
1.      Overall Plan Implementation. ............................................ ~~19~~22
2.      Class 1 (Other Priority Claims). ....................................... ~~19~~23
3.      Class 3 (City of Portland Secured Claim). ...................... ~~20~~23
4.      Class 3 through 5 (Construction Liens). ........................... ~~20~~24
5.      Class 7 (County Secured Claim for Property Taxes). ...... ~~22~~24
6.      Class 8 (Small Unsecured Claims). .................................. ~~22~~25
7.      Class 9 (General Unsecured Claims). ............................... ~~22~~25
8.      Class 10 (Subordinated Claims). ...................................... ~~23~~25
9.      Class 11 (Interests). .......................................................... ~~23~~25

C.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................... ~~23~~26

D.      EFFECT OF CONFIRMATION .................................................... ~~24~~26
1.      DISCHARGE ....................................................................... ~~24~~26

H:\Client\School\29606\Disclosure Stmt.doc

**i**

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

2.                REVESTING, OPERATION OF BUSINESS.................................... ~~24~~27
3.                INJUNCTION.................................................................................. ~~24~~27
4.                MODIFICATION OF THE PLAN; REVOCATION OR WITHDRAWAL OF THE PLAN ~~25~~27
5.                RETENTION OF JURISDICTION ............................................... ~~25~~28
6.                UNITED STATES TRUSTEE FEES ............................................. ~~26~~29
7.                AVOIDANCE ACTIONS ............................................................... 26

VII.    LIQUIDATION ANALYSIS.................................................................. ~~26~~29

VIII.   CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN
        ..................................................................................................... ~~27~~30
A.      GENERAL TAX CONSIDERATIONS .................................................. ~~28~~30
B.      FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS ................... ~~29~~32
1.                IN GENERAL................................................................................... ~~29~~32
2.                CANCELLATION OF INDEBTEDNESS INCOME........................... ~~29~~32
C.      FEDERAL INCOME TAX CONSEQUENCES TO THE HOLDERS OF AN ALLOWED CLAIM ................................................................................... ~~30~~33
1.                SMALL UNSECURED CREDITOR CLAIMS ................................. 30
2.                GENERAL UNSECURED CREDITOR CLAIMS .............................. ~~31~~33
3.                OREGON CONSTRUCTION LIEN CREDITOR CLAIMS .............. ~~31~~34
D.      CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS ................... ~~32~~35
E.      INFORMATION REPORTING BACKUP WITHHOLDING ..................... ~~33~~35
F.      IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE .. ~~33~~36

IX.     ACCEPTANCE AND CONFIRMATION OF THE PLAN................................... ~~34~~36
A.      CONFIRMATION HEARING .............................................................. ~~34~~36
B.      REQUIREMENTS OF CONFIRMATION .............................................. ~~34~~37
C.      FEASIBILITY .................................................................................. ~~34~~37
D.      RISK FACTORS ............................................................................... ~~34~~37
1.                GENERAL FINANCIAL MARKET CONDITIONS ......................... ~~35~~37
2.                PROJECTED FINANCIAL RESULTS .......................................... ~~35~~37
3.                DEPENDENCE ON SUBCONTRACTORS ..................................... ~~35~~38
4.                CLAIM AMOUNTS .......................................................................... ~~36~~38
E.      CRAM DOWN .................................................................................. ~~36~~38
F.      ALTERNATIVES TO CONFIRMATION OF THE PLAN ......................... ~~36~~39

X.      CONCLUSION ...................................................................................... ~~37~~39

H:\Client\36606\Disclosure Stmt.doc

ii

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

## I.    INTRODUCTION AND SUMMARY OF PLAN

### A.    INTRODUCTION

On June 7, 2010 (the "Petition Date"), Salpare Bay, LLC ("Debtor" or "Salpare") filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is seeking acceptance of Debtor's Plan of Reorganization (the "Plan") by the creditors of the Debtor's estate. This Disclosure Statement (the "Disclosure Statement") describes:

• Historical information regarding the Debtor and the events leading to its bankruptcy filing.

• Significant events since the bankruptcy filing.

• How the Plan proposes to treat claims of the type you hold (i.e., what you will receive on your claim if the Plan is confirmed).

• Who can vote on or object to the Plan.

• What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

• Why the Debtor believes the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive on your Claim in liquidation.

• The effect of confirmation of the Plan.

A copy of the Debtor's Chapter 11 Plan  (the "Plan") is attached hereto as Exhibit 1.  You are urged to review the Plan and, if appropriate, consult with counsel about the Plan and its impact on your legal rights before voting on the Plan.  Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.

This Disclosure Statement has been prepared by the Debtor based upon its knowledge and information in Debtor's books and records.  The information contained herein

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 1   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT (September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\32\6089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  has been prepared in good faith, based upon information available.  The information concerning

2  the Plan has not been subject to a verified audit.  The Debtor believes this Disclosure Statement

3  complies with the requirements of the Bankruptcy Code.

4          The statements contained in this Disclosure Statement are made as of the date

5  hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall

6  not imply that there has been no change in the facts set forth herein since the date of this

7  Disclosure Statement and the date of the material relied on in preparation of this Disclosure

8  Statement was compiled.  The description of the Plan contained in this Disclosure Statement is

9  intended as a summary only and is qualified in its entirety by reference to the Plan itself.  If any

10  inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan are

11  controlling.  Each holder of a Claim is encouraged to read, consider and carefully analyze the

12  terms and provisions of the Plan.

13          This Disclosure Statement may not be relied on for any purpose other than to

14  determine how to vote on this Plan.  Nothing contained herein shall constitute an admission of

15  any fact or liability by any party, or be admissible in any proceeding involving Debtor or any

16  other party, or be deemed conclusive advice on the tax or other legal effects of the reorganization

17  on the holders of Claims or Interests.

18          The Debtor submits this Disclosure Statement in accordance with Section 1125 of

19  the Bankruptcy Code and Bankruptcy Rule 3016.  The Bankruptcy Court has scheduled a

20  hearing on confirmation of the Plan to commence on _____ __, 20102011 at ____.  The

21  Bankruptcy Court will hold that hearing at the United States Bankruptcy Court for the District of

22  Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, Portland, Oregon 97204 before the

23  Honorable Trish M. Brown.  The hearing on confirmation may be adjourned from time to time

24  by the Bankruptcy Court without further notice, except for an announcement made at the hearing

25  or any adjournment thereof.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 2  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
H:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1          A ballot has been enclosed with this Disclosure Statement for use in voting on the

2  Plan.  In order to be tabulated for purposes of determining whether the Plan has been accepted or

3  rejected, ballots must be received at the address indicated on the ballot no later than 4:00 p.m. on

4  _____, ~~2010.~~2011.

5      **B.**     **SUMMARY OF PLAN**

6          A copy of the Plan is attached hereto as Exhibit 1.  The following description of

7  the Plan is intended as a summary only and is qualified in its entirety by reference to the Plan.

8  The Debtor urges each holder of a Claim to carefully review the entire Plan, together with this

9  Disclosure Statement, before voting on the Plan.

10          ~~The~~Through a mediation held on various dates with the Honorable Michael R.

11  Hogan ("Judge Hogan") between the Debtor ~~will refinance the Property through an FHA loan,~~[1],

12  J.E. Dunn Northwest, Inc. ("Dunn"), the other Secured Creditors with Construction Lien Claims

13  ("Construction Creditors"), Harbor and the City of Portland (collectively the "Parties"), the

14  Parties reached a settlement regarding their disputes, the claims between them related to the

15  Project and the pending bankruptcy proceedings (the "Settlement Agreement").  Pursuant to the

16  Settlement Agreement, the Settlement Parties consent to confirmation of the Plan on the terms

17  set forth herein.  A copy of the Settlement Agreement is attached hereto as Exhibit 2.

18          The general terms of the Settlement Agreement include the Construction

19  Creditors and the City of Portland receiving payments equal to 88.26% of their judgment

20  amounts inclusive of principal, fees, costs and interest as of March 31, 2011[1] ~~which will allow~~

21  ~~the Debtor to develop~~(the "Discounted Judgment Amount") in three installments on or before the

22  following dates:  June 30, 2012; October 31, 2012 and June 30, 2013.  Interest shall accrue on

23  the Discounted Judgment Amount at the rate of 3.25% per annum from the Effective Date.  As

24  _____

[1] ~~Alternatively, the Debtor will obtain a conventional loan to develop~~The total judgment amount claimed

25  by the Construction Creditors and the City of Portland is set forth on Exhibit A to the ~~Property.  *See*~~

    ~~Section VI.B.1 for further discussion.~~Settlement Agreement.

26

*H:\Client\Salpar\28606\Disclosure Stmt.doc*

**Page 3  - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\Client\Docs~~\Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  part of the Settlement Agreement, the principals of Harbor, George Killian and Lance Killian,

2  shall convey their membership interests in Harbor to the Debtor and, as inducement for the

3  Debtor to accept that assignment, George Killian and Lance Killian shall pay $40,000 to the

4  Debtor.

5          The Debtor will commence development of the Property by first obtaining a

6  priming loan with a maximum amount of $500,000 (with leave to seek an additional $250,000)

7  to prepare the Property for the development of a multi-family residential project in two (2)

8  phases around the Marina, and second, through an FHA loan to commence construction on phase

9  1.[2]  The funding for that development will allow the Debtor to develop, with Creditors holding

10  Allowed and Claims secured by perfected construction liens[3] to be paid in full by June of 2013.

11  Creditors with Unsecured Claims will be paid from either or both additional loan proceeds or Net

12  Operating on their Allowed Claims a pro rata amount quarterly commencing after June 30, 2012,

13  from 30% of Net Income through the end of 2017 (to the extent it does not cause the Debtor to

14  default under its loan documents and to the extent the Debtor's ending cash balances exceed

15  $500,000) generated by the Debtor post-confirmation.

16          The only Secured Creditors in this case are the county taxing authorities and

17  Creditors asserting that they hold a Claim secured by a perfected Construction Lien asserted

18  under Oregon law or by judgment.  The Debtor will develop the Property with three distinct

19  sections, and to the extent necessary, will partition the Property into three wayssseparate portions:

20  (1) the Marina; (2) Phase 1;[24] and (3) Phase 2.[3]  The FHA lender will[5]  The Debtor is working

21

---

22  [2]  Alternatively, the Debtor will obtain a conventional loan to develop the Property.

23  [3] Dunn contends that the constructions liens asserted by Secured Creditors are perfected, have been foreclosed and that such liens constitute state court judgment liens against the Property.

24  [24] The Debtor intends to develop the first phase of the multi-family residential project with approximately

25  166 apartment units and ancillary improvements where Building C currently sits on the Property, as indicated on Exhibit 23 hereto.

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    with land use attorney, Dorothy Cofield, to either partition the Property or obtain verification

2    from the City of Portland, that a partition is not necessary to allow a lender or Secured Creditor

3    to foreclose on a portion of the Property subject to a trust deed or lien and obtain a division or

4    unit of land that is not a partition but can be deeded to a separate owner after foreclosure.  The

5    City of Portland has confirmed the latter and that it will continue to apply the past land use

6    approvals to the entire site, notwithstanding a foreclosure on a portion of the Property and, thus,

7    if the FHA lender approves, then a partition may not be necessary, which will save significant

8    costs to the estate.  The Marina condominium plat will be finalized and recorded with the State

9    of Oregon to effect a division of the marina property from the upland multi-family property.

