1  Tara J. Schleicher, OSB #954021
   TSchleicher@fwwlaw.com
2  Peter C. McKittrick, OSB #852816
   PMcKittrick@fwwlaw.com
3  Farleigh Wada Witt
   121 SW Morrison Street, Suite 600
4  Portland, Oregon 97204-3136
   Telephone: (503) 228-6044
5
       Attorneys for Debtor
6

7          IN THE UNITED STATES BANKRUPTCY COURT

8             FOR THE DISTRICT OF OREGON

9  In re                          Case No. 10-35333-tmb11

10 Salpare Bay, LLC,

11                    Debtor.     DEBTOR'S ~~SECOND~~THIRD AMENDED
                                  CHAPTER 11 DISCLOSURE STATEMENT
12                                (JUNE ~~6,~~13, 2011)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

# TABLE OF CONTENTS

IN THE UNITED STATES BANKRUPTCY COURT ............................................................. 1

FOR THE DISTRICT OF OREGON ........................................................................................ 1

I.       INTRODUCTION AND SUMMARY OF PLAN ...................................................... 1

A.       INTRODUCTION ..................................................................................................... 1

B.       SUMMARY OF PLAN ............................................................................................ 3

C.       BRIEF EXPLANATION OF CHAPTER 11 ........................................................ 6̶7

II.      VOTING PROCEDURES AND CONFIRMATION OF A PLAN. ......................... 7

A.       BALLOTS AND VOTING DEADLINE ................................................................ 7

B.       PARTIES ENTITLED TO VOTE .......................................................................... 9

C.       VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN ................ 10

D.       "CRAM DOWN" OF THE PLAN ......................................................................... 10

E.       CONFIRMATION HEARING ................................................................................ 11

III.     BACKGROUND AND GENERAL INFORMATION .................................. 1̶1̶8

A.       PROPERTY DEVELOPMENT .............................................................................. 11

B.       MANAGEMENT ...................................................................................................... 17

C.       FINANCIAL PERFORMANCE ............................................................................. 17

IV̶III.  THE BANKRUPTCY CASE .......................................................................... 1̶8̶14

A.       THE FILING .................................................................................................. 1̶8̶14

B.       POST –PETITION DEVELOPMENTS ........................................................ 1̶8̶14

V̶IV.    ASSETS AND LIABILITIES ........................................................................ 1̶9̶16

A.       ASSETS ......................................................................................................... 1̶9̶16

1.       Real Property. .............................................................................................. 1̶9̶16

2.       Other Property ............................................................................................. 19

B.       LIABILITIES ................................................................................................ 2̶0̶16

C.       UNSECURED CREDITORS ......................................................................... 2̶1̶17

D.       ADMINISTRATIVE EXPENSES ................................................................. 2̶1̶17

V̶I̶V.   DESCRIPTION OF PLAN OF REORGANIZATION .................................. 2̶1̶18

A.       UNCLASSIFIED CLAIMS ........................................................................... 2̶1̶18

B.       CLASSIFIED CLAIMS ................................................................................. 2̶2̶19

1.       Overall Plan Implementation. ..................................................................... 2̶2̶19

2.       Class 1 (Other Priority Claims). .................................................................. 2̶3̶20

3.       Class 3̶2 (City of Portland Secured Claim). ................................................ 2̶4̶20

4.       Class 3 through 6 (Construction Liens). ...................................................... 2̶4̶20

5.       Class 7 (County Secured Claim for Property Taxes). .................................. 2̶5̶21

6.       Class 8 (Small Unsecured Claims). .............................................................. 2̶5̶21

7.       Class 9 (Common Fund Claim). ................................................................... 21

8.       Class 10 (General Unsecured Claims). ........................................................ 2̶6̶22

8̶.9.     Class 1̶0̶11 (Subordinated Claims). .............................................................. 2̶6̶22

9̶.10.    Class 1̶1̶12 (Interests). ................................................................................... 2̶6̶23

C.       EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................. 2̶6̶23

D.       EFFECT OF CONFIRMATION .............................................................. 2̶7̶24

i

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1.              DISCHARGE ................................................................ 2724
2.              REVESTING, OPERATION OF BUSINESS .................... 2824
3.              INJUNCTION ................................................................ 2824
4.              MODIFICATION OF THE PLAN; REVOCATION OR
WITHDRAWAL OF THE PLAN ..................................................................... 2825
5.              RETENTION OF JURISDICTION .................................. 2825
6.              UNITED STATES TRUSTEE FEES ................................ 26
VI.     VOTING PROCEDURES AND CONFIRMATION OF A PLAN. .......................... 26
A.      BALLOTS AND VOTING DEADLINE .............................. 26
B.      PARTIES ENTITLED TO VOTE ...................................... 28
C.      VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN ............ 29
7.              AVOIDANCE ACTIONS .............................................. 29

D.      "CRAM DOWN" OF THE PLAN 29
E.      CONFIRMATION HEARING ............................................ 30
VII.    LIQUIDATION ANALYSIS ............................................................ 30

VIII.   CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .. 30
A.      GENERAL TAX CONSIDERATIONS ............................... 31
B.      FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS ............... 32
1.              IN GENERAL ............................................................... 32
2.              CANCELLATION OF INDEBTEDNESS INCOME ........ 33
C.      FEDERAL INCOME TAX CONSEQUENCES TO THE HOLDERS OF AN
ALLOWED CLAIM ...................................................................................... 34
1.              SMALL UNSECURED CREDITOR CLAIMS ................ 33
2.              GENERAL UNSECURED CREDITOR CLAIMS ........... 34
3.              OREGON CONSTRUCTION LIEN CREDITOR CLAIMS ........ 34
D.      CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS ........... 35
E.      INFORMATION REPORTING BACKUP WITHHOLDING ........... 36
F.      IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE ...... 36

IX.     ACCEPTANCE AND CONFIRMATION OF THE PLAN .................................. 3732
A.      CONFIRMATION HEARING ............................................ 3732
B.      REQUIREMENTS OF CONFIRMATION ......................... 3732
C.      FEASIBILITY ................................................................ 3832
D.      RISK FACTORS ............................................................ 3833
1.              GENERAL FINANCIAL MARKET CONDITIONS ........ 3833
2.              PROJECTED FINANCIAL RESULTS .......................... 3833
3.              DEPENDENCE ON SUBCONTRACTORS .................... 3933
4.              CLAIM AMOUNTS ...................................................... 3934
E.      CRAM DOWN .............................................................. 3934
F.      ALTERNATIVES TO CONFIRMATION OF THE PLAN .................. 4034

X.      CONCLUSION ............................................................................ 4035

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

I.    INTRODUCTION AND SUMMARY OF PLAN

A.    **INTRODUCTION**

On June 7, 2010 (the "Petition Date"), Salpare Bay, LLC ("Debtor" or "Salpare") filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is seeking acceptance of Debtor's Plan of Reorganization (the "Plan") by the creditors of the Debtor's estate. This Disclosure Statement (the "Disclosure Statement") describes:

- Historical information regarding the Debtor and the events leading to its bankruptcy filing.

- Significant events since the bankruptcy filing.

- How the Plan proposes to treat claims of the type you hold (i.e., what you will receive on your claim if the Plan is confirmed).

- Who can vote on or object to the Plan.

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

- Why the Debtor believes the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive on your Claim in liquidation.

- The effect of confirmation of the Plan.

A copy of the Debtor's Chapter 11 Plan  (the "Plan") is attached hereto as Exhibit 1.  You are urged to review the Plan and, if appropriate, consult with counsel about the Plan and its impact on your legal rights before voting on the Plan.  Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.

This Disclosure Statement has been prepared by the Debtor based upon its knowledge and information in Debtor's books and records.  The information contained herein

**Page 1**  **- DEBTOR'S** ~~SECOND~~**THIRD** **AMENDED CHAPTER 11 DISCLOSURE**
**STATEMENT (June** ~~6,~~**13,** **2011)**

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

has been prepared in good faith, based upon information available. The information concerning the Plan has not been subject to a verified audit. The Debtor believes this Disclosure Statement complies with the requirements of the Bankruptcy Code.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall not imply that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date of the material relied on in preparation of this Disclosure Statement was compiled. The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself. If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan are controlling. Each holder of a Claim is encouraged to read, consider and carefully analyze the terms and provisions of the Plan.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on this Plan. Nothing contained herein shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving Debtor or any other party, or be deemed conclusive advice on the tax or other legal effects of the reorganization on the holders of Claims or Interests.

The Debtor submits this Disclosure Statement in accordance with Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016. The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____ __, 2011 at ____. The Bankruptcy Court will hold that hearing at the United States Bankruptcy Court for the District of Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, Portland, Oregon 97204 before the Honorable Trish M. Brown. The hearing on confirmation may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement made at the hearing or any adjournment thereof.

/ / /

**Page 2 - DEBTOR'S SECONDTHIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT (June 6,13, 2011)**

P:\Docs\Salpar\28606\Pldg\33e6953.i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    A ballot has been enclosed with this Disclosure Statement for use in voting on the
2    Plan.  In order to be tabulated for purposes of determining whether the Plan has been accepted or
3    rejected, ballots must be received at the address indicated on the ballot no later than 4:00 p.m. on
4    _____, 2011.

5    **B.    SUMMARY OF PLAN**

6    A copy of the Plan is attached hereto as Exhibit 1.  The following description of
7    the Plan is intended as a summary only and is qualified in its entirety by reference to the Plan.
8    The Debtor urges each holder of a Claim to carefully review the entire Plan, together with this
9    Disclosure Statement, before voting on the Plan.

10    Through a mediation held on various dates with the Honorable Michael R. Hogan
11    ("Judge Hogan") between the Debtor, J.E. Dunn Northwest, Inc. ("Dunn"), the other Secured
12    Creditors with Construction Lien Claims ("Construction Creditors"), Harbor and the City of
13    Portland (collectively the "Parties"), the Parties reached a settlement regarding their disputes, the
14    claims between them related to the Project and the pending bankruptcy proceedings (the
15    "Settlement Agreement").  Pursuant to the Settlement Agreement, the Settlement Parties consent
16    to confirmation of the Plan on the terms set forth herein.  A copy of the Settlement Agreement is
17    attached hereto as Exhibit 2.

18    The general terms of the Settlement Agreement include the Construction
19    Creditors and the City of Portland receiving payments equal to 88.26% of their judgment
20    amounts inclusive of principal, fees, costs and interest as the Confirmation Date[1] (the
21    "Discounted Judgment Amount") in three installments on or before the following dates:  June 30,
22    2012; October 31, 2012 and June 30, 2013.  Interest shall accrue on the Discounted Judgment
23    Amount at the rate of 3.25% per annum from the Effective Date.  As part of the Settlement
24    Agreement, the principals of Harbor, George Killian and Lance Killian, shall convey their

25
26    ---
[1] The total judgment amount claimed by the Construction Creditors and the City of Portland is set forth
on Exhibit A to the Settlement Agreement.

**Page 3** - DEBTOR'S ~~SECOND~~THIRD AMENDED CHAPTER 11 DISCLOSURE
STATEMENT (June ~~6,~~13, 2011)
P:\Docs\Salpar\28606\Pldg\33~~e6953~~i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

membership interests in Harbor to the Debtor and, as inducement for the Debtor to accept that assignment, George Killian and Lance Killian shall pay $40,000 to the Debtor.

The Debtor will commence development of the Property by first obtaining a priming loan with a maximum amount of $500,000 (with leave to seek an additional $250,000) to prepare the Property for the development of a multi-family residential project in two (2) phases around the Marina, and second, through an FHA loan to commence construction on phase 1.[2]  The funding for that development will allow the Debtor to move forward with the Project, with Creditors holding Allowed Claims secured by perfected construction liens[3] to be paid in full by June of 2013. ~~Creditors with Unsecured Claims will be paid on their Allowed Claims a pro rata amount quarterly commencing after June 30, 2012, from 30% of Net Income through the end of 2017 (to the extent it does not cause the Debtor to default under its loan documents and to the extent the Debtor's ending cash balances exceed $500,000) generated by the Debtor post-confirmation.~~

The only Secured Creditors in this case are the county taxing authorities and Creditors asserting that they hold a Claim secured by a perfected Construction Lien asserted under Oregon law or by judgment.  The Debtor will develop the Property with three distinct sections, and to the extent necessary, will partition the Property into three separate portions:  (1) the Marina; (2) Phase 1;[4] and (3) Phase 2.[5]  The Debtor is working with land use attorney, Dorothy Cofield, to either partition the Property or obtain verification from the City of Portland,

---

[2]  Alternatively, the Debtor will obtain a conventional loan to develop the Property.

