1     following entry of the Confirmation Order, whichever is later.

2          In the event that any Class of Creditors of the Debtor does not accept the Plan, the

3     Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance

4     with Section 1129(b) of the Bankruptcy Code or otherwise modify the Plan.

5        **C.**      **BRIEF EXPLANATION OF CHAPTER 11**

6          Chapter 11 of the Bankruptcy Code is the principal reorganization provision of

7     the Bankruptcy Code.  Pursuant to Chapter 11, a debtor attempts to reorganize its business for

8     the benefit of the debtor, its creditors, and other parties in interest.

9          The formulation and confirmation of a plan of reorganization is the principal

10     purpose of a Chapter 11 case.  A plan of reorganization sets forth a proposed method for

11     compensating the holders of claims and interests in the debtor.  A claim or interest is impaired

12     under a plan of reorganization if the plan provides that the legal, equitable or contractual rights

13     of the holder of such claim or interest are altered.  A holder of an impaired claim or interest is

14     entitled to vote to accept or reject the plan.  Chapter 11 does not require all holders of claims and

15     interests to vote in favor of a plan in order for the Bankruptcy Court to confirm it.  However, the

16     Bankruptcy Court must find that the plan meets a number of statutory tests before it may approve

17     the plan.  These tests are designed to protect the interests of the holders of claims or interests

18     who do not vote to accept the plan, but who will nonetheless be bound by the plan's provisions if

19     it is confirmed by the Bankruptcy Court.

20          An official committee of unsecured creditors is appointed by the United States

21     Trustee's office in most Chapter 11 cases to, among other things, negotiate the plan of

22     reorganization on behalf of the unsecured creditors of the debtor.  A committee of unsecured

23     creditors was not appointed by the United States Trustee in this case.

24     **II.**      **BACKGROUND AND GENERAL INFORMATION**

25        **A. PROPERTY DEVELOPMENT**

26          Salpare and Harbor are the owners of  real property on Hayden Island, Portland,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   Oregon that was to be developed into a luxury riverfront planned community of 204 high-end

2   residential water view condominium units commonly known as Salpare Bay (the "Project").

3   Salpare and Harbor own the Project with an undivided 85% and 15% interest, respectively,

4   pursuant to a tenancy in common agreement.  However, pursuant to the Settlement Agreement,

5   the owners of Harbor will transfer their membership interests in Salpare to Salpare; therefore,

6   Harbor will no longer own an interest in Salpare or the Property.

7         Salpare began construction in approximately 2005 on the related marina and other

8   horizontal improvements.  The Project presently includes 24.5 acres of land, a marina, 200 feet

9   of beach on the Columbia River, 14 acres of water, 204 slips to accommodate large crafts and

10   amenities and facilities such as wireless internet, cable television, laundry, showers and dump

11   station facilities.

12         BankFirst, Inc. ("BankFirst") was the lead lender of 41 participating lenders who

13   promised $63 million in construction financing (the "Loan") for the Project.  However, after it

14   received nearly $1 million in loan fees at the closing of the Loan in December 2006, BankFirst

15   was dilatory in funding the Loan.  Later, in June 2007, it stopped funding the Loan entirely based

16   on a pretextual default, claiming Salpare and Harbor had failed to fulfill certain presold unit

17   requirements that BankFirst had previously waived on numerous occasions.  Moreover,

18   BankFirst misled Salpare into proceeding with construction, even though as it turns out,

19   ultimately, it had no ability to fund the Loan.  Notably, Salpare was in full compliance with the

20   Loan terms, including fulfilling all monthly payment obligations.

21         In the meantime, despite Salpare's compliance with the Loan, unbeknownst to the

22   guarantor Michael DeFrees ("DeFrees"), BankFirst confiscated DeFrees' $4 million bank

23   account that was provided as additional collateral for the Loan that he had intended to use to

24   fund the Project.   BankFirst, realizing that it had problems declaring a default under these

25   conditions without a release of Salpare's claims, demanded under a threat of default and

26   foreclosure, execution of a first amendment of the Loan documents (the "First Amendment") that

**Page 8**  **- DEBTOR'S  THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
**(June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    purported to resurrect and reinstate the presale conditions that it waived; required Salpare to

2    fulfill the resurrected conditions by selling $50 million in units in what was ultimately a two-

3    week period;  retroactively required Salpare to bless BankFirst's unlawful confiscation of

4    DeFrees' bank account; and provided for a release and waiver of all claims against BankFirst for

5    its wrongful conduct.  Salpare and Harbor complained that the First Amendment was impossible

6    to fulfill, lacked any consideration and was simply unlawful.  BankFirst rejected such

7    complaints.  BankFirst reiterated its threat of foreclosure and added a promise to negotiate a

8    further extension after the First Amendment was executed.  Although Salpare executed the First

9    Amendment, BankFirst did not negotiate further for an extension as promised.

10        What Salpare and Harbor did not know, and BankFirst did not disclose to them

11    during these events, was that BankFirst was having its own financial problems.  Within days

12    after Salpare and Harbor signed the First Amendment, on August 7, 2007 BankFirst executed

13    with the Federal Reserve an agreement ("Consent Order") which limited its funding of future

14    loans to the maximum amount on BankFirst' books as of March 12, 2007, which was about the

15    time that BankFirst's funding of the Loan slowed nearly to a stop.

16        As a result of BankFirst's failure to fund the Loan, all construction at the Project

17    ceased.  The contractor, Dunn, and subcontractors had performed a substantial amount of work

18    for which Salpare could not pay them because of BankFirst's failure to fund the Loan; thus, they

19    filed construction liens against the Property.  On or about October 26, 2007, the Construction

20    Creditors filed an action on their construction claims ("Construction Claims") in that case known

21    as *J.E.Dunn Northwest, Inc. v. Salpare Bay, LLC, et. al.* in the Circuit Court of the State of

22    Oregon, Multnomah County, Case No.  0710-12536 (the "Dunn Action").    Thereafter, the

23    Project deteriorated.  The sales agents and team quit; purchasers of the presold units cancelled

24    their purchases and withdrew their deposits; and the development came to a halt in all respects

25    by the end of 2007.

26        In the Dunn Action, BankFirst asserted claims based on the Loan against Salpare,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  Harbor, DeFrees, Columbia Rim Construction, Inc. and Columbia Rim Corporation (collectively,

2  the "Salpare Parties").  The Salpare Parties counterclaimed against BankFirst and the participant

3  lenders, originally identified only as the "DOES," because their identity was not known. The

4  Salpare Parties claimed $130 million in damages, plus any penalties and attorneys' fees that may

5  be awarded for breach of contract, negligence, interference with contract, promissory estoppel,

6  conversion, breach of good faith and fair dealing, breach of fiduciary duty, four counts of fraud,

7  negligent misrepresentation, rescission and violation of Oregon Racketeer Influenced and

8  Corrupt Organization Act.

9          The Dunn Action was bifurcated between the Construction Claims and the Loan

10  claims.   When a Limited Judgment was about to be entered in the Dunn Action on the

11  Construction Claims, BankFirst's assets were seized by the Federal Deposit Insurance

12  Corporation ("FDIC").  After the FDIC removed the entire Dunn Action, a Limited Judgment

13  was entered in the Circuit Court of the State of Oregon on September 9, 2009, which Salpare

14  contends had no effect since the Dunn Action had been removed.  To further add to the problems

15  with that Limited Judgment, it was entered *nunc pro tunc* to April 21, 2009, thus invalidly

16  cutting off parties' appeal rights.  Following the transfer of the Dunn Action back to the Circuit

17  Court of State of Oregon, an Order Reaffirming the Limited Judgment was signed and entered on

18  January 22, 2010, but no separate Limited Judgment was entered on that date and the Order

19  Reaffirming the Limited Judgment did not correct the inappropriate nunc pro tunc entry that cut

20  off parties' appeal rights.

21          Dunn contends that the method and timing by which the State Court entered the

22  Limited Judgment did not cut off the parties' appeal rights.   Dunn contends that there are four

23  key facts concerning the Dunn Action:  (1) that the State Court found that the construction liens

24  had priority over BankFirst's position; (2) that the liens cover the entire Property, including the

25  Marina; (3) that Salpare stipulated to the amounts due to the plaintiffs in the Dunn Action; and

26  (4) that the State Court made detailed findings of fact and conclusions of law.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    After the Dunn Action was returned to the Circuit Court of the State of Oregon, it

2  was further bifurcated with BankFirst's and the Salpare Parties' claims removed to Federal Court

3  for disposition in the United States District Court for the District of Oregon Case No. 10-373-PK

4  (the "Federal Case").    In those proceedings, the Salpare Parties identified and served the

5  participant lenders requiring that they appear and defend against the Salpare Parties' claims.[7]  In

6  the Federal Case, the Salpare Parties and George Killian (the principal of Harbor) on the one

7  hand, and the FDIC and participants on the other, entered into a settlement on the record on June

8  2, 2010 that resolved all claims between them.  In the meantime, Dunn sought to proceed with an

9  execution sale on the Limited Judgment for the Construction Claims, with a foreclosure sale

10  scheduled for June 8, 2010.

11    The Salpare Parties, the FDIC for BankFirst, and the loan participants entered into

12  a written settlement agreement on or about June 7, 2010, pursuant to which all parties agreed to

13  dismiss the Federal Case and the Salpare Parties released their claims against BankFirst, the loan

14  participants and the FDIC (the "Settlement").  As a result of the Settlement and in consideration

15  of the Salpare Parties' release of their claims (the value of which was equal to or exceeded the

16  Loan balance), the FDIC for BankFirst and the loan participants have agreed not to seek payment

17  on the Loan from Salpare or Harbor.  The only Secured Claims against the Property are those

18  held by construction lien claimants and real property taxing authorities, all totaling

19  approximately $7.5 million.

20    Salpare currently operates a high-end marina business with 204 slips on the

21  Property.  The Marina was completed in 2007 and became operational in the Spring of 2007.

22  The Marina is an extremely attractive and appealing operation situated on the Columbia River,

23  having been constructed and dredged at significant cost by Salpare.  Salpare maintains a

24  clubhouse for the Marina with laundry, kitchen, bathroom and shower facilities and rents out a

25

26

[7]  During the litigation the identity of the participants was learned as the result of an Order obtained by the Salpare compelling BankFirst to provide discovery.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    yacht sales office.  It contracts for catering events, repair and cleaning of boats and provides

2    other services and goods for compensation to its lessees.  Each slip has dockside access to

3    electricity, water and internet service.  Moreover, the Marina has extrinsic value in that it is the

4    only marina in Oregon that has fee title ownership for each slip.[8]  Therefore, there is an

5    opportunity for the slips at the Marina to be sold individually and not subject to any leasehold

6    interest held by a governmental authority.

7             Due to the changes in the overall economic climate since 2005, the Debtor now

8    plans to construct approximately 371 apartment units on Phase 1 and Phase 2 of the Property.

9    The building pads at Building C for the previously planned condominium project are anticipated

10   to serve as the foundation for Phase 1 of the proposed multi-family development.  Salpare

11   intends to develop the Property in two (2) phases, with the first phase comprised of

12   approximately 166 apartment units and ancillary improvements.

13            Salpare currently maintains temporary parking for the Marina on the industrial

14   zoned portion of the Property.  Salpare has filed an application to construct permanent parking

15   for the Marina on the Property and has retained land use counsel, Dorothy Cofield, to assist it in

16   obtaining the conditional use application from the City of Portland as well as to possibly divide

17   the commercial zoned land from the marina (by either a partition or as a unit of land created by a

18   deed of trust metes and bounds legal description), which it believes will generate more options

19   for the development of the Property as a multi-family residential and marina project.

20            Salpare has a term sheet from a reputable well-known lender for the FHA

21   221(d)(4) of the National Housing Act loan that it seeks to develop Phase 1 of the Property (the

22   "FHA Lender").  Salpare hired Obsidian Finance Group early on in this case to provide financial

23   consulting services to it in its endeavors to develop the Property and obtain financing for it.

24   Salpare also hired Steven Wiltshire of Marcus & Millichap ("M&M), a financial services broker.

25   _____

[8] Dunn disagrees that the marina slips may be sold individually.

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    An FHA 221(d) mortgage loan is a multifamily construction loan guaranteed by FHA/HUD.

2    Unlike some FHA/HUD programs, there is no requirement that the multifamily units be offered

3    at below market rents.

4           Salpare's FHA Lender has issued a term sheet to Salpare for an FHA 221(d)

5    mortgage loan on the following general terms:  (i) a proposed loan amount of $19,938,200; (ii) a

6    current estimated interest rate of 5.75%; (iii) a construction loan term of the construction period

7    plus four months, interest only; (iv) a permanent loan term of 40 years or 75% of the remaining

8    useful economic life of the Property; (v) no prepayment for 2 years without a fee; (vi) total

9    deposits due at application of $37,500; (vii) a financing fee of 2% of the loan amount, with a

10   good faith deposit of .5% and a firm commitment application fee of .3%; (viii) secured by a first

11   lien encumbering Phase 1 of the Property.  The construction period is to be 14 months to allow

12   for 12 months construction and two months for cost certification, which requires Salpare and the

13   general contractor to submit a cost certification prepared by an independent public accountant

14   upon completion of construction.  Upon issuance of a Certificate of Occupancy, the loan will be

15   converted to a 40-year fixed term with a 40-year amortization, with a loan rate of 5.75%.  The

16   loan will be non-recourse.  The loan origination fee will be .73% of the loan amount payable at

17   closing of the loan.

18          Salpare's projections indicate gross potential rental income of $2.7 million to $2.9

19   million for just the first 166 units.  While occupancy rates have dropped over the past few years,

20   the market is improving and established multi-family residential developments in the Portland

21   area continue to be feasible.