10    Under the Settlement Agreement, the Parties have agreed that the Debtor shall

11    obtain a maximum loan of $500,000, which shall be secured with a trust deed to which the

12    Construction Creditors will subordinate their liens (the "Priming Loan"), to put in a parking lot

13    for the Marina, possibly partition the Property as set forth above, and to develop the Property

14    sufficient to obtain the FHA loan on Phase 1 (surveying, engineering and other related

15    costs/expenses).  The Construction Claimants may consider an additional $250,000 addition to

16    the Priming Loan upon receipt of a fully executed commitment letter from a bank or other

17    financial institution agreeing to loan the Debtor the funds necessary to construct Phase 1 of the

18    Project.

19    Upon the closing of the FHA loan on Phase 1, the Construction Creditors will

20    release their liens on Phase 1 to allow the FHA lender to obtain a first lien ~~on Phase 1 of~~upon the

21    Property, subject to payment of the amounts set forth herein to those Secured Creditors with

22    Construction Lien Claims.  Upon the closing of the FHA loan, on Phase 1, and when the Debtor

23

24    ~~³ Phase 2 means the development of the remainder of the planned approximately 371 multi-family residential units as indicated on Exhibit 2 hereto.~~

25    ⁵ Phase 2 means the development of the remainder of the planned approximately 371 multi-family residential units as indicated on Exhibit 3 hereto.

26

H:\ClientDocs\Salpar\28606\Disclosure Stmt.doc

**Page 5    - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT (September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    makes its initial payment to the ~~Creditors holding a claim secured by an Allowed~~ Construction

2    ~~Lien~~Creditors, each such Claimant will retain its lien on the Marina and Phase 2 with the same

3    priority such lien had on the Petition Date.  The Debtor will refinance the Marina and make

4    another payment to the Construction Creditors by October 31, 2011, at which time those

5    Claimants will release their liens on the Marina.  Such Claimants will be paid in full by June of

6    2013 from loan proceeds obtained by the Debtor.  Small creditors with Unsecured Claims equal

7    to or less than $2,000 will be paid 100% of their Allowed Claim in Cash, with 25% being paid

8    ~~within sixty (60) days of the Effective Date of the Plan~~October 31, 2012 and the remaining 75%

9    being paid on or before ~~October 31, 2011.~~June 30, 2013.  Creditors holding General Unsecured

10   Claims will receive Pro Rata distributions of 30% of Net ~~Operating~~ Income generated by the

11   Reorganized Debtor on a quarterly basis for five (5) years~~.~~, ending December 31, 2016.  All post-

12   petition and Administrative Expense Claims will be paid upon the Effective Date unless such

13   ~~claimant~~Claimant agrees to different treatment in writing.  All current equity interests will ~~be~~

14   ~~cancelled and new equity may be issued as set forth in more detail in the Plan.~~ either be retained

15   by the current owner, Mr. DeFrees, or transferred to the Debtor by the owners of Harbor, as set

16   forth herein.  Mr. DeFrees shall retain his current equity interests in exchange for his

17   subordination of his $10,900,000 General Unsecured Claim.

18          All unexpired leases and executory contracts will be rejected by the Debtor

19   through the Plan unless such unexpired leases and executory contracts have previously been

20   assumed and assigned, or rejected, or a motion seeking their assumption or rejection has been

21   Filed before the Confirmation Date.

22          The Effective Date of the Plan shall be _____, ~~20 __~~ 2011 or the 10th day

23   following entry of the Confirmation Order, whichever is later.

24

25

26

~~H:\Client\Salpar\28606\Disclosure Stmt.doc~~

**Page 6   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\~~\~~Client~~Docs\Salpar\28606\~~Disclosure Stmt.Pldg\~~32l6089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    In the event that any Class of Creditors of the Debtor does not accept the Plan, the

2    Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance

3    with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

4    **C.    BRIEF EXPLANATION OF CHAPTER 11**

5    Chapter 11 of the Bankruptcy Code is the principal reorganization provision of

6    the Bankruptcy Code.  Pursuant to Chapter 11, a debtor attempts to reorganize its business for

7    the benefit of the debtor, its creditors, and other parties in interest.

8    The formulation and confirmation of a plan of reorganization is the principal

9    purpose of a Chapter 11 case.  A plan of reorganization sets forth a proposed method for

10   compensating the holders of claims and interests in the debtor.  A claim or interest is impaired

11   under a plan of reorganization if the plan provides that the legal, equitable or contractual rights

12   of the holder of such claim or interest are altered.  A holder of an impaired claim or interest is

13   entitled to vote to accept or reject the plan.  Chapter 11 does not require all holders of claims and

14   interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it.  However, the

15   Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve

16   the plan.  These tests are designed to protect the interests of the holders of claims or interests

17   who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if

18   it is confirmed by the Bankruptcy Court.

19   An official committee of unsecured creditors is appointed by the United States

20   Trustee's office in most Chapter 11 cases to, among other things, negotiate the plan of

21   reorganization on behalf of the unsecured creditors of the debtor.  A committee of unsecured

22   creditors was not appointed by the United States Trustee in this case.

23   **II.    VOTING PROCEDURES AND CONFIRMATION OF A PLAN**.

24   **A.    BALLOTS AND VOTING DEADLINE**

25

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1       A ballot to be used for voting to accept or reject the Plan is enclosed with each

2   copy of this Disclosure Statement mailed to all Creditors entitled to vote.   After carefully

3   reviewing this Disclosure Statement and its exhibits, including the Plan, please indicate your

4   acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as

5   directed below.

6       The Bankruptcy Court had directed that, to be counted for voting purposes, ballots

7   for acceptance or rejection of the Plan must be <u>received</u> no later than 4:00 p.m. Pacific time, on

8   _____, 2010 by the Debtor at the following address:

9               Farleigh Wada Witt
            Attn:  Diane Fallon
10              121 SW Morrison, Ste. 600
            Portland, OR 97204

11

12      or via facsimile transmission to Diane Fallon at (503) 228-1741, or via e-mail in

13  pdf format to dfallon@fwwlaw.com.

14      Holders of each Claim that was scheduled by the Debtor or with respect to which

15  a Proof of Claim has been Filed for which no objection is pending will receive ballots and are

16  permitted to vote based on the amount of the Proof of Claim.  If no Proof of Claim has been

17  Filed, then the vote will be based on the amount scheduled by the Debtor in its Schedules.

18  Holders of Disputed Claims who have settled their dispute with the Debtor are entitled to vote

19  the settlement amount of their Claim.  The Bankruptcy Code provides that such votes will be

20  counted unless the Claim has been disputed, disallowed, disqualified or suspended prior to

21  computation of the vote on the Plan.  The Claim to which an objection has been Filed is not

22  allowed to vote unless and until the Bankruptcy Court rules on the objection.  The Bankruptcy

23  Code provides that the Bankruptcy Court may, if requested to do so by the holder of such claim,

24  estimate or temporarily allow a Disputed Claim for the purposes of voting on the Plan.

25

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 8   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\32l6089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1       If a person holds Claims in more than one class entitled to vote on the Plan, such

2    person will be entitled to complete and return a ballot for each Class.  If you do not receive a

3    ballot or if a ballot is damaged or lost, please contact:

4                 Farleigh Wada Witt
                    Attn:  Diane Fallon

5                 121 SW Morrison, Ste. 600
                    Portland, OR 97204

6                 Telephone Number:  (503) 228-6044

7       All persons entitled to vote on the Plan may cast their vote for or against the Plan

8    by completing, dating and signing the enclosed ballot and returning it, by First Class Mail or

9    hand delivery, to the Debtor, at the address indicated above.  In order to be counted, all ballots

10   must be executed and received at the above address no later than 4:00 Pacific time on

11   _____, 2010.  Any ballots received after 4:00 p.m. Pacific time on _____, 2010 will

12   not be included in any calculation to determine whether the parties entitled to vote on the Plan

13   have voted to accept or reject the Plan.

14       Ballots may be received by the Debtor by facsimile transmission to Farleigh

15   Wada Witt, Attn:  Diane Fallon at (503) 228-1741.  Ballots sent by facsimile transmission will be

16   counted if faxed to Ms. Fallon by 4:00 p.m. Pacific time on _____, 2010.

17       When a ballot is signed and returned without further instruction regarding

18   acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the

19   Plan.  When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the

20   unsigned ballot will not be included in any calculation to determine whether parties entitled to

21   vote on the Plan have voted to accept or reject the Plan.  When a ballot is returned without

22   indicating the amount of the Claim, the amount shall be as set forth on the Debtor's Schedules or

23   any Proof of Claim Filed with respect to such Claim.

24       **B.**     **PARTIES ENTITLED TO VOTE**

25

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 9  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1          Pursuant to Section 1126 of the Bankruptcy Code, each class of impaired claims

2  or interests that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan.

3  Any holder of an Allowed Claim that is in an impaired class under the Plan, and whose Class is

4  not deemed to reject the Plan, is entitled to vote.  A Class is "impaired" unless the legal,

5  equitable and contractual rights of the holders of claims in that Class are left unaltered by the

6  Plan or if the Plan reinstates the Claims held by members of such Class by (1) curing any

7  defaults, (2) reinstating the maturity of such claim, (3) compensating the holder of such claim for

8  damages that result from the reasonable reliance on any contractual provision of law that allows

9  acceleration of such claim and (4) otherwise leaving unaltered any legal, equitable or contractual

10  right of which the Claim entitled the holder of such claim.  Because of their favorable treatment,

11  classes that are not impaired are conclusively presumed to accept the Plan.  Accordingly, it is not

12  necessary to solicit votes from the holders of claims in classes that are not impaired.

13          Classes of Claims or Interests that will not receive or retain any money or

14  property under a Plan on account of such Claims or Interests are deemed, as a matter of law

15  under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not

16  entitled to vote on the Plan.  The current ownership interests classified as Class 10 are such a

17  class and are deemed to have rejected the Debtor's Plan.

18          Class 1 (Other Priority Creditors) and Class 6 (County Secured Claim for

19  Property Taxes) are not impaired and, therefore, are deemed to have accepted the Plan.  All other

20  Classes of Claims are impaired under the Plan, and persons holding Claims are entitled to vote to

21  accept or reject the Plan.

22        **C.**     **VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

23          As a condition to confirmation, the Bankruptcy Code requires that each impaired

24  Class of Claims or Interests accept the Plan, subject to the exceptions described below in the

25

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 10  - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1  section entitled "Cram Down of the Plan."  At least one impaired Class of Claims must accept

2  the Plan in order for the Plan to be confirmed.

3         For a Class of Claims to accept a plan, Section 1126 of the Bankruptcy Code

4  requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in

5  number of the Allowed Claims of such Class, in both cases counting only those claims actually

6  voting to accept or reject the Plan.  If the Plan is confirmed, the Plan will be binding with respect

7  to all holders of Claims and Interests in each Class, including Classes and members of Classes

8  that did not vote or that voted to reject the Plan.

9         **D.      "CRAM DOWN" OF THE PLAN**

10        If the Plan is not accepted by all of the Impaired Classes of Claims, the Plan may

11  still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy

12  Code's "Cram Down" provision if the Plan has been accepted by at least ~~on~~one Impaired Class

13  of Claims, without counting the acceptances of any Insiders of the Debtor, and the Bankruptcy

14  Code determines, among other things, that the Plan "does not discriminate unfairly" and "is fair

15  and equitable" with respect to each non-accepting Impaired Class of Claims or Interests.  The

16  Debtor believes that the Plan can be confirmed even if it is not accepted by all impaired Classes

17  of Claims.

18        **E.      CONFIRMATION HEARING**

19        The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to

20  commence on _____ __, 2010, at _____.  The Confirmation Hearing will be held at

21  the United States Bankruptcy Court for the District of Oregon, Courtroom No. 4, 1001 SW Fifth

22  Avenue, 9th Floor, Portland, Oregon, before the Honorable Trish M. Brown, United States

23  Bankruptcy Judge.  At the hearing, the Bankruptcy Court will consider whether the Plan satisfies

24  the various requirements of the Bankruptcy Code, including whether it is feasible and whether it

25  is in the best interests of the creditors of the Debtor.  At that time, the Debtor will submit a report

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 11  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
H:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1   to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the

2   persons entitled to vote thereon.

3         Section 1128(b) of the Bankruptcy Code provides that any party in interest may

4   object to confirmation of the Plan.  Any objections to confirmation of the Plan must be made in

5   writing and filed with the Bankruptcy Court and received by counsel for the Debtor no later than

6   _____, ~~2010,~~2011, by 4:00 p.m. Pacific time.  Unless an objection to confirmation is

7   timely filed and received, it may not be considered by the Bankruptcy Court.