[3] Dunn contends that the constructions liens asserted by Secured Creditors are perfected, have been foreclosed and that such liens constitute state court judgment liens against the Property.

[4] The Debtor intends to develop the first phase of the multi-family residential project with approximately 166 apartment units and ancillary improvements where Building C currently sits on the Property, as indicated on Exhibit 3 hereto.

[5] Phase 2 means the development of the remainder of the planned approximately 371 multi-family residential units as indicated on Exhibit 3 hereto.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  that a partition is not necessary to allow a lender or Secured Creditor to foreclose on a portion of
2  the Property subject to a trust deed or lien and obtain a division or unit of land that is not a
3  partition but can be deeded to a separate owner after foreclosure.    The City of Portland has
4  confirmed the latter and that it will continue to apply the past land use approvals to the entire
5  site, notwithstanding a foreclosure on a portion of the Property and, thus, if the FHA lender
6  approves, then a partition may not be necessary, which will save significant costs to the estate.
7  The Marina condominium plat will be finalized and recorded with the State of Oregon to effect a
8  division of the marina property from the upland multi-family property.    Notwithstanding the
9  platting of the Marina condominium, the Construction Creditors' liens shall remain in effect
10 pursuant to the Settlement Agreement.

11          Under the Settlement Agreement, the Parties have agreed that the Debtor shall
12 obtain a maximum loan of $500,000, which shall be secured with a trust deed to which the
13 Construction Creditors will subordinate their liens (the "Priming Loan"), to put in a parking lot
14 for the Marina, possibly partition the Property as set forth above, and to develop the Property
15 sufficient to obtain the FHA loan on Phase 1 (surveying, engineering and other related
16 costs/expenses).    The Construction Claimants may consider an additional $250,000 to the
17 Priming Loan upon receipt of a fully executed commitment letter from a bank or other financial
18 institution agreeing to loan the Debtor the funds necessary to construct Phase 1 of the Project.

19          Upon the closing of the FHA loan on Phase 1, the Construction Creditors will
20 release their liens on Phase 1 to allow the FHA lender to obtain a first lien upon the Property,
21 subject to payment of the amounts set forth herein to those Secured Creditors with Construction
22 Lien Claims.    Upon the closing of the FHA loan on Phase 1, and when the Debtor makes its
23 initial payment to the Construction Creditors, each such Claimant will retain its lien on the
24 Marina and Phase 2 with the same priority such lien had on the Petition Date.    The Debtor will
25 refinance the Marina and make another payment to the Construction Creditors by October 31,
26 2011,2012, at which time those Claimants will release their liens on the Marina.  Such Claimants

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

will be paid in full by June of 2013 from loan proceeds obtained by the Debtor.  Small creditors with Unsecured Claims equal to or less than $2,000 will be paid 100% of their Allowed Claim in Cash, with 25% being paid October 31, 2012 and the remaining 75% being paid on or before June 30, 2013.  ~~Creditors~~The Creditor holding ~~the~~ Common Fund ~~Claims~~Claim, Stoel Rives,[6] will receive distributions of 30% of Net Income generated by the Reorganized Debtor on a quarterly basis ~~from after October 31, 2012,~~as early as the quarter ending December 31, 2012 and ending December 31, 2017 until its Allowed Claim is paid ~~100% of their Claims~~in full without interest.  After payment of the Allowed Common Fund Claim, Creditors holding General Unsecured Claims will receive Pro Rata distributions of 30% of Net Income generated by the Reorganized Debtor ~~after the payment of the Common Fund Claims~~ on a quarterly basis ~~from after October 31, 2012, ending December 31, 2017.~~ as early as the quarter ending December 31, 2012.  However, it is unlikely that Allowed General Unsecured Claims will begin receiving payments until the quarter ending March 31, 2017.  General Unsecured Claims shall receive no less than 10% on their Allowed General Unsecured Claims, but are projected to receive 29% on their Allowed General Unsecured Claims.  Should the Court determine that the Common Fund Claim of Stoel Rives should not be classified separately from the General Unsecured Claims, then its Allowed Claim shall be treated as a General Unsecured Claim.  In that event, the anticipated distribution to all General Unsecured Claims is projected to be higher than 29%.  All post-petition and Administrative Expense Claims will be paid upon the Effective Date unless such Claimant agrees to different treatment in writing.  All current equity interests will either be retained by the current owner, Mr. DeFrees, or transferred to the Debtor by the owners of Harbor, as set forth herein.  Mr. DeFrees shall retain his current equity interests in exchange for his subordination of his $10,900,000 General Unsecured Claim.

---

[6] Under the common fund doctrine, a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. *See, e.g., Boeing, Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

All unexpired leases and executory contracts will be rejected by the Debtor through the Plan unless such unexpired leases and executory contracts have previously been assumed and assigned, or rejected, or a motion seeking their assumption or rejection has been Filed before the Confirmation Date.

The Effective Date of the Plan shall be _____, 2011 or the 10th day following entry of the Confirmation Order, whichever is later.

In the event that any Class of Creditors of the Debtor does not accept the Plan, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

## C.    BRIEF EXPLANATION OF CHAPTER 11

Chapter 11 of the Bankruptcy Code is the principal reorganization provision of the Bankruptcy Code.  Pursuant to Chapter 11, a debtor attempts to reorganize its business for the benefit of the debtor, its creditors, and other parties in interest.

The formulation and confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case.  A plan of reorganization sets forth a proposed method for compensating the holders of claims and interests in the debtor.  A claim or interest is impaired under a plan of reorganization if the plan provides that the legal, equitable or contractual rights of the holder of such claim or interest are altered.  A holder of an impaired claim or interest is entitled to vote to accept or reject the plan.  Chapter 11 does not require all holders of claims and interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it.  However, the Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve the plan.  These tests are designed to protect the interests of the holders of claims or interests who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if it is confirmed by the Bankruptcy Court.

An official committee of unsecured creditors is appointed by the United States Trustee's office in most Chapter 11 cases to, among other things, negotiate the plan of

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

reorganization on behalf of the unsecured creditors of the debtor.  A committee of unsecured creditors was not appointed by the United States Trustee in this case.

## II.    VOTING PROCEDURES AND CONFIRMATION OF A PLAN.

### A.    BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy of this Disclosure Statement mailed to all Creditors entitled to vote.  After carefully reviewing this Disclosure Statement and its exhibits, including the Plan, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court had directed that, to be counted for voting purposes, ballots for acceptance or rejection of the Plan must be received no later than 4:00 p.m. Pacific time, on _____, 2010 by the Debtor at the following address:

Farleigh Wada Witt
Attn:  Diane Fallon
121 SW Morrison, Ste. 600
Portland, OR 97204

or via facsimile transmission to Diane Fallon at (503) 228-1741, or via e-mail in pdf format to dfallon@fwwlaw.com.

Holders of each Claim that was scheduled by the Debtor or with respect to which a Proof of Claim has been Filed for which no objection is pending will receive ballots and are permitted to vote based on the amount of the Proof of Claim.  If no Proof of Claim has been Filed, then the vote will be based on the amount scheduled by the Debtor in its Schedules.  Holders of Disputed Claims who have settled their dispute with the Debtor are entitled to vote the settlement amount of their Claim.  The Bankruptcy Code provides that such votes will be counted unless the Claim has been disputed, disallowed, disqualified or suspended prior to computation of the vote on the Plan.  The Claim to which an objection has been Filed is not allowed to vote unless and until the Bankruptcy Court rules on the objection.  The Bankruptcy

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Code provides that the Bankruptcy Court may, if requested to do so by the holder of such claim,

2    estimate or temporarily allow a Disputed Claim for the purposes of voting on the Plan.

3                    If a person holds Claims in more than one class entitled to vote on the Plan, such

4    person will be entitled to complete and return a ballot for each Class.  If you do not receive a

5    ballot or if a ballot is damaged or lost, please contact:

6            Farleigh Wada Witt
             Attn:  Diane Fallon
7            121 SW Morrison, Ste. 600
             Portland, OR 97204
8            Telephone Number:  (503) 228-6044

9                    All persons entitled to vote on the Plan may cast their vote for or against the Plan

10   by completing, dating and signing the enclosed ballot and returning it, by First Class Mail or

11   hand delivery, to the Debtor, at the address indicated above.  In order to be counted, all ballots

12   must be executed and received at the above address no later than 4:00 Pacific time on

13   _____, 2010.  Any ballots received after 4:00 p.m. Pacific time on _____, 2010 will

14   not be included in any calculation to determine whether the parties entitled to vote on the Plan

15   have voted to accept or reject the Plan.

16                   Ballots may be received by the Debtor by facsimile transmission to Farleigh

17   Wada Witt, Attn:  Diane Fallon at (503) 228-1741.  Ballots sent by facsimile transmission will be

18   counted if faxed to Ms. Fallon by 4:00 p.m. Pacific time on _____, 2010.

19                   When a ballot is signed and returned without further instruction regarding

20   acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the

21   Plan.  When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the

22   unsigned ballot will not be included in any calculation to determine whether parties entitled to

23   vote on the Plan have voted to accept or reject the Plan.  When a ballot is returned without

24   indicating the amount of the Claim, the amount shall be as set forth on the Debtor's Schedules or

25   any Proof of Claim Filed with respect to such Claim.

26            **B.      PARTIES ENTITLED TO VOTE**

**Page 9**  **- DEBTOR'S** ~~SECOND~~THIRD **AMENDED CHAPTER 11 DISCLOSURE
          STATEMENT (June** ~~6,~~13, **2011)**
P:\Docs\Salpar\28606\Pldg\33e~~6953~~i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Pursuant to Section 1126 of the Bankruptcy Code, each class of impaired claims or interests that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan. Any holder of an Allowed Claim that is in an impaired class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote.   A Class is "impaired" unless the legal, equitable and contractual rights of the holders of claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by members of such Class by (1) curing any defaults, (2) reinstating the maturity of such claim, (3) compensating the holder of such claim for damages that result from the reasonable reliance on any contractual provision of law that allows acceleration of such claim and (4) otherwise leaving unaltered any legal, equitable or contractual right of which the Claim entitled the holder of such claim.   Because of their favorable treatment, classes that are not impaired are conclusively presumed to accept the Plan.   Accordingly, it is not necessary to solicit votes from the holders of claims in classes that are not impaired.

Classes of Claims or Interests that will not receive or retain any money or property under a Plan on account of such Claims or Interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan.   The current ownership interests classified as Class 10 are such a class and are deemed to have rejected the Debtor's Plan.

Class 1 (Other Priority Creditors) and Class 6 (County Secured Claim for Property Taxes) are not impaired and, therefore, are deemed to have accepted the Plan.   All other Classes of Claims are impaired under the Plan, and persons holding Claims are entitled to vote to accept or reject the Plan.

**C.   VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

As a condition to confirmation, the Bankruptcy Code requires that each impaired Class of Claims or Interests accept the Plan, subject to the exceptions described below in the section entitled "Cram Down of the Plan."   At least one impaired Class of Claims must accept the Plan in order for the Plan to be confirmed.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

For a Class of Claims to accept a plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those claims actually voting to accept or reject the Plan. If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims and Interests in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

### D.    "CRAM DOWN" OF THE PLAN

If the Plan is not accepted by all of the Impaired Classes of Claims, the Plan may still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy Code's "Cram Down" provision if the Plan has been accepted by at least one Impaired Class of Claims, without counting the acceptances of any Insiders of the Debtor, and the Bankruptcy Code determines, among other things, that the Plan "does not discriminate unfairly" and "is fair and equitable" with respect to each non-accepting Impaired Class of Claims or Interests. The Debtor believes that the Plan can be confirmed even if it is not accepted by all impaired Classes of Claims.

### E.    CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____ __, 2010, at _____. The Confirmation Hearing will be held at the United States Bankruptcy Court for the District of Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, 9th Floor, Portland, Oregon, before the Honorable Trish M. Brown, United States Bankruptcy Judge. At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the creditors of the Debtor. At that time, the Debtor will submit a report to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons entitled to vote thereon.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Section 1128(b) of the Bankruptcy Code provides that any party in interest may

2    object to confirmation of the Plan. Any objections to confirmation of the Plan must be made in

3    writing and filed with the Bankruptcy Court and received by counsel for the Debtor no later than

4    _____, 2011, by 4:00 p.m. Pacific time. Unless an objection to confirmation is timely filed

5    and received, it may not be considered by the Bankruptcy Court.

6    **II.** ~~III.~~ **BACKGROUND AND GENERAL INFORMATION**

7    **A. PROPERTY DEVELOPMENT**

8    Salpare and Harbor are the owners of  real property on Hayden Island, Portland,

9    Oregon that was to be developed into a luxury riverfront planned community of 204 high-end

10   residential water view condominium units commonly known as Salpare Bay (the "Project").