22          **B. MANAGEMENT**

23          Columbia Rim Corporation ("CR Corp.") is the manager of the Debtor's limited

24   liability company.  CR Corp.'s shares are owned 50% by Michael DeFrees ("DeFrees") and 50%

25   by Christy DeFrees.  DeFrees runs the day to day operations of CR Corp.  DeFrees is the sole

26   member of the Debtor and runs the day to day operations of the Debtor.  DeFrees is a native of

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   the Vancouver, Washington area and began his career as a developer by building single family

2   residential housing projects in the early 1980s.  He then began developing commercial projects

3   and has developed hotels, recreational vehicle parks, medical complexes, and apartment

4   buildings over his 30-year career.  DeFrees is not an employee of the Debtor; rather the Debtor

5   pays Gateway National Corporation ("Gateway") for the services provided to it by Gateway's

6   employees, of which DeFrees is one.  DeFrees is shareholder and the President of Gateway.  The

7   Debtor pays approximately $5,000 per month for management fees to Gateway for the services

8   DeFrees and others perform on its behalf.  DeFrees will continue to oversee the operations of the

9   Debtor and will continue to be paid from his other entities for such services provided.

10   **C.  FINANCIAL PERFORMANCE**

11   Attached hereto as Exhibit 4 are the income statements for the Debtor for its fiscal

12   years ending in the prior three years.  The income statements reflect the expense associated with

13   the BankFirst related debt and, thus, do not provide an accurate picture of the Debtor's true net

14   income from its current operations because BankFirst no longer seeks payment of that debt

15   pursuant to the Settlement.  Additional or more detailed information may be obtained by

16   submitting a written request to Debtor's counsel identifying the information sought.

17   **III.  THE BANKRUPTCY CASE**

18   **A.  THE FILING**

19   The Debtor filed its voluntary petition for relief under Chapter 11 of the

20   Bankruptcy Code on June 7, 2010.

21   **B.  POST–PETITION DEVELOPMENTS**

22   After the filing of the Petition, the Debtor sought and obtained the following

23   orders:  (1) an Order Pursuant to 11 USC § 366(a) Finding Adequate Assurance of Payment for

24   Future Utility Services (Docket No. 36); (2) an order authorizing the employment of Powell

25   Valuation, Inc. as an appraiser for the Debtor's Property (Docket No. 73); (3) an order

26   authorizing the employment of Farleigh Wada Witt as counsel for the Debtor (Docket No. 90);

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   (4) an order authorizing the employment of Obsidian Finance Group, LLC ("Obsidian") as a

2   financial consultant to the Debtor (Docket No. 80); an order authorizing the employment of

3   Marcus & Millichap Capital Corporation as a loan broker to the Debtor (Docket No. 110); and an

4   order authorizing the employment of Dorothy Cofield as the Debtor's land use attorney (Docket

5   No. 105).  Because the BankFirst debt was eliminated prepetition, there was no need for the

6   Debtor to obtain an order authorizing use of cash collateral.

7           Almost immediately after the Debtor filed its Petition, Dunn filed a motion for

8   relief from stay to foreclose its asserted construction lien against the Property, alleging that there

9   was no equity in the Property for the Debtor and that it was not necessary for an effective

10  reorganization.  After a two-day contested hearing before the Court held on August 3 and 4,

11  2010, the Court entered an order denying Dunn's motion and holding that there is equity in the

12  Property over the amount of Dunn's asserted secured claim, that the Property is necessary for an

13  effective reorganization and that the Debtor did not file this case in bad faith.  This Court also

14  found that this is a single asset real estate case under 11 USC §101(51B) and that, thus, the

15  provisions of 11 USC §362(d)(3) apply.

16          The US Trustee's Office has not appointed an unsecured creditors committee in

17  this case.

18          As previously discussed in Section I(B), supra, the Debtor, Harbor and the

19  Construction Creditors engaged in lengthy settlement discussions with the assistance of Judge

20  Hogan, which culminated in the parties agreeing to the Settlement Agreement attached hereto as

21  Exhibit 2.  The Settlement Agreement was the subject of a separate notice of intent to settle for

22  this Court's approval.  The Settlement Agreement was approved by this Court by Order entered

23  June 13, 2011.  Pursuant to the Settlement Agreement, the Construction Creditors and Harbor

24  have agreed that they will consent to the Debtor's Plan.

25  **IV.    ASSETS AND LIABILITIES**

26  **A.    ASSETS**

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1      **1.     Real Property.**

2      The Debtor's assets consist primarily of the Property, which is comprised of a

3  204-slip, fully operating high-end marina on the Columbia River, a commercially zoned parcel

4  of land about 24 acres in size that contains a partially constructed parking garage that may be

5  used in the 375-unit apartment complex contemplated by the Debtor's Plan, and an industrially

6  zoned parcel of land about 1.8 acres in size that currently houses temporary parking for the

7  marina and a high-end sales trailer leased by a yacht sales company, Royal Marine.

8      **2.     Other Property.**

9      The Debtor's other assets consist of a claim against its co-owner of the Property,

10  Harbor for the amounts Harbor owes it under the joint tenancy agreement.  The Debtor had sued

11  Harbor to recover on that claim in Adversary Proceeding No. 10-03252, but that claim is to be

12  settled under the Settlement Agreement for the transfer of the Killians' membership interests in

13  Harbor to Salpare and, as inducement for Salpare to accept such assignment, payment by Harbor

14  to Salpare of $40,000.  The Debtor's remaining assets include the sales trailer leased to Royal

15  Marine worth approximately $273,000, the lease with Royal Marine, and the sales office

16  furniture and office equipment, formerly in the sales trailer when it housed the Debtor's sales

17  team for the condominium Project, worth approximately $42,000.

18      **B.    LIABILITIES**

19      The Debtor's only asserted Secured Creditors in this case are Creditors asserting

20  that they hold a claim secured by a perfected construction lien asserted under Oregon law or by

21  judgment and the county taxing authority.  For the reasons set forth in Section II.A. above, the

22  Debtor does not concede that the judgment upon which the asserted Secured Creditors rely is

23  valid or that their purported Construction Liens constitute a lien superior in right to the Debtor or

24  its interests.  The amount asserted to be perfected Construction Liens under Oregon law or by

25  judgment is approximately $7.1 million.  Multnomah County's personal property and real

26  property tax claim is approximately $234,000. The Secured Creditors disagree with the Debtor's

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  position regarding their Construction Liens and content that they have valid judgment liens

2  against the Property.  The Settlement Parties are settling their claims and disputes under the

3  Settlement Agreement.

4          As previously explained, there is no other secured debt in this case because the

5  BankFirst debt was eliminated prepetition.

6  **C.  UNSECURED CREDITORS**

7          The Debtor owes approximately $3 million to unsecured creditors, plus

8  approximately $10 million to the Debtor's sole member, Mr. DeFrees.  The Plan contains three

9  classes of unsecured creditors:  the Common Fund Creditor, Small Unsecured Creditors and

10  General Unsecured Creditors.  The only Common Fund Creditor is Stoel Rives, LLP ("Stoel

11  Rives"), which litigated and negotiated the Federal Case that resulted in the Settlement and the

12  forgiveness of the Loan.[9]  Stoel Rives' claim is approximately $500,000.  Small Unsecured

13  Creditors are Creditors holding claims of $2,000 or less.  The total current outstanding amount

14  due to Creditors holding Claims of $2,000 or less is approximately $32,000.

15  **D.  ADMINISTRATIVE EXPENSES**

16          The Debtor has retained Farleigh Wada Witt as its general bankruptcy counsel in

17  this case (Docket No. 90) and has retained Dorothy Cofield as its land use counsel (Docket No.

18  105).  The Debtor has also retained Obsidian Finance Group, LLC (Docket No. 80) as its

19  financial consultant, and has retained Marcus & Millichap Capital Corporation as its loan broker

20  (Docket No. 110).  Debtor also hired Powell Valuation, Inc. as its real estate appraiser to prepare

21  an appraisal and to testify at the hearing on Dunn's motion for relief from stay (Docket No. 67).

22  The Debtor anticipates that it will incur approximately $250,000 in professional fees and

23  expenses through confirmation of the Plan.

24  

---

25  [9] Under the common fund doctrine, a litigant or lawyer who recovers a common fund for the benefit of
persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.

26  *See, e.g., Boeing, Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d  676 (1980).

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  **V.       DESCRIPTION OF PLAN OF REORGANIZATION**

2        **A.       UNCLASSIFIED CLAIMS**

3              Administrative Expense Claims and Priority Tax Claims are not classified.  An

4  Administrative Expense Claim is a Claim against the Debtor constituting an expense of

5  administration of the Bankruptcy Case allowed under Section 503(b) of the Bankruptcy Code

6  including, without limitation, the actual and necessary costs and expenses of preserving the

7  estate and operating the Debtor's businesses during the Case, any indebtedness or obligations

8  incurred by the Debtor during the pendency of the Case in connection with the rendition of

9  services to the Debtor, and compensation for legal and other professional services and

10 reimbursement of expenses and statutory fees payable to the United State Trustee.

11             A "Priority Tax Claim" is a Claim of a governmental unit of the kind entitled to

12 priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be entitled to

13 priority but for the Secured status of the Claim.  The Debtor owes approximately $243,000 in

14 property taxes.  The property taxes will be paid in accordance with the requirements of Section

15 1129 of the Bankruptcy Code in payments over a period ending five years from the Petition

16 Date.

17             Pursuant to the Plan of Reorganization, Administrative Expense Claims will be

18 paid in full on the latter of the Effective Date or the date on which any such Administrative

19 Expense Claim becomes an Allowed Claim.  However, the Administrative Expense Claims

20 representing liabilities incurred in the ordinary course of business (including amounts owed to

21 vendors and suppliers that have sold products or furnished services to the Debtor after the

22 Petition Date) will be paid in accordance with the written terms and conditions of the particular

23 transactions and any other agreements relating thereto.  The Debtor will tender a list of such

24 ordinary course Administrative Expense Claims at the confirmation hearing.

25       **B.       CLASSIFIED CLAIMS**

26             **1.       <u>Overall Plan Implementation.</u>**

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1      The Debtor will obtain either FHA loans or conventional loans to develop the

2  Property and will pay creditors from a combination of loan proceeds and operating income.

3      Initially, the Debtor will obtain a Priming Loan to make parking lot

4  improvements, to make permit-related payments, to pay professional fees associated with the

5  bankruptcy case, partition of the Property, loan costs and fees and other site and surveying work.

6  The general terms of the Priming Loan include: (i) $500,000, with the possibility of obtaining an

7  additional $250,000 upon receipt of a fully-executed commitment letter from a bank  or other

8  financial institution agreement to loan Salpare the funds necessary for the development of

9  Phase1; (ii) Wall Street prime rate plus 10% floating daily; (iii) $250,000 to be paid to the

10  Priming Loan lender on or before June 30, 2012 as set forth in the Settlement Agreement; (iv)

11  $8,000 application fee; (v) loan fee of 5% upon loan closing; (vi) secured by a first trust deed on

12  the Property; and (vii) release of trust deed by Priming Loan lender on Phase 1 at closing of

13  Phase 1 FHA Loan.  Pursuant to the Settlement Agreement, the Construction Creditors shall

14  subordinate their liens to the trust deed of the Priming Loan lender.

15      As discussed previously, an FHA Lender has issued a term sheet to the Debtor for

16  an FHA 221(d)(4) loan for Phase 1 of the construction on the Property on or before June 30,

17  2012 in the approximate amount of $20 million and Debtor will pay the Discounted Judgment

18  Amount to the Class 2, 3, 4, 5 and 6 Secured Creditors on their claims in three payments on June

19  30, 2012, October 31, 2012 and June 30, 2013.  The Debtor will obtain the loan to commence

20  construction of Phase 1 in approximately June of 2012 with funding provided by the FHA

21  Lender.    By October 31, 2012, the Debtor will refinance the Marina and make the second

22  installment payment to the Secured Creditors as well as the first payment to Multnomah County,

23  and to the extent possible under the terms of the Plan, the first payment to the Common Fund

24  Creditor, to General Unsecured Creditors and the final payment to the Small Unsecured

25  Creditors.  The Debtor intends to obtain financing for Phase 2 of the construction on the Property

26  in approximately June of 2013, at which time the Debtor will pay the Secured Creditors their

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    final payment pursuant to the Settlement Agreement.  The Debtor plans to pay Small Unsecured

2    Creditors, the Common Fund Creditor and General Unsecured Creditors from Net Income.

3           The Debtor proposes to implement this Plan as set forth in the Plan projections

4    attached hereto as Exhibit 5.

5                        **2.      Class 1 (Other Priority Claims).**

6           Class 1 is unimpaired.  Each holder of an Allowed Class 1 Claim will be paid in

7    full in Cash the amount of its Allowed Class 1 Claim, including all interest, costs, fees and

8    charges provided for under any agreement under which such Claim arose or is otherwise allowed

9    by law, on the latter of (a) the Effective Date or (b) the date on which such Claim becomes

10   Allowed, unless such holder shall agree or has agreed to a different treatment of such Claim

11   (including any different treatment that may be provided for in any documentation, agreement,

12   contract, statute, law or regulation creating and governing such Claim.  The Debtor is not aware

13   of the existence of any Other Priority Claims.

14                       **3.      Class 2 (City of Portland Secured Claim).**

15          Class 2 consists of the Claim asserted by the City of Portland under ORS 223, the

16   city charter of Portland and the Portland City Code, as set forth in the Dunn Action judgment in

17   the amount of $152,028.81 as a Secured Claim.  The holder of an Allowed Secured Class 2

18   Claim will be paid as set forth in the Settlement Agreement its share of the Discounted Judgment

19   Amount as follows:  40% on or before June 30, 2012; 40% on or before October 31, 2012 and

20   the remaining 20% on or before June 30, 2013.

21                       **4.      Class 3 through 6 (Construction Liens).**

22          Classes 3 through 6 are impaired and consist of Claims asserted by:  Dunn (Class

23   3), TKS (Class 4), BMI (Class 5) and Myhre (Class 6).  Each Creditor holding a Class 3, 4, 5 or

24   6 Allowed Claim secured by a perfected construction lien will retain its lien with the same

25   priority such lien had on the Petition Date, except as set forth herein at Section 6.3 of the Plan.