8      **III.    BACKGROUND AND GENERAL INFORMATION**

9         **A.  PROPERTY DEVELOPMENT**

10        Salpare and Harbor ~~Investors, LLC ("Harbor")~~ are the owners of  real property on

11  Hayden Island, Portland, Oregon that was to be developed into a luxury riverfront planned

12  community of 204 high-end residential water view condominium units commonly known as

13  Salpare Bay (the "Project").  Salpare and Harbor own the Project with an undivided 85% and

14  15% interest, respectively, pursuant to a ~~joint tenancy agreement.~~ tenancy in common

15  agreement.  However, pursuant to the Settlement Agreement, the owners of Harbor will transfer

16  their membership interests in Salpare to Salpare; therefore, Harbor will no longer own an interest

17  in Salpare or the Property.

18        Salpare began construction in approximately 2005 on the related marina and other

19  horizontal improvements.  The Project presently includes 24.5 acres of land, a marina, 200 feet

20  of beach on the Columbia River, 14 acres of water, 204 slips to accommodate large crafts and

21  amenities and facilities such as wireless internet, cable television, laundry, showers and dump

22  station facilities.

23        BankFirst, Inc. ("BankFirst") was the lead lender of 41 participating lenders who

24  promised $63 million in construction financing (the "Loan") for the Project.  However, after it

25  received nearly $1 million in loan fees at the closing of the Loan in December 2006, BankFirst

26

*H:\Client\Salpar\28606\Disclosure Stmt.doc*

**Page 12   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   was dilatory in funding the Loan.  Later, in June 2007, it stopped funding the Loan entirely based

2   on a pretextual default, claiming Salpare and Harbor had failed to fulfill certain presold unit

3   requirements that BankFirst had previously waived on numerous occasions.  Moreover,

4   BankFirst misled Salpare into proceeding with construction, even though as it turns out,

5   ultimately, it had no ability to fund the Loan.  Notably, Salpare was in full compliance with the

6   Loan terms, including fulfilling all monthly payment obligations.

7           In the meantime, despite Salpare's compliance with the Loan, unbeknownst to the

8   guarantor Michael DeFrees ("DeFrees"), BankFirst confiscated DeFrees' $4 million bank

9   account that was provided as additional collateral for the Loan that he had intended to use to

10   fund the Project.    BankFirst, realizing that it had problems declaring a default under these

11   conditions without a release of Salpare's claims, demanded under a threat of default and

12   foreclosure, execution of a first amendment of the Loan documents (the "First Amendment") that

13   purported to resurrect and reinstate the presale conditions that it waived; required Salpare to

14   fulfill the resurrected conditions by selling $50 million in units in what was ultimately a two-

15   week period;   retroactively required Salpare to bless BankFirst's unlawful confiscation of

16   DeFrees' bank account; and provided for a release and waiver of all claims against BankFirst for

17   its wrongful conduct.  Salpare and Harbor complained that the First Amendment was impossible

18   to fulfill, lacked any consideration and was simply unlawful.    BankFirst rejected such

19   complaints.  BankFirst reiterated its threat of foreclosure and added a promise to negotiate a

20   further extension after the First Amendment was executed.  Although Salpare executed the First

21   Amendment, BankFirst did not negotiate further for an extension as promised.

22           What Salpare and Harbor did not know, and BankFirst did not disclose to them

23   during these events, was that BankFirst was having its own financial problems.  Within days

24   after Salpare and Harbor signed the First Amendment, on August 7, 2007 BankFirst executed

25   with the Federal Reserve an agreement ("Consent Order") which limited its funding of future

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 13   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1   loans to the maximum amount on BankFirst' books as of March 12, 2007, which was about the

2   time that BankFirst's funding of the Loan slowed nearly to a stop.

3          As a result of BankFirst's failure to fund the Loan, all construction at the Project

4   ceased.   The contractor ~~JE,~~ Dunn ~~Northwest Inc. ("Dunn"),~~ and ~~other subcontractors (the~~

5   ~~"Construction Claimants")~~ subcontractors had performed a substantial amount of work for which

6   Salpare could not pay them because of BankFirst's failure to fund the Loan; thus, they filed

7   construction liens ~~and on~~against the Property.  On or about October 26, ~~2007.  They in turn~~2007,

8   the Construction Creditors filed an action on their construction claims ("Construction Claims")

9   in that case known as *J.E.Dunn Northwest, Inc. v. Salpare Bay, LLC, et. al.* in the Circuit Court

10  of the State of Oregon, Multnomah County, Case No.  0710-12536 (the "Dunn Action").

11  Thereafter, the Project deteriorated.  The sales agents and team quit; purchasers of the presold

12  units cancelled their purchases and withdrew their deposits; and the development came to a halt

13  in all respects by the end of 2007.

14         In the Dunn Action, BankFirst asserted claims based on the Loan against Salpare,

15  Harbor, DeFrees, Columbia Rim Construction, Inc. and Columbia Rim Corporation (collectively,

16  the "Salpare Parties").  The Salpare Parties counterclaimed against BankFirst and the participant

17  lenders, originally identified only as the "DOES," because their identity was not known. The

18  Salpare Parties claimed $130 million in damages, plus any penalties and attorneys' fees that may

19  be awarded for breach of contract, negligence, interference with contract, promissory estoppel,

20  conversion, breach of good faith and fair dealing, breach of fiduciary duty, four counts of fraud,

21  negligent misrepresentation, rescission and violation of Oregon Racketeer Influenced and

22  Corrupt Organization Act.

23         The Dunn Action was bifurcated between the Construction Claims and the Loan

24  claims.   When a Limited Judgment was about to be entered in the Dunn Action on the

25  Construction Claims, BankFirst's assets were seized by the Federal ~~Deposits and~~Deposit

26

~~H:\Client\Salpar\28606\Disclosure Stmt.doc~~

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 14   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\~~\~~Client~~Docs\Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

1    Insurance Corporation ("FDIC").  After the FDIC removed the entire Dunn Action, a Limited

2    Judgment was entered in the Circuit Court of the State of Oregon on September 9, 2009, which

3    Salpare contends had no effect since the Dunn Action had been removed.  To further add to the

4    problems with that Limited Judgment, it was entered *nunc pro tunc* to April 21, 2009, thus

5    invalidly cutting off parties' appeal rights.  Following the transfer of the Dunn Action back to the

6    Circuit Court of State of Oregon, an Order Reaffirming the Limited Judgment was signed and

7    entered on January 22, 2010, but no separate Limited Judgment was entered on that date and the

8    Order Reaffirming the Limited Judgment did not correct the inappropriate nunc pro tunc entry

9    that cut off parties' appeal rights.

10           Dunn contends that the method and timing by which the State Court entered the

11   Limited Judgment did not cut off the parties' appeal rights.  Dunn contends that there are four

12   key facts concerning the Dunn Action:  (1) that the State Court found that the construction liens

13   had priority over BankFirst's position; (2) that the liens cover the entire Property, including the

14   Marina; (3) that Salpare stipulated to the amounts due to the plaintiffs in the Dunn Action; and

15   (4) that the State Court made detailed findings of fact and conclusions of law.

16           After the Dunn Action was returned to the Circuit Court of the State of Oregon, it

17   was further bifurcated with BankFirst's and the Salpare Parties' claims removed to Federal Court

18   for disposition in the United States District Court for the District of Oregon Case No. 10-373-PK

19   (the "Federal Case").   In those proceedings, the Salpare Parties identified and served the

20   participant lenders requiring that they appear and defend against the Salpare Parties' claims.[46]  In

21   the Federal Case, the Salpare Parties and George Killian, (the principal of Harbor) on the one

22   hand, and the FDIC and participants on the other, entered into a settlement on the record on June

23   2, 2010 that resolved all claims between them.  In the meantime, Dunn sought to proceed with an

24

25   [46]  During the litigation the identity of the participants was learned as the result of an Order obtained by
     the Salpare compelling BankFirst to provide discovery.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 15   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   execution sale on the Limited Judgment for the Construction Claims, with a foreclosure sale

2   scheduled for June 8, 2010.

3          The Salpare Parties, the FDIC for BankFirst, and the loan participants entered into

4   a written settlement agreement on or about June 7, 2010, pursuant to which all parties agreed to

5   dismiss the Federal Case and the Salpare Parties released their claims against BankFirst, the loan

6   participants and the FDIC (the "Settlement").  As a result of the Settlement and in consideration

7   of the Salpare Parties' release of their claims (the value of which was equal to or exceeded the

8   Loan balance), the FDIC for BankFirst and the loan participants have agreed not to seek payment

9   on the Loan from Salpare or Harbor.  The only Secured Claims against the Property are those

10   held by construction lien claimants and real property taxing authorities, all totaling

11   approximately $7.5 million.

12          Salpare currently operates a high-end marina business with 204 slips on the

13   Property.  The Marina was completed in 2007 and became operational in the Spring of 2007.

14   The Marina is an extremely attractive and appealing operation situated on the Columbia River,

15   having been constructed and dredged at significant cost by Salpare.  Salpare maintains a

16   clubhouse for the Marina with laundry, kitchen, bathroom and shower facilities and rents out a

17   yacht sales office.  It contracts for catering events, repair and cleaning of boats and provides

18   other services and goods for compensation to its lessees.  Each slip has dockside access to

19   electricity, water and internet service.  Moreover, the Marina has extrinsic value in that it is the

20   only marina in Oregon that has fee title ownership for each slip.[7]  Therefore, there is an

21   opportunity for the slips at the Marina to be sold individually and not subject to any leasehold

22   interest held by a governmental authority.

23          Due to the changes in the overall economic climate since 2005, the Debtor now

24   plans to construct approximately 371 apartment units on Phase 1 and Phase 2 of the Property.

25

---

[7] Dunn disagrees that the marina slips may be sold individually.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 16   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1    The building pads at Building C for the previously planned condominium project are anticipated

2    to serve as the foundation for Phase 1 of the proposed multi-family development.   Salpare

3    intends to develop the Property in two (2) phases, with the first phase comprised of

4    approximately 166 apartment units and ancillary improvements.

5            Salpare currently maintains temporary parking for the Marina on the industrial

6    zoned portion of the Property.  Salpare has filed an application to construct permanent parking

7    for the Marina on the Property and has ~~filed an application to employ~~retained land use counsel,

8    Dorothy Cofield, to assist it in obtaining the conditional use application from the City of Portland

9    as well as to possibly divide the commercial zoned land from the marina (by either a partition or

10   as a unit of land created by a deed of trust metes and bounds legal description), which it believes

11   will generate more options for the development of the Property as a multi-family residential and

12   marina project.

13           Salpare has ~~begun the process to obtain funding to develop the initial phase of the~~

14   ~~Project, and has generated interest from lenders.  Salpare has~~a term sheet from a reputable well-

15   known lender for the FHA 221(d)(4) of the National Housing Act loan that it seeks to develop

16   Phase 1 of the Property (the "FHA Lender").  Salpare hired Obsidian Finance Group early on in

17   this case to provide financial consulting services to it in its endeavors to develop the Property

18   and obtain financing for it.  Salpare ~~has~~ also hired Steven Wiltshire of Marcus & Millichap

19   ("M&M), a financial services broker~~, who has issued a pre-qualification approval letter and~~.  An

20   FHA 221(d) mortgage loan is a multifamily construction loan guaranteed by FHA/HUD.  Unlike

21   some FHA/HUD programs, there is no requirement that the multifamily units be offered at below

22   market rents.