11   Salpare and Harbor own the Project with an undivided 85% and 15% interest, respectively,

12   pursuant to a tenancy in common agreement. However, pursuant to the Settlement Agreement,

13   the owners of Harbor will transfer their membership interests in Salpare to Salpare; therefore,

14   Harbor will no longer own an interest in Salpare or the Property.

15   Salpare began construction in approximately 2005 on the related marina and other

16   horizontal improvements. The Project presently includes 24.5 acres of land, a marina, 200 feet

17   of beach on the Columbia River, 14 acres of water, 204 slips to accommodate large crafts and

18   amenities and facilities such as wireless internet, cable television, laundry, showers and dump

19   station facilities.

20   BankFirst, Inc. ("BankFirst") was the lead lender of 41 participating lenders who

21   promised $63 million in construction financing (the "Loan") for the Project. However, after it

22   received nearly $1 million in loan fees at the closing of the Loan in December 2006, BankFirst

23   was dilatory in funding the Loan. Later, in June 2007, it stopped funding the Loan entirely based

24   on a pretextual default, claiming Salpare and Harbor had failed to fulfill certain presold unit

25   requirements that BankFirst had previously waived on numerous occasions. Moreover,

26   BankFirst misled Salpare into proceeding with construction, even though as it turns out,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

ultimately, it had no ability to fund the Loan.  Notably, Salpare was in full compliance with the Loan terms, including fulfilling all monthly payment obligations.

In the meantime, despite Salpare's compliance with the Loan, unbeknownst to the guarantor Michael DeFrees ("DeFrees"), BankFirst confiscated DeFrees' $4 million bank account that was provided as additional collateral for the Loan that he had intended to use to fund the Project.   BankFirst, realizing that it had problems declaring a default under these conditions without a release of Salpare's claims, demanded under a threat of default and foreclosure, execution of a first amendment of the Loan documents (the "First Amendment") that purported to resurrect and reinstate the presale conditions that it waived; required Salpare to fulfill the resurrected conditions by selling $50 million in units in what was ultimately a two-week period;  retroactively required Salpare to bless BankFirst's unlawful confiscation of DeFrees' bank account; and provided for a release and waiver of all claims against BankFirst for its wrongful conduct.  Salpare and Harbor complained that the First Amendment was impossible to fulfill, lacked any consideration and was simply unlawful.   BankFirst rejected such complaints.  BankFirst reiterated its threat of foreclosure and added a promise to negotiate a further extension after the First Amendment was executed.  Although Salpare executed the First Amendment, BankFirst did not negotiate further for an extension as promised.

What Salpare and Harbor did not know, and BankFirst did not disclose to them during these events, was that BankFirst was having its own financial problems.  Within days after Salpare and Harbor signed the First Amendment, on August 7, 2007 BankFirst executed with the Federal Reserve an agreement ("Consent Order") which limited its funding of future loans to the maximum amount on BankFirst' books as of March 12, 2007, which was about the time that BankFirst's funding of the Loan slowed nearly to a stop.

As a result of BankFirst's failure to fund the Loan, all construction at the Project ceased.  The contractor, Dunn, and subcontractors had performed a substantial amount of work for which Salpare could not pay them because of BankFirst's failure to fund the Loan; thus, they

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

filed construction liens against the Property.  On or about October 26, 2007, the Construction Creditors filed an action on their construction claims ("Construction Claims") in that case known as *J.E.Dunn Northwest, Inc. v. Salpare Bay, LLC, et. al.* in the Circuit Court of the State of Oregon, Multnomah County, Case No.  0710-12536 (the "Dunn Action").    Thereafter, the Project deteriorated.  The sales agents and team quit; purchasers of the presold units cancelled their purchases and withdrew their deposits; and the development came to a halt in all respects by the end of 2007.

In the Dunn Action, BankFirst asserted claims based on the Loan against Salpare, Harbor, DeFrees, Columbia Rim Construction, Inc. and Columbia Rim Corporation (collectively, the "Salpare Parties").  The Salpare Parties counterclaimed against BankFirst and the participant lenders, originally identified only as the "DOES," because their identity was not known. The Salpare Parties claimed $130 million in damages, plus any penalties and attorneys' fees that may be awarded for breach of contract, negligence, interference with contract, promissory estoppel, conversion, breach of good faith and fair dealing, breach of fiduciary duty, four counts of fraud, negligent misrepresentation, rescission and violation of Oregon Racketeer Influenced and Corrupt Organization Act.

The Dunn Action was bifurcated between the Construction Claims and the Loan claims.   When a Limited Judgment was about to be entered in the Dunn Action on the Construction Claims, BankFirst's assets were seized by the Federal Deposit Insurance Corporation ("FDIC").  After the FDIC removed the entire Dunn Action, a Limited Judgment was entered in the Circuit Court of the State of Oregon on September 9, 2009, which Salpare contends had no effect since the Dunn Action had been removed.  To further add to the problems with that Limited Judgment, it was entered *nunc pro tunc* to April 21, 2009, thus invalidly cutting off parties' appeal rights.  Following the transfer of the Dunn Action back to the Circuit Court of State of Oregon, an Order Reaffirming the Limited Judgment was signed and entered on January 22, 2010, but no separate Limited Judgment was entered on that date and the Order

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Reaffirming the Limited Judgment did not correct the inappropriate nunc pro tunc entry that cut

2    off parties' appeal rights.

3    Dunn contends that the method and timing by which the State Court entered the

4    Limited Judgment did not cut off the parties' appeal rights.   Dunn contends that there are four

5    key facts concerning the Dunn Action:  (1) that the State Court found that the construction liens

6    had priority over BankFirst's position; (2) that the liens cover the entire Property, including the

7    Marina; (3) that Salpare stipulated to the amounts due to the plaintiffs in the Dunn Action; and

8    (4) that the State Court made detailed findings of fact and conclusions of law.

9    After the Dunn Action was returned to the Circuit Court of the State of Oregon, it

10    was further bifurcated with BankFirst's and the Salpare Parties' claims removed to Federal Court

11    for disposition in the United States District Court for the District of Oregon Case No. 10-373-PK

12    (the "Federal Case").   In those proceedings, the Salpare Parties identified and served the

13    participant lenders requiring that they appear and defend against the Salpare Parties' claims.[67]  In

14    the Federal Case, the Salpare Parties and George Killian (the principal of Harbor) on the one

15    hand, and the FDIC and participants on the other, entered into a settlement on the record on June

16    2, 2010 that resolved all claims between them.  In the meantime, Dunn sought to proceed with an

17    execution sale on the Limited Judgment for the Construction Claims, with a foreclosure sale

18    scheduled for June 8, 2010.

19    The Salpare Parties, the FDIC for BankFirst, and the loan participants entered into

20    a written settlement agreement on or about June 7, 2010, pursuant to which all parties agreed to

21    dismiss the Federal Case and the Salpare Parties released their claims against BankFirst, the loan

22    participants and the FDIC (the "Settlement").  As a result of the Settlement and in consideration

23    of the Salpare Parties' release of their claims (the value of which was equal to or exceeded the

24    Loan balance), the FDIC for BankFirst and the loan participants have agreed not to seek payment

25

26    [67]  During the litigation the identity of the participants was learned as the result of an Order obtained by
the Salpare compelling BankFirst to provide discovery.

**Page 15    - DEBTOR'S** ~~SECOND~~**THIRD AMENDED CHAPTER 11 DISCLOSURE
STATEMENT (June** ~~6,~~**13, 2011)**
P:\Docs\Salpar\28606\Pldg\33s~~e6953.i~~8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   on the Loan from Salpare or Harbor.  The only Secured Claims against the Property are those

2   held by construction lien claimants and real property taxing authorities, all totaling

3   approximately $7.5 million.

4           Salpare currently operates a high-end marina business with 204 slips on the

5   Property.  The Marina was completed in 2007 and became operational in the Spring of 2007.

6   The Marina is an extremely attractive and appealing operation situated on the Columbia River,

7   having been constructed and dredged at significant cost by Salpare.  Salpare maintains a

8   clubhouse for the Marina with laundry, kitchen, bathroom and shower facilities and rents out a

9   yacht sales office.  It contracts for catering events, repair and cleaning of boats and provides

10  other services and goods for compensation to its lessees.  Each slip has dockside access to

11  electricity, water and internet service.  Moreover, the Marina has extrinsic value in that it is the

12  only marina in Oregon that has fee title ownership for each slip.[78]  Therefore, there is an

13  opportunity for the slips at the Marina to be sold individually and not subject to any leasehold

14  interest held by a governmental authority.

15          Due to the changes in the overall economic climate since 2005, the Debtor now

16  plans to construct approximately 371 apartment units on Phase 1 and Phase 2 of the Property.

17  The building pads at Building C for the previously planned condominium project are anticipated

18  to serve as the foundation for Phase 1 of the proposed multi-family development.  Salpare

19  intends to develop the Property in two (2) phases, with the first phase comprised of

20  approximately 166 apartment units and ancillary improvements.

21          Salpare currently maintains temporary parking for the Marina on the industrial

22  zoned portion of the Property.  Salpare has filed an application to construct permanent parking

23  for the Marina on the Property and has retained land use counsel, Dorothy Cofield, to assist it in

24  obtaining the conditional use application from the City of Portland as well as to possibly divide

25

26  [78] Dunn disagrees that the marina slips may be sold individually.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

the commercial zoned land from the marina (by either a partition or as a unit of land created by a deed of trust metes and bounds legal description), which it believes will generate more options for the development of the Property as a multi-family residential and marina project.

Salpare has a term sheet from a reputable well-known lender for the FHA 221(d)(4) of the National Housing Act loan that it seeks to develop Phase 1 of the Property (the "FHA Lender"). Salpare hired Obsidian Finance Group early on in this case to provide financial consulting services to it in its endeavors to develop the Property and obtain financing for it. Salpare also hired Steven Wiltshire of Marcus & Millichap ("M&M), a financial services broker. An FHA 221(d) mortgage loan is a multifamily construction loan guaranteed by FHA/HUD. Unlike some FHA/HUD programs, there is no requirement that the multifamily units be offered at below market rents.

Salpare's FHA Lender has issued a term sheet to Salpare for an FHA 221(d) mortgage loan on the following general terms: (i) a proposed loan amount of $19,938,200; (ii) a current estimated interest rate of 5.75%; (iii) a construction loan term of the construction period plus four months, interest only; (iv) a permanent loan term of 40 years or 75% of the remaining useful economic life of the Property; (v) no prepayment for 2 years without a fee; (vi) total deposits due at application of $37,500; (vii) a financing fee of 2% of the loan amount, with a good faith deposit of .5% and a firm commitment application fee of .3%; (viii) secured by a first lien encumbering Phase 1 of the Property. The construction period is to be 14 months to allow for 12 months construction and two months for cost certification, which requires Salpare and the general contractor to submit a cost certification prepared by an independent public accountant upon completion of construction. Upon issuance of a Certificate of Occupancy, the loan will be converted to a 40-year fixed term with a 40-year amortization, with a loan rate of 5.75%. The loan will be non-recourse. The loan origination fee will be .73% of the loan amount payable at closing of the loan.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Salpare's projections indicate gross potential rental income of $2.7 million to $2.9 million for just the first 166 units. While occupancy rates have dropped over the past few years, the market is improving and established multi-family residential developments in the Portland area continue to be feasible.

## B.  MANAGEMENT

Columbia Rim Corporation ("CR Corp.") is the manager of the Debtor's limited liability company. CR Corp.'s shares are owned 50% by Michael DeFrees ("DeFrees") and 50% by Christy DeFrees. DeFrees runs the day to day operations of CR Corp. DeFrees is the sole member of the Debtor and runs the day to day operations of the Debtor. DeFrees is a native of the Vancouver, Washington area and began his career as a developer by building single family residential housing projects in the early 1980s. He then began developing commercial projects and has developed hotels, recreational vehicle parks, medical complexes, and apartment buildings over his 30-year career. DeFrees is not an employee of the Debtor; rather the Debtor pays Gateway National Corporation ("Gateway") for the services provided to it by Gateway's employees, of which DeFrees is one. DeFrees is shareholder and the President of Gateway. The Debtor pays approximately $5,000 per month for management fees to Gateway for the services DeFrees and others perform on its behalf. DeFrees will continue to oversee the operations of the Debtor and will continue to be paid from his other entities for such services provided.