26   The Allowed Claims in Classes 3, 4, 5 and 6 will be paid the Discounted Judgment Amount,

**Page 20   - DEBTOR'S  THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT
     (June 13, 2011)**
     P:\Docs\Salpar\28606\Pldg\33i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   together with interest accruing from and after the Effective Date at the rate of 3.25% per annum

2   from the proceeds of the financing of the Property, consistent with the terms of the Settlement

3   Agreement.  The first payment to Classes 3, 4, 5 and 6 of 40% of the Discounted Judgment

4   Amount will occur on the closing of the loan Debtor will obtain to develop Phase 1 or June 30,

5   2012, as set forth in the Settlement Agreement. On or before October 31. 2012, the Debtor

6   anticipates refinancing the Marina and will pay 40% of the Discounted Judgment Amount to

7   Classes 3, 4, 5 and 6 as set forth in the Settlement Agreement.   The Debtor intends to obtain

8   financing to develop Phase 2 on or before June 30, 2013 and will pay the balance of the

9   Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set forth in the Settlement Agreement.

10          **5.**      **<u>Class 7 (County Secured Claim for Property Taxes)</u>.**

11       Class 7 is unimpaired.  The holder of the Class 7 Claim will retain its security

12   interest with the same priority to which it is entitled by law.  The Allowed Class 7 Claimant shall

13   be paid the full amount of its Secured Claim as permitted by 11 USC §1129(a)(9)(D) in full from

14   financing of the Property or Net Income, but not later than five (5) years after the Petition Date.

15          **6.**      **<u>Class 8 (Small Unsecured Claims)</u>.**

16       Class 8 is impaired.  Each holder of a Class 8 Claim will be paid in Cash an

17   amount equal to 25% of their Allowed Claim on or before October 31, 2012 or 30 days of the

18   date their Claim becomes an Allowed Claim, whichever is later.  Thereafter, each holder of a

19   Class 8 Claim will be paid in Cash an amount equal to 75% of their Allowed Claim on or before

20   June 30, 2013.  The total costs of payment to current Small Unsecured Creditors will be

21   approximately $31,000.

22          **7.**      **<u>Class 9 (Common Fund Claim)</u>.**

23       Class 9 is impaired.  Class 9 consists solely of the claim of Stoel Rives.  The

24   holder of a Class 9 Allowed Claim shall be paid by receiving 30% of the Net Income generated

25   by the Reorganized Debtor for each calendar quarter beginning as early as the quarter ending

26   December 31, 2012 and ending December 31, 2017, so long as the Debtor has amounts in excess

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    of $500,000 in ending cash balances, and to the extent that it does not cause the Debtor to default

2    under its loan documents, until the Class 9 Allowed Claim is paid in full without interest.

3    Should the Court determine that Stoel Rives' Claim should not be classified separately from the

4    Class 10 General Unsecured Claims, then Stoel Rives' Claim shall be treated as a Class 10

5    General Unsecured Claim.

6                    **8.      Class 10 (General Unsecured Claims).**

7                    Class 10 is impaired.  After payment of the Class 9 Allowed Claim, each holder

8    of a Class 10 Allowed Claim shall be paid by receiving a Pro Rata share of 30% of the Net

9    Income generated by the Reorganized Debtor for each calendar quarter beginning as early as the

10   quarter ending December 31, 2012 and ending December 31, 2017, so long as the Debtor has

11   amounts in excess of $500,000 in ending cash balances and to the extent it does not cause the

12   Debtor to default under its loan documents.  However, it is unlikely that Class 10 Allowed

13   Claims will begin receiving payments until the quarter ending March 31, 2017.  In no event shall

14   Class 10 Allowed Claims receive less than a Pro Rata distribution equal to 10% of each Class 10

15   Allowed Claim amount.  General Unsecured Claims total approximately $1.7 million, plus

16   approximately $10.9 million to General Unsecured Claims owing to Michael DeFrees, plus any

17   Deficiency Claims of Secured Claims.  Mr. DeFrees has agreed to subordinate payments to him

18   on his General Unsecured Claim and he will be treated as a Class 11 Claimant.  Should the Court

19   determine that Stoel Rives' Claim should not be classified separately from the Class 10 General

20   Unsecured Claims, then Stoel Rives' Claim shall be treated as a Class 10 General Unsecured

21   Claim.

22                   **9.      Class 11 (Subordinated Claims).**

23                  Class 11 is impaired.  Holders of subordinated claims will be paid a Pro Rata

24   share of all remaining Unsecured proceeds after Holders of allowed Class 9 and 10 Claims have

25   been paid in full.

26                  **10.     Class 12 (Interests).**

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1      Class 12 is impaired.  The holder of the Class 12 Claims are the holders of all

2  equity interests in the Debtor.  As a result of the Settlement Agreement, the owners of Harbor

3  will transfer their membership interests in Harbor to Salpare.  The interests of Salpare owned by

4  Harbor will then be cancelled.  All remaining equity interests will be retained by Mr. DeFrees in

5  exchange for the subordination of his $10.9 million General Unsecured Claim.

6      **C.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7      The Bankruptcy Code gives Debtor the right, after commencement of their

8  Chapter 11 cases, subject to the approval of the Bankruptcy Court, to assume or reject executory

9  contracts and unexpired leases.  Generally, an "executory contract" is a contract under which

10  material performance (other than payment of money) is still due by each party.  The Plan

11  provides for assumption of all executory contracts and leases.

12      If an executory contract or unexpired lease is or has been rejected, the Creditor

13  may file a Proof of Claim for damages resulting from such rejection.  The Plan provides that a

14  Proof of Claim with respect to any such Claim must be Filed no later than 30 days after approval

15  of the Bankruptcy Code of the rejection of the relevant executory contract or unexpired lease or

16  30 days after the Effective Date, whichever is sooner.  Any such Claim shall constitute an

17  Unsecured Claim to the extent that such Claim is finally treated as an Allowed Claim.  To the

18  extent the Debtor rejects an unexpired lease of nonresidential real property, the Claim for

19  damages resulting from such rejection will be limited to the amount allowed under the

20  Bankruptcy Code.

21      Upon assumption of an executory contract or unexpired lease, the Debtor must

22  cure or provide adequate assurance of prompt cure of any monetary defaults.  The Plan provides

23  that the Reorganized Debtor will cure all defaults, if any, in the ordinary course of business and

24  will cure any monetary defaults, if any, promptly.  All assumed executory contracts and leases

25  will be automatically assigned to the Reorganized Debtor as of the Effective Date.  The Debtor

26  assumed the leases and executory contracts listed on Exhibit 6.

**Page 23  - DEBTOR'S  THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT**
        **(June 13, 2011)**
    P:\Docs\Salpar\28606\Pldg\33i8387.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

D.    **EFFECT OF CONFIRMATION**

1.    **DISCHARGE**

The treatment of, and consideration received by, holders of Allowed Claims and Allowed Interests pursuant to the Plan will be in full satisfaction, release and discharge of their respective Claims against or interests in the Debtor.  The Confirmation Order shall discharge the Debtor from any liability that arose before the Effective Date as provided in Sections 524 and 1141 of the Bankruptcy Code, and any debt and liability of a kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not:  (a) a Proof of Claim based on such debt or liability is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt or liability is Allowed; or (c) the holder of the Claim based on such debt or liability has accepted the Plan.

2.    **REVESTING, OPERATION OF BUSINESS**

All property of the estates shall revest in Reorganized Debtor on the Effective Date free and clear of all rights, claims, liens charges, encumbrances and interests, except as otherwise provided in the Plan.

3.    **INJUNCTION**

Except as otherwise expressly provided in the Plan, all persons who have held, hold or may hold Claims, or who may have held, hold or may hold any Interest, are permanently enjoined from and after the Effective Date from (a) commencing or continuing in any manner any action or other proceedings of any kind with respect to any Claims or Interests against Reorganized Debtor; (b) enforcing, attaching, collecting or recovering by any manner or any means any judgment, award, decree or order against Reorganized Debtor; (c) creating, perfecting or enforcing any encumbrances of any kind against Reorganized Debtor with respect to any such Claim except as specifically set forth in the Plan; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor, Reorganized Debtor or their property; and (e) proceeding in any manner in any place whatsoever that does not

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  conform to, does not comply with, or is inconsistent with the provisions of the Plan or the order

2  confirming the Plan.

### 4.     MODIFICATION OF THE PLAN; REVOCATION OR WITHDRAWAL OF THE PLAN

Subject to Section 1127 of the Bankruptcy Code and the Settlement Agreement, the Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation so long as the treatment of holders of Claims and Interests under the Plan are not adversely affected.

### 5.     RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order on the Effective Date having occurred and subject to the Settlement Agreement, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or relating to the Chapter 11 Case, including, but not limited to, the following matters: (a) to hear and determine any pending applications for the rejection of executory contracts or unexpired leases, and the allowance of Claims resulting therefrom; (b) to determine any adversary proceedings, applications, contested matters or other litigative matters pending on the Effective Date or Filed prior to the closing of the case; (c) to ensure that distributions to holders of Allowed Claims are accomplished; (d) to hear and determine objections to or requests for estimations of Claims, including any objections to the classification of any Claim, and to allow, disallow and/or estimate any Claim in whole or in part; (e) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (f) to issue any appropriate orders in aid of execution of the Plan or to enforce the Confirmation Order and/or the discharge, or the effect of such discharge, provided to the Debtor; (g) to hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; (h) to hear and determine all applications for compensation and reimbursement of expenses of

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   professionals or members of the Creditors Committee under the Bankruptcy Code; (i) to hear and

2   determine disputes arising in connection with the interpretation, implementation and

3   enforcement of the Plan; (j) to hear and determine other issues presented or arising under the

4   Plan; (k) to hear and determine any other matters related hereto and not inconsistent with

5   Chapter 11 of the Bankruptcy Code; and (l) to enter a final decree closing the Chapter 11 Case.

6               **6.**       **UNITED STATES TRUSTEE FEES**

7         Reorganized Debtor shall be responsible for timely payment of fees

8   incurred pursuant to 28 USC § 1930(a)(6) until the case is closed, converted or dismissed.  After

9   confirmation, Reorganized Debtor shall serve on the United States Trustee a monthly financial

10   report for each month, or portion thereof, that the case remains open.  The monthly financial

11   report shall include a statement of all disbursements made during the course of the month,

12   whether or not pursuant to the Plan.

13               **7.**       **AVOIDANCE ACTIONS.**

14         The Debtor has not done an analysis of possible preference or fraudulent

15   transfer actions.  The Debtor has not budgeted Professional Fees to pursue preference claims, but

16   has also not budgeted for any recovery.  If any such claims exist, the Professional Fees would

17   presumably be covered by any recoveries.  The Debtor will complete a preference analysis

18   before the hearing date on Confirmation.  The Plan preserves all avoidance actions to the extent

19   any exist.

20   **VI.**     **VOTING PROCEDURES AND CONFIRMATION OF A PLAN**.

21        **A.**     **BALLOTS AND VOTING DEADLINE**

22         A ballot to be used for voting to accept or reject the Plan is enclosed with each

23   copy of this Disclosure Statement mailed to all Creditors entitled to vote.  After carefully

24   reviewing this Disclosure Statement and its exhibits, including the Plan, please indicate your

25   acceptance or rejection of the Plan by voting in favor or against the Plan on the enclosed ballot as

26   directed below.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1       The Bankruptcy Court had directed that, to be counted for voting purposes, ballots

2  for acceptance or rejection of the Plan must be <u>received</u> no later than 4:00 p.m. Pacific time, on

3  _____, 2011 by the Debtor at the following address:

4                     Farleigh Wada Witt
                      Attn:  Diane Fallon

5                     121 SW Morrison, Ste. 600
                     Portland, OR 97204

6

7  or via facsimile transmission to Diane Fallon at (503) 228-1741, or via e-mail in pdf format to

8  dfallon@fwwlaw.com.

9       Holders of each Claim that was scheduled by the Debtor or with respect to which

10  a Proof of Claim has been Filed for which no objection is pending will receive ballots and are

11  permitted to vote based on the amount of the Proof of Claim.  If no Proof of Claim has been

12  Filed, then the vote will be based on the amount scheduled by the Debtor in its Schedules.

13  Holders of Disputed Claims who have settled their dispute with the Debtor are entitled to vote

14  the settlement amount of their Claim.  The Bankruptcy Code provides that such votes will be

15  counted unless the Claim has been disputed, disallowed, disqualified or suspended prior to

16  computation of the vote on the Plan.  The Claim to which an objection has been Filed is not

17  allowed to vote unless and until the Bankruptcy Court rules on the objection.  The Bankruptcy

18  Code provides that the Bankruptcy Court may, if requested to do so by the holder of such claim,

19  estimate or temporarily allow a Disputed Claim for the purposes of voting on the Plan.

20       If a person holds Claims in more than one class entitled to vote on the Plan, such

21  person will be entitled to complete and return a ballot for each Class.  If you do not receive a

22  ballot or if a ballot is damaged or lost, please contact:

23                     Farleigh Wada Witt
                     Attn:  Diane Fallon

24                    121 SW Morrison, Ste. 600
                     Portland, OR 97204

25                    Telephone Number:  (503) 228-6044

26       All persons entitled to vote on the Plan may cast their vote for or against the Plan

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  by completing, dating and signing the enclosed ballot and returning it, by First Class Mail or

2  hand delivery, to the Debtor, at the address indicated above.  In order to be counted, all ballots

3  must be executed and received at the above address no later than 4:00 Pacific time on

4  _____, 2011.  Any ballots received after 4:00 p.m. Pacific time on _____, 2011 will

5  not be included in any calculation to determine whether the parties entitled to vote on the Plan

6  have voted to accept or reject the Plan.

7         Ballots may be received by the Debtor by facsimile transmission to Farleigh

8  Wada Witt, Attn:  Diane Fallon at (503) 228-1741.  Ballots sent by facsimile transmission will be

9  counted if faxed to Ms. Fallon by 4:00 p.m. Pacific time on _____, 2011.

10        When a ballot is signed and returned without further instruction regarding

11  acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the

12  Plan.  When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the

13  unsigned ballot will not be included in any calculation to determine whether parties entitled to

14  vote on the Plan have voted to accept or reject the Plan.  When a ballot is returned without

15  indicating the amount of the Claim, the amount shall be as set forth on the Debtor's Schedules or

16  any Proof of Claim Filed with respect to such Claim.

17        **B.    PARTIES ENTITLED TO VOTE**

18        Pursuant to Section 1126 of the Bankruptcy Code, each class of impaired claims

19  or interests that is not deemed to reject the Plan is entitled to vote to accept or reject the Plan.