23           Salpare's FHA Lender has issued a term sheet to ~~the Debtor for purposes of~~

24   ~~funding the development of the Project.  That pre-qualification states that M&M is "highly~~

25   ~~confident" that the Debtor can successfully obtain~~Salpare for an FHA 221(d) mortgage loan~~.~~

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 17  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\~~\ClientDocs\Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

***FARLEIGH WADA WITT***
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  ~~The M&M term sheet provides that Salpare is prequalified for an FHA loan in the amount of~~
2  ~~$24,194,000 or 83.3% loan to cost or the minimum of 1.20 Debt Coverage Ratio using market~~
3  ~~income proforma or validated market income and expense components, whichever is less~~ on the
4  following general terms:  (i) a proposed loan amount of $19,938,200; (ii) a current estimated
5  interest rate of 5.75%; (iii) a construction loan term of the construction period plus four months,
6  interest only; (iv) a permanent loan term of 40 years or 75% of the remaining useful economic
7  life of the Property; (v) no prepayment for 2 years without a fee; (vi) total deposits due at
8  application of $37,500; (vii) a financing fee of 2% of the loan amount, with a good faith deposit
9  of .5% and a firm commitment application fee of .3%; (viii) secured by a first lien encumbering
10 Phase 1 of the Property.   The construction period is to be 14 months to allow for 12 months
11 construction and two months for cost certification, which requires Salpare and the general
12 contractor to submit a cost certification prepared by an independent public accountant upon
13 completion of construction.   Upon issuance of a Certificate of Occupancy, the loan will be
14 converted to a 40-year fixed term with a 40-year amortization, with a loan rate of ~~5.15~~5.75%.
15 The loan will be non-recourse.  The loan origination fee will be .73% of the loan amount payable
16 at closing of the loan.

17          Salpare's projections indicate gross potential rental income of $2.7 million to $2.9
18 million for just the first 166 units.  While occupancy rates have dropped over the past few years,
19 the market is improving and established multi-family residential developments in the Portland
20 area continue to be feasible.

21      **B.  MANAGEMENT**

22          Columbia Rim Corporation ("CR Corp.") is the manager of the Debtor's limited
23 liability company.  CR Corp.'s shares are owned 50% by Michael DeFrees ("DeFrees") and 50%
24 by Christy DeFrees.  DeFrees runs the day to day operations of CR Corp.  DeFrees is the sole
25 member of the Debtor and runs the day to day operations of the Debtor.  DeFrees is a native of

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 18   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\~~\ ~~Client~~ ~~Docs~~\Salpar\28606\ ~~Disclosure Stmt.Pldg\~~3216089.Doc

1    the Vancouver, Washington area and began his career as a developer by building single family

2    residential housing projects in the early 1980s.  He then began developing commercial projects

3    and has developed hotels, recreational vehicle parks, medical complexes, and apartment

4    buildings over his 30-year career.  DeFrees is not an employee of the Debtor; rather the Debtor

5    pays Gateway National Corporation ("Gateway") for the services provided to it by Gateway's

6    employees, of which DeFrees is one.  DeFrees is shareholder and the President of Gateway.  The

7    Debtor pays approximately $5,000 per month for management fees to Gateway for the services

8    DeFrees and others perform on its behalf.  DeFrees will continue to oversee the operations of the

9    Debtor and will continue to be paid from his other entities for such services provided.

10                              **C.  FINANCIAL PERFORMANCE**

11           Attached hereto as Exhibit 34 are the income statements for the Debtor for its

12    fiscal years ending in the prior three years.  The income statements reflect the expense associated

13    with the BankFirst related debt and, thus, do not provide an accurate picture of the Debtor's true

14    net income from its current operations because BankFirst no longer seeks payment of that debt

15    pursuant to the Settlement.   Additional or more detailed information may be obtained by

16    submitting a written request to Debtor's counsel identifying the information sought.

17    **IV.    THE BANKRUPTCY CASE**

18           **A.    THE FILING**

19           The Debtor filed its voluntary petition for relief under Chapter 11 of the

20    Bankruptcy Code on June 7, 2010.

21           **B.    POST –PETITION DEVELOPMENTS**

22           After the filing of the Petition, the Debtor sought and obtained the following

23    orders:  (1) an Order Pursuant to 11 USC § 366(a) Finding Adequate Assurance of Payment for

24    Future Utility Services (Docket No. 36); (2) an order authorizing the employment of Spencer

25    Powell Valuation, Inc. as an appraiser for the Debtor's Property (Docket No. 6773); (3) an order

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 19  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\326089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   authorizing the employment of Farleigh Wada Witt as counsel for the Debtor (Docket No. 90);

2   and (4) an order authorizing the employment of Obsidian Finance Group, LLC ("Obsidian") as a

3   financial consultant to the Debtor (Docket No. 80); an order authorizing the employment of

4   Marcus & Millichap Capital Corporation as a loan broker to the Debtor (Docket No. 110); and an

5   order authorizing the employment of Dorothy Cofield as the Debtor's land use attorney (Docket

6   No. 105).  Because the BankFirst debt was eliminated prepetition, there was no need for the

7   Debtor to obtain an order authorizing use of cash collateral.

8          Almost immediately after the Debtor filed its Petition, Dunn filed a motion for

9   relief from stay to foreclose its asserted construction lien against the Property, alleging that there

10  was no equity in the Property for the Debtor and that it was not necessary for an effective

11  reorganization.  After a two-day contested hearing before the Court held on August 3 and 4,

12  2010, the Court entered an order denying Dunn's motion and holding that there is equity in the

13  Property over the amount of Dunn's asserted secured claim, that the Property is necessary for an

14  effective reorganization and that the Debtor did not file this case in bad faith.  This Court also

15  found that this is a single asset real estate case under 11 USC §101(51B) and that, thus, the

16  provisions of 11 USC §362(d)(3) apply.

17         The US Trustee's Office has not appointed an unsecured creditors committee in

18  this case.

19         As previously discussed in Section I(B), supra, the Debtor, Harbor and the

20  Construction Creditors engaged in lengthy settlement discussions with the assistance of Judge

21  Hogan, which culminated in the parties agreeing to the Settlement Agreement attached hereto as

22  Exhibit 2.  The Settlement Agreement will be the subject of a separate notice of intent to settle

23  for this Court's approval.  However, assuming that the Settlement Agreement is approved by this

24  Court, the Construction Creditors and Harbor have agreed that they will consent to the Debtor's

25  Plan.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 20   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1      **V.      ASSETS AND LIABILITIES**

2           **A.      ASSETS**

3                **1.      Real Property.**

4           The Debtor's assets consist primarily of the Property, which is comprised of a

5      204-slip, fully operating high-end marina on the Columbia River, a commercially zoned parcel

6      of land about 24 acres in size that contains a partially constructed parking garage that may be

7      used in the 375-unit apartment complex contemplated by the Debtor's Plan, and an industrially

8      zoned parcel of land about 1.8 acres in size that currently houses temporary parking for the

9      marina and a high-end sales trailer leased by a yacht sales company, Royal Marine.

10               **2.      Other Property.**

11          The Debtor's other assets consist of a claim against its co-owner of the Property,

12     Harbor for the amounts Harbor owes it under the joint tenancy agreement.  The Debtor ~~has~~had

13     sued Harbor to recover on that claim in Adversary Proceeding No. 10-~~03252~~03252, but that

14     claim is to be settled under the Settlement Agreement for the transfer of the Killians'

15     membership interests in Harbor to Salpare and, as inducement for Salpare to accept such

16     assignment, payment by Harbor to Salpare of $40,000.  The Debtor's remaining assets include

17     the sales trailer leased to Royal Marine worth approximately $273,000, the lease with Royal

18     Marine, and the sales office furniture and office equipment, formerly in the sales trailer when it

19     housed the Debtor's sales team for the condominium Project, worth approximately

20     $~~42,000~~42,000.

21          **B.      LIABILITIES**

22          The Debtor's only asserted Secured Creditors in this case are Creditors asserting

23     that they hold a claim secured by a perfected construction lien asserted under Oregon law or by

24     judgment and the county taxing authority.  For the reasons set forth at pages 13-14 above, the

25     Debtor does not concede that the judgment upon which the asserted Secured Creditors rely is

26

H:\Client\Salpar\28606\Disclosure Stmt .doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 21   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1  valid or that their purported Construction Liens constitute a lien superior in right to the Debtor or

2  its interests.  The amount asserted to be perfected Construction Liens under Oregon law or by

3  judgment is approximately $7.1 million.  Multnomah County's personal property and real

4  property tax claim is approximately $234,000.  The Secured Creditors disagree with the Debtor's

5  position regarding their Construction Liens and content that they have valid judgment liens

6  against the Property.  The Settlement Parties are settling their claims and disputes under the

7  Settlement Agreement.

8          As previously explained, there is no other secured debt in this case because the

9  BankFirst debt was eliminated prepetition.

10                  **C.     UNSECURED CREDITORS**

11          The Debtor owes approximately $3 million to unsecured creditors, plus

12  approximately $10 million to the Debtor's sole member, Mr. DeFrees.  The Plan contains two

13  classes of unsecured creditors:  Small Unsecured Creditors and General Unsecured Creditors.

14  Small Unsecured Creditors are Creditors holding claims of $2,000 or less.  The total current

15  outstanding amount due to Creditors holding Claims of $2,000 or less is approximately $32,000.

16                  **D.     ADMINISTRATIVE EXPENSES**

17          The Debtor has retained Farleigh Wada Witt as its general bankruptcy counsel in

18  this case (Docket No. 90) and has ~~filed an application to retain~~retained Dorothy Cofield as its

19  land use counsel (Docket No. ~~94~~105).  The Debtor has also retained Obsidian Finance Group,

20  LLC (Docket No. 80) as its financial consultant, and has ~~filed an application to retain~~retained

21  Marcus & Millichap Capital Corporation as its loan broker (Docket No. ~~98~~110).   Debtor also

22  hired Spence Powell as its real estate appraiser to prepare an appraisal and to testify at the

23  hearing on Dunn's motion for relief from stay (Docket No. 67).  The Debtor anticipates that it

24  will incur approximately $250,000 in professional fees and expenses through confirmation of the

25  Plan.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 22  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\~~\Client\Docs\Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    **VI.    DESCRIPTION OF PLAN OF REORGANIZATION**

2        **A.    UNCLASSIFIED CLAIMS**

3        Administrative Expense Claims and Priority Tax Claims are not classified.   An

4    Administrative Expense Claim is a Claim against the Debtor constituting an expense of

5    administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code

6    including, without limitation, the actual and necessary costs and expenses of preserving the

7    estate and operating the Debtor's businesses during the Case, any indebtedness or obligations

8    incurred by the Debtor during the pendency of the Case in connection with the rendition of

9    services to the Debtor, and compensation for legal and other professional services and

10    reimbursement of expenses and statutory fees payable to the United State Trustee.

11        A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to

12    priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to

13    priority but for the Secured status of the Claim.   The Debtor owes approximately $243,000 in

14    property taxes.   The property taxes will be paid in accordance with the requirements of Section

15    1129 of the Bankruptcy Code in ~~equal amortizing~~ payments over a period ending five years from

16    the Petition Date.

17        Pursuant to the Plan of Reorganization, Administrative Expense Claims will be

18    paid in full on the latter of the Effective Date or the date on which any such Administrative

19    Expense Claim becomes an Allowed Claim.   However, the Administrative Expense Claims

20    representing liabilities incurred in the ordinary course of business (including amounts owed to

21    vendors and suppliers that have sold products or furnished services to the Debtor after the

22    Petition Date) will be paid in accordance with the written terms and conditions of the particular

23    transactions and any other agreements relating thereto.   The Debtor will tender a list of such

24    ordinary course Administrative Expense Claims at the confirmation hearing.

25        **B.    CLASSIFIED CLAIMS**

26

H:\Client\Salpal\28606\Disclosure Stmt.doc

**Page 23   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1.      **Overall Plan Implementation.**

The Debtor will obtain either ~~an~~ FHA ~~loan~~loans or ~~a~~ conventional ~~loan~~loans to develop the Property and will pay creditors from a combination of loan proceeds and operating income.