## C.  FINANCIAL PERFORMANCE

Attached hereto as Exhibit 4 are the income statements for the Debtor for its fiscal years ending in the prior three years. The income statements reflect the expense associated with the BankFirst related debt and, thus, do not provide an accurate picture of the Debtor's true net income from its current operations because BankFirst no longer seeks payment of that debt pursuant to the Settlement. Additional or more detailed information may be obtained by submitting a written request to Debtor's counsel identifying the information sought.

## III.  ~~IV.~~ THE BANKRUPTCY CASE

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

## A.    THE FILING

The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 7, 2010.

## B.    POST–PETITION DEVELOPMENTS

After the filing of the Petition, the Debtor sought and obtained the following orders:  (1) an Order Pursuant to 11 USC § 366(a) Finding Adequate Assurance of Payment for Future Utility Services (Docket No. 36); (2) an order authorizing the employment of Powell Valuation, Inc. as an appraiser for the Debtor's Property (Docket No. 73); (3) an order authorizing the employment of Farleigh Wada Witt as counsel for the Debtor (Docket No. 90); (4) an order authorizing the employment of Obsidian Finance Group, LLC ("Obsidian") as a financial consultant to the Debtor (Docket No. 80); an order authorizing the employment of Marcus & Millichap Capital Corporation as a loan broker to the Debtor (Docket No. 110); and an order authorizing the employment of Dorothy Cofield as the Debtor's land use attorney (Docket No. 105).  Because the BankFirst debt was eliminated prepetition, there was no need for the Debtor to obtain an order authorizing use of cash collateral.

Almost immediately after the Debtor filed its Petition, Dunn filed a motion for relief from stay to foreclose its asserted construction lien against the Property, alleging that there was no equity in the Property for the Debtor and that it was not necessary for an effective reorganization.  After a two-day contested hearing before the Court held on August 3 and 4, 2010, the Court entered an order denying Dunn's motion and holding that there is equity in the Property over the amount of Dunn's asserted secured claim, that the Property is necessary for an effective reorganization and that the Debtor did not file this case in bad faith.  This Court also found that this is a single asset real estate case under 11 USC §101(51B) and that, thus, the provisions of 11 USC §362(d)(3) apply.

The US Trustee's Office has not appointed an unsecured creditors committee in this case.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

As previously discussed in Section I(B), supra, the Debtor, Harbor and the Construction Creditors engaged in lengthy settlement discussions with the assistance of Judge Hogan, which culminated in the parties agreeing to the Settlement Agreement attached hereto as Exhibit 2.  The Settlement Agreement ~~will be~~was the subject of a separate notice of intent to settle for this Court's approval.  ~~However, assuming that the~~The Settlement Agreement ~~is~~was approved by this Court by Order entered June 13, 2011.  Pursuant to the Settlement Agreement, the Construction Creditors and Harbor have agreed that they will consent to the Debtor's Plan.

**IV.**  ~~V.~~ **ASSETS AND LIABILITIES**

A.   **ASSETS**

1.   **Real Property.**

The Debtor's assets consist primarily of the Property, which is comprised of a 204-slip, fully operating high-end marina on the Columbia River, a commercially zoned parcel of land about 24 acres in size that contains a partially constructed parking garage that may be used in the 375-unit apartment complex contemplated by the Debtor's Plan, and an industrially zoned parcel of land about 1.8 acres in size that currently houses temporary parking for the marina and a high-end sales trailer leased by a yacht sales company, Royal Marine.

2.   **Other Property.**

The Debtor's other assets consist of a claim against its co-owner of the Property, Harbor for the amounts Harbor owes it under the joint tenancy agreement.  The Debtor had sued Harbor to recover on that claim in Adversary Proceeding No. 10-03252, but that claim is to be settled under the Settlement Agreement for the transfer of the Killians' membership interests in Harbor to Salpare and, as inducement for Salpare to accept such assignment, payment by Harbor to Salpare of $40,000.  The Debtor's remaining assets include the sales trailer leased to Royal Marine worth approximately $273,000, the lease with Royal Marine, and the sales office furniture and office equipment, formerly in the sales trailer when it housed the Debtor's sales team for the condominium Project, worth approximately $42,000.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

### B.    LIABILITIES

The Debtor's only asserted Secured Creditors in this case are Creditors asserting that they hold a claim secured by a perfected construction lien asserted under Oregon law or by judgment and the county taxing authority.  For the reasons set forth ~~at pages 13-14~~<u>in Section II.A.</u>  above, the Debtor does not concede that the judgment upon which the asserted Secured Creditors rely is valid or that their purported Construction Liens constitute a lien superior in right to the Debtor or its interests.  The amount asserted to be perfected Construction Liens under Oregon law or by judgment is approximately $7.1 million.  Multnomah County's personal property and real property tax claim is approximately $234,000.  The Secured Creditors disagree with the Debtor's position regarding their Construction Liens and content that they have valid judgment liens against the Property.  The Settlement Parties are settling their claims and disputes under the Settlement Agreement.

As previously explained, there is no other secured debt in this case because the BankFirst debt was eliminated prepetition.

### C.    UNSECURED CREDITORS

The Debtor owes approximately $3 million to unsecured creditors, plus approximately $10 million to the Debtor's sole member, Mr. DeFrees.  The Plan contains three classes of unsecured creditors:  <u>the </u>Common Fund ~~Creditors~~<u>Creditor</u>, Small Unsecured Creditors and General Unsecured Creditors.  The only Common Fund Creditor is Stoel Rives, LLP ("Stoel Rives"), which litigated and negotiated the Federal Case that resulted in the Settlement and the forgiveness of the Loan.[9]  Stoel Rives' claim is approximately $500,000.  Small Unsecured Creditors are Creditors holding claims of $2,000 or less.  The total current outstanding amount due to Creditors holding Claims of $2,000 or less is approximately $32,000.

---

[9] <u>Under the common fund doctrine, a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. See, e.g., Boeing, Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).</u>

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

D.        ADMINISTRATIVE EXPENSES

The Debtor has retained Farleigh Wada Witt as its general bankruptcy counsel in this case (Docket No. 90) and has retained Dorothy Cofield as its land use counsel (Docket No. 105).    The Debtor has also retained Obsidian Finance Group, LLC (Docket No. 80) as its financial consultant, and has retained Marcus & Millichap Capital Corporation as its loan broker (Docket No. 110).    Debtor also hired ~~Spence~~ Powell Valuation, Inc. as its real estate appraiser to prepare an appraisal and to testify at the hearing on Dunn's motion for relief from stay (Docket No. 67).    The Debtor anticipates that it will incur approximately $250,000 in professional fees and expenses through confirmation of the Plan.

V.        ~~VI.~~ DESCRIPTION OF PLAN OF REORGANIZATION

A.        UNCLASSIFIED CLAIMS

Administrative Expense Claims and Priority Tax Claims are not classified.   An Administrative Expense Claim is a Claim against the Debtor constituting an expense of administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code including, without limitation, the actual and necessary costs and expenses of preserving the estate and operating the Debtor's businesses during the Case, any indebtedness or obligations incurred by the Debtor during the pendency of the Case in connection with the rendition of services to the Debtor, and compensation for legal and other professional services and reimbursement of expenses and statutory fees payable to the United State Trustee.

A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to priority but for the Secured status of the Claim.   The Debtor owes approximately $243,000 in property taxes.   The property taxes will be paid in accordance with the requirements of Section 1129 of the Bankruptcy Code in payments over a period ending five years from the Petition Date.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Pursuant to the Plan of Reorganization, Administrative Expense Claims will be paid in full on the latter of the Effective Date or the date on which any such Administrative Expense Claim becomes an Allowed Claim.  However, the Administrative Expense Claims representing liabilities incurred in the ordinary course of business (including amounts owed to vendors and suppliers that have sold products or furnished services to the Debtor after the Petition Date) will be paid in accordance with the written terms and conditions of the particular transactions and any other agreements relating thereto.  The Debtor will tender a list of such ordinary course Administrative Expense Claims at the confirmation hearing.

## B.    CLASSIFIED CLAIMS

### 1.    Overall Plan Implementation.

The Debtor will obtain either FHA loans or conventional loans to develop the Property and will pay creditors from a combination of loan proceeds and operating income.

Initially, the Debtor will obtain a Priming Loan to make parking lot improvements, to make permit-related payments, to pay professional fees associated with the bankruptcy case, partition of the Property, loan costs and fees and other site and surveying work. The general terms of the Priming Loan include: (i) $500,000, with the possibility of obtaining an additional $250,000 upon receipt of a fully-executed commitment letter from a bank  or other financial institution agreement to loan Salpare the funds necessary for the development of Phase1; (ii) Wall Street prime rate plus 10% floating daily; (iii) $250,000 to be paid to the Priming Loan lender on or before June 30, 2012 as set forth in the Settlement Agreement; (iv) $8,0008,000 application fee; (v) loan fee of 5% upon loan closing; (vi) secured by a first trust deed on the Property; and (vii) release of trust deed by Priming Loan lender on Phase 1 at closing of Phase 1 FHA Loan.  Pursuant to the Settlement Agreement, the Construction Creditors shall subordinate their liens to the trust deed of the Priming Loan lender.

As discussed previously, an FHA Lender has issued a term sheet to the Debtor for an FHA 221(d)(4) loan for Phase 1 of the construction on the Property on or before June 30,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

2012 in the approximate amount of $20 million and Debtor will pay the Discounted Judgment Amount to the Class 2, 3, 4, 5 and 6 Secured Creditors on their claims in three payments on June 30, 2012, October 31, 2012 and June 30, 2013.  The Debtor will obtain the loan to commence construction of Phase 1 in approximately June of 2012 with funding provided by the FHA Lender.   By October 31, 2012, the Debtor will refinance the Marina and make the second installment payment to the Secured Creditors as well as the first payment to Multnomah County, and to the extent possible under the terms of the Plan, the first payment to the Common Fund Creditor, to General Unsecured Creditors and the final payment to the Small Unsecured Creditors.  The Debtor intends to obtain financing for Phase 2 of the construction on the Property in approximately June of 2013, at which time the Debtor will pay the Secured Creditors their final payment pursuant to the Settlement Agreement.  The Debtor plans to pay Small Unsecured Creditors, the Common Fund Creditor and General Unsecured Creditors from Net Income.

The Debtor proposes to implement this Plan as set forth in the Plan projections attached hereto as Exhibit 5.

### 2.      Class 1 (Other Priority Claims).

Class 1 is unimpaired.  Each holder of an Allowed Class 1 Claim will be paid in full in Cash the amount of its Allowed Class 1 Claim, including all interest, costs, fees and charges provided for under any agreement under which such Claim arose or is otherwise allowed by law, on the latter of (a) the Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall agree or has agreed to a different treatment of such Claim (including any different treatment that may be provided for in any documentation, agreement, contract, statute, law or regulation creating and governing such Claim.  The Debtor is not aware of the existence of any Other Priority Claims.

### 3.      Class 2 (City of Portland Secured Claim).

Class 2 consists of the Claim asserted by the City of Portland under ORS 223, the city charter of Portland and the Portland City Code, as set forth in the Dunn Action judgment in

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

the amount of $152,028.81 as a Secured Claim.  The holder of an Allowed Secured Class 2 Claim will be paid as set forth in the Settlement Agreement its share of the Discounted Judgment Amount as follows:  40% on or before June 30, 2012; 40% on or before October 31, 2012 and the remaining 20% on or before June 30, 2013.

### 4.    Class 3 through 6 (Construction Liens).

Classes 3 through 6 are impaired and consist of Claims asserted by:  Dunn (Class 3), TKS (Class 4), BMI (Class 5) and Myhre (Class 6).  Each Creditor holding a Class 3, 4, 5 or 6 Allowed Claim secured by a perfected construction lien will retain its lien with the same priority such lien had on the Petition Date, except as set forth herein at Section 6.3 of the Plan. The Allowed Claims in Classes 3, 4, 5 and 6 will be paid the Discounted Judgment Amount, together with interest accruing from and after the Effective Date at the rate of 3.25% per annum from the proceeds of the financing of the Property, consistent with the terms of the Settlement Agreement.  The first payment to Classes 3, 4, 5 and 6 of 40% of the Discounted Judgment Amount will occur on the closing of the loan Debtor will obtain to develop Phase 1 or June 30, 2012, as set forth in the Settlement Agreement. On or before October 31. 2012, the Debtor anticipates refinancing the Marina and will pay 40% of the Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set forth in the Settlement Agreement.   The Debtor intends to obtain financing to develop Phase 2 on or before June 30, 2013 and will pay the balance of the Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set forth in the Settlement Agreement. ~~Debtor shall deliver a Statutory Bargain and  Sale Deed to the Property (the "Deed") (free and clear of all liens), except those permitted under the Plan and~~ the Settlement Agreement, ~~conveying the Property to Dunn to Judge Hogan to be held in trust for the benefit of the Construction Creditors within five (5) business days of the Effective Date.   After each payment referenced herein,  Debtor shall immediately deliver to Judge Hogan a new deed for the portion(s) of the Property that remain as collateral for Debtor's payment obligations to the Construction Creditors.~~

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

5.    **Class 7 (County Secured Claim for Property Taxes).**

Class 7 is unimpaired.  The holder of the Class 7 Claim will retain its security interest with the same priority to which it is entitled by law.  The Allowed Class 7 Claimant shall be paid the full amount of its Secured Claim as permitted by 11 USC §1129(a)(9)(D) in full from financing of the Property or Net Income, but not later than five (5) years after the Petition Date.