20  Any holder of an Allowed Claim that is in an impaired class under the Plan, and whose Class is

21  not deemed to reject the Plan, is entitled to vote.  A Class is "impaired" unless the legal,

22  equitable and contractual rights of the holders of claims in that Class are left unaltered by the

23  Plan or if the Plan reinstates the Claims held by members of such Class by (1) curing any

24  defaults, (2) reinstating the maturity of such claim, (3) compensating the holder of such claim for

25  damages that result from the reasonable reliance on any contractual provision of law that allows

26  acceleration of such claim and (4) otherwise leaving unaltered any legal, equitable or contractual

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  right of which the Claim entitled the holder of such claim.  Because of their favorable treatment,

2  classes that are not impaired are conclusively presumed to accept the Plan.  Accordingly, it is not

3  necessary to solicit votes from the holders of claims in classes that are not impaired.

4  Classes of Claims or Interests that will not receive or retain any money or

5  property under a Plan on account of such Claims or Interests are deemed, as a matter of law

6  under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not

7  entitled to vote on the Plan.  The current ownership interests classified as Class 10 are such a

8  class and are deemed to have rejected the Debtor's Plan.

9  Class 1 (Other Priority Creditors) and Class 6 (County Secured Claim for

10  Property Taxes) are not impaired and, therefore, are deemed to have accepted the Plan.  All other

11  Classes of Claims are impaired under the Plan, and persons holding Claims are entitled to vote to

12  accept or reject the Plan.

13  **C.     VOTES REQUIRED FOR CLASS ACCEPTANCE OF THE PLAN**

14  As a condition to confirmation, the Bankruptcy Code requires that each impaired

15  Class of Claims or Interests accept the Plan, subject to the exceptions described below in the

16  section entitled "Cram Down of the Plan."  At least one impaired Class of Claims must accept

17  the Plan in order for the Plan to be confirmed.

18  For a Class of Claims to accept a plan, Section 1126 of the Bankruptcy Code

19  requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in

20  number of the Allowed Claims of such Class, in both cases counting only those claims actually

21  voting to accept or reject the Plan.  If the Plan is confirmed, the Plan will be binding with respect

22  to all holders of Claims and Interests in each Class, including Classes and members of Classes

23  that did not vote or that voted to reject the Plan.

24  **D.     "CRAM DOWN" OF THE PLAN**

25  If the Plan is not accepted by all of the Impaired Classes of Claims, the Plan may

26  still be confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   Code's "Cram Down" provision if the Plan has been accepted by at least one Impaired Class of

2   Claims, without counting the acceptances of any Insiders of the Debtor, and the Bankruptcy

3   Code determines, among other things, that the Plan "does not discriminate unfairly" and "is fair

4   and equitable" with respect to each non-accepting Impaired Class of Claims or Interests.  The

5   Debtor believes that the Plan can be confirmed even if it is not accepted by all impaired Classes

6   of Claims.

7                    **E.    CONFIRMATION HEARING**

8            The Bankruptcy Court has scheduled a hearing on confirmation of the Plan to

9   commence on _____ __, 2011, at _____.  The Confirmation Hearing will be held at

10  the United States Bankruptcy Court for the District of Oregon, Courtroom No. 4, 1001 SW Fifth

11  Avenue, 9th Floor, Portland, Oregon, before the Honorable Trish M. Brown, United States

12  Bankruptcy Judge.  At the hearing, the Bankruptcy Court will consider whether the Plan satisfies

13  the various requirements of the Bankruptcy Code, including whether it is feasible and whether it

14  is in the best interests of the creditors of the Debtor.  At that time, the Debtor will submit a report

15  to the Bankruptcy Court concerning the votes for acceptance or rejection of the Plan by the

16  persons entitled to vote thereon.

17          Section 1128(b) of the Bankruptcy Code provides that any party in interest may

18  object to confirmation of the Plan.  Any objections to confirmation of the Plan must be made in

19  writing and filed with the Bankruptcy Court and received by counsel for the Debtor no later than

20  _____, 2011, by 4:00 p.m. Pacific time.  Unless an objection to confirmation is timely filed

21  and received, it may not be considered by the Bankruptcy Court.

22      **VII.    LIQUIDATION ANALYSIS**

23          A Plan of Reorganization cannot be confirmed unless the Bankruptcy Court finds

24  that the Plan is in the "best interest of creditors" of holders of claims against, and interests in, the

25  debtor subject to such plan.  The best interest test is satisfied if the plan provides each dissenting

26  or non-voting member of each impaired Class with a recovery not less than the recover such

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   member would receive if the debtor was liquidated in a hypothetical case under Chapter 7 of the

2   Bankruptcy Code by a Chapter 7 Trustee.  The Debtor believes that the holders of impaired

3   Claims will receive more than they would receive under a Chapter 7 liquidation.  In applying the

4   "best interest" test, the Bankruptcy Court would ascertain the hypothetical recovery in a Chapter

5   7 proceeding to Secured Creditors, priority claimants, general Unsecured Creditors and equity

6   interest holders.  The hypothetical Chapter 7 recoveries would then be compared with the

7   distribution offered to each Class of Claims or Interests under the Plan to determine that the Plan

8   satisfied the "best interest" test set forth in the Bankruptcy Code.

9         A copy of the Debtor's tabulation liquidation analysis is attached hereto as

10   Exhibit 7.  The liquidation table shows that upon a liquidation of the Debtor, there would be no

11   funds available for distribution to Unsecured Creditors.

12   **VIII.  CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

13

14         Circular 230 Disclaimer:  There are certain U.S. federal income tax consequences

15   associated with the Plan discussed in Exhibit 8 to this Disclosure Statement.  To ensure

16   compliance with requirements imposed by the Internal Revenue Service, we inform you that (a)

17   any U.S. federal tax advice contained in this communication (and specifically in Exhibit 8) is not

18   intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose

19   of (1) avoiding tax-related penalties under the Internal Revenue Code of 1986, as amended, or

20   (2) promoting, marketing or recommending to another party any transaction or tax matter(s)

21   addressed herein, and (b) this discussion was written in connection with debtor soliciting

22   acceptances of the plan through this Disclosure Statement.

23         The discussion of tax consequences on Exhibit 8 is intended only as a summary of

24   certain U.S. federal income tax consequences of the Plan and is not a substitute for careful tax

25   planning with a tax professional.  The above discussion is for informational purposes only and is

26   not tax advice.  The tax consequences are in many cases uncertain and may vary depending on

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    the particular situation of a holder of an allowed claim, or any equity interest holder's particular

2    circumstances.  Accordingly, each holder of an Allowed Claim and each equity interest holder is

3    urged to consult its tax advisor about the federal, state, local and applicable foreign income and

4    other tax consequences of the Plan.

5          **IX.**     **ACCEPTANCE AND CONFIRMATION OF THE PLAN**

6          **A.**     **CONFIRMATION HEARING**

7          The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on

8    _____, 2011 at _____.  The hearing will be held at the United States Bankruptcy Court for

9    the District of Oregon, Courtroom No. 4, 1001 SW Fifth Avenue, Portland, Oregon 97204,

10    before the Honorable Trish M. Brown, United State Bankruptcy Judge.  At that hearing, the

11    Bankruptcy Court will consider whether the Plan satisfied the various requirements of the

12    Bankruptcy Code, including whether it is feasible, and whether it is in the best interest of

13    Creditors and Interest Holders of the the Debtor.  Debtor will submit a report to the Bankruptcy

14    Court at that time concerning the votes for acceptance or rejection of the Plan by the parties

15    entitled to vote thereon.  Any objection to confirmation of the Plan must be timely filed as stated

16    in Section II.E. above.

17          **B.**     **REQUIREMENTS OF CONFIRMATION**

18          At the hearing on confirmation, the Bankruptcy Court will determine whether the

19    provisions of Section 1129 of the Bankruptcy Code have been satisfied.  If all of the provisions

20    of Section 1129 are met, the Bankruptcy Court may enter an order confirming the Plan.  The

21    Debtor believes the Plan satisfies all of the requirements of Chapter 11 of the Bankruptcy Code,

22    that it has complied or will have complied with all of the requirements of Chapter 11, and that it

23    has been proposed and is made in good faith.

24          **C.**     **FEASIBILITY**

25          Attached as Exhibit 5 is Debtor's projected income and Net Income and other

26    distribution projections.  The projections support the treatment of claims set forth in Section VI

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1 above.

2       **D.     RISK FACTORS**

3         There are a number of risks associated with the Debtor's proposed Plan. Each

4 Creditor should carefully consider those risks in evaluating its vote on the Debtor's Plan. All of

5 the risks associated with the Debtor's Plan are too numerous to identify. However, a few of

6 those risks are set forth below.

7           **1.     GENERAL FINANCIAL MARKET CONDITIONS**

8         The recent disruption with numerous major financial institutions and the resulting

9 crisis in the financial markets has rippled through the economy, and has impacted the

10 condominium and residential housing market in particular. While the ultimate effect of this

11 crisis on the residential housing market is yet unclear, it is possible that this financial market will

12 adversely affect the ability of the Debtor to develop the Property as set forth in this Plan.

13           **2.     PROJECTED FINANCIAL RESULTS**

14         The Debtor projected financial results reflect management's best estimate of the

15 Reorganized Debtor's future financial performance based on currently known facts and

16 hypothetical assumptions about, among other matters, the timing, confirmation and

17 consummation of the Plan in accordance with its terms, the anticipated future performance of the

18 Reorganized Debtor, residential housing industry performance, and general business and

19 economic conditions. Many of these factors are beyond the control of the Reorganized Debtor.

20 As a consequence, the actual financial results may differ significantly from the projections.

21 Specifically, the Reorganized Debtor may not be able to meet the projected financial results or

22 achieve the revenue or cash flow that it has assumed in projecting future business prospects.

23           **3.     DEPENDENCE ON SUBCONTRACTORS**

24         The development of the Project depends on construction work done by

25 subcontractors. The Reorganized Debtor's business model relies heavily upon maintaining its

26 existing relationship with its core group of highly skilled and experienced subcontractors. As a

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    result, insufficient availability of, or unsatisfactory performance by these third-party

2    subcontractors could have a material adverse affect on the Debtor's business.

3            **4.      CLAIM AMOUNTS**

4            The claims estimates set forth in this Disclosure Statement are based on various

5    assumptions.  The actual Allowed Claim amounts may differ significantly from these estimates

6    should one or more of Debtor's underlying assumptions prove to be incorrect.  Such differences

7    may materially and adversely affect the percentage recovery to holders of such Claims under the

8    Plan.

9        **E.    CRAM DOWN**

10           As discussed previously, a Court may confirm a Plan, even if it is not accepted by

11   all impaired classes, if the Plan has been accepted by at least one impaired class of claims and

12   the Plan meets the cram down requirements set forth in Section 1129(b) of the Bankruptcy Code.

13   In the event that any impaired Class of Claims does not accept the Plan, the Debtor hereby

14   requests that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the

15   Bankruptcy Code or otherwise permit the Debtor to modify the Plan.

16           The Debtor believes the Plan does not violate the absolute priority rule of the

17   Bankruptcy Code.  11 USC §1129(b)(2)(B)(ii), commonly referred to as the absolute priority

18   rule, provides that with respect to a class of unsecured claims, the holder of any claim or interest

19   that is junior to the claims of such class will not receive or retain under the plan on account of

20   such junior claim or interest any property unless the plan provides that each holder of a claim

21   receives or retains on account of such claim property of a value, as of the Effective Date of the

22   plan, equal to the Allowed amount of such claim.

23       **F.    ALTERNATIVES TO CONFIRMATION OF THE PLAN**

24           If a Plan is not confirmed, the Debtor or another party in interest may attempt to

25   formulate or propose a different Plan or Plans of Reorganization.  Such Plans might involve a

26   reorganization and continuation of the Debtor's business, the sale of the Property or a portion

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  thereof, an orderly liquidation of the Debtor's assets or any combination thereof.  If no Plan of

2  Reorganization is determined by the Bankruptcy Court to be confirmable, the Chapter 11 case

3  may be converted to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

4  　　　　In a liquidation, a Chapter 7 Trustee would be appointed with the purpose of

5  liquidating the assets of the Debtor.  Typically, in a liquidation, assets are sold for less than their

6  going concern value and, accordingly, the return to Creditors and Interest holders is less than the

7  return in a reorganization, which derives the value to be distributed in a Plan from the business as

8  a going concern.  Proceeds from liquidation would be distributed to Creditors and Interest

9  holders of the Debtor in accordance with the priorities set forth in the Bankruptcy Code.

10  　　　　The Debtor believes that there is no currently available alternative that would

11  offer holders of Claims and Interests in the Debtor greater than the Plan and urges all parties

12  entitled to vote on the Plan to vote to accept the Plan.

13  **X.    CONCLUSION**

14  　　　　Please read this Disclosure Statement and the Plan carefully.  After reviewing all

15  the information and making an informed decision, please vote by using the enclosed ballot.