Initially, the Debtor will obtain a Priming Loan to make parking lot improvements, to make permit-related payments, to pay professional fees associated with the bankruptcy case, partition of the Property, loan costs and fees and other site and surveying work. The general terms of the Priming Loan include: (i) $500,000, with the possibility of obtaining an additional $250,000 upon receipt of a fully-executed commitment letter from a bank  or other financial institution agreement to loan Salpare the funds necessary for the development of Phase1; (ii) Wall Street prime rate plus 10% floating daily; (iii) $250,000 to be paid on or before June 30, 2012 as set forth in the Settlement Agreement; (iv) $8.000 application fee; (v) loan fee of 5% upon loan closing; (vi) secured by a first trust deed on the Property; and (vii) release of trust deed by Priming Loan lender on Phase 1 at closing of Phase 1 FHA Loan.  Pursuant to the Settlement Agreement, the Construction Creditors shall subordinate their liens to the trust deed of the Priming Loan lender.

~~If the Debtor obtains FHA financing, it intends to obtain a construction~~As discussed previously, an FHA Lender has issued a term sheet to the Debtor for an FHA 221(d)(4) loan for Phase 1 of the construction on the Property ~~in approximately August of 2011~~on or before June 30, 2012 in the approximate amount of $~~24~~20 million and pay ~~$3 million to Classes 3, 4, 5 and 6 creditors on their Allowed Construction Lien Claims, subject to the outcome of the Dunn Adversary Proceeding, as discussed at Section VI(B)(4) below.   The Debtor anticipates completing~~the Discounted Judgment Amount to the Class 2, 3, 4, 5 and 6 Secured Creditors on their claims in three payments on June 30, 2012, October 31, 2012 and June 30, 2013.  The Debtor will obtain the loan to commence construction of Phase 1 in approximately June of ~~2012.~~

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 24  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
 (~~September 7, 2010~~April 8, 2011)
~~HP:\ClientDocs~~\Salpar\28606\~~Disclosure Stmt.Pldg\32~~l6089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   At that point,2012 with funding provided by the FHA Lender.   By October 31, 2012, the Debtor

2   will refinance the Marina and pay $3 million to Classes 3, 4, 5 and 6 creditors on their Allowed

3   Construction Lien Claims, subject to the outcome of the Dunn Adversary Proceeding, as

4   discussed at Section VI(B)(4) below infra make the second installment payment to the Secured

5   Creditors as well as the first payment to Multnomah County, the first payment to General

6   Unsecured Creditors and the final payment to the Small Unsecured Creditors.   The Debtor

7   intends to obtain financing for Phase 2 of the construction on the Property in approximately June

8   of 2013, at which time the Debtor will pay Class 3, 4, 5 and 6 Claimants the Secured Creditors

9   their final payment pursuant to the Settlement Agreement.   The Debtor plans to pay Small

10  Unsecured Creditors and General Unsecured Creditors from net operating income or loan

11  proceeds Net Income.

12  The Debtor proposes to implement this Plan as set forth in the Plan projections attached hereto as

13  Exhibit 5.

### 2.   Class 1 (Other Priority Claims).

15  Class 1 is unimpaired.  Each holder of an Allowed Class 1 Claim will be paid in

16  full in Cash the amount of its Allowed Class 1 Claim, including all interest, costs, fees and

17  charges provided for under any agreement under which such Claim arose or is otherwise allowed

18  by law, on the latter of (a) the Effective Date or (b) the date on which such Claim becomes

19  Allowed, unless such holder shall agree or has agreed to a different treatment of such Claim

20  (including any different treatment that may be provided for in any documentation, agreement,

21  contract, statute, law or regulation creating and governing such Claim.  The Debtor is not aware

22  of the existence of any Other Priority Claims.

### 3.   Class 32 (City of Portland Secured Claim).

24  Class 2 consists of the Claim asserted by the City of Portland under ORS 223, the

25  city charter of Portland and the Portland City Code, as set forth in the Dunn Action judgment in

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 25   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1    the amount of $152,028.81 as a Secured Claim.  The holder of an Allowed Secured Class 2

2    Claim will be paid as set forth in ~~full in Cash the amount of its Allowed Class 2 Claim, on the~~

3    ~~latter of the closing of the loan the Debtor will obtain for the development of Phase 1 or~~

4    ~~September 30, 2011.~~ the Settlement Agreement its share of the Discounted Judgment Amount

5    as follows:  40% on or before June 30, 2012; 40% on or before October 31, 2012 and the

6    remaining 20% on or before June 30, 2013.

7                          **4.    Class 3 through ~~5~~6 (Construction Liens).**

8                   Classes 3 through 6 are impaired and consist of Claims asserted by:  Dunn (Class

9    3), TKS (Class 4), BMI (Class 5) and Myhre (Class 6).  Each Creditor holding a Class 3, 4, 5 or

10   6 Allowed Claim secured by a perfected construction lien will retain its lien with the same

11   priority such lien had on the Petition Date, except as set forth herein at Section 6.3 of ~~this~~the

12   Plan.  The Allowed Claims in Classes 3, 4, 5 and 6 will be paid ~~in full~~the Discounted Judgment

13   Amount, together with interest accruing from and after the Effective Date at the rate of 3.25%

14   per annum from the proceeds of the ~~refinancing~~financing of the Property, consistent with the

15   terms of the Settlement Agreement.  The first payment to Classes 3, 4, 5 and 6 ~~on their Allowed~~

16   ~~Construction Lien Claims (subject to the outcome of the Dunn Adversary Proceeding),~~of 40% of

17   the Discounted Judgment Amount will occur on the ~~later of the~~ closing of the loan Debtor will

18   obtain to develop Phase 1 or ~~September 30, 2011, and will be in the approximate amount of $3~~

19   ~~million.  In June~~June 30, 2012, as set forth in the Settlement Agreement. On or before October

20   31. 2012, the Debtor anticipates refinancing the Marina and will pay ~~approximately $3 million at~~

21   ~~the later of the closing of that loan or August 30, 2012 to the Allowed Construction Lien~~

22   ~~Claims.~~40% of the Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set forth in the

23   Settlement Agreement.   The Debtor intends to obtain financing to develop Phase 2 ~~in~~

24   ~~approximately~~on or before June 30, 2013 and will pay the balance of the ~~Allowed Construction~~

25

26

~~H:\Client\Salpar\28606\Disclosure Stmt.doc~~

**Page 26   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
(~~September 7, 2010~~April 8, 2011)
~~HP:\Client\Docs\~~Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  Lien Claims on the later of the closing of that loan or June 30, 2013.[5] The Multnomah County

2  Circuit Court (the "State Court") granted Classes 3, 4, 5 and 6 a Limited Judgment against the

3  Debtor in the Dunn Action; however, that Limited Judgment was entered in September of 2009

4  *nunc pro tunc* to April 21, 2009, thus invalidly cutting off parties' appeal rights.  Moreover,

5  when the State Court entered the Limited Judgment, the case had already been removed to

6  federal court, thus eliminating the State Court's jurisdiction to enter the Limited Judgment.

7  Following the transfer of the Dunn Action back to the State Court, an Order Reaffirming the

8  Limited Judgment was signed and entered on January 22, 2010, but no separate Limited

9  Judgment was entered on that date and the Order Reaffirming the Limited Judgment did not

10  correct the inappropriate *nunc pro tunc* entry that cut off parties' appeal rights.  The Debtor

11  contests the validity of the Limited Judgment in favor of the Class 3, 4, 5 and 6 Claimants in the

12  Dunn Adversary Proceeding pending before the Bankruptcy Court, in which the Debtor seeks a

13  declaratory judgment that:   (i) the Limited Judgment is void; (ii) the Debtor is equitably

14  subrogated to the rights of BankFirst under the BankFirst DOT; (iii) pursuant to ORS 87.025(2),

15  the Class 3, 4, 5 and 6 Claimants are entitled to foreclose their interest in and remove the

16  Improvements they created on the Property, but are not entitled to foreclose their interest in the

17  Property ahead of the BankFirst DOT; and (iv) any judgment of foreclosure entered in the future

18  (in the event the automatic stay were lifted to allow entry of the judgment) shall reflect:  (a) the

19  BankFirst DOT's superior position with respect to the Land; (b) any foreclosure sale held by

20  Dunn, TKS, and/or Myhre shall include only the Improvements, and that any foreclosure sale of

21  the Land by those parties shall be subject to the BankFirst DOT; and (c) the purchaser at any

22

23  [5] If the Debtor obtains conventional financing, the Debtor intends to proceed the same way as it would if it were obtaining FHA financing, with the following differences:  (1) it will pay approximately $1 million instead of $3 million upon the initial financing anticipated to be in September of 2011 to Class 3, 4, 5 and 6 Claimants on their Allowed Construction Lien Claims, subject to the outcome of the Dunn Adversary Proceeding; and (2) it will obtain permanent financing for Phase 1 and pay approximately $2 million to Class 3, 4, 5 and 6 Claimants on their Allowed Construction Lien Claims on the later of the closing of that loan or June 13, 2013, along with the payment from the financing for Phase 2 as discussed above.

24

25

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 27   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   foreclosure sale held with respect to the Improvements shall be required to remove the

2   Improvements within 30 days, subject to the terms and conditions of ORS 87.035(3). Should the

3   Debtor prevail in the Dunn Adversary Proceeding, then the Class 3, 4, 5 and 6 Allowed Claims

4   will be paid an amount equivalent to the fair market value of the Improvements that each of the

5   Claimants made to the Property from the refinancing of the Property by the Debtor, with interest

6   at the rate of 3.25% per annum. Thereafter, the Class 3, 4, 5 and 6 Claimants will retain their

7   liens and will be treated as Secured Claims only to the extent of any value securing the lien after

8   satisfaction of the BankFirst DOT. To the extent the value of the Property is insufficient to pay

9   such lien, the holder will have a Small Unsecured Claim or a General Unsecured Claim, as

10  appropriate. The Unsecured Claim will be the difference between the Claim on the Petition Date

11  and the payment the Debtor makes to the Claimant based upon the fair market value of their

12  respective Improvements from the refinance of the Property. Any disputes regarding the

13  allowance of a Class 3, 4, 5 and 6 Claim may be determined in the Dunn Adversary Proceeding

14  or by the claims objection process. Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set

15  forth in the Settlement Agreement. Debtor shall deliver a Bargain and Sale Deed to the Property

16  (the "Deed") (free and clear of all liens), except those permitted under the Plan and the

17  Settlement Agreement, conveying the Property to Dunn to Judge Hogan to be held in trust for the

18  benefit of the Construction Creditors within five (5) business days of the Effective Date. After

19  each payment referenced herein, Debtor shall immediately deliver to Judge Hogan a new deed

20  for the portion(s) of the Property that remain as collateral for Debtor's payment obligations to the

21  Construction Creditors.

22              **5.       Class 7 (County Secured Claim for Property Taxes).**

23              Class 7 is unimpaired. The holder of the Class 7 Claim will retain its security

24  interest with the same priority to which it is entitled by law. The Allowed Class 7 Claimant shall

25  be paid the full amount of its Secured Claim as permitted by 11 USC §1129(a)(9)(D) in full from

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 28   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\32\6089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  financing of the Property or ~~net operating income~~Net Income, but not later than five (5) years

2  after the Petition Date.

3  **6.    Class 8 (Small Unsecured Claims).**

4  Class 8 is impaired.  Each holder of a Class 8 Claim will be paid in Cash an

5  amount equal to 25% of their Allowed Claim ~~within 60 days of the Effective Date of the Plan~~on

6  or before October 31, 2012 or 30 days of the date their Claim becomes an Allowed Claim,

7  whichever is later.  Thereafter, each holder of a Class 8 Claim will be paid in Cash an amount

8  equal to 75% of their Allowed Claim on or before ~~October 31, 2011.~~June 30, 2013.  The total

9  costs of payment to current Small Unsecured Creditors will be approximately $31,000.