6.    **Class 8 (Small Unsecured Claims).**

Class 8 is impaired.  Each holder of a Class 8 Claim will be paid in Cash an amount equal to 25% of their Allowed Claim on or before October 31, 2012 or 30 days of the date their Claim becomes an Allowed Claim, whichever is later.  Thereafter, each holder of a Class 8 Claim will be paid in Cash an amount equal to 75% of their Allowed Claim on or before June 30, 2013.  The total costs of payment to current Small Unsecured Creditors will be approximately $31,000.

7.    **Class 9 (Common Fund ~~Claims~~Claim).**

Class 9 is impaired.  ~~Each~~Class 9 consists solely of the claim of Stoel Rives.  The holder of a Class 9 Allowed Claim shall be paid by receiving 30% of the Net Income generated by the Reorganized Debtor for each calendar quarter ~~from after October~~beginning as early as the quarter ending December 31, 2012 ~~through~~and ending December 31, 2017, so long as the Debtor has amounts in excess of $500,000 in ending cash balances, and to the extent that it does not cause the Debtor to default under its loan documents, until the Class 9 Allowed Claim is paid in full without interest.  Should the Court determine that Stoel Rives' Claim should not be classified separately from the Class 10 General Unsecured Claims, then Stoel Rives' Claim shall be treated as a Class 10 General Unsecured Claim.

8.    **Class 10 (General Unsecured Claims).**

Class 10 is impaired.  ~~Each~~After payment of the Class 9 Allowed Claim, each holder of a Class 10 Allowed Claim shall be paid by receiving a Pro Rata share of 30% of the Net Income generated by the Reorganized Debtor for each calendar quarter ~~from after~~

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   ~~October~~beginning as early as the quarter ending December 31, 2012 ~~through~~and ending

2   December 31, 2017, so long as the Debtor has amounts in excess of $500,000 in ending cash

3   balances, ~~after the Class 9 Allowed Claim has been paid in full without interest~~ and to the extent

4   it does not cause the Debtor to default under its loan documents.  However, it is unlikely that

5   Class 10 Allowed Claims will begin receiving payments until the quarter ending March 31, 2017.

6   In no event shall Class 10 Allowed Claims receive less than a Pro Rata distribution equal to 10%

7   of each Class 10 Allowed Claim amount.  General Unsecured Claims total approximately $1.7

8   million, plus approximately $10.9 million to General Unsecured Claims owing to Michael

9   DeFrees, plus any Deficiency Claims of Secured Claims.  Mr. DeFrees has agreed to subordinate

10  payments to him on his General Unsecured Claim and he will be treated as a Class 11 Claimant.

11  Should the Court determine that Stoel Rives' Claim should not be classified separately from the

12  Class 10 General Unsecured Claims, then Stoel Rives' Claim shall be treated as a Class 10

13  General Unsecured Claim.

14  ### 9.    Class 11 (Subordinated Claims).

15          Class 11 is impaired.  Holders of subordinated claims will be paid a Pro Rata

16  share of all remaining Unsecured proceeds after Holders of allowed Class 9 and 10 Claims have

17  been paid in full.

18  ### 10.   Class 12 (Interests).

19          Class 12 is impaired.  The holder of the Class 12 Claims are the holders of all

20  equity interests in the Debtor.  As a result of the Settlement Agreement, the owners of Harbor

21  will transfer their membership interests in Harbor to Salpare.  The interests of Salpare owned by

22  Harbor will then be cancelled.  All remaining equity interests will be retained by Mr. DeFrees in

23  exchange for the subordination of his $10.9 million General Unsecured Claim.

24  ### C.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

25          The Bankruptcy Code gives Debtor the right, after commencement of their

26  Chapter 11 cases, subject to the approval of the Bankruptcy Court, to assume or reject executory

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   contracts and unexpired leases.  Generally, an "executory contract" is a contract under which

2   material performance (other than payment of money) is still due by each party.  The Plan

3   provides for assumption of all executory contracts and leases.

4        If an executory contract or unexpired lease is or has been rejected, the Creditor

5   may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a

6   Proof of Claim with respect to any such Claim must be Filed no later than 30 days after approval

7   of the Bankruptcy Code of the rejection of the relevant executory contract or unexpired lease or

8   30 days after the Effective Date, whichever is sooner.  Any such Claim shall constitute an

9   Unsecured Claim to the extent that such Claim is finally treated as an Allowed Claim.  To the

10  extent the Debtor rejects an unexpired lease of nonresidential real property, the Claim for

11  damages resulting from such rejection will be limited to the amount allowed under the

12  Bankruptcy Code.

13       Upon assumption of an executory contract or unexpired lease, the Debtor must

14  cure or provide adequate assurance of prompt cure of any monetary defaults.  The Plan provides

15  that the Reorganized Debtor will cure all defaults, if any, in the ordinary course of business and

16  will cure any monetary defaults, if any, promptly.  All assumed executory contracts and leases

17  will be automatically assigned to the Reorganized Debtor as of the Effective Date.  The Debtor

18  assumed the leases and executory contracts listed on Exhibit 6.

19       D.    EFFECT OF CONFIRMATION

20            1.    DISCHARGE

21       The treatment of, and consideration received by, holders of Allowed Claims and

22  Allowed Interests pursuant to the Plan will be in full satisfaction, release and discharge of their

23  respective Claims against or interests in the Debtor.  The Confirmation ~~Orders~~Order shall

24  discharge the Debtor from any liability that arose before the Effective Date as provided in

25  Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in

26  Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a Proof of Claim

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

based on such debt or liability is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt or liability is Allowed; or (c) the holder of the Claim based on such debt or liability has accepted the Plan.

## 2.    REVESTING, OPERATION OF BUSINESS

All property of the estates shall revest in Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens charges, encumbrances and interests, except as otherwise provided in the Plan.

## 3.    INJUNCTION

Except as otherwise expressly provided in the Plan, all persons who have held, hold or may hold Claims, or who may have held, hold or may hold any Interest, are permanently enjoined from and after the Effective Date from (a) commencing or continuing in any manner any action or other proceedings of any kind with respect to any Claims or Interests against Reorganized Debtor; (b) enforcing, attaching, collecting or recovering by any manner or any means any judgment, award, decree or order against Reorganized Debtor; (c) creating, perfecting or enforcing any encumbrances of any kind against Reorganized Debtor with respect to any such Claim except as specifically set forth in the Plan; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, Reorganized Debtor or their property; and (e) proceeding in any manner in any place whatsoever that does not conform to, does not comply with, or is inconsistent with the provisions of the Plan or the order confirming the Plan.

## 4.    MODIFICATION OF THE PLAN; REVOCATION OR WITHDRAWAL OF THE PLAN

Subject to Section 1127 of the Bankruptcy Code and the Settlement Agreement, the Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation so long as the treatment of holders of Claims and Interests under the Plan are not adversely affected.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

## 5.     RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order on the Effective Date having occurred and subject to the Settlement Agreement, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or relating to the Chapter 11 Case, including, but not limited to, the following matters:  (a) to hear and determine any pending applications for the rejection of executory contracts or unexpired leases, and the allowance of Claims resulting therefrom; (b) to determine any adversary proceedings, applications, contested matters or other litigative matters pending on the Effective Date or Filed prior to the closing of the case; (c) to ensure that distributions to holders of Allowed Claims are accomplished; (d) to hear and determine objections to or requests for estimations of Claims, including any objections to the classification of any Claim, and to allow, disallow and/or estimate any Claim in whole or in part; (e) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (f) to issue any appropriate orders in aid of execution of the Plan or to enforce the Confirmation Order and/or the discharge, or the effect of such discharge, provided to the Debtor; (g) to hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; (h) to hear and determine all applications for compensation and reimbursement of expenses of professionals or members of the Creditors Committee under the Bankruptcy Code; (i) to hear and determine disputes arising in connection with the interpretation, implementation and enforcement of the Plan; (j) to hear and determine other issues presented or arising under the Plan; (k) to hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and (l) to enter a final decree closing the Chapter 11 Case.

## 6.     UNITED STATES TRUSTEE FEES

Reorganized Debtor shall be responsible for timely payment of fees incurred pursuant to 28 USC § 1930(a)(6) until the case is closed, converted or dismissed.    After

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

confirmation, Reorganized Debtor shall serve on the United States Trustee a monthly financial report for each month, or portion thereof, that the case remains open.  The monthly financial report shall include a statement of all disbursements made during the course of the month, whether or not pursuant to the Plan.

### 7.    AVOIDANCE ACTIONS.

The Debtor has not done an analysis of possible preference or fraudulent transfer actions.  The Debtor has not budgeted Professional Fees to pursue preference claims, but has also not budgeted for any recovery.  If any such claims exist, the Professional Fees would presumably be covered by any recoveries.  The Debtor will complete a preference analysis before the hearing date on Confirmation.  The Plan preserves all avoidance actions to the extent any exist.

## VI.    VOTING PROCEDURES AND CONFIRMATION OF A PLAN.

### A.    BALLOTS AND VOTING DEADLINE

A ballot to be used for voting to accept or reject the Plan is enclosed with each copy of this Disclosure Statement mailed to all Creditors entitled to vote.   After carefully reviewing this Disclosure Statement and its exhibits, including the Plan, please indicate your acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as directed below.

The Bankruptcy Court had directed that, to be counted for voting purposes, ballots for acceptance or rejection of the Plan must be received no later than 4:00 p.m. Pacific time, on _____, 2011 by the Debtor at the following address:

                Farleigh Wada Witt
                Attn:  Diane Fallon
                121 SW Morrison, Ste. 600
                Portland, OR 97204

or via facsimile transmission to Diane Fallon at (503) 228-1741, or via e-mail in pdf format to dfallon@fwwlaw.com.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon  97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Holders of each Claim that was scheduled by the Debtor or with respect to which a Proof of Claim has been Filed for which no objection is pending will receive ballots and are permitted to vote based on the amount of the Proof of Claim.  If no Proof of Claim has been Filed, then the vote will be based on the amount scheduled by the Debtor in its Schedules.  Holders of Disputed Claims who have settled their dispute with the Debtor are entitled to vote the settlement amount of their Claim.  The Bankruptcy Code provides that such votes will be counted unless the Claim has been disputed, disallowed, disqualified or suspended prior to computation of the vote on the Plan.  The Claim to which an objection has been Filed is not allowed to vote unless and until the Bankruptcy Court rules on the objection.  The Bankruptcy Code provides that the Bankruptcy Court may, if requested to do so by the holder of such claim, estimate or temporarily allow a Disputed Claim for the purposes of voting on the Plan.

If a person holds Claims in more than one class entitled to vote on the Plan, such person will be entitled to complete and return a ballot for each Class.  If you do not receive a ballot or if a ballot is damaged or lost, please contact:

Farleigh Wada Witt
Attn:  Diane Fallon
121 SW Morrison, Ste. 600
Portland, OR 97204
Telephone Number:  (503) 228-6044

All persons entitled to vote on the Plan may cast their vote for or against the Plan by completing, dating and signing the enclosed ballot and returning it, by First Class Mail or hand delivery, to the Debtor, at the address indicated above.  In order to be counted, all ballots must be executed and received at the above address no later than 4:00 Pacific time on _____, 2011.  Any ballots received after 4:00 p.m. Pacific time on _____, 2011 will not be included in any calculation to determine whether the parties entitled to vote on the Plan have voted to accept or reject the Plan.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Ballots may be received by the Debtor by facsimile transmission to Farleigh

2    Wada Witt, Attn: Diane Fallon at (503) 228-1741. Ballots sent by facsimile transmission will be

3    counted if faxed to Ms. Fallon by 4:00 p.m. Pacific time on _____, 2011.

4    When a ballot is signed and returned without further instruction regarding

5    acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the

6    Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the

7    unsigned ballot will not be included in any calculation to determine whether parties entitled to

8    vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without

9    indicating the amount of the Claim, the amount shall be as set forth on the Debtor's Schedules or

10   any Proof of Claim Filed with respect to such Claim.