16  　　　　Dated:  June 13, 2011.

17  　　　　　　　　　　　　　　　Respectfully submitted,

18  　　　　　　　　　　　　　　　SALPARE BAY, LLC

19  　　　　　　　　　　　　　　　By:  ITS MANAGER, COLUMBIA RIM
　　　　　　　　　　　　　　　CORPORATION, a Washington corporation

20
　　　　　　　　　　　　　　　By:/s/ Michael J. DeFrees
21  　　　　　　　　　　　　　　　　　Michael J. DeFrees, President

Presented by:
22  FARLEIGH WADA WITT

23  By:/s/ Tara J. Schleicher
24  　　　Tara J. Schleicher, OSB #954021
　　　tschleicher@fwwlaw.com
25  　　　Of Attorneys for Debtor Salpare Bay, LLC

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**Page 35   - DEBTOR'S  THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT
(June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33i8387.Doc

Tara J. Schleicher, OSB #954021
TSchleicher@fwwlaw.com
Peter C. McKittrick, OSB #852816
PMcKittrick@fwwlaw.com
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044

      Attorneys for Debtor

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Salpare Bay, LLC,<br><br>                   Debtor. | Case No. 10-35333-tmb11<br><br><br>**DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION (June 13, 2011)** |

Exhibit 1
Page 1 of 33

**TABLE OF CONTENTS**

**ARTICLE 1** DEFINITIONS ............................................................... 1

**ARTICLE 2** UNCLASSIFIED CLAIMS.................................................. 10
Administrative Expense Claims. .......................................................... 9
Priority Tax Claims. ............................................................................ 9
Bankruptcy Fees. ................................................................................ 9
Professional Fees. ............................................................................. 11

**ARTICLE 3** CLASSIFICATION......................................................... 11
Class 1 – Other Priority Claims. ........................................................ 11
Class 2 – City of Portland Secured Claim ......................................... 11
Class 3 – Construction Lien Claim asserted by Dunn ....................... 11
Class 4 – Construction Lien Claim asserted by TKS ......................... 11
Class 5 – Construction Lien Claim asserted by BMI. ........................ 11
Class 6 – Construction Lien Claim asserted by Myhre. ..................... 11
Class 7 – County Secured Claim for Property Taxes. ........................ 12
Class 8 – Small Unsecured Claims .................................................... 12
Class 9 – General Unsecured Claims. ............................................... 12
Class 10 – Subordinated Claims. ...................................................... 12
Class 11 – Interests. .......................................................................... 12

**ARTICLE 4** TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........................ 12
Class 1 – Other Priority Claims. ........................................................ 12
Class 2 – City of Portland SecuredClaim. ......................................... 12
Class 3 through 6 – Construction Lien Claims. ................................. 13
Class 7 – County Secured Claim for Property Taxes. ........................ 13
Class 8 – Small Unsecured Claims. ................................................... 14
Class 9 – General Unsecured Claims. ............................................... 14
Class 10 – Subordinated Claims. ...................................................... 14
Class 11 – Interests. .......................................................................... 14

**ARTICLE 5** DISPUTED CLAIMS; OBJECTIONS TO CLAIMS ......................... 15
Disputed Claims; Objections to Claims. ............................................ 15
Deficiency Claims. ............................................................................. 15
Subsequent Allowance of Disputed Claims. ...................................... 16
Form and Delivery of Distributions. ................................................... 16
De-Minimis Post-Effective Payments. ............................................... 16
Time Bar to Cash Payments. ............................................................. 16
Claimant's Change of Address. .......................................................... 17
Post-Petition Interest. ........................................................................ 17
Post-Confirmation Date Fees and Expenses of Professional Persons ........................ 17

**ARTICLE 6** MEANS FOR EXECUTION OF PLAN ................................. 17
Post-Confirmation Operations............................................................ 17
Refinance and Development of Property ........................................... 18
Partition of Property for Financing Purposes .................................... 19

i

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 2 of 33

Manager ...................................................................................................... 19
Setoffs ....................................................................................................... 19
Utility Deposit ........................................................................................... 19
Annual Reporting ...................................................................................... 20
Management Compensation ...................................................................... 20
Event of Default; Remedy ......................................................................... 20
Conditions Precedent to Effectiveness of Plan ........................................ 20

**ARTICLE 7**  EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 21
Assumption and Rejection ........................................................................ 21
Assignment ............................................................................................... 22
Rejection Claims ....................................................................................... 22

**ARTICLE 8**  EFFECT OF CONFIRMATION .................................................... 22
Debtor's Injunction ................................................................................... 22

**ARTICLE 9**  RETENTION OF JURISDICTION .................................................. 23

**ARTICLE 10**  ADMINISTRATIVE PROVISIONS ................................................ 24
Modification or Withdrawal of the Plan .................................................... 24
Revocation or Withdrawal of Plan ............................................................ 24
  Right to Revoke ...................................................................................... 24
  Effect of Withdrawal or Revocation ....................................................... 24
  Nonconsensual Confirmation ................................................................. 24

**ARTICLE 11**  MISCELLANEOUS PROVISIONS ................................................ 25
Revesting ................................................................................................... 25
Rights of Action ........................................................................................ 25
Headings .................................................................................................... 25
Notices ...................................................................................................... 25
Governing Law .......................................................................................... 26
Withholding and Reporting Requirements ................................................ 26
Time .......................................................................................................... 26
Section 1146(c) Exemption ....................................................................... 26
Severability ............................................................................................... 27
Binding Effect ........................................................................................... 27
Retiree Benefits ........................................................................................ 27
Recordable Order ...................................................................................... 27
Plan Controls ............................................................................................ 28
Effectuating Documents and Further Transactions .................................. 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ii

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 3 of 33

1    Salpare Bay, LLC ("Debtor" or "Salpare") proposes the following Plan of

2    Reorganization ("Plan") pursuant to Chapter 11 of the Code, 11 U.S.C. §§ 1101 *et seq.*

3    This Plan provides for the repayment of the Debtor's obligations to its Creditors.

4    The Plan provides for payment to Secured Creditors in accordance with the Settlement

5    Agreement reached between the Debtor and the Secured Creditors.  There are three classes of

6    unsecured creditors:  Common Fund Creditors, Small Unsecured Creditors and General

7    Unsecured Creditors.  The only Common Fund Creditor is Stoel Rives, LLP ("Stoel Rives"),

8    which litigated and negotiated the Federal Case that resulted in the Settlement and the

9    forgiveness of the Loan.  Holders of Allowed Common Fund Claims will receive 30% of the Net

10   Income generated by the Reorganized Debtor for each calendar quarter from after October 31,

11   2012 through December 31, 2017, so long as the Debtor has amounts in excess of $500,000 in

12   ending cash balances until the Allowed Common Fund Claim is paid in full without interest.

13   Small Unsecured Creditors will receive payment in full of their Allowed Claims on or before

14   June 30, 2013.  After payment of the Common Fund Claims, General Unsecured Creditors will

15   receive quarterly pro-rata distributions from 30% of the Net Income generated by the

16   Reorganized Debtor commencing after October 31, 2012 through December 31, 2017.   A

17   Disclosure Statement is enclosed herewith to assist you in understanding this Plan and making an

18   informed judgment concerning its terms.

19                                   **ARTICLE 1**

20                                   **DEFINITIONS**

21   Definitions of certain terms used in this Plan are set forth below.  Other terms are

22   defined in the text of this Plan or the text of the Disclosure Statement.  In either case, when a

23   defined term is used, the first letter of each word in the defined term is capitalized.  Terms used

24   and not defined in this Plan or the Disclosure Statement shall have the meanings given in the

25   Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires.  The meanings of all

26   terms shall be equally applicable to both the singular and plural, and masculine and feminine,

**Page 1   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 4 of 33

1  forms of the terms defined.  The words "herein," "hereof," "hereto," "hereunder," and others of

2  similar import, refer to the Plan as a whole and not to any particular section, subsection or clause

3  contained in the Plan.  Captions and headings to articles, sections and exhibits are inserted for

4  convenience of reference only and are not intended to be part of or to affect the interpretation of

5  the Plan.  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

6  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy

7  Rule 9006(a) shall apply.  Any capitalized term that is not defined herein but is defined in the

8  Bankruptcy Code shall have the meaning ascribed to such term in the Bankruptcy Code.

9        1.1    "Administrative Expense Claim" means any Claim entitled to the priority

10  afforded by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

11        1.2    "Allowed" means, when used to modify the term Claim or Administrative

12  Expense Claim, either a proof of which has been properly Filed or, if no Proof of Claim was so

13  Filed, which was or hereafter is listed on the Schedules as liquidated in amount and not disputed

14  or contingent or an Administrative Expense Claim that the Debtor has received by the applicable

15  bar date, and, in each case, a Claim or Administrative Expense Claim as to which no objection to

16  the allowance thereof, or motion to estimate for purposes of allowance, shall have been Filed on

17  or before any applicable period of limitation that may be fixed by the Bankruptcy Code, the

18  Bankruptcy Rules and/or the Bankruptcy Court, or as to which any objection, or any motion to

19  estimate for purposes of allowance, shall have been so Filed, to the extent (a) such objection is

20  resolved between such Claimant and either the Debtor or the Reorganized Debtor or (b) such

21  claim is allowed by a Final Order.

22        1.3    "Allowed Secured Claim" means an Allowed Claim that is secured by a

23  lien, security interest or other charge against or interest in property in which the Debtor has an

24  interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the

25  value (as set forth in the Plan, or if no value is specified, as determined in accordance with

26  Section 506(a) of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy

**Page 2  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 5 of 33

1    Code) of the interest of the holder of such Claim in Debtor's interest in such property or to the

2    extent of the amount subject to setoff, as the case may be.

3          1.4    "Allowed Unsecured Claim" means an Allowed Claim that is not an

4    Allowed Secured Claim or an Allowed Administrative Expense Claim.

5          1.5    "Avoidance Actions" means, without limitation, any and all actions,

6    causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments,

7    claims and demands whatsoever, whether known or unknown, in law (including, without

8    limitation, sections 506(c), 510, 542, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or

9    equivalent provisions of applicable non-bankruptcy law), equity or otherwise.

10         1.6    "BankFirst" means BankFirst, Inc., which was placed into an FDIC

11   receivership.

12         1.7    "BankFirst DOT" means the deed of trust executed in favor of BankFirst

13   and recorded against the Property on December 26, 2006 to secure a loan for the construction of

14   Building C and infrastructure connecting the marina to Building C on the Property.

15         1.8    "Bankruptcy Case" means the case under Chapter 11 of the Bankruptcy

16   Code with respect to Debtor, pending in the District of Oregon, administered as *In re Salpare*

17   *Bay, LLC*, Case No. 10-35333-tmb11.

18         1.9    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as

19   amended from time to time, set forth in Sections 101 et seq. of Title 11 of the United States

20   Code.

21         1.10    "Bankruptcy Court" means the United States Bankruptcy Court for the

22   District of Oregon, or such other court that exercises jurisdiction over the Bankruptcy Case or

23   any proceeding therein, including the United States District Court for the District of Oregon, to

24   the extent that the reference to the Bankruptcy Case or any proceeding therein is withdrawn.

25         1.11    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy

26   Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 6 of 33

1    and the local rules and standing orders of the Bankruptcy Court.

2          1.12    "BMI" means Bellingham Marine Industries, Inc.

3          1.13    "Building C" means that building to be developed as part of Phase 1 of the

4    development of the Property marked as "Building C" on the architectural drawings attached to

5    this Plan as Exhibit 1.

6          1.14    "Business Day" means a day other than a Saturday, Sunday, any legal

7    holiday as defined in Bankruptcy Rule 9006(a), or other day on which banks in Portland, Oregon

8    are authorized or required by law to be closed.

9          1.15    "Cash" means lawful currency of the United States of America and

10    equivalents, including, without limitation, checks, wire transfers and drafts.

11          1.16    "Claim" means (a) any right to payment from Debtor arising before the

12    Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

13    contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

14    (b) any right to an equitable remedy against Debtor arising before the Effective Date for breach

15    of performance if such breach gives rise to a right of payment from Debtor, whether or not such

16    right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

17    disputed, undisputed, secured or unsecured.

18          1.17    "Claimant" means and refers to the holder of a Claim.

19          1.18    "Class" means one of the classes of Claims defined in Article 3 hereof.

20          1.19    "Collateral" means any property in which Debtor has an interest that is

21    subject to a lien or security interest securing the payment of an Allowed Secured Claim.

22          1.20    "Common Fund Claims" means that claim asserted by Stoel Rives, which

23    litigated and negotiated the Federal Case that resulted in the Settlement and the forgiveness of

24    the Loan.

25          1.21    "Confirmation Date" means the date on which the Confirmation Order is

26    entered on the docket by the Clerk of the Bankruptcy Court.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741
Exhibit 1
Page 7 of 33

1        1.22    "Confirmation Order" means the order of the Bankruptcy Court

2  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

3        1.23    "Construction Creditors" means Dunn, TKS, BMI and Myhre.

4        1.24    "Construction Lien Claims" means those Claims asserted by Creditors to

5  be claims secured by a statutory lien under Oregon construction lien laws on the Debtor's

6  Property, in each case, to the extent such Claim is valid and enforceable under applicable law

7  and subject to the Settlement Agreement.

8        1.25    "Creditor" means any entity holding a Claim against the Debtor.

9        1.26    "CR Corp." means Columbia Rim Corporation, Salpare's manager.

10        1.27    "Debtor" means Salpare Bay, LLC as Debtor and Debtor-in-Possession in

11  the Bankruptcy Case.

12        1.28    "Deficiency Claim" means the portion of a Secured claim that is

13  unsecured.

14        1.29    "DeFrees" means Michael DeFrees, the sole member of Salpare and the

15  President and 50%  shareholder of CR Corp.

16        1.30    "Disclosure Statement" means Debtor's Disclosure Statement as amended,

17  modified, restated or supplemented from time to time, pertaining to the Plan.

18        1.31    "Discounted Judgment Amount" means 88.26% of the Judgment Amount.

19        1.32    "Disputed Claim" means a Claim with respect to which a Proof of Claim

20  has been timely Filed or deemed timely Filed under applicable law, and as to which an objection,

21  timely Filed, has not been withdrawn on or before the Effective Date or any date fixed for filing

22  such objections by order of the Bankruptcy Court, and has not been denied by a Final Order and

23  which Claim has not been estimated or temporarily allowed by the Bankruptcy Court on timely

24  motion by the holder of such Claim.  If an objection related to the allowance of only a part of a

25  Claim has been timely Filed or deemed timely Filed, such Claim shall be a Disputed Claim only

26  to the extent of the objection.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 8 of 33

1    1.33    "Dunn" means J.E. Dunn Northwest, Inc.

2    1.34    "Dunn Action" means the lawsuit Dunn commenced against Salpare and

3    other entitled *J.E. Dunn Northwest, Inc. v. Salpare Bay, LLC, et. al.*, Multnomah County Circuit

4    Court Case No. 0710-12536.

5    1.35    "Dunn Adversary Proceeding" means the adversary proceeding currently

6    pending before the Bankruptcy Court entitled *Salpare Bay, LLC v. J.E. Dunn Northwest, Inc., et.*

7    *al.*, Case No. 10-03264-tmb.

8    1.36    "East Building" means that building to be developed as part of Phase 1 of

9    the development of the property marked as the "East Building" on the architectural drawing

10    attached to this Plan as Exhibit 1.

11    1.37    "Effective Date" means _____ or the 10th day following entry

12    of the Confirmation Order, whichever is later.