10  **7.    Class 9 (General Unsecured Claims).**

11  Class 9 is impaired.  Each holder of a Class 9 Claim shall be paid by receiving a

12  Pro Rata share of 30% of the Net ~~Operating~~ Income generated by the Reorganized Debtor for

13  each calendar quarter from after ~~September 30, 2011 for five (5) years.  Additionally, any~~June

14  30, 2012 through December 31, 2017, so long as the Debtor has amounts in excess of $~~23.5~~

15  ~~million~~500,000 in ending cash balances~~ as of October 31, 2016, if any, shall be paid to Class 9~~

16  ~~Allowed Claims to the extent necessary to pay such Claims, if possible~~.  General Unsecured

17  Claims total approximately $2.2 million, plus approximately $10.9 million to General Unsecured

18  Claims owing to Michael DeFrees, plus any Deficiency Claims of Secured Claims.  Mr. DeFrees

19  has agreed to subordinate payments to him on his General Unsecured Claim and he will be

20  treated as a Class 9 Claimant.

21  **8.    Class 10 (Subordinated Claims).**

22  Class 10 is impaired.  Holders of subordinated claims will be paid a Pro Rata

23  share of all remaining Unsecured proceeds after Holders of allowed Class 9 Claims have been

24  paid in full.

25  **9.    Class 11 (Interests).**

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 29  - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\Client~~Docs\Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Class 11 is impaired.  The holder of the Class 11 Claims ~~is~~are the holders of all

2    equity interests in the Debtor.  ~~All~~As a result of the Settlement Agreement, the owners of Harbor

3    will transfer their membership interests in Harbor to Salpare.  The interests of Salpare owned by

4    Harbor will then be cancelled.  All remaining equity interests will be retained by Mr. DeFrees in

5    exchange for the subordination of his $10.9 million General Unsecured Claim~~, the interests in the~~

6    ~~Reorganized Debtor will be issued to Mr. DeFrees~~.

7                    C.        EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8              The Bankruptcy Code gives Debtor the right, after commencement of their

9    Chapter 11 cases, subject to the approval of the Bankruptcy Court, to assume or reject executory

10   contracts and unexpired leases.  Generally, an "executory contract" is a contract under which

11   material performance (other than payment of money) is still due by each party.  The Plan

12   provides for assumption of all executory contracts and leases.

13             If an executory contract or unexpired lease is or has been rejected, the Creditor

14   may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a

15   Proof of Claim with respect to any such Claim must be Filed no later than 30 days after approval

16   of the Bankruptcy Code of the rejection of the relevant executory contract or unexpired lease or

17   30 days after the Effective Date, whichever is sooner.  Any such Claim shall constitute an

18   Unsecured Claim to the extent that such Claim is finally treated as an Allowed Claim.  To the

19   extent the Debtor rejects an unexpired lease of nonresidential real property, the Claim for

20   damages resulting from such rejection will be limited to the amount allowed under the

21   Bankruptcy Code.

22             Upon assumption of an executory contract or unexpired lease, the Debtor must

23   cure or provide adequate assurance of prompt cure of any monetary defaults.  The Plan provides

24   that the Reorganized Debtor will cure all defaults, if any, in the ordinary course of business and

25   will cure any monetary defaults, if any, promptly.  All assumed executory contracts and leases

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 30   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1 will be automatically assigned to the Reorganized Debtor as of the Effective Date.  The Debtor

2 assumed the leases and executory contracts listed on Exhibit 6.

3          **D.    EFFECT OF CONFIRMATION**

4                  **1.    DISCHARGE**

5          The treatment of, and consideration received by, holders of Allowed Claims and

6 Allowed Interests pursuant to the Plan will be in full satisfaction, release and discharge of their

7 respective Claims against or interests in the Debtor.  Confirmation Orders shall discharge the

8 Debtor from any liability that arose before the Effective Date as provided in Sections 524 and

9 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g),

10 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a Proof of Claim based on such

11 debt or liability is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim

12 based on such debt or liability is Allowed; or (c) the holder of the Claim based on such debt or

13 liability has accepted the Plan.

14                  **2.    REVESTING, OPERATION OF BUSINESS**

15          All property of the estates shall revest in Reorganized Debtor on the Effective

16 Date free and clear of all rights, claims, liens charges, encumbrances and interests, except as

17 otherwise provided in the Plan.

18                  **3.    INJUNCTION**

19          Except as otherwise expressly provided in the Plan, all persons who have held,

20 hold or may hold Claims, or who may have held, hold or may hold any Interest, are permanently

21 enjoined from and after the Effective Date from (a) commencing or continuing in any manner

22 any action or other proceedings of any kind with respect to any Claims or Interests against

23 Reorganized Debtor; (b) enforcing, attaching, collecting or recovering by any manner or any

24 means any judgment, award, decree or order against Reorganized Debtor; (c) creating, perfecting

25 or enforcing any encumbrances of any kind against Reorganized Debtor with respect to any such

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 31   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Claim except as specifically set forth in the Plan; (d) asserting any setoff, right of subrogation or

2    recoupment of any kind against any obligation due to the Debtor, Reorganized Debtor or their

3    property; and (e) proceeding in any manner in any place whatsoever that does not conform to,

4    does not comply with, or is inconsistent with the provisions of the Plan or the order confirming

5    the Plan.

6        **4.    MODIFICATION OF THE PLAN; REVOCATION OR WITHDRAWAL OF THE PLAN**

7

8        Subject to Section 1127 of the Bankruptcy Code, the Debtor reserves the right to

9    alter, amend or modify the Plan before its substantial consummation so long as the treatment of

10   holders of Claims and Interests under the Plan are not adversely affected.

11       **5.    RETENTION OF JURISDICTION**

12       Notwithstanding the entry of the Confirmation Order on the Effective Date having

13   occurred, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of

14   or relating to the Chapter 11 Case, including, but not limited to, the following matters:  (a) to

15   hear and determine any pending applications for the rejection of executory contracts or

16   unexpired leases, and the allowance of Claims resulting therefrom; (b) to determine any

17   adversary proceedings, applications, contested matters or other litigative matters pending on the

18   Effective Date or Filed prior to the closing of the case; (c) to ensure that distributions to holders

19   of Allowed Claims are accomplished; (d) to hear and determine objections to or requests for

20   estimations of Claims, including any objections to the classification of any Claim, and to allow,

21   disallow and/or estimate any Claim in whole or in part; (e) to enter and implement such orders as

22   may be appropriate in the event the Confirmation Order is for any reason stayed, revoked,

23   modified or vacated; (f) to issue any appropriate orders in aid of execution of the Plan or to

24   enforce the Confirmation Order and/or the discharge, or the effect of such discharge, provided to

25   the Debtor; (g) to hear and determine any applications to modify the Plan, to cure any defect or

26   omission or to reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court,

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 32   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  including, without limitation, the Confirmation Order; (h) to hear and determine all applications

2  for compensation and reimbursement of expenses of professionals or members of the Creditors

3  Committee under the Bankruptcy Code; (i) to hear and determine disputes arising in connection

4  with the interpretation, implementation and enforcement of the Plan; (j) to hear and determine

5  other issues presented or arising under the Plan; (k) to hear and determine any other matters

6  related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and (l) to enter a

7  final decree closing the Chapter 11 Case.

8  ## 6.    UNITED STATES TRUSTEE FEES

9  Reorganized Debtor shall be responsible for timely payment of fees incurred

10  pursuant to 28 USC § 1930(a)(6) until the case is closed, converted or dismissed.   After

11  confirmation, Reorganized Debtor shall serve on the United States Trustee a monthly financial

12  report for each month, or portion thereof, that the case remains open.   The monthly financial

13  report shall include a statement of all disbursements made during the course of the month,

14  whether or not pursuant to the Plan.

15  ## 7.    AVOIDANCE ACTIONS.

16  The Debtor has not done an analysis of possible preference or fraudulent transfer

17  actions.  The Debtor has not budgeted Professional Fees to pursue preference claims, but has also

18  not budgeted for any recovery.  If any such claims exist, the Professional Fees would presumably

19  be covered by any recoveries.  The Debtor will complete a preference analysis before the hearing

20  date on Confirmation.  The Plan preserves all avoidance actions to the extent any exist.

21  ## VII.    LIQUIDATION ANALYSIS

22  A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds

23  that the Plan is in the "best interest of creditors" of holders of claims against, and interests in, the

24  debtor subject to such plan.  The best interest test is satisfied if the plan provides each dissenting

25  or non-voting member of each impaired Class with a recovery not less than the recover such

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 33   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
H:P:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    member would receive if the debtor was liquidated in a hypothetical case under Chapter 7 of the

2    Bankruptcy Code by a Chapter 7 Trustee.  The Debtor believes that the holders of impaired

3    Claims will receive more than they would receive under a Chapter 7 liquidation.  In applying the

4    "best interest" test, the Bankruptcy Court would ascertain the hypothetical recovery in a Chapter

5    7 proceeding to Secured Creditors, priority claimants, general Unsecured Creditors and equity

6    interest holders.   The hypothetical Chapter 7 recoveries would then be compared with the

7    distribution offered to each Class of Claims or Interests under the Plan to determine that the Plan

8    satisfied the "best interest" test set forth in the Bankruptcy Code.

9    A copy of the Debtor's tabulation liquidation analysis is attached hereto as Exhibit 4.7.   The

10   liquidation table shows that upon a liquidation of the Debtor, there would be no funds available

11   for distribution to Unsecured Creditors.

12   **VIII.   CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

13

14                CIRCULAR 230 DISCLAIMER:   TO ENSURE COMPLIANCE WITH

15   REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, WE INFORM

16   YOU THAT (A) ANY U.S. FEDERAL TAX ADVICE CONTAINED IN THIS

17   COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR

18   WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED

19   UPON, FOR THE PURPOSE OF (1) AVOIDING TAX-RELATED PENALTIES UNDER THE

20   INTERNAL REVENUE CODE OF 1986, AS AMENDED, OR (2) PROMOTING,

21   MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR

22   TAX MATTER(S) ADDRESSED HEREIN, AND (B) THIS DISCUSSION WAS WRITTEN

23   IN CONNECTION WITH DEBTOR SOLICITING ACCEPTANCES OF THE PLAN

24   THROUGH THIS DISCLOSURE STATEMENT.

25         **A.      GENERAL TAX CONSIDERATIONS**

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 34  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1      The following discussion is a summary of certain material federal income tax

2  consequences expected to result from the consummation of the Plan.  This discussion is for

3  general information purposes only, and should not be relied upon for purposes of determining the

4  specific tax consequences of the Plan with respect to a particular holder of an Allowed Claim or

5  equity interest.  This discussion does not purport to be a complete analysis or listing of all

6  potential tax considerations.  This discussion does not address aspects of federal income taxation

7  that may be relevant to a particular holder of an Allowed Claim subject to special treatment

8  under federal income tax laws (such as foreign taxpayers, broker-dealers, banks, thrifts,

9  insurance companies, financial institutions, regulated investment companies, real estate

10  investment trusts and pension plans, and other tax-exempt investors), and does not discuss any

11  aspects of state, local or foreign tax laws.  Furthermore, this summary does not address federal

12  taxes other than income taxes.

13      This discussion is based on existing provisions of the Internal Revenue Code of

14  1986, as amended (the "IRC"), existing and proposed Treasury Regulations promulgated

15  thereunder, and current administrative rulings and court decisions.  Legislative, judicial or

16  administrative changes or interpretations enacted or promulgated after the date hereof could alter

17  or modify the discussion set forth below with respect to federal income tax consequences of the

18  Plan.  Any such changes or interpretations may be retroactive and could significantly affect the

19  federal income tax consequences of the Plan.  No ruling has been requested or obtained from the

20  Internal Revenue Service (the "IRS") with respect to any tax aspects of the Plan and no opinion

21  of counsel has been sought or obtained with respect thereto.  This discussion is not binding on

22  the IRS or the courts and no assurance can be given that the IRS will not assert, or that a court

23  will not sustain, a different position than any position discussed herein.  No representations or

24  assurances are being made to the holders of Allowed Claims or equity interests with respect to

25  the federal income tax consequences described herein.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 35  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1     Accordingly, the following summary of certain federal income tax consequences

2  of the Plan is for informational purposes only and is not a substitute for careful tax planning or

3  advice based upon the individual circumstances pertaining to a particular holder of an Allowed

4  Claim or an equity interest.  Each holder of an Allowed Claim or an equity interests is strongly

5  urged to consult with its own tax advisors regarding the federal, state, local, foreign and other tax

6  consequences of the Plan.