11   **B.    PARTIES ENTITLED TO VOTE**

12   Pursuant to Section 1126 of the Bankruptcy Code, each class of impaired claims

13   or interests that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan.

14   Any holder of an Allowed Claim that is in an impaired class under the Plan, and whose Class is

15   not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal,

16   equitable and contractual rights of the holders of claims in that Class are left unaltered by the

17   Plan or if the Plan reinstates the Claims held by members of such Class by (1) curing any

18   defaults, (2) reinstating the maturity of such claim, (3) compensating the holder of such claim for

19   damages that result from the reasonable reliance on any contractual provision of law that allows

20   acceleration of such claim and (4) otherwise leaving unaltered any legal, equitable or contractual

21   right of which the Claim entitled the holder of such claim. Because of their favorable treatment,

22   classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not

23   necessary to solicit votes from the holders of claims in classes that are not impaired.

24   Classes of Claims or Interests that will not receive or retain any money or

25   property under a Plan on account of such Claims or Interests are deemed, as a matter of law

26   under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  entitled to vote on the Plan.  The current ownership interests classified as Class 10 are such a

2  class and are deemed to have rejected the Debtor's Plan.

3  Class 1 (Other Priority Creditors) and Class 6 (County Secured Claim for

4  Property Taxes) are not impaired and, therefore, are deemed to have accepted the Plan.  All other

5  Classes of Claims are impaired under the Plan, and persons holding Claims are entitled to vote to

6  accept or reject the Plan.

7  **C.    VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

8  As a condition to confirmation, the Bankruptcy Code requires that each impaired

9  Class of Claims or Interests accept the Plan, subject to the exceptions described below in the

10  section entitled "Cram Down of the Plan."  At least one impaired Class of Claims must accept

11  the Plan in order for the Plan to be confirmed.

12  For a Class of Claims to accept a plan, Section 1126 of the Bankruptcy Code

13  requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in

14  number of the Allowed Claims of such Class, in both cases counting only those claims actually

15  voting to accept or reject the Plan.  If the Plan is confirmed, the Plan will be binding with respect

16  to all holders of Claims and Interests in each Class, including Classes and members of Classes

17  that did not vote or that voted to reject the Plan.

18  **D.    "CRAM DOWN" OF THE PLAN**

19  If the Plan is not accepted by all of the Impaired Classes of Claims, the Plan may

20  still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy

21  Code's "Cram Down" provision if the Plan has been accepted by at least one Impaired Class of

22  Claims, without counting the acceptances of any Insiders of the Debtor, and the Bankruptcy

23  Code determines, among other things, that the Plan "does not discriminate unfairly" and "is fair

24  and equitable" with respect to each non-accepting Impaired Class of Claims or Interests.  The

25  Debtor believes that the Plan can be confirmed even if it is not accepted by all impaired Classes

26  of Claims.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

### E.    CONFIRMATION HEARING

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to commence on _____, 2011, at _____.  The Confirmation Hearing will be held at the United States Bankruptcy Court for the District of Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, 9th Floor, Portland, Oregon, before the Honorable Trish M. Brown, United States Bankruptcy Judge.  At the hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of the creditors of the Debtor.  At that time, the Debtor will submit a report to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the persons entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.  Any objections to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and received by counsel for the Debtor no later than _____, 2011, by 4:00 p.m. Pacific time.  Unless an objection to confirmation is timely filed and received, it may not be considered by the Bankruptcy Court.

## VII.    LIQUIDATION ANALYSIS

A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds that the Plan is in the "best interest of creditors" of holders of claims against, and interests in, the debtor subject to such plan.  The best interest test is satisfied if the plan provides each dissenting or non-voting member of each impaired Class with a recovery not less than the recover such member would receive if the debtor was liquidated in a hypothetical case under Chapter 7 of the Bankruptcy Code by a Chapter 7 Trustee.  The Debtor believes that the holders of impaired Claims will receive more than they would receive under a Chapter 7 liquidation.  In applying the "best interest" test, the Bankruptcy Court would ascertain the hypothetical recovery in a Chapter 7 proceeding to Secured Creditors, priority claimants, general Unsecured Creditors and equity interest holders.  The hypothetical Chapter 7 recoveries would then be compared with the

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

distribution offered to each Class of Claims or Interests under the Plan to determine that the Plan satisfied the "best interest" test set forth in the Bankruptcy Code.

A copy of the Debtor's tabulation liquidation analysis is attached hereto as Exhibit 7.   The liquidation table shows that upon a liquidation of the Debtor, there would be no funds available for distribution to Unsecured Creditors.

## VIII.    CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, WE INFORM YOU THAT (A) ANY U.S. FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF (1) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED, OR (2) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR TAX MATTER(S) ADDRESSED HEREIN, AND (B) THIS DISCUSSION WAS WRITTEN IN CONNECTION WITH DEBTOR SOLICITING ACCEPTANCES OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.

A.    GENERAL TAX CONSIDERATIONS

The following discussion is a summary of certain material federal income tax consequences expected to result from the consummation of the Plan.  This discussion is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of an Allowed Claim or equity interest.  This discussion does not purport to be a complete analysis or listing of all potential tax considerations.  This discussion does not address aspects of federal income taxation that may be relevant to a particular holder of an Allowed Claim subject to special treatment

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   under federal income tax laws (such as foreign taxpayers, broker dealers, banks, thrifts,

2   insurance companies, financial institutions, regulated investment companies, real estate

3   investment trusts and pension plans, and other tax exempt investors), and does not discuss any

4   aspects of state, local or foreign tax laws.  Furthermore, this summary does not address federal

5   taxes other than income taxes.

6        This discussion is based on existing provisions of the Internal Revenue Code of 1986, as

7   amended (the "IRC"), existing and proposed Treasury Regulations promulgated thereunder, and

8   current administrative rulings and court decisions.  Legislative, judicial or administrative

9   changes or interpretations enacted or promulgated after the date hereof could alter or modify the

10  discussion set forth below with respect to federal income tax consequences of the Plan.  Any

11  such changes or interpretations may be retroactive and could significantly affect the federal

12  income tax consequences of the Plan.  No ruling has been requested or obtained from

13        Circular 230 Disclaimer:  There are certain U.S. federal income tax consequences

14  associated with the Plan discussed in Exhibit 8 to this Disclosure Statement.  To ensure

15  compliance with requirements imposed by the Internal Revenue Service (the "IRS") with respect

16  to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect

17  thereto.  This discussion is not binding on the IRS or the courts and no assurance can be given

18  that the IRS will not assert, or that a court will not sustain, a different position than any position

19  discussed herein.  No representations or assurances are being made to the holders of Allowed

20  Claims or equity interests with respect to the federal income tax consequences described herein.

21  , we inform you that (a) any U.S. federal tax advice contained in this communication (and

22  specifically in Exhibit 8) is not intended or written to be used or relied upon, and cannot be used

23  or relied upon, for the purpose of (1) avoiding tax-related penalties under the Internal Revenue

24  Code of 1986, as amended, or (2) promoting, marketing or recommending to another party any

25  transaction or tax matter(s) addressed herein, and (b) this discussion was written in connection

26  with debtor soliciting acceptances of the plan through this Disclosure Statement.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

~~Accordingly, the following~~ The discussion of tax consequences on Exhibit 8 is intended only as a summary of certain U.S. federal income tax consequences of the Plan ~~is for informational purposes only~~ and is not a substitute for careful tax planning ~~or advice based upon the individual circumstances pertaining to a particular~~ with a tax professional.  The above discussion is for informational purposes only and is not tax advice.  The tax consequences are in many cases uncertain and may vary depending on the particular situation of a holder of an allowed claim, or any equity interest holder's particular circumstances.  Accordingly, each holder of an Allowed Claim ~~or an~~ and each equity interest. ~~Each holder of an Allowed Claim or an equity interests is strongly~~ is urged to consult ~~with~~ its ~~own~~ tax ~~advisors regarding~~ advisor about the federal, state, local~~,~~, and applicable foreign income and other tax consequences of the Plan.

~~Any discussion of federal tax issues set forth in this Disclosure Statement was written solely in connection with the confirmation of the Plan to which the transactions described in this Disclosure Statement are ancillary.  Such discussion is not intended or written to be legal or tax advice to any person and is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any federal tax penalties that may be imposed on such person.  Each holder of an Allowed Claim or equity interest should seek advice based on its particular circumstances form an independent tax advisor.~~

### ~~B.     FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS~~

#### ~~1.     IN GENERAL~~

~~The Debtor is a limited liability company and, thus, is a pass through entity for both federal and state income tax purposes.  As such, the Debtor is not itself subject to federal income tax.  Instead, the Debtor's sole member is required to include on his personal income tax return the income, gain, loss and deduction recognized by the Debtor.  Accordingly, it is unlikely that there will be any direct federal income tax liability at the Debtor's entity level.~~

#### ~~2.     CANCELLATION OF INDEBTEDNESS INCOME~~

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Under the IRC, a taxpayer generally will recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for consideration less than the amount of such indebtedness.  The amount of COD Income, in general, is the excess of (a) the adjusted issue price of the indebtedness (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments) satisfied, over (b) the sum of the amount of Cash paid and the fair market value of any new consideration given in satisfaction of the indebtedness.

However, IRS Section 108(a) provides an exclusion from gross income for COD income if certain requirements are met.  Section 108(a) provides an exclusion commonly referred to as the "Bankruptcy Exception," where a taxpayer is in bankruptcy and the discharge is granted, or is effected, pursuant to a plan approved by the bankruptcy court.  In the case of an entity taxable as a corporation, eligibility for the Bankruptcy Exception is determined at the corporate level.  If the Bankruptcy Exception applies (with the effect that the taxpayer may exclude its COD Income from its gross income), the taxpayer is required, under IRS Section 108(b), to reduce certain of its tax attributes by the amount of COD Income excluded from gross income pursuant to the Bankruptcy Exception.  The attributes of the taxpayer that are reduced include any net operation loss carryovers from prior years, general business and minimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets and foreign tax credit tax carryforwards.  In the limited liability company context, the reduction in the basis of assets is most important.  However, a special rule can also require a reduction in certain losses to be passed through to members of limited liability companies.

C.   FEDERAL INCOME TAX CONSEQUENCES TO THE HOLDERS OF AN ALLOWED CLAIM

1.   SMALL UNSECURED CREDITOR CLAIMS

In accordance with the Plan, the debt owed by the Debtor to each holder of a Small Unsecured Claim will be satisfied by a payment of Cash in an amount equal to 100% of such Claim.  In general, the amount received by each holder of a Small Unsecured Claim is treated as an amount

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

received in exchange for the satisfied debt, and each such holder will recognized taxable gain or loss equal to the amount received less the holder's tax basis in the Claim. Any gain or loss recognized will be long term or short term capital gain or loss or ordinary income or loss, depending upon factors specific to each holder of a Small Unsecured Claim, including but not limited to: (i) whether the Claim (or a portion thereof) is attributable to principal or interest; (ii) the origin of the Claim; (iii) whether the holder of the Claim reports income on the accrual or cash basis method; and (iv) whether the holder of the Claim has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

### 2.    GENERAL UNSECURED CREDITOR CLAIMS

In accordance with the Plan, the debt owed by the Debtor to each holder of a General Unsecured Claim will be adjusted so that each General Unsecured Creditor will be entitled to a Pro Rata share of 30% of the Net Income generated by the Reorganized Debtor through December 31, 2017. If this adjustment is considered significant, each such holder will recognize taxable gain or loss equal to the difference between the fair market value of the obligation as adjusted and the holder's adjusted basis in the original debt. It may be difficult to place a value on the obligation as adjusted, but gain may nevertheless be recognized. The character and amount of such taxable gain or loss will be determined based on factors specific to each holder of a Claim, as discussed above with respect to Small Unsecured Claims.

### 3.    OREGON CONSTRUCTION LIEN CREDITOR CLAIMS

In accordance with the Plan, the debt owed by the Debtor to each holder of an Allowed Construction Lien Claim will be restructured. If the modification to the debt is "significant," as such term is defined in the applicable Treasury Regulations, the restructured debt will be treated as received by such holder in a deemed taxable exchange of the underlying debt pursuant to IRC Section 1001.