13    1.38    "Entity" shall have the meaning ascribed to it by Section 101(15) of the

14    Bankruptcy Code.

15    1.39    "FDIC" means the Federal Deposit Insurance Corporation.

16    1.40    "Federal Case" means United States District Court for the District of

17    Oregon case number 10-373-PK in which BankFirst's and the Salpare Parties' claims in the

18    Dunn Action were removed to federal court and in which the Salpare Parties asserted various

19    lender liability claims against the FDIC, BankFirst and its participant lenders on the Loan.

20    1.41    "FHA Lender" means the lender who has issued a term sheet to the Debtor

21    for an FHA 221(d)(4) of the National Housing Act loan to develop Phase 1 of the Property.

22    1.42    "Filed" means filed with the Bankruptcy Court in the Bankruptcy Case.

23    1.43    "Final Order" means an order or judgment entered on the docket by the

24    Clerk of the Bankruptcy Court or any other court exercising jurisdiction over the subject matter

25    and the parties that has not been reversed, stayed, modified or amended and as to which the time

26    for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for

**Page 6  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 9 of 33

1    rehearing shall have expired.

2          1.44    "Gateway" means Gateway National Corporation, the entity that provides

3    employee services to Salpare and in which DeFrees is an owner.

4          1.45    "General Unsecured Claim" means an Unsecured Claim that is not a Small

5    Unsecured Claim.

6          1.46    "Harbor" means Harbor Investors, LLC.

7          1.47    "Harbor Adversary Proceeding" means that adversary proceeding pending

8    before the Bankruptcy Court entitled *Salpare Bay, LLC v. Harbor Investors, LLC*, Case No. 10-

9    03252-tmb.

10         1.48    "Improvements" means the improvements that existed as of the Petition

11   Date relating to Building C to which the Construction Liens Claims relate.

12         1.49    "Insider" shall have the meaning ascribed to it by Section 101(31) of the

13   Bankruptcy Code.

14         1.50    "Interests" means all rights of the owner(s) including the issued and

15   outstanding membership interests in the Debtor.

16         1.51    "Judgment Amount" means that amount asserted by the Construction

17   Creditors and the City of Portland as the amount owed to them under the judgment entered in the

18   Dunn Action inclusive of principal, fees, costs and interest as of March 31, 2011, as set forth on

19   Exhibit A to the Settlement Agreement.

20         1.52    "Land" means the land which makes up the Property.

21         1.53    "Loan" means the $63 million in construction financing promised by

22   BankFirst and its 41 participating lenders to Salpare for the Project.

23         1.54    "Marina" means the 204-slip marina, including amenities and facilities, on

24   the Property.

25         1.55    "Myhre" means Myhre Group Architects, Inc.

26         1.56    "Net Income" means net gross revenues less total expenses (including

**Page 7   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 10 of 33

1    operating expenses, taxes and interest) but excluding depreciation, generated by the Reorganized

2    Debtor that may be available to pay to General Unsecured Creditors on Allowed Unsecured

3    Claims as set forth in this Plan, if any, but only to the extent that such payments would not cause

4    the Debtor to default under any obligations it has to its lender(s) under applicable loan

5    documents.

6          1.57    "Other Priority Claim" means any Claim for an amount entitled to priority

7    in right of payment under Section 507(a)(3), (4), (5) (6) or (7) of the Bankruptcy Code.

8          1.58    "Petition Date" means June 7, 2010, the date on which the petition

9    commencing this Bankruptcy Case was Filed.

10          1.59    "Phase 1" means the development of approximately 166 residential

11    apartment units and ancillary improvements where Building C currently sits on the Property, as

12    indicated on the architectural drawings attached as Exhibit 1 to this Plan.

13          1.60    "Phase 2" means the development of the remainder of the planned

14    approximate 371 multi-family residential units as indicated on the architectural drawings

15    attached as Exhibit 1 to this Plan.

16          1.61    "Plan" means this Plan of Reorganization, as amended, modified, restated

17    or supplemented from time to time.

18          1.62    "Priming Loan" means a loan to the Debtor with a maximum amount of

19    $500,000 for which the lender will be granted a trust deed on the Property to secure the loan to

20    which the Construction Creditors will subordinate their liens on the Property.  The loan will be

21    used to pay for site work related to the parking improvements, permit applications, professional

22    fees including but not limited to this bankruptcy case, partitioning the Property, loan costs and

23    fees for the FHA or conventional loan required to make payments to the Construction Creditors.

24    The loan may be increased by $250,000 upon consent of the Construction Creditors, upon receipt

25    of a fully-executed commitment letter from a bank or other financial institution, subject to due

26    diligence by the Construction Creditors as set forth in the Settlement Agreement.

**Page 8  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 11 of 33

1        1.63   "Priority Tax Claim" means a Claim of a governmental unit of the kind

2   entitled to priority under Section 507(a)(8) of the Bankruptcy Code or that would otherwise be

3   entitled to priority but for the secured status of the Claim.

4        1.64   "Pro Rata" means a proportionate share, so that the ratio of (a) the amount

5   of property distributed on account of any Allowed Claim, or retained on account of a Disputed

6   Claim, in a Class, to (b) the amount distributed on account of all Allowed Claims, or allocated to

7   on account of all disputed claims, in such Class, is the same as the ratio (x) such claim bears to

8   (y) the total amount of all claims (including Disputed Claims in their respective Disputed claim

9   Amounts) in such Class.

10       1.65   "Professional Fees" means compensation to be paid to Professional

11   Persons retained by the Debtor pursuant to an order of the Bankruptcy Court entered under

12   Section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

13       1.66   "Professional Persons" means and refers to all attorneys, accountants,

14   financial advisors, investment bankers, appraisers, consultants and other professionals retained or

15   to be compensated pursuant to an order of the Bankruptcy Court entered under Section 327, 328,

16   330, 331, 503(b) or 1103 of the Bankruptcy Code.

17       1.67   "Project" means the development and construction of improvements for

18   multi-family residential living to the Property.

19       1.68   "Property" means the real property located at 499 N.E. Tomahawk Drive,

20   and 11505 N. Yacht Harbor Drive, Portland, Oregon.

21       1.69   "Rejection Claim" means a Claim entitled to be filed as a result of a

22   Debtor rejecting an executory contract in these Bankruptcy Cases

23       1.70   "Reorganized Debtor" means Debtor from and after the Effective Date.

24       1.71   "Salpare" means Salpare Bay, LLC.

25       1.72   "Salpare Parties" means Salpare, Harbor, DeFrees, Columbia Rim

26   Construction, Inc. and CR Corp.

**Page 9  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 12 of 33

1        1.73   "Schedules" means the Schedules of Assets and Liabilities and the

2   Statement of Financial Affairs Filed by Debtor pursuant to Section 521 of the Bankruptcy Code,

3   as amended, modified, restated or supplemented from time to time.

4        1.74   "Scheduled Amounts" means the Claim amounts as set forth in Debtor's

5   respective Bankruptcy Schedules.

6        1.75   "Secured Claim" means any Claim against Debtor held by any entity,

7   including, without limitation, an affiliate or judgment creditor of Debtor, to the extent such

8   Claim constitutes a secured Claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.

9   The unsecured portion, if any, of such Claim shall be treated as an Unsecured Claim.

10        1.76   "Settlement Agreement" means that agreement to which the Debtor,

11   Harbor, the City of Portland and the Construction Creditors agreed settling their claims and

12   disputes related to the Project.

13        1.77   "Small Unsecured Claims" means Unsecured Claims that are equal to or

14   less than $2,000, or Claimants electing to reduce their Unsecured Claim to $2,000.

15        1.78   "Subordinated Claim" means any Claim: (a) subordinated for purposes of

16   distribution pursuant to section 510(c) of the Bankruptcy Code, (b) for any fine, penalty or

17   forfeiture, or for multiple, exemplary or punitive damages, to the extent that such Claims are not

18   compensation for actual pecuniary loss, and (c) the Allowed Unsecured Claim of DeFrees.

19        1.79   "TKS" means ThyssenKrupp Safway, Inc.

20        1.80   "Unsecured Claim" means a Claim that is not an Administrative Claim, a

21   Secured Claim, a Tax Claim, an Other Priority Claim or an Intercompany Claim.

22        1.81   "Utility Deposits" means deposits with utilities made by Debtor after the

23   Petition Date pursuant to Section 366(b) of the Bankruptcy Code.

24        **ARTICLE 2**

25        **UNCLASSIFIED CLAIMS**

26        2.1   <u>Administrative Expense Claims</u>.   Each holder of an Allowed

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 13 of 33

1   Administrative Expense Claim shall be paid by Debtor in full in Cash on the later of (a) the

2   Effective Date or (b) the date on which such Claim becomes Allowed, unless such holder shall

3   agree to a different treatment of such Claim (including, without limitation, any different

4   treatment that may be provided for in any documentation, statute or regulation governing such

5   Claim); provided, however, that Administrative Expense Claims representing obligations

6   incurred in the ordinary course of business by Debtor during the Bankruptcy Case shall be paid

7   by Debtor or Reorganized Debtor in the ordinary course of business and in accordance with any

8   terms and conditions of the particular transaction, and any agreements relating thereto.

9         2.2    Priority Tax Claims.  The only Priority Tax Claim is that of Multnomah

10   County for real property taxes.  The holder of an Allowed Priority Tax Claim shall retain its lien

11   against the Property with the same priority to which it is entitled by law.  The Priority tax lien

12   shall be released from each phase of the Property as the lender's requirement for the Property to

13   be free and clear of encumbrances to close the loans. The holder of an Allowed Priority Tax

14   Claim shall paid in full the amount of its Secured Claim as permitted by 11 USC § 1129(a)(9)(C)

15   and (D) in installment payments commencing October 31, 2012, but not later than five (5) years

16   after the Petition Date in equal payments of principal and interest at the non-default rate

17   determined under applicable non-bankruptcy law or, if there is no such defined rate, then at a rate

18   equal to the prime rate plus 1% fixed as of the Confirmation Date, or such other rate as

19   determined by the Bankruptcy Court, or the date the claim is Allowed.

20         2.3    Bankruptcy Fees.  Fees payable by Debtor under 28 USC § 1930, or to the

21   Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date. After

22   confirmation, Reorganized Debtor shall continue to pay quarterly fees to the Office of the United

23   States Trustee and to file quarterly reports with the Office of the United States Trustee until this

24   case is closed by the Court, dismissed or converted except as otherwise ordered by the Court.

25   This requirement is subject to any amendments to 28 USC § 1930(a)(6) that Congress makes

26   retroactively applicable to confirmed Chapter 11 cases.

**Page 11  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 14 of 33

1         2.4  <u>Professional Fees</u>.  Professional Fees will be paid when Allowed as

2  Administrative Expense Claims within fifteen (15) days after entry of a final Order approving the

3  amount of the fees, or otherwise as the holder of an Administrative Expense Claim for

4  Professional Fees may agree in writing.

5  **ARTICLE 3**

6  **CLASSIFICATION**

7         3.1  <u>Class 1 – Other Priority Claims</u>.  Class 1 consists of all Allowed Other

8  Priority Claims.

9         3.2  <u>Class 2 – City of Portland Secured Claim</u>.  Class 2 consists of the Claim

10  asserted by the City of Portland as a Secured Claim.

11         3.3  <u>Class 3 – Construction Lien Claim asserted by Dunn</u>.  Class 3 consists of

12  the Construction Lien Claim asserted by Dunn, which allowance is subject to the Settlement

13  Agreement.

14         3.4  <u>Class 4 – Construction Lien Claim asserted by TKS</u>.  Class 4 consists of

15  the Construction Lien Claim asserted by TKS, which allowance is subject to the Settlement

16  Agreement.

17         3.5  <u>Class 5 – Construction Lien Claim asserted by BMI</u>.  Class 5 consists of

18  the Construction Lien Claim asserted by BMI, which allowance is subject to the Settlement

19  Agreement.

20         3.6  <u>Class 6 – Construction Lien Claim asserted by Myhre</u>.  Class 6 consists of

21  the Construction Lien Claim asserted by Myhre, which allowance is subject to the Settlement

22  Agreement.

23         3.7  <u>Class 7 – County Secured Claim for Property Taxes</u>.  Class 7 consists of

24  Multnomah County's Secured Claim for property taxes.

25         3.8  <u>Class 8 – Small Unsecured Claims</u>.  Class 8 consists of all Allowed Small

26  Unsecured Claims.

**Page 12  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 15 of 33

1        3.9     <u>Class 9 – Common Fund Claim.</u>  Class 9 consists of the claim of Stoel

2  Rives for the attorney fees incurred in pursuit of the lender liability claims against Bank First and

3  the FDIC that resulted in the FDIC for BankFirst agreeing not to seek payment on the Loan,

4  which created a common fund for the benefit of all general unsecured creditors.

5        3.10    <u>Class 10 -- General Unsecured Claims</u>.  Class 10 consists of all Allowed

6  General Unsecured Claims not otherwise classified and treated under the Plan.

7        3.11    <u>Class 11 – Subordinated Claims</u>.  Class 11 consists of all Allowed

8  Subordinated Claims.

9        3.12    <u>Class 12 – Interests</u>.  Class 12 consists of the Interests.

10                             **ARTICLE 4**

11           **TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

12        4.1     <u>Class 1 – Other Priority Claims</u>.  Class 1 is unimpaired.  Each holder of an

13  Allowed Class 1 Claim will be paid in full in Cash the amount of its Allowed Class 1 Claim,

14  including all interest, costs, fees and charges provided for under any agreement under which such

15  Claim arose or is otherwise allowed by law, on the latter of (a) the Effective Date or (b) the date

16  on which such Claim becomes Allowed, unless such holder shall agree or has Agreed to a

17  different treatment of such Claim (including any different treatment that may be provided for in

18  any documentation, agreement, contract, statute, law or regulation creating and governing such

19  Claim).  The Debtor is not aware of the existence of any Other Priority Claims.

20        4.2     <u>Class 2 – City of Portland Secured Claim</u>.  Class 2 consists of the Claim

21  asserted by the City of Portland under ORS 223, the city charter of Portland, the Portland City

22  Code and as set forth in the Dunn Action judgment, in the amount of $152,028.81 as a Secured

23  Claim.   The holder of an Allowed Secured Class 2 Claim will be paid as set forth in the

24  Settlement Agreement its share of the Discounted Judgment Amount as follows:   40% on or

25  before June 30, 2012; 40% on or before October 31, 2012; the remaining 20% on or before June

26  30, 2013.