7     Any discussion of federal tax issues set forth in this Disclosure Statement was

8  written solely in connection with the confirmation of the Plan to which the transactions described

9  in this Disclosure Statement are ancillary.  Such discussion is not intended or written to be legal

10  or tax advice to any person and is not intended or written to be used, and cannot be used, by any

11  person for the purpose of avoiding any federal tax penalties that may be imposed on such person.

12  Each holder of an Allowed Claim or equity interest should seek advice based on its particular

13  circumstances form an independent tax advisor.

14     **B.     FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS**

15          **1.     IN GENERAL**

16     The Debtor is a limited liability company and, thus, is a pass-through entity for

17  both federal and state income tax purposes.  As such, the Debtor is not itself subject to federal

18  income tax.  Instead, the Debtor's sole member is required to include on his personal income tax

19  return the income, gain, loss and deduction recognized by the Debtor.  Accordingly, it is unlikely

20  that there will be any direct federal income tax liability at the Debtor's entity level.

21          **2.     CANCELLATION OF INDEBTEDNESS INCOME**

22     Under the IRC, a taxpayer generally will recognize cancellation of debt income

23  ("COD Income") upon satisfaction of its outstanding indebtedness for consideration less than the

24  amount of such indebtedness.  The amount of COD Income, in general, is the excess of (a) the

25  adjusted issue price of the indebtedness (in most cases, the amount the debtor received on

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 36   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1    incurring the obligation, with certain adjustments) satisfied, over (b) the sum of the amount of

2    Cash paid and the fair market value of any new consideration given in satisfaction of the

3    indebtedness.

4            However, IRS Section 108(a) provides an exclusion from gross income for COD

5    income if certain requirements are met.  Section 108(a) provides an exclusion commonly referred

6    to as the "Bankruptcy Exception," where a taxpayer is in bankruptcy and the discharge is

7    granted, or is effected, pursuant to a plan approved by the bankruptcy court.  In the case of an

8    entity taxable as a corporation, eligibility for the Bankruptcy Exception is determined at the

9    corporate level.  If the Bankruptcy Exception applies (with the effect that the taxpayer may

10   exclude its COD Income from its gross income), the taxpayer is required, under IRS Section

11   108(b), to reduce certain of its tax attributes by the amount of COD Income excluded from gross

12   income pursuant to the Bankruptcy Exception.  The attributes of the taxpayer that are reduced

13   include any net operation loss carryovers from prior years, general business and minimum tax

14   credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets and foreign tax

15   credit tax carryforwards.  In the limited liability company context, the reduction in the basis of

16   assets is most important.  However, a special rule can also require a reduction in certain losses to

17   be passed through to members of limited liability companies.

18      **C.    FEDERAL INCOME TAX CONSEQUENCES TO THE HOLDERS
                OF AN ALLOWED CLAIM**

19

20          **1.    SMALL UNSECURED CREDITOR CLAIMS**

21          In accordance with the Plan, the debt owed by the Debtor to each holder of a

22   Small Unsecured Claim will be satisfied by a payment of Cash in an amount equal to 100% of

23   such Claim.  In general, the amount received by each holder of a Small Unsecured Claim is

24   treated as an amount received in exchange for the satisfied debt, and each such holder will

25   recognized taxable gain or loss equal to the amount received less the holder's tax basis in the

26   Claim.  Any gain or loss recognized will be long-term or short-term capital gain or loss or

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 37   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  ordinary income or loss, depending upon factors specific to each holder of a Small Unsecured

2  Claim, including but not limited to:  (i) whether the Claim (or a portion thereof) is attributable to

3  principal or interest; (ii) the origin of the Claim; (iii) whether the holder of the Claim reports

4  income on the accrual or cash basis method; and (iv) whether the holder of the Claim has taken a

5  bad debt deduction or otherwise recognized a loss with respect to the Claim.

6  **2.    GENERAL UNSECURED CREDITOR CLAIMS**

7  In accordance with the Plan, the debt owed by the Debtor to each holder of a

8  General Unsecured Claim will be adjusted so that each General Unsecured Creditor will be

9  entitled to a Pro Rata share of 30% of the Net ~~Operating~~ Income generated by the

10  ~~Reorganzied~~Reorganized Debtor ~~for five years.~~ through December 31, 2017.  If this adjustment is

11  considered significant, each such holder will recognize taxable gain or loss equal to the

12  difference between the fair market value of the obligation as adjusted and the holder's adjusted

13  basis in the original debt.  It may be difficult to place a value on the obligation as adjusted, but

14  gain may nevertheless be recognized.  The character and amount of such taxable gain or loss will

15  be determined based on factors specific to each holder of a Claim, as discussed above with

16  respect to Small Unsecured Claims.

17  **3.    OREGON CONSTRUCTION LIEN CREDITOR CLAIMS**

18  In accordance with the Plan, the debt owed by the Debtor to each holder of an

19  Allowed Construction Lien Claim will be restructured.   If the modification to the debt is

20  "significant," as such term is defined in the applicable Treasury Regulations, the restructured

21  debt will be treated as received by such holder in a deemed taxable exchange of the underlying

22  debt pursuant to IRC Section 1001.

23  With respect to a deemed taxable exchange, a holder of an Allowed Construction

24  Lien Claim will generally recognize gain or loss in connection with the exchange if the holder's

25  adjusted tax basis in the old debt does not equal the issue price of the modified debt.  If the issue

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 38   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(~~September 7, 2010~~April 8, 2011)**
~~HP:\~~\Client\Docs\Salpar\28606\~~Disclosure Stmt.Pldg\~~3216089.Doc

1    price of the modified debt is greater than the holder's adjusted tax basis in the debt, the holder

2    will recognize taxable income as a result of the deemed exchange.  Since each modified debt will

3    have a principal amount equal to its corresponding old debt, and each modified debt will have

4    adequate stated interest, a holder of an Allowed Construction Lien Claim generally should not

5    recognize any gain or loss on a deemed taxable exchange of such debt unless the tax basis in the

6    debt is different from the issue price of the modified debt.  The character and amount of any

7    taxable gain or loss will be determined based on factors specific to each holder of a Claim, as

8    discussed above with respect to Small Unsecured Claims.

9            The principal amount of certain restructured debt may include accrued but unpaid

10   interest.  A holder of an Allowed Construction Lien Claim not previously required to include in

11   its taxable income any accrued but unpaid interest on such Claim may be treated as receiving

12   taxable interest to the extent the modified debt received is allocable to such accrued by unpaid

13   interest.

14           **D.    CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS**

15           Pursuant to the Plan, all of the currently outstanding membership interests of the

16   Debtor shall be deemed cancelled and shall be of no further force and effect, whether

17   surrendered for cancellation or otherwise, and there shall be no distribution with respect to such

18   shares.  The IRS may assert that the COD Income discussed above is not subject to the

19   Bankruptcy Exception because, in the case of an entity taxed as a partnership, the exclusions of

20   Section 108(a) are determined in relation to the members' situations, not the situation of the

21   entity that realizes the COD Income.  If this result obtains, a member may have to include such

22   COD Income in gross income, and this inclusion would increase his, her or its basis in the

23   membership interests.  Moreover, upon extinguishment of the member's interests in the Debtor,

24   the member may be deemed to receive a distribution equal to the Debtor's liabilities, which

25   reduces the member's basis.  If the reduction in liabilities exceeds basis, the member would

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 39   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1    realize gain.   If the member has an unrecovered basis at the time of extinguishment of his

2    interests, he may be able to claim a loss, which the IRS is likely to characterize as capital rather

3    than ordinary.   To the extent that that sole member of the Debtor invests additional monies in the

4    Debtor, this should created basis in the new membership interests to be issued by the Debtor.

5    **E.    INFORMATION REPORTING BACKUP WITHHOLDING**

6    Certain payments, including the payments with respect to Claims pursuant to the

7    Plan, are generally subject to information reporting by the payor to the IRS.   Moreover, under

8    certain circumstances, a holder of a Claim may be subject to "backup withholding" with respect

9    to payments made pursuant to the Plan, unless such holder either (i) comes within certain exempt

10   categories (which generally include corporations) and, when required, demonstrates this fact, or

11   (ii) provides a correct United States taxpayer identification number and certified under penalty of

12   perjury that the holder is a United States person, the taxpayer identification is correct and that the

13   taxpayer is not subject to backup withholding because of a failure to report all dividend and

14   interest income.   Backup withholding is not an additional tax.   Amounts withheld under the

15   backup withholding rules may be credited against the holder's United States federal income tax

16   liability, and the holder may obtain a refund of any excess amounts withheld under the backup

17   withholding rules by filing an appropriate claim for refund with the IRS.

18   **F.    IMPORTANCE    OF    OBTAINING    PROFESSIONAL    TAX
         ASSISTANCE**

19

20   THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY

21   OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS

22   NOT A SUBSTITUTE FOR CARFUL TAX PLANNING WITH A TAX PROFESSIONAL.

23   THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT

24   TAX ADVICE.   THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND

25   MAY VARY DEPENDING ON THE PARTICULAR SITUATION OF A HOLDER OF AN

26

H:\Client\Salpad\28606\Disclosure Stmt.doc

**Page 40   - DEBTOR'S   FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  ALLOWED CLAIM, OR ANY EQUITY INTEREST HOLDER'S PARTICULAR

2  CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM AND

3  EACH EQUITY INTEREST HOLDER IS URGED TO CONSULT ITS TAX ADVISOR

4  ABOUT THE FEDERAL, STATE, LOCAL AND APPLICABLE FOREIGN INCOME AND

5  OTHER TAX CONSEQUENCES OF THE PLAN.

6      **IX.   ACCEPTANCE AND CONFIRMATION OF THE PLAN**

7          **A.   CONFIRMATION HEARING**

8          The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on

9  _____, ~~2010~~2011 at _____.  The hearing will be held at the United States Bankruptcy Court

10  for the District of Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, Portland, Oregon 97204,

11  before the Honorable Trish M. Brown, United State Bankruptcy Judge.  At that hearing, the

12  Bankruptcy Court will consider whether the Plan satisfied the various requirements of the

13  Bankruptcy Code, including whether it is feasible, and whether it is in the best interest of

14  Creditors and Interest Holders of the the Debtor.  Debtor will submit a report to the Bankruptcy

15  Court at that time concerning the votes for acceptance or rejection of the Plan by the parties

16  entitled to vote thereon.  Any objection to confirmation of the Plan must be timely filed as stated

17  in Section II.E. above.

18          **B.   REQUIREMENTS OF CONFIRMATION**

19          At the hearing on confirmation, the Bankruptcy Court will determine whether the

20  provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the provisions

21  of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan.  The

22  Debtor believes the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code,

23  that it has complied or will have complied with all of the requirements of Chapter 11, and that it

24  has been proposed and is made in good faith.

25          **C.   FEASIBILITY**

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 41  - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1      Attached as Exhibit 5 is Debtor's projected income and Net Operating Income

2  and other distribution projections.  The projections support the treatment of claims set forth in

3  Section VI above.

4      **D.      RISK FACTORS**

5      There are a number of risks associated with the Debtor's proposed Plan.  Each

6  Creditor should carefully consider those risks in evaluating its vote on the Debtor's Plan.  All of

7  the risks associated with the Debtor's Plan are too numerous to identify.  However, a few of

8  those risks are set forth below.

9      **1.      GENERAL FINANCIAL MARKET CONDITIONS**

10      The recent disruption with numerous major financial institutions and the resulting

11  crisis in the financial markets has rippled through the economy, and has impacted the

12  condominium and residential housing market in particular.  While the ultimate effect of this

13  crisis on the residential housing market is yet unclear, it is possible that this financial market will

14  adversely affect the ability of the Debtor to develop the Property as set forth in this Plan.