With respect to a deemed taxable exchange, a holder of an Allowed Construction Lien Claim will generally recognize gain or loss in connection with the exchange if the holder's adjusted tax

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

basis in the old debt does not equal the issue price of the modified debt. If the issue price of the modified debt is greater than the holder's adjusted tax basis in the debt, the holder will recognize taxable income as a result of the deemed exchange. Since each modified debt will have a principal amount equal to its corresponding old debt, and each modified debt will have adequate stated interest, a holder of an Allowed Construction Lien Claim generally should not recognize any gain or loss on a deemed taxable exchange of such debt unless the tax basis in the debt is different from the issue price of the modified debt. The character and amount of any taxable gain or loss will be determined based on factors specific to each holder of a Claim, as discussed above with respect to Small Unsecured Claims.

The principal amount of certain restructured debt may include accrued but unpaid interest. A holder of an Allowed Construction Lien Claim not previously required to include in its taxable income any accrued but unpaid interest on such Claim may be treated as receiving taxable interest to the extent the modified debt received is allocable to such accrued by unpaid interest.

### D.    CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS

Pursuant to the Plan, all of the currently outstanding membership interests of the Debtor shall be deemed cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution with respect to such shares. The IRS may assert that the COD Income discussed above is not subject to the Bankruptcy Exception because, in the case of an entity taxed as a partnership, the exclusions of Section 108(a) are determined in relation to the members' situations, not the situation of the entity that realizes the COD Income. If this result obtains, a member may have to include such COD Income in gross income, and this inclusion would increase his, her or its basis in the membership interests. Moreover, upon extinguishment of the member's interests in the Debtor, the member may be deemed to receive a distribution equal to the Debtor's liabilities, which reduces the member's basis. If the reduction in liabilities exceeds basis, the member would realize gain. If the member has an unrecovered basis at the time of extinguishment of his interests, he may be able to claim a

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

loss, which the IRS is likely to characterize as capital rather than ordinary.  To the extent that that sole member of the Debtor invests additional monies in the Debtor, this should created basis in the new membership interests to be issued by the Debtor.

### E.    INFORMATION REPORTING BACKUP WITHHOLDING

Certain payments, including the payments with respect to Claims pursuant to the Plan, are generally subject to information reporting by the payor to the IRS.  Moreover, under certain circumstances, a holder of a Claim may be subject to "backup withholding" with respect to payments made pursuant to the Plan, unless such holder either (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact, or (ii) provides a correct United States taxpayer identification number and certified under penalty of perjury that the holder is a United States person, the taxpayer identification is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income.  Backup withholding is not an additional tax.  Amounts withheld under the backup withholding rules may be credited against the holder's United States federal income tax liability, and the holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

### F.    IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CARFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON THE PARTICULAR SITUATION OF A HOLDER OF AN ALLOWED CLAIM, OR ANY EQUITY INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM AND

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  EACH EQUITY INTEREST HOLDER IS URGED TO CONSULT ITS TAX ADVISOR

2  ABOUT THE FEDERAL, STATE, LOCAL AND APPLICABLE FOREIGN INCOME AND

3  OTHER TAX CONSEQUENCES OF THE PLAN.

4  **IX.    ACCEPTANCE AND CONFIRMATION OF THE PLAN**

5  **A.    CONFIRMATION HEARING**

6  The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on

7  _____, 2011 at _____.  The hearing will be held at the United States Bankruptcy Court for

8  the District of Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, Portland, Oregon 97204,

9  before the Honorable Trish M. Brown, United State Bankruptcy Judge.  At that hearing, the

10  Bankruptcy Court will consider whether the Plan satisfied the various requirements of the

11  Bankruptcy Code, including whether it is feasible, and whether it is in the best interest of

12  Creditors and Interest Holders of the the Debtor.  Debtor will submit a report to the Bankruptcy

13  Court at that time concerning the votes for acceptance or rejection of the Plan by the parties

14  entitled to vote thereon.  Any objection to confirmation of the Plan must be timely filed as stated

15  in Section II.E. above.

16  **B.    REQUIREMENTS OF CONFIRMATION**

17  At the hearing on confirmation, the Bankruptcy Court will determine whether the

18  provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the provisions

19  of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan.  The

20  Debtor believes the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code,

21  that it has complied or will have complied with all of the requirements of Chapter 11, and that it

22  has been proposed and is made in good faith.

23  **C.    FEASIBILITY**

24  Attached as Exhibit 5 is Debtor's projected income and Net Income and other

25  distribution projections.  The projections support the treatment of claims set forth in Section VI

26  above.

**Page 43   - DEBTOR'S** ~~SECOND~~**THIRD AMENDED CHAPTER 11 DISCLOSURE**
         **STATEMENT (June** ~~6,~~**13,** **2011)**
P:\Docs\Salpar\28606\Pldg\33e~~6953~~.i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

## D.    RISK FACTORS

There are a number of risks associated with the Debtor's proposed Plan.  Each Creditor should carefully consider those risks in evaluating its vote on the Debtor's Plan.  All of the risks associated with the Debtor's Plan are too numerous to identify.  However, a few of those risks are set forth below.

### 1.    GENERAL FINANCIAL MARKET CONDITIONS

The recent disruption with numerous major financial institutions and the resulting crisis in the financial markets has rippled through the economy, and has impacted the condominium and residential housing market in particular.  While the ultimate effect of this crisis on the residential housing market is yet unclear, it is possible that this financial market will adversely affect the ability of the Debtor to develop the Property as set forth in this Plan.

### 2.    PROJECTED FINANCIAL RESULTS

The Debtor projected financial results reflect management's best estimate of the Reorganized Debtor's future financial performance based on currently known facts and hypothetical assumptions about, among other matters, the timing, confirmation and consummation of the Plan in accordance with its terms, the anticipated future performance of the Reorganized Debtor, residential housing industry performance, and general business and economic conditions.  Many of these factors are beyond the control of the Reorganized Debtor.  As a consequence, the actual financial results may differ significantly from the projections.  Specifically, the Reorganized Debtor may not be able to meet the projected financial results or achieve the revenue or cash flow that it has assumed in projecting future business prospects.

### 3.    DEPENDENCE ON SUBCONTRACTORS

The development of the Project depends on construction work done by subcontractors.  The Reorganized Debtor's business model relies heavily upon maintaining its existing relationship with its core group of highly skilled and experienced subcontractors.  As a

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

result, insufficient availability of, or unsatisfactory performance by these third-party subcontractors could have a material adverse affect on the Debtor's business.

### 4.   CLAIM AMOUNTS

The claims estimates set forth in this Disclosure Statement are based on various assumptions.  The actual Allowed Claim amounts may differ significantly from these estimates should one or more of Debtor's underlying assumptions prove to be incorrect.  Such differences may materially and adversely affect the percentage recovery to holders of such Claims under the Plan.

### E.   CRAM DOWN

As discussed previously, a Court may confirm a Plan, even if it is not accepted by all impaired classes, if the Plan has been accepted by at least one impaired class of claims and the Plan meets the cram down requirements set forth in Section 1129(b) of the Bankruptcy Code. In the event that any impaired Class of Claims does not accept the Plan, the Debtor hereby requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or otherwise permit the Debtor to modify the Plan.

The Debtor believes the Plan does not violate the absolute priority rule of the Bankruptcy Code.  11 USC §1129(b)(2)(B)(ii), commonly referred to as the absolute priority rule, provides that with respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property unless the plan provides that each holder of a claim receives or retains on account of such claim property of a value, as of the Effective Date of the plan, equal to the Allowed amount of such claim.

### F.   ALTERNATIVES TO CONFIRMATION OF THE PLAN

If a Plan is not confirmed, the Debtor or another party in interest may attempt to formulate or propose a different Plan or Plans of Reorganization.  Such Plans might involve a reorganization and continuation of the Debtor's business, the sale of the Property or a portion

**Page 45   - DEBTOR'S   SECONDTHIRD AMENDED CHAPTER 11 DISCLOSURE**
      **STATEMENT (June 6,13, 2011)**
P:\Docs\Salpar\28606\Pldg\33e6953.i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

thereof, an orderly liquidation of the Debtor's assets or any combination thereof.  If no Plan of Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11 case may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

In a liquidation, a Chapter 7 Trustee would be appointed with the purpose of liquidating the assets of the Debtor.  Typically, in a liquidation, assets are sold for less than their going concern value and, accordingly, the return to Creditors and Interest holders is less than the return in a reorganization, which derives the value to be distributed in a Plan from the business as a going concern.  Proceeds from liquidation would be distributed to Creditors and Interest holders of the Debtor in accordance with the priorities set forth in the Bankruptcy Code.

The Debtor believes that there is no currently available alternative that would offer holders of Claims and Interests in the Debtor greater than the Plan and urges all parties entitled to vote on the Plan to vote to accept the Plan.

## X.    CONCLUSION

Please read this Disclosure Statement and the Plan carefully.  After reviewing all the information and making an informed decision, please vote by using the enclosed ballot.

Dated:  June ~~3,~~13, 2011.

Respectfully submitted,

SALPARE BAY, LLC

By:  ITS MANAGER, COLUMBIA RIM CORPORATION, a Washington corporation

By:/s/ Michael J. DeFrees
    Michael J. DeFrees, President

Presented by:
FARLEIGH WADA WITT

By:/s/ Tara J. Schleicher
    Tara J. Schleicher, OSB #954021
    tschleicher@fwwlaw.com
    Of Attorneys for Debtor Salpare Bay, LLC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Document comparison by Workshare Professional on Monday, June 13, 2011 3:49:07 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/Users/dfallon/Desktop/33E6953-Disclosure Statement - Second Amended.DOC |
| Description | 33E6953-Disclosure Statement - Second Amended |
| Document 2 ID | file://C:/Users/dfallon/Desktop/33I8387-Disclosure Statement - Third Amended.DOC |
| Description | 33I8387-Disclosure Statement - Third Amended |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 134 |
| Deletions | 174 |
| Moved from | 44 |
| Moved to | 44 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 396 |

1  Tara J. Schleicher, OSB #954021
   TSchleicher@fwwlaw.com
2  Peter C. McKittrick, OSB #852816
   PMcKittrick@fwwlaw.com
3  Farleigh Wada Witt
   121 SW Morrison Street, Suite 600
4  Portland, Oregon 97204-3136
   Telephone: (503) 228-6044
5
        Attorneys for Debtor
6

7           IN THE UNITED STATES BANKRUPTCY COURT

8               FOR THE DISTRICT OF OREGON

9  In re                          Case No. 10-35333-tmb11

10 Salpare Bay, LLC,

11                    Debtor.      DEBTOR'S THIRD AMENDED CHAPTER
                                   11 DISCLOSURE STATEMENT (JUNE 13,
12                                 2011)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1

**TABLE OF CONTENTS**

2

IN THE UNITED STATES BANKRUPTCY COURT ......................................... 1
FOR THE DISTRICT OF OREGON ........................................................................ 1
I.      INTRODUCTION AND SUMMARY OF PLAN ................................. 1
        A.      INTRODUCTION.......................................................................... 1
        B.      SUMMARY OF PLAN ................................................................. 3
        C.      BRIEF EXPLANATION OF CHAPTER 11 ............................ 7
II.     BACKGROUND AND GENERAL INFORMATION .......................... 7
III.    THE BANKRUPTCY CASE ................................................................. 14
        A.      THE FILING ................................................................................ 14
        B.      POST–PETITION DEVELOPMENTS ..................................... 14
IV.     ASSETS AND LIABILITIES ............................................................... 15
        A.      ASSETS ........................................................................................ 15
                1.      Real Property. ................................................................ 16
        B.      LIABILITIES ............................................................................... 16
        C.      UNSECURED CREDITORS ...................................................... 17
        D.      ADMINISTRATIVE EXPENSES ............................................. 17
V.      DESCRIPTION OF PLAN OF REORGANIZATION ....................... 18
        A.      UNCLASSIFIED CLAIMS ......................................................... 18
        B.      CLASSIFIED CLAIMS ............................................................... 18
                1.      Overall Plan Implementation. ...................................... 18
                2.      Class 1 (Other Priority Claims). .................................. 20
                3.      Class 2 (City of Portland Secured Claim). .................. 20
                4.      Class 3 through 6 (Construction Liens). ...................... 20
                5.      Class 7 (County Secured Claim for Property Taxes). .. 21
                6.      Class 8 (Small Unsecured Claims). .............................. 21
                7.      Class 9 (Common Fund Claim). .................................... 21
                8.      Class 10 (General Unsecured Claims). ......................... 22
                9.      Class 11 (Subordinated Claims). .................................. 22
                10.     Class 12 (Interests). ....................................................... 22
        C.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...... 23
        D.      EFFECT OF CONFIRMATION ................................................ 24
                1.      DISCHARGE .................................................................. 24
                2.      REVESTING, OPERATION OF BUSINESS .................. 24
                3.      INJUNCTION ................................................................. 24
                4.      MODIFICATION OF THE PLAN; REVOCATION OR
                        WITHDRAWAL OF THE PLAN ..................................... 25
                5.      RETENTION OF JURISDICTION ................................. 25
                6.      UNITED STATES TRUSTEE FEES ............................... 26
VI.     VOTING PROCEDURES AND CONFIRMATION OF A PLAN. ..... 26
        A.      BALLOTS AND VOTING DEADLINE .................................... 26
        B.      PARTIES ENTITLED TO VOTE .............................................. 28
        C.      VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN ... 29
        D.      "CRAM DOWN" OF THE PLAN ............................................. 29
        E.      CONFIRMATION HEARING ................................................... 30
VII.    LIQUIDATION ANALYSIS ................................................................. 30
VIII.   CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .. 31
IX.     ACCEPTANCE AND CONFIRMATION OF THE PLAN................. 32
        A.      CONFIRMATION HEARING ................................................... 32

i

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1

**B.     REQUIREMENTS OF CONFIRMATION** ..................................................... 32
**C.     FEASIBILITY** ............................................................................................ 32