---

**Page 13**  **- DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
             P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741
Exhibit 1
Page 16 of 33

1    <u>Class 3 through 6 – Construction Lien Claims</u>.  Classes 3 through 6 are impaired and

2    consist of Claims asserted by:  Dunn (Class 3), TKS (Class 4), BMI (Class 5) and Myhre (Class

3    6).  Each Creditor holding a Class 3, 4, 5 or 6 Allowed Claim secured by a perfected construction

4    lien will retain its lien with the same priority such lien had on the Petition Date, except as set

5    forth herein at Section 6.3 of the Plan.  The Allowed Claims in Classes 3, 4, 5 and 6 will be paid

6    the Discounted Judgment Amount, together with interest accruing from and after the Effective

7    Date at the rate of 3.25% per annum from the proceeds of the financing of the Property,

8    consistent with the terms of the Settlement Agreement.  The first payment to Classes 3, 4, 5 and

9    6 of 40% of the Discounted Judgment Amount will occur on the closing of the loan Debtor will

10   obtain to develop Phase 1 or June 30, 2012, as set forth in the Settlement Agreement. On or

11   before October 31 2012, the Debtor anticipates refinancing the Marina and will pay 40% of the

12   Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set forth in the Settlement Agreement.

13   The Debtor intends to obtain financing to develop Phase 2 on or before June 30, 2013 and will

14   pay the balance of the Discounted Judgment Amount to Classes 3, 4, 5 and 6 as set forth in the

15   Settlement Agreement.  Debtor shall deliver a Bargain and Sale Deed to the Property (the

16   "Deed") (free and clear of all liens), except those permitted under this Plan and the Settlement

17   Agreement, conveying the Property to Dunn to Judge Hogan to be held in trust for the benefit of

18   the Construction Creditors within five (5) business days of the Effective Date.    After each

19   payment referenced herein,  Debtor shall immediately deliver to Judge Hogan a new deed for the

20   portion(s) of the Property that remain as collateral for Debtor's payment obligations to the

21   Construction Creditors.

22          4.3    <u>Class 7 – County Secured Claim for Property Taxes</u>.    Class 7 is

23   unimpaired.  The holder of the Class 7 Claim will retain its security interest with the same

24   priority to which it is entitled by law.  The Allowed Class 7 Claimant shall be paid the full

25   amount of its Secured Claim as permitted by 11 USC §1129(a)(9)(D) in full from financing of

26   the Property or Net Income, but not later than five (5) years after the Petition Date.

---

**Page 14   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 17 of 33

1    4.4    <u>Class 8 – Small Unsecured Claims</u>.  Class 8 is impaired.  Each holder of a

2    Class 8 Claim will be paid in Cash an amount equal to 25% of their Allowed Claim on or before

3    October 31, 2012, or 30 days from the date their Claim becomes an Allowed Claim, whichever is

4    later.  Thereafter, each holder of a Class 8 Claim will be paid in Cash an amount equal to 75% of

5    their Allowed Claim on or before June 30, 2013.  The total costs of payment to current Small

6    Unsecured Creditors will be approximately $31,000.

7    4.5    <u>Class 9 – Common Fund Claim</u>.  Class 9 is impaired.  Class 9 consists

8    solely of the claim of Stoel Rives.  The holder of an Allowed Class 9 Claim shall be paid by

9    receiving 30% of Net Income generated by the Reorganized Debtor for each calendar quarter

10    beginning as early as the quarter ending December  31, 2012 through December 31, 2017, with

11    payments to be made on or before the last Business Day of the month following the end of each

12    calendar quarter, but only so long as the Debtor has ending cash balances in excess of $500,000

13    and to the extent it does not cause the Debtor to default under its loan documents, until the

14    Allowed Class 9 claim is paid in full without interest.  Should the Court determine that Stoel

15    Rives' Claim should not be classified separately from the Class 10 General Unsecured Claims,

16    then Stoel Rives' Claim shall be treated as a Class 10 General Unsecured Claim.

17    4.6    <u>Class  10 – General Unsecured Claims.</u>  Class 10 is impaired.  After

18    payment of the Class 9 Allowed Claim, each holder of a Class 10 Allowed Claim shall be paid

19    by receiving a Pro Rata share of 30% of the Net Income generated by the Reorganized Debtor

20    for each calendar quarter commencing as early as the quarter ending December 31, 2012 through

21    the quarter ending December 31, 2017, so long as the Debtor has amounts in excess of $500,000

22    in ending cash balances and to the extent it does not cause the Debtor to default under its loan

23    documents.  In no event shall Class 10 Allowed Claims receive less than a Pro Rata distribution

24    equal to 10% of each Class 10 Allowed Claim amount.  General Unsecured Claims total

25    approximately $1.7 million, plus approximately $10.9 million to General Unsecured Claims

26    owing to DeFrees, plus any Deficiency Claims of Secured Claims.  DeFrees has agreed to

**Page 15   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 18 of 33

1   subordinate payments to him on his General Unsecured Claim and he will be treated as a Class

2   11 Claimant.   Should the Court determine that Stoel Rives' Claim should not be classified

3   separately from the Class 10 General Unsecured Claims, then Stoel Rives' Claim shall be treated

4   as a Class 10 General Unsecured Claim.

5              4.7    <u>Class 11 – Subordinated Claims</u>.   Class 11 is impaired.   Holders of

6   subordinated claims will be paid a Pro Rata share of all remaining Unsecured proceeds after

7   Holders of Allowed Class 9 and 10 Claims have been paid in full.

8              4.8    <u>Class 12 – Interests</u>.   Class 12 is impaired.   The holder of the Class 12

9   Claims is the holders of all equity interests in the Debtor.   As a result of the Settlement

10  Agreement, the owners of Harbor will transfer their membership interests in Harbor to Salpare.

11  These interests will be cancelled.   All remaining equity interests will be retained by Mr. DeFrees

12  in exchange for the subordination of his $10.9 million General Unsecured Claim,

13                                    **ARTICLE 5**

14                  **DISPUTED CLAIMS; OBJECTIONS TO CLAIMS**

15             5.1    <u>Disputed Claims; Objections to Claims</u>.   Only Claims that are Allowed

16  shall be entitled to distributions under the Plan.   Debtor reserves the right to contest and object to

17  any Claims and previously Scheduled Amounts, including, without limitation, those Claims and

18  Scheduled Amounts that are specifically referenced herein, are not listed in the Schedules, are

19  listed therein as disputed, contingent and/or unliquidated in amount, or are listed therein at a

20  different amount than the Debtor currently believes is validly due and owing.   Unless otherwise

21  ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than

22  Administrative Expense Claims) shall be Filed and served upon counsel for Debtor and the

23  holder of the Claim objected to on or before the later of (a) forty-five (45) days after the

24  Effective Date or (b) sixty (60) days after the date (if any) on which a Proof of Claim is Filed in

25  respect of a Rejection Claim or Deficiency Claim.   The last day for filing objections to

26  Administrative Expense Claims shall be set pursuant to a further order of the Bankruptcy Court.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 19 of 33

1 All Disputed Claims shall be resolved by the Bankruptcy Court, except to the extent that (a)

2 Debtor may otherwise elect consistent with the Plan and the Bankruptcy Code or (b) the

3 Bankruptcy Court may otherwise order.  No Cash or other property shall be distributed under the

4 Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such

5 Disputed Claim becomes an Allowed Claim.

6          5.2    <u>Deficiency Claims</u>.  On or before fifteen (15) days after the entry of the

7 Confirmation Order unless otherwise provided for under the Plan, any party holding an alleged

8 Secured Claim in Classes 3 through 6 under the Plan will file and serve the Reorganized Debtor

9 with a proof of claim asserting the amount that their Claim is an Unsecured Claim. Creditors

10 who fail to file a proof of claim by the date established in this Section 5.2 shall be forever barred

11 and estopped from asserting an Unsecured Claim and from receiving distributions as a Class 8 or

12 9 Claimant.

13          5.3    <u>Subsequent Allowance of Disputed Claims</u>.  The holder of a Disputed

14 Claim that becomes Allowed in full or in part subsequent to the Effective Date shall receive Cash

15 distributions on the next distribution date applicable to its Class of Claim following the

16 allowance of such Disputed Claim.

17          5.4    <u>Form and Delivery of Distributions</u>.  Distributions to be made by the

18 Reorganized Debtor under the Plan will ordinarily be made by check drawn on a domestic bank.

19 Distributions to be made by the Reorganized Debtor to holders of Allowed Claims pursuant to

20 the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed as directed

21 in a request served on the Reorganized Debtor as providing in Section 11.4 of this Plan, but if no

22 such request is made, to the address shown in the Schedules, or, if a different address is stated in

23 a proof of claim duly filed with the Bankruptcy Court, to such address.

24          5.5    <u>De-Minimis Post-Effective Payments</u>.  If a Cash payment to be made to a

25 holder of an Allowed Claim after the Effective Date, other than to the holder of a Small

26 Unsecured Claim, would be $20 or less in the aggregate, no such payment will be made to the

**Page 17   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 20 of 33

1   holder of such Claim, unless and until the aggregate distribution on account of such Claim would

2   be at least $20 at a subsequent distribution date.

3          5.6   <u>Time Bar to Cash Payments.</u>  Checks issued by the Reorganized Debtor

4   with respect to Allowed Claims will become null and void if not negotiated within 90 days after

5   the date of issuance thereof.  Requests for re-issuance of any check must be made to the

6   Reorganized Debtor within 90 days following the date of the Plan distribution pursuant to which

7   the check was issued.  After such date, (i) the holder of any such Claim who has failed to make a

8   timely request for re-issuance of such a voided check will not be entitled to any other or further

9   distribution under the Plan on account of such voided check or such Claim; and (ii) the

10   Unclaimed Property held on account of such voided check or such Claim shall be returned to the

11   Reorganized Debtor.

12          5.7   <u>Claimant's Change of Address.</u>  Any Claimant who fails to notify in

13   writing of that Claimant's change of address, with the result that the Reorganized Debtor's

14   communications to the Claimant are returned by the United States Postal Service for insufficient

15   or improper address, shall forfeit that Claimant's rights to distributions made during the time of

16   such failure, but will be entitled to amounts to be distributed after notifying the Reorganized

17   Debtor of the new or corrected address.  The Reorganized Debtor need not distribute property

18   unclaimed within three (3) months of the final distribution.

19          5.8   <u>Post-Petition Interest.</u>  Except as specifically provided for in the Plan or in

20   the Confirmation Order, interest will not accrue on Claims, either Allowed Claims or Disputed

21   Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition Date

22   on any Claim.

23          5.9   <u>Post-Confirmation Date Fees and Expenses of Professional Persons.</u>  After

24   the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and

25   without the necessity for Bankruptcy Court approval, pay the reasonable fees and expenses of the

26   Professional Persons or entities it employs in connection with the implementation,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 21 of 33

1   consummation and performance of the Plan or with other matters as to which such Professional

2   Persons may be reasonably engaged.  Notwithstanding the foregoing, no Post-Confirmation Date

3   fees and expenses shall be paid unless and until (i) all Allowed Administrative Expense Claims

4   have been paid in full, and (ii) there is sufficient Net Income.

5   **ARTICLE 6**

6   **MEANS FOR EXECUTION OF PLAN**

7         6.1   <u>Post-Confirmation Operations.</u>  After the Effective Date, the Reorganized

8   Debtor shall operate its business subject to its obligations under this Plan, with all corporate

9   powers allocated under applicable state law, without prejudice to any right to alter or terminate

10   such existence (whether by merger or otherwise) under such applicable law.  Except as expressly

11   provided in this Plan, on the Effective Date the Reorganized Debtor will be vested with all of the

12   property of its estate free and clear of all claims, liens, encumbrances, charges and other interests

13   of Claimants, and may operate its business free of any restrictions imposed by the Code or by the

14   Bankruptcy Court.

15         6.2   <u>Refinance and Development of Property.</u>  The Debtor will obtain either

16   FHA loans or conventional loans to develop the Property and will pay creditors from a

17   combination of loan proceeds and operating income.

18         Initially, the Debtor will obtain a Priming Loan to make parking lot

19   improvements, to make permit-related payments, to pay professional fees associated with the

20   bankruptcy case, partition of the Property, loan costs and fees and other site and surveying work.

21   The general terms of the Priming Loan include: (i) $500,000, with the possibility of obtaining an

22   additional $250,000 upon receipt of a fully-executed commitment letter from a bank  or other

23   financial institution agreement to loan Salpare the funds necessary for the development of

24   Phase1; (ii) Wall Street prime rate plus 10% floating daily; (iii) $250,000 to be paid to the

25   Priming Loan lender on or before June 30, 2012 as set forth in the Settlement Agreement; (iv)

26   $8,000 application fee; (v) loan fee of 5% upon loan closing; (vi) secured by a first trust deed on

**Page 19**  **- DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 22 of 33

1   the Property; and (vii) release of trust deed by Priming Loan lender on Phase 1 at closing of

2   Phase 1 FHA Loan.  Pursuant to the Settlement Agreement, the Construction Creditors shall

3   subordinate their liens to the trust deed of the Priming Loan lender.

4           As discussed previously, an FHA Lender has issued a term sheet to the Debtor for

5   an FHA 221(d)(4) loan for Phase 1 of the construction on the Property on or before June 30,

6   2012 in the approximate amount of $20 million and pay the Discounted Judgment Amount to the

7   Class 2, 3, 4, 5 and 6 Secured Creditors on their claims in three payments on June 30, 2012,

8   October 31, 2012 and June 30, 2013.  The Debtor will obtain the loan to commence construction

9   of Phase 1 in approximately June of 2012 with funding provided by the FHA Lender.   By

10   October 31, 2012, the Debtor will refinance the Marina and make the second installment

11   payment to the Secured Creditors as well as the first payment to Multnomah County, the first

12   payment to General Unsecured Creditors and the final payment to the Small Unsecured

13   Creditors.  The Debtor intends to obtain financing for Phase 2 of the construction on the Property

14   in approximately June of 2013, at which time the Debtor will pay the Secured Creditors their

15   final payment pursuant to the Settlement Agreement.  The Debtor plans to pay Small Unsecured

16   Creditors and General Unsecured Creditors from Net Income.

17           The Debtor proposes to implement this Plan as set forth in the Plan projections

18   attached to the Disclosure Statement as Exhibit 5.