15      **2.      PROJECTED FINANCIAL RESULTS**

16      The Debtor projected financial results reflect management's best estimate of the

17  Reorganized Debtor's future financial performance based on currently known facts and

18  hypothetical assumptions about, among other matters, the timing, confirmation and

19  consummation of the Plan in accordance with its terms, the anticipated future performance of the

20  Reorganized Debtor, residential housing industry performance, and general business and

21  economic conditions.  Many of these factors are beyond the control of the Reorganized Debtor.

22  As a consequence, the actual financial results may differ significantly from the projections.

23  Specifically, the Reorganized Debtor may not be able to meet the projected financial results or

24  achieve the revenue or cash flow that it has assumed in projecting future business prospects.

25      **3.      DEPENDENCE ON SUBCONTRACTORS**

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 42   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1        The development of the Project depends on construction work done by

2   subcontractors. The Reorganized Debtor's business model relies heavily upon maintaining its

3   existing relationship with its core group of highly skilled and experienced subcontractors. As a

4   result, insufficient availability of, or unsatisfactory performance by these third-party

5   subcontractors could have a material adverse affect on the Debtor's business.

6           **4.    CLAIM AMOUNTS**

7        The claims estimates set forth in this Disclosure Statement are based on various

8   assumptions. The actual Allowed Claim amounts may differ significantly from these estimates

9   should one or more of Debtor's underlying assumptions prove to be incorrect. Such differences

10   may materially and adversely affect the percentage recovery to holders of such Claims under the

11   Plan.

12          **E.    CRAM DOWN**

13        As discussed previously, a Court may confirm a Plan, even if it is not accepted by

14   all impaired classes, if the Plan has been accepted by at least one impaired class of claims and

15   the Plan meets the cram down requirements set forth in Section 1129(b) of the Bankruptcy Code.

16   In the event that any impaired Class of Claims does not accept the Plan, the Debtor hereby

17   requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

18   Bankruptcy Code or otherwise permit the Debtor to modify the Plan.

19   The Debtor believes the Plan does not violate the absolute priority rule of the Bankruptcy Code.

20   11 USC §1129(b)(2)(B)(ii), commonly referred to as the absolute priority rule, provides that with

21   respect to a class of unsecured claims, the holder of any claim or interest that is junior to the

22   claims of such class will not receive or retain under the plan on account of such junior claim or

23   interest any property unless the plan provides that each holder of a claim receives or retains on

24   account of such claim property of a value, as of the Effective Date of the plan, equal to the

25   Allowed amount of such claim.

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 43 - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(September 7, 2010 April 8, 2011)**
HP:\Client\Docs\Salpar\28606\Disclosure Stmt.Pldg\3216089.Doc

1    **F.      ALTERNATIVES TO CONFIRMATION OF THE PLAN**

2    If a Plan is not confirmed, the Debtor or another party in interest may attempt to

3    formulate or propose a different Plan or Plans of Reorganization.  Such Plans might involve a

4    reorganization and continuation of the Debtor's business, the sale of the Property or a portion

5    thereof, an orderly liquidation of the Debtor's assets or any combination thereof.  If no Plan of

6    Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11 case

7    may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

8    In a liquidation, a Chapter 7 Trustee would be appointed with the purpose of liquidating the

9    assets of the Debtor.  Typically, in a liquidation, assets are sold for less than their going concern

10   value and, accordingly, the return to Creditors and Interest holders is less than the return in a

11   reorganization, which derives the value to be distributed in a Plan from the business as a going

12   concern.  Proceeds from liquidation would be distributed to Creditors and Interest holders of the

13   Debtor in accordance with the priorities set forth in the Bankruptcy Code.

14   The Debtor believes that there is no currently available alternative that would

15   offer holders of Claims and Interests in the Debtor greater than the Plan and urges all parties

16   entitled to vote on the Plan to vote to accept the Plan.

17   **X.      CONCLUSION**

18   Please read this Disclosure Statement and the Plan carefully.  After reviewing all

19   the information and making an informed decision, please vote by using the enclosed ballot.

20   Dated:  ~~September 7, 2010.~~ April 8, 2011.

21   Respectfully submitted,

22   SALPARE BAY, LLC

23   By:  ITS MANAGER, COLUMBIA RIM
     CORPORATION, a Washington corporation

24
     By:/s/ Michael J. DeFrees
25   Michael J. DeFrees, President

     Presented by:

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 44   - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
(~~September 7, 2010~~ **April 8, 2011**)
~~HP:\Client\Docs~~\Salpar\28606\~~Disclosure Stmt. Pldg~~3216089.Doc

1   FARLEIGH WADA WITT

2   By:/s/ Tara J. Schleicher
3        Tara J. Schleicher, OSB #954021
         tschleicher@fwwlaw.com
4        Of Attorneys for Debtor Salpare Bay, LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

H:\Client\Salpar\28606\Disclosure Stmt.doc

**Page 45   - DEBTOR'S FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT (September 7, 2010April 8, 2011)**
HP:\ClientDocs\Salpar\28606\Disclosure Stmt.Pldg\32l6089.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Document comparison by Workshare Professional on Friday, April 08, 2011 3:22:06 PM

| Input: | |
|---|---|
| Document 1 ID | file://H:/Client/Salpar/28606/Disclosure Stmt.doc |
| Description | Disclosure Stmt |
| Document 2 ID | file://C:/Users/dfallon/Desktop/32L6089-Disclosure Statement - First Amended.DOC |
| Description | 32L6089-Disclosure Statement - First Amended |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 196 |
| Deletions | 174 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 376 |

1   Tara J. Schleicher, OSB #954021
    TSchleicher@fwwlaw.com
2   Peter C. McKittrick, OSB #852816
    PMcKittrick@fwwlaw.com
3   Farleigh Wada Witt
    121 SW Morrison Street, Suite 600
4   Portland, Oregon 97204-3136
    Telephone: (503) 228-6044
5
        Attorneys for Debtor
6

7           IN THE UNITED STATES BANKRUPTCY COURT

8              FOR THE DISTRICT OF OREGON

9   In re                          Case No. 10-35333-tmb11

10  Salpare Bay, LLC,

11                    Debtor.      DEBTOR'S FIRST AMENDED CHAPTER 11
                                   DISCLOSURE STATEMENT (APRIL 8, 2011)
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1

## TABLE OF CONTENTS

2

3  I.   INTRODUCTION AND SUMMARY OF PLAN ...................................................... 1
        A.   INTRODUCTION ........................................................................................... 1
4       B.   SUMMARY OF PLAN ................................................................................... 3
        C.   BRIEF EXPLANATION OF CHAPTER 11 .................................................. 6
5

6  II.  VOTING PROCEDURES AND CONFIRMATION OF A PLAN. ................................. 7
        A.   BALLOTS AND VOTING DEADLINE ....................................................... 7
        B.   PARTIES ENTITLED TO VOTE ................................................................. 9
7       C.   VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN ................ 10
        D.   "CRAM DOWN" OF THE PLAN ............................................................... 10
8       E.   CONFIRMATION HEARING ..................................................................... 10

9  III. BACKGROUND AND GENERAL INFORMATION ............................................... 11
        A.   PROPERTY DEVELOPMENT ................................................................... 11
10      B.   MANAGEMENT .......................................................................................... 17
        C.   FINANCIAL PERFORMANCE ................................................................... 17
11

12 IV.  THE BANKRUPTCY CASE ................................................................................. 18
        A.   THE FILING ................................................................................................ 18
        B.   POST –PETITION DEVELOPMENTS ....................................................... 18
13

14 V.   ASSETS AND LIABILITIES ................................................................................ 19
        A.   ASSETS ....................................................................................................... 19
             1.   Real Property. ...................................................................................... 19
15           2.   Other Property ..................................................................................... 19
        B.   LIABILITIES .............................................................................................. 20
16      C.   UNSECURED CREDITORS ....................................................................... 20
        D.   ADMINISTRATIVE EXPENSES .............................................................. 21
17

18 VI.  DESCRIPTION OF PLAN OF REORGANIZATION ............................................. 21
        A.   UNCLASSIFIED CLAIMS ......................................................................... 21
        B.   CLASSIFIED CLAIMS ............................................................................... 22
19           1.   Overall Plan Implementation. ............................................................ 22
             2.   Class 1 (Other Priority Claims). ........................................................ 23
20           3.   Class 3 (City of Portland Secured Claim). ........................................ 23
             4.   Class 3 through 6 (Construction Liens). ............................................ 24
21           5.   Class 7 (County Secured Claim for Property Taxes). ........................ 24
             6.   Class 8 (Small Unsecured Claims). ................................................... 25
22           7.   Class 9 (General Unsecured Claims). ................................................ 25
             8.   Class 10 (Subordinated Claims). ....................................................... 25
23           9.   Class 11 (Interests). ........................................................................... 25

24      C.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 26

25      D.   EFFECT OF CONFIRMATION .................................................................. 26
             1.   DISCHARGE. ..................................................................................... 26
26           2.   REVESTING, OPERATION OF BUSINESS ..................................... 27

i

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

3.    INJUNCTION ...................................................................... 27
4.    MODIFICATION OF THE PLAN; REVOCATION OR WITHDRAWAL OF THE PLAN ...................................................... 27
5.    RETENTION OF JURISDICTION .................................... 28
6.    UNITED STATES TRUSTEE FEES .................................. 29
7.    AVOIDANCE ACTIONS ...................................................... 29

VII.    LIQUIDATION ANALYSIS ............................................................... 29

VIII.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......... 30
A.    GENERAL TAX CONSIDERATIONS ................................... 30
B.    FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS ...... 32
1.    IN GENERAL .................................................................. 32
2.    CANCELLATION OF INDEBTEDNESS INCOME .......... 32
C.    FEDERAL INCOME TAX CONSEQUENCES TO THE HOLDERS OF AN ALLOWED CLAIM ............................................................. 33
1.    SMALL UNSECURED CREDITOR CLAIMS ................ 33
2.    GENERAL UNSECURED CREDITOR CLAIMS ............ 33
3.    OREGON CONSTRUCTION LIEN CREDITOR CLAIMS ...... 34
D.    CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS ....... 35
E.    INFORMATION REPORTING BACKUP WITHHOLDING ........ 35
F.    IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE ...... 36

IX.    ACCEPTANCE AND CONFIRMATION OF THE PLAN ............... 36
A.    CONFIRMATION HEARING ............................................. 36
B.    REQUIREMENTS OF CONFIRMATION ............................. 37
C.    FEASIBILITY ................................................................. 37
D.    RISK FACTORS .............................................................. 37
1.    GENERAL FINANCIAL MARKET CONDITIONS .......... 37
2.    PROJECTED FINANCIAL RESULTS ........................... 37
3.    DEPENDENCE ON SUBCONTRACTORS ..................... 38
4.    CLAIM AMOUNTS ......................................................... 38
E.    CRAM DOWN ................................................................ 38
F.    ALTERNATIVES TO CONFIRMATION OF THE PLAN ........... 39

X.    CONCLUSION .......................................................................... 39

ii

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

I.    **INTRODUCTION AND SUMMARY OF PLAN**

A.    **INTRODUCTION**

On June 7, 2010 (the "Petition Date"), Salpare Bay, LLC ("Debtor" or "Salpare") filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is seeking acceptance of Debtor's Plan of Reorganization (the "Plan") by the creditors of the Debtor's estate. This Disclosure Statement (the "Disclosure Statement") describes:

• Historical information regarding the Debtor and the events leading to its bankruptcy filing.

• Significant events since the bankruptcy filing.

• How the Plan proposes to treat claims of the type you hold (i.e., what you will receive on your claim if the Plan is confirmed).

• Who can vote on or object to the Plan.

• What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

• Why the Debtor believes the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive on your Claim in liquidation.

• The effect of confirmation of the Plan.

A copy of the Debtor's Chapter 11 Plan  (the "Plan") is attached hereto as Exhibit 1.  You are urged to review the Plan and, if appropriate, consult with counsel about the Plan and its impact on your legal rights before voting on the Plan.  Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.

This Disclosure Statement has been prepared by the Debtor based upon its knowledge and information in Debtor's books and records.  The information contained herein

**Page 1  - DEBTOR'S  FIRST AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(April 8, 2011)**

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741