2

**D.     RISK FACTORS** ....................................................................................... 33
       **1.     GENERAL FINANCIAL MARKET CONDITIONS** .................. 33

3

       **2.     PROJECTED FINANCIAL RESULTS** ........................................ 33
       **3.     DEPENDENCE ON SUBCONTRACTORS** ................................. 33

4

       **4.     CLAIM AMOUNTS** ................................................................... 34
**E.     CRAM DOWN** .......................................................................................... 34

5

**F.     ALTERNATIVES TO CONFIRMATION OF THE PLAN** .......................... 34
**X.     CONCLUSION** ............................................................................................... **35**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ii

***FARLEIGH WADA WITT***
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

## I.     INTRODUCTION AND SUMMARY OF PLAN

### A.     INTRODUCTION

On June 7, 2010 (the "Petition Date"), Salpare Bay, LLC ("Debtor" or "Salpare") filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is seeking acceptance of Debtor's Plan of Reorganization (the "Plan") by the creditors of the Debtor's estate. This Disclosure Statement (the "Disclosure Statement") describes:

• Historical information regarding the Debtor and the events leading to its bankruptcy filing.

• Significant events since the bankruptcy filing.

• How the Plan proposes to treat claims of the type you hold (i.e., what you will receive on your claim if the Plan is confirmed).

• Who can vote on or object to the Plan.

• What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.

• Why the Debtor believes the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive on your Claim in liquidation.

• The effect of confirmation of the Plan.

A copy of the Debtor's Chapter 11 Plan  (the "Plan") is attached hereto as Exhibit 1.  You are urged to review the Plan and, if appropriate, consult with counsel about the Plan and its impact on your legal rights before voting on the Plan.  Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.

This Disclosure Statement has been prepared by the Debtor based upon its knowledge and information in Debtor's books and records.  The information contained herein

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  has been prepared in good faith, based upon information available.  The information concerning

2  the Plan has not been subject to a verified audit.  The Debtor believes this Disclosure Statement

3  complies with the requirements of the Bankruptcy Code.

4        The statements contained in this Disclosure Statement are made as of the date

5  hereof, unless another time is specified herein, and the delivery of this Disclosure Statement shall

6  not imply that there has been no change in the facts set forth herein since the date of this

7  Disclosure Statement and the date of the material relied on in preparation of this Disclosure

8  Statement was compiled.  The description of the Plan contained in this Disclosure Statement is

9  intended as a summary only and is qualified in its entirety by reference to the Plan itself.  If any

10  inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan are

11  controlling.  Each holder of a Claim is encouraged to read, consider and carefully analyze the

12  terms and provisions of the Plan.

13        This Disclosure Statement may not be relied on for any purpose other than to

14  determine how to vote on this Plan.  Nothing contained herein shall constitute an admission of

15  any fact or liability by any party, or be admissible in any proceeding involving Debtor or any

16  other party, or be deemed conclusive advice on the tax or other legal effects of the reorganization

17  on the holders of Claims or Interests.

18        The Debtor submits this Disclosure Statement in accordance with Section 1125 of

19  the Bankruptcy Code and Bankruptcy Rule 3016.  The Bankruptcy Court has scheduled a

20  hearing on confirmation of the Plan to commence on _____ __, 2011 at ____.  The

21  Bankruptcy Court will hold that hearing at the United States Bankruptcy Court for the District of

22  Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, Portland, Oregon 97204 before the

23  Honorable Trish M. Brown.  The hearing on confirmation may be adjourned from time to time

24  by the Bankruptcy Court without further notice, except for an announcement made at the hearing

25  or any adjournment thereof.

26  _/ / /_

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    A ballot has been enclosed with this Disclosure Statement for use in voting on the

2  Plan.  In order to be tabulated for purposes of determining whether the Plan has been accepted or

3  rejected, ballots must be received at the address indicated on the ballot no later than 4:00 p.m. on

4  _____, 2011.

5    **B.    SUMMARY OF PLAN**

6    A copy of the Plan is attached hereto as Exhibit 1.  The following description of

7  the Plan is intended as a summary only and is qualified in its entirety by reference to the Plan.

8  The Debtor urges each holder of a Claim to carefully review the entire Plan, together with this

9  Disclosure Statement, before voting on the Plan.

10    Through a mediation held on various dates with the Honorable Michael R. Hogan

11  ("Judge Hogan") between the Debtor, J.E. Dunn Northwest, Inc. ("Dunn"), the other Secured

12  Creditors with Construction Lien Claims ("Construction Creditors"), Harbor and the City of

13  Portland (collectively the "Parties"), the Parties reached a settlement regarding their disputes, the

14  claims between them related to the Project and the pending bankruptcy proceedings (the

15  "Settlement Agreement").  Pursuant to the Settlement Agreement, the Settlement Parties consent

16  to confirmation of the Plan on the terms set forth herein.  A copy of the Settlement Agreement is

17  attached hereto as Exhibit 2.

18    The general terms of the Settlement Agreement include the Construction

19  Creditors and the City of Portland receiving payments equal to 88.26% of their judgment

20  amounts inclusive of principal, fees, costs and interest as the Confirmation Date[1] (the

21  "Discounted Judgment Amount") in three installments on or before the following dates:  June 30,

22  2012; October 31, 2012 and June 30, 2013.  Interest shall accrue on the Discounted Judgment

23  Amount at the rate of 3.25% per annum from the Effective Date.  As part of the Settlement

24  Agreement, the principals of Harbor, George Killian and Lance Killian, shall convey their

25  _____

[1] The total judgment amount claimed by the Construction Creditors and the City of Portland is set forth on
26  Exhibit A to the Settlement Agreement.

**Page 3  - DEBTOR'S  THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    membership interests in Harbor to the Debtor and, as inducement for the Debtor to accept that

2    assignment, George Killian and Lance Killian shall pay $40,000 to the Debtor.

3              The Debtor will commence development of the Property by first obtaining a

4    priming loan with a maximum amount of $500,000 (with leave to seek an additional $250,000)

5    to prepare the Property for the development of a multi-family residential project in two (2)

6    phases around the Marina, and second, through an FHA loan to commence construction on phase

7    1.[2]  The funding for that development will allow the Debtor to move forward with the Project,

8    with Creditors holding Allowed Claims secured by perfected construction liens[3] to be paid in full

9    by June of 2013.

10             The only Secured Creditors in this case are the county taxing authorities and

11   Creditors asserting that they hold a Claim secured by a perfected Construction Lien asserted

12   under Oregon law or by judgment.  The Debtor will develop the Property with three distinct

13   sections, and to the extent necessary, will partition the Property into three separate portions:  (1)

14   the Marina; (2) Phase 1;[4] and (3) Phase 2.[5]  The Debtor is working with land use attorney,

15   Dorothy Cofield, to either partition the Property or obtain verification from the City of Portland,

16   that a partition is not necessary to allow a lender or Secured Creditor to foreclose on a portion of

17   the Property subject to a trust deed or lien and obtain a division or unit of land that is not a

18   partition but can be deeded to a separate owner after foreclosure.  The City of Portland has

19   confirmed the latter and that it will continue to apply the past land use approvals to the entire

---

[2]  Alternatively, the Debtor will obtain a conventional loan to develop the Property.

[3] Dunn contends that the constructions liens asserted by Secured Creditors are perfected, have been foreclosed and that such liens constitute state court judgment liens against the Property.

[4] The Debtor intends to develop the first phase of the multi-family residential project with approximately 166 apartment units and ancillary improvements where Building C currently sits on the Property, as indicated on Exhibit 3 hereto.

[5] Phase 2 means the development of the remainder of the planned approximately 371 multi-family residential units as indicated on Exhibit 3 hereto.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  site, notwithstanding a foreclosure on a portion of the Property and, thus, if the FHA lender

2  approves, then a partition may not be necessary, which will save significant costs to the estate.

3  The Marina condominium plat will be finalized and recorded with the State of Oregon to effect a

4  division of the marina property from the upland multi-family property.  Notwithstanding the

5  platting of the Marina condominium, the Construction Creditors' liens shall remain in effect

6  pursuant to the Settlement Agreement.

7          Under the Settlement Agreement, the Parties have agreed that the Debtor shall

8  obtain a maximum loan of $500,000, which shall be secured with a trust deed to which the

9  Construction Creditors will subordinate their liens (the "Priming Loan"), to put in a parking lot

10  for the Marina, possibly partition the Property as set forth above, and to develop the Property

11  sufficient to obtain the FHA loan on Phase 1 (surveying, engineering and other related

12  costs/expenses).  The Construction Claimants may consider an additional $250,000 to the

13  Priming Loan upon receipt of a fully executed commitment letter from a bank or other financial

14  institution agreeing to loan the Debtor the funds necessary to construct Phase 1 of the Project.

15          Upon the closing of the FHA loan on Phase 1, the Construction Creditors will

16  release their liens on Phase 1 to allow the FHA lender to obtain a first lien upon the Property,

17  subject to payment of the amounts set forth herein to those Secured Creditors with Construction

18  Lien Claims.  Upon the closing of the FHA loan on Phase 1, and when the Debtor makes its

19  initial payment to the Construction Creditors, each such Claimant will retain its lien on the

20  Marina and Phase 2 with the same priority such lien had on the Petition Date.  The Debtor will

21  refinance the Marina and make another payment to the Construction Creditors by October 31,

22  2012, at which time those Claimants will release their liens on the Marina.  Such Claimants will

23  be paid in full by June of 2013 from loan proceeds obtained by the Debtor.  Small creditors with

24  Unsecured Claims equal to or less than $2,000 will be paid 100% of their Allowed Claim in

25  Cash, with 25% being paid October 31, 2012 and the remaining 75% being paid on or before

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    June 30, 2013.  The Creditor holding the Common Fund Claim, Stoel Rives,[6] will receive

2    distributions of 30% of Net Income generated by the Reorganized Debtor on a quarterly basis as

3    early as the quarter ending December 31, 2012 and ending December 31, 2017 until its Allowed

4    Claim is paid in full without interest.  After payment of the Allowed Common Fund Claim,

5    Creditors holding General Unsecured Claims will receive Pro Rata distributions of 30% of Net

6    Income generated by the Reorganized Debtor on a quarterly basis as early as the quarter ending

7    December 31, 2012.  However, it is unlikely that Allowed General Unsecured Claims will begin

8    receiving payments until the quarter ending March 31, 2017.  General Unsecured Claims shall

9    receive no less than 10% on their Allowed General Unsecured Claims, but are projected to

10   receive 29% on their Allowed General Unsecured Claims.  Should the Court determine that the

11   Common Fund Claim of Stoel Rives should not be classified separately from the General

12   Unsecured Claims, then its Allowed Claim shall be treated as a General Unsecured Claim.  In

13   that event, the anticipated distribution to all General Unsecured Claims is projected to be higher

14   than 29%.  All post-petition and Administrative Expense Claims will be paid upon the Effective

15   Date unless such Claimant agrees to different treatment in writing.  All current equity interests

16   will either be retained by the current owner, Mr. DeFrees, or transferred to the Debtor by the

17   owners of Harbor, as set forth herein.  Mr. DeFrees shall retain his current equity interests in

18   exchange for his subordination of his $10,900,000 General Unsecured Claim.

19           All unexpired leases and executory contracts will be rejected by the Debtor

20   through the Plan unless such unexpired leases and executory contracts have previously been

21   assumed and assigned, or rejected, or a motion seeking their assumption or rejection has been

22   Filed before the Confirmation Date.

23           The Effective Date of the Plan shall be _____, 2011 or the 10th day

24

25   [6] Under the common fund doctrine, a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. *See, e.g., Boeing, Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d  676 (1980).

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741