19           6.3   <u>Partition of Property for Financing Purposes.</u>  The Debtor may partition

20   the Property into three portions:  (1) the Marina; (2) Phase 1; and (3) Phase 2.  The partition will

21   allow the Debtor to provide a first lien to the lender on the FHA or conventional loans on Phase

22   1 of the Property, and ultimately on the Marina and Phase 2 as well.  After the initial payment to

23   Classes 3, 4, 5 and 6 Construction Lien Claims, such Claimants shall retain whatever lien rights

24   they have on the Marina and Phase 2 of the Property with the same priority such liens had on the

25   Petition Date,

26           6.4   <u>Manager.</u> Upon the occurrence of the Effective Date, the manager of the

**Page 20  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 23 of 33

1    Reorganized Debtor shall be Columbia Rim Corporation.

2          6.5    <u>Setoffs</u>.  The Debtor may, but shall not be required to, set off against any

3    Claim and the distributions to be made pursuant to the Plan in respect of such Claim, any claims

4    of any nature whatsoever which Debtor may have against the holder of such Claim, but neither

5    the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release

6    of any such claim Debtor may have against such holder.

7          6.6    <u>Utility Deposit</u>.  All utilities holding a Utility Deposit shall immediately

8    after the Effective Date return or refund such Utility Deposit to Reorganized Debtor. At the sole

9    option of Reorganized Debtor, Reorganized Debtor may apply any Utility Deposit that has not

10    been refunded to Reorganized Debtor in satisfaction of any payments due or to become due from

11    Reorganized Debtor to a utility holding such a Utility Deposit.

12          6.7    <u>Annual Reporting</u>. During the term the Reorganized Debtor has an

13    obligation to make distributions to General Unsecured Creditors, it will prepare an annual report

14    by forty-five (45) days after the close of each preceding calendar year detailing its financial

15    performance, and will make such report available to all holders of Allowed Claims requesting a

16    copy. Such reports shall include variances from Reorganized Debtor's budget for the preceding

17    period and for each reporting period: the status of Avoidance Actions; gross revenue; Net

18    Income, including each component made up in such calculation; extraordinary expenses; and any

19    other information considered pertinent by Reorganized Debtor.

20          6.8    <u>Management Compensation</u>.  Mr. DeFrees shall continue as President of

21    the Manager of the Reorganized Debtor. The Reorganized Debtor shall pay $5,000 per month in

22    a management fee to Gateway for services to be provided by Mr. DeFrees and others.

23          6.9    <u>Event of Default; Remedy</u>.  Any material failure by Reorganized Debtor to

24    perform any term of this Plan, which failure continues for a period of thirty (30) days following

25    receipt by Reorganized Debtor of written notice of such default from the holder of an Allowed

26    Claim to whom performance is due, shall constitute an event of Default. Upon the occurrence of

**Page 21  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 24 of 33

1    an Event of Default, the holder of an Allowed Claim to whom performance is due shall have all

2    rights and remedies granted by law, this Plan or any agreement between the holder of such Claim

3    and Debtor or Reorganized Debtor. An Event of Default with respect to one Claim shall not be

4    an Event of Default with respect to any other Claim.

5        6.10    <u>Conditions Precedent to Effectiveness of Plan</u>.  The following conditions

6    must occur and be satisfied for the Plan to become effective, notwithstanding the Effective Date:

7        (a) The Bankruptcy Court shall have entered the Confirmation Order, in

8    the form and substance reasonably satisfactory to the Debtor, which shall, among other things, (i)

9    find that the Plan complies with all applicable requirements of the Bankruptcy Code, (ii) decree

10   that the Confirmation Order shall supersede any court orders issued prior to the Confirmation

11   Date that may be inconsistent therewith, (iii) decree that, except as otherwise provided in the

12   Plan or Confirmation Order, all transfers of property contemplated under the Plan shall be free

13   and clear of all claims, security interests, liens, encumbrances, and other interests of holders of

14   Claims and equity interest; (iv) provide that any and all executory contracts and unexpired leases

15   that are assumed and/or assigned pursuant to the Plan shall remain in full force and effect for the

16   benefit of the Reorganized Debtor, in each case, notwithstanding any provision in any such

17   contract or lease or in applicable law (including those described in Sections 365(b)(2) and (f) of

18   the Bankruptcy Code) that prohibits, restricts or conditions such transfer or that enables or

19   requires termination or modification of such contract or lease; and (v) appropriate notice and

20   opportunity for hearing has been given and the injunctions set forth in Section 8 of the Plan shall

21   be valid, binding and fully enforceable in any court of law.

22       (b) All documents, instruments and agreements, each in form and

23   substance satisfactory to the Debtor, provided for or necessary to implement this Plan shall have

24   been executed and delivered by the parties thereto, unless such execution or delivery has been

25   waived by the party to be benefited thereby.

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 25 of 33

1        **ARTICLE 7**

2    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

3        7.1    <u>Assumption and Rejection</u>.   Except as may otherwise be provided, all

4    executory contracts and unexpired leases of the Debtor which are not otherwise subject to a prior

5    Bankruptcy Court order or pending motion before the Bankruptcy Court are rejected by

6    Reorganized Debtor on the Effective Date.  The Confirmation Order shall constitute an order

7    authorizing rejection of all other executory contracts and unexpired leases except those otherwise

8    specifically assumed herein or otherwise provided for or subject to other Court Order or pending

9    motion. Reorganized Debtor shall promptly pay all amounts required under Section 365 of the

10   Bankruptcy Code to cure any defaults for executory contracts and unexpired leases being

11   assumed by performing its obligations from and after the Effective Date in the ordinary course of

12   business.

13       7.2    <u>Assignment</u>.  To the extent necessary, all assumed executory contracts and

14   unexpired leases shall be deemed assigned to Reorganized Debtor as of the Effective Date.  The

15   Confirmation Order shall constitute an order authorizing such assignment of assumed executory

16   contracts and unexpired leases, and no further assignment documentation shall be necessary to

17   effectuate such assignment.

18       7.3    <u>Rejection Claims</u>.  Rejection Claims must be Filed no later than 30 days

19   after the entry of the order rejecting the executory contract or unexpired lease or 30 days after the

20   entry of the Confirmation Order, whichever is sooner.  Any such Rejection Claim not Filed

21   within such time shall be forever barred from asserting such Claim against Debtor, Reorganized

22   Debtor, its Property, estates, and any guarantors of such obligations. Each Rejection Claim

23   resulting from such rejection shall constitute a Small or General Unsecured Claim, as applicable.

24       **ARTICLE 8**

25    **EFFECT OF CONFIRMATION**

26       8.1    <u>Debtor's Injunction</u>.  The effect of confirmation shall be as set forth in

**Page 23   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 26 of 33

1 Section 1141 of the Bankruptcy Code. Except as otherwise provided in the Plan or in the

2 Confirmation Order, confirmation of the Plan shall act as a permanent injunction applicable to

3 entities against (a) the commencement or continuation, including the issuance or employment of

4 process, of a judicial, administrative, or other action or proceeding against Reorganized Debtor

5 that was or could have been commenced before the entry of the Confirmation Order, (b) the

6 enforcement against Reorganized Debtor or their assets of any judgment, award, decree or order

7 obtained before the Petition Date, and (c) any act to obtain possession of or to exercise control

8 over, or to create, perfect or enforce a lien upon all or any part of the property of the Debtor or

9 Reorganized Debtor, (d) the assertion of any setoff, right of subrogation, reimbursement or

10 recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the

11 Estate on account of any Claim except in the context of a Disputed Claim and only if allwed by

12 the Bankruptcy Court, and (e) the exercise of any provision contained in any contract, lease or

13 instrument which is or was entered into or issued by the Debtor prior to the Petition Date and

14 which is not cancelled or rejected under the Plan that allows a Claimant to declare, or that

15 declares, a default based upon the filing of the petition in this Case, the insolvency or financial

16 condition of the Debtor or the subjective insecurity of such Claimant.

17 **ARTICLE 9**

18 **RETENTION OF JURISDICTION**

19       9.1    Notwithstanding the entry of the Confirmation Order and subject to the

20 terms of the Settlement Agreement, the Court shall retain jurisdiction of this Chapter 11 Case

21 pursuant to and for the purposes set forth in Section 1127(b) of the Bankruptcy Code:

22           (a)    to classify the Claim or interest of any Creditor or

23 stockholder, reexamine Claims or Interests which have been owed for voting purposes and

24 determine any objections that may be Filed to Claims or Interests,

25           (b)    to determine requests for payment of Claims entitled to

26 priority under Section 507(a) of the Bankruptcy Code, including compensation and

**Page 24**  **- DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 27 of 33

1    reimbursement of expenses in favor of professionals employed in these Bankruptcy Cases,

2                  (c)      to avoid transfers or obligations to subordinate Claims

3    under Chapter 5 of the Bankruptcy Code,

4                  (d)      to approve the assumption, assignment or rejection of an

5    executory contract or an unexpired lease pursuant to this Plan,

6                  (e)      to resolve controversies and disputes regarding the

7    interpretation of this Plan,

8                  (f)      to implement the provisions of this Plan and enter orders in

9    aid of confirmation,

10                 (g)      to determine the validity, priority or extent of any claim or

11    claim of lien,

12                 (h)      to adjudicate adversary proceedings and contested matters

13    pending or hereafter commenced in the Bankruptcy Case, and

14                 (i)      to enter a final decree closing the Bankruptcy Case.

15                    **ARTICLE 10**

16              **ADMINISTRATIVE PROVISIONS**

17          10.1     <u>Modification or Withdrawal of the Plan.</u>  The Debtor may alter, amend or

18    modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at

19    any time prior to the time that the Bankruptcy Court has signed the Confirmation Order. After

20    such time, and prior to the substantial consummation of the Plan, the Debtor may, so long as the

21    treatment of holders of Claims and Interests under the Plan is not adversely affected, institute

22    proceedings in Bankruptcy Court to remedy any defect or omission or to reconcile any

23    inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other

24    matters as may be necessary to carry out the purposes and effects of the Plan; provided, however,

25    that prior notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002.

26          10.2     <u>Revocation or Withdrawal of Plan</u>

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 28 of 33

1          10.2.1  <u>Right to Revoke</u>.   The Debtor reserves the right to revoke or

2  withdraw the Plan at any time prior to the Effective Date.

3          10.2.2  <u>Effect of Withdrawal or Revocation</u>.   If the Debtor revokes or

4  withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void. In

5  such event, nothing contained herein shall be deemed to constitute a waiver or release of any

6  claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the

7  Debtor or any Entity in any further proceeding involving the Debtor.

8          10.3  <u>Nonconsensual Confirmation</u>.   Debtor shall request that the Bankruptcy

9  Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if the requirements

10  of all provisions of Section 1129(a) of the Bankruptcy Code, except subsection 1129(a)(8), are

11  met.

12                          **ARTICLE 11**

13                      **MISCELLANEOUS PROVISIONS**

14          11.1  <u>Revesting</u>. Except as otherwise expressly provided herein, on the

15  Effective Date, all property and assets of the estate of the Debtor shall revest in Reorganized

16  Debtor, free and clear of all claims, liens encumbrances, charges and other Interests of Creditors

17  arising on or before the Effective Date, and Reorganized Debtor may operate, from and after the

18  Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy

19  Court.

20          11.2  <u>Rights of Action</u>.   Except as otherwise expressly provided herein, any

21  claims, rights, interests, causes of action, defenses, counterclaims, cross-claims, third-party

22  claims, or rights of offset, recoupment, subrogation or subordination including, without

23  limitation, claims under Section 550(a) of the bankruptcy Code or any of the sections referenced

24  therein (including, without limitation, any and all Avoidance Actions) accruing to the Debtor

25  shall remain assets of Reorganized Debtor. Reorganized Debtor may pursue such rights of

26  action, as appropriate, in accordance with what is in its best interests and for its benefit.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741
Exhibit 1
Page 29 of 33

1          11.3    Headings.  The headings in this Plan are for convenience of reference only

2    and shall not limit or otherwise affect meanings of the Plan.

3          11.4    Notices.  Unless otherwise agreed to between a Claimant and the Debtor

4    or the Reorganized Debtor, as may be applicable, or otherwise stated in this Plan, all notices

5    required or permitted to be made in accordance with the Plan shall be in writing and shall be

6    delivered personally or by regular or certified mail, return receipt requested.  Notices to the

7    Reorganized Debtor shall be sent to:  Tara J. Schleicher, Farleigh Wada Witt, 121 SW Morrison,

8    Ste. 600, Portland, Oregon 97204.  Notice to a holder of an Allowed Claim shall be directed to

9    the address set forth within its proof of claim filed with the Bankruptcy Court, or if none, to its

10   address set forth in the Schedules.  Notices shall be deemed given upon delivery, if personally

11   delivered, and upon mailing, if mailed.  Any person may change the address at which such

12   person is to receive notices under the Plan by sending written notice, pursuant to the provisions

13   of this section, to the Reorganized Debtor and any other person to be charge with knowledge of

14   such change.

15         11.5    Governing Law.  Except to the extent the Bankruptcy Code, the

16   Bankruptcy Rules or other federal laws are applicable, the laws of the State of Oregon shall

17   govern the construction and implementation of the Plan, and all rights and obligations arising

18   under the Plan.

19         11.6    Withholding and Reporting Requirements.  In connection with the Plan

20   and all instruments issued in connection therewith and distributions thereon, the Debtor and

21   Reorganized Debtor shall comply with all withholding, reporting, certification and information

22   requirements imposed by any federal, state, local or foreign taxing authorities and all

23   distributions hereunder shall, to the extent applicable, be subject to any such withholding,

24   reporting, certification and information requirements. Entities entitled to receive distributions

25   hereunder shall, as a condition to receiving such distributions, provide such information and take

26   such steps as Reorganized Debtor may reasonably require to ensure compliance with such

**Page 27   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741
Exhibit 1
Page 30 of 33