1    withholding and reporting requirements, and to enable Reorganized Debtor to obtain the

2    certifications and information as may be necessary or appropriate to satisfy the provisions of any

3    tax law.

4            11.7   <u>Time</u>.  Unless otherwise specified herein, in computing any period of time

5    prescribed or allowed by the Plan, the day of the act or event from which the designated period

6    begins to run shall not be included. The last day of the period so computed shall be included,

7    unless it is not a Business Day, in which event the period runs until the end of the next

8    succeeding day which is a Business Day.

9            11.8   <u>Section 1146(c) Exemption</u>. Pursuant to Section 1146(c) of the

10    Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the

11    execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or

12    as contemplated by the Plan, or the revesting, transfer or sale of any real property of the Debtor

13    or Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan, shall

14    not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

15    Consistent with the foregoing, each recorder of deeds or similar official for any city, county or

16    governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the

17    Confirmation Order, be ordered and directed to accept such instrument without requiring the

18    payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

19            11.9   <u>Severability</u>.  In the event that any provision of the Plan is determined to

20    be unenforceable, such determination shall not limit or affect the enforceability and operative

21    effect of any other provisions of the Plan. To the extent that any provision of the Plan would, by

22    its inclusion in the Plan, prevent or preclude the Bankruptcy Court from entering the

23    Confirmation Order, the Bankruptcy Court, on the request of the Debtor, may modify or amend

24    such provision, in whole or in part, as necessary to cure any defect or remove any impediment to

25    the confirmation of the Plan existing by reason of such provision.

26            11.10  <u>Binding Effect</u>.    The provisions of the Plan shall bind the Debtor,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 31 of 33

1  Reorganized Debtor and all holders of Claims and Interests, and their respective successors, heirs

2  and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and

3  whether or not such holder has filed a proof of claim with the Bankruptcy Court or has accepted

4  this Plan.

5      11.11  <u>Retiree Benefits</u>.  On or after the Effective Date, to the extent required by

6  Section 1129(a)(13) of the Bankruptcy Code, Reorganized Debtor shall continue to pay all

7  retiree benefits (if any) as that term is defined in Section 1114 of the Bankruptcy Code,

8  maintained or established by the Debtor prior to the Effective Date, without prejudice to

9  Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate

10  the foregoing arrangements.

11      11.12  <u>Recordable Order</u>. The Confirmation Order shall be deemed to be in

12  recordable form, and shall be accepted by any recording officer for filing and recording purposes

13  without further or additional orders, certifications or other supporting documents.

14      11.13  <u>Plan Controls</u>.  Except with respect to the terms of the Settlement

15  Agreement, in the event and to the extent that any provision of the Plan is inconsistent with the

16  provisions of the Disclosure Statement, or any other instrument or agreement contemplated to be

17  executed pursuant to the Plan, the provisions of the Plan shall control and take precedence.

18      11.14  <u>Effectuating Documents and Further Transactions</u>. The Debtor and

19  Reorganized Debtor shall execute, deliver, file or record such contracts, instruments,

20  assignments, and other agreements or documents, and take or direct such actions, as may be

21  necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

22      Dated: June 13 2011.

23

24

25

26

**Page 29  - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 32 of 33

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully Submitted,

SALPARE BAY, LLC

By:  ITS MANAGER, COLUMBIA RIM
CORPORATION, a Washington corporation

By:/s/ Michael J. DeFrees_____
     Michael J. DeFrees, President

FARLEIGH WADA WITT

By:/s/ Tara J. Schleicher_____
     Tara J. Schleicher, OSB #954021
     (503) 228-6044
     tschleicher@fwwlaw.com
     Of Attorneys for Debtor Salpare Bay, LLC

**Page 30   - DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION (June 13, 2011)**
P:\Docs\Salpar\28606\Pldg\33j1606.Doc

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 1
Page 33 of 33

U:\Architectural Projects\A\11 Proposal\Salpare Apartments\SITE PLAN-5 Story Option-related Exhibit 1.dwg Layout: A1.1 Plot Date Sep 7 10 Time: 4:59 PM



NORTHWEST BUILDING

OFFICE, CLUBHOUSE & EXERCISE ROOMS ON 1ST FLOOR

SOUTHWEST BUILDING

EAST BUILDING

BUILDING C

**PHASE 2**
205 DWELLING UNITS
244 PARKING SPACES

**PHASE I**
166 DWELLING UNITS
344 PARKING SPACES

3 bedroom Units: 76
2 bedroom units: 175
1 bedroom units: 120
Total: 371

Total parking shown is 588 spaces (includes 12 accessible parking spaces & 59 in parking garage)

PHASE 1: (166 UNITS)
EAST BUILDING
3 BED: 20
2 BED: 40
1 BED: 20
TOTAL: 80

SOUTH (C) BUILDING:
3 BED: 16
2 BED: 30
1 BED: 40
TOTAL: 86

N

1  SITE PLAN
   1" = 50'-0"

A1.1

Sheet Title
SITE PLAN

Date

**Salpare Bay Apartments**

Tomahawk Island Drive
Portland, Oregon

REVISIONS

Columbia Ram Corporation
(360) 571-0785
Fax (360) 571-0193
1900 SE Huy 99
Vancouver WA
98665

Exhibit 1
Page 1 of 1

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into effective this 5ᵗʰ day of ~~April,~~ May, 2011 (the "Effective Date"), by and between JE Dunn Construction Company, successor in interest to J.E. Dunn Northwest, Inc. ("Dunn"), Marion Construction Company ("MCC"), Masons Supply Company ("MASCO"), Associated Masonry Restoration, Inc., d/b/a Pardue Restoration, Inc. ("Pardue"), Ray's Plumbing of Brush Prairie, Inc. ("Ray's"), Harris Rebar Seattle, Inc., dba Harris Rebar Portland ("Harris"), Morse Bros., Inc. ("MBI"), Industrial Concrete, LLC ("Industrial"), R2M2 Rebar and Stressing, Inc. ("R2M2"), City of Portland (the "City"), Safway Services, LLC f/k/a ThyssenKrupp Safway, Inc. ("TKS"), Bellingham Marine Industries, Inc. ("BMI"), Myhre Group Architects, Inc. ("Myhre"), Harbor Investors, LLC ("Harbor") and Salpare Bay, LLC ("Salpare" or "Debtor") (all collectively referred to as the "Parties").

## RECITALS

A.      Effective November 27, 2006, Dunn entered into a written contract (the "Contract") with Salpare for the construction of improvements being made to the real property for the project commonly known as the Salpare Bay Condominiums (the "Project") located on Hayden Island on the Columbia River at 499 N.E. Tomahawk Drive and 11505 N. Yacht Harbor Drive, Portland, Oregon 97217 (the "Property") (the Property includes the Marina described below).  The Property is owned by Salpare and Harbor.

B.      Salpare originally planned to develop a private marina, a private beach and a 204-unit condominium project for which it obtained a loan of approximately $63 million in December 2006 from BankFirst, Inc. ("BankFirst").

C.      Under the terms of the Contract, Dunn supplied certain labor, services, materials, and equipment necessary to construct certain sitework and Building "C," which is located at the entrance of the Property and provided access to the marina (the "Marina").  MCC, MASCO, Pardue, Ray's, Harris, MBI, Industrial and R2M2, as first, second and third tier subcontractors, each provided certain labor, services, materials and/or equipment in furtherance of the construction of the Project (collectively referred to as the "Dunn Group").

D.      TKS, BMI and Myhre were hired directly by Salpare to perform other work on the Project. The City has priority statutory liens for Parks and Transportation System Development Charges against the Property.  The City also has a statutory lien related to non-compliant parking use not included in the Lien Foreclosure Claims.

E.      Dunn, each of the Dunn Group, TKS, BMI and Myhre filed construction liens and the City has statutory liens against the Project (Dunn, the Dunn Group, TKS, BMI, Myhre and the City are collectively referred to as the "Judgment Creditors").

**SETTLEMENT AGREEMENT - Page 1 of 12**          {3408.021-00637556; 2}

Exhibit 2
Page 1 of 29

F.      On October 26, 2007, Dunn filed a complaint in the Circuit Court of the State of Oregon for Multnomah County captioned (in abbreviated part) *J.E. Dunn Northwest, Inc. v. Salpare Bay, LLC, et al.,* Case No. 0710-12536, seeking to foreclose its construction liens. The Dunn Group, TKS, BMI, Myhre and the City filed cross-claims and counterclaims to foreclose their construction and statutory liens (collectively the "Lien Foreclosure Claims"). BankFirst asserted cross-claims against Salpare, Harbor and others stemming from the construction loan agreement. In response, Salpare and Harbor asserted lender liability cross-claims against BankFirst and others. The Lien Foreclosure Claims were severed for a separate trial.

G.      The Lien Foreclosure Claims were tried before the State Court on December 8–15, 2008. The Court ordered foreclosure of the construction and statutory liens and entered the following judgments (the below-listed judgments are collectively referred to as the "Judgments"):

> (a)     The Limited Judgment signed *nunc pro tunc* April 21, 2009, originally entered on September 9, 2009 and re-entered and effective as of December 29, 2009;

> (b)     The Supplemental Judgment and Money Award (re: Attorney Fees and Costs to Dunn and BMI) signed October 26, 2009, originally entered on October 29, 2009 and re-entered and effective as of December 29, 2009; and

> (c)     The Second Supplemental Judgment and Money Award signed January 22, 2010 and entered January 22, 2010.

H.      Dunn, Dunn's sureties and the Dunn Group (except for Ray's) signed a Tolling Agreement, Addendum and a Second Addendum to Tolling Agreement. Ray's signed a Tolling Agreement and Addendum to Tolling Agreement (collectively, the "Tolling Agreements").

I.      Dunn set a foreclosure sale for June 8, 2010.

J.      Salpare and Harbor settled their lender liability claims against BankFirst and others on June 7, 2010.

K.      Salpare filed a petition for relief under Chapter 11 under the United States Bankruptcy Code on June 7, 2010 in the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court"), Case No. 10-35333 tmb11 (the "Bankruptcy Case"), which stayed the foreclosure sale.

L.      On or about September 3, 2010, Debtor commenced an adversary proceeding complaint against Dunn, each of the Dunn Group, TKS, BMI, Myhre, the City and others, Case No. 10-03264 tmb (the "Adversary Proceeding").

**SETTLEMENT AGREEMENT - Page 2 of 12**          **{3408.021-00637556; 2}**

Exhibit 2
Page 2 of 29

M.     Salpare has asserted that Harbor owes it funds under a Tenant in Common Agreement related to the Property (the "Harbor Claim").

N.     The Parties participated in mediation on various dates with the Honorable Michael R. Hogan serving as mediator, and the Parties reached agreement on terms for a full and final settlement regarding the claims as between and among the Parties and intend for the Debtor's amended chapter 11 plan (the "Plan") to incorporate the terms of this Agreement.

O.     As set forth herein, the Parties wish to resolve all disputes and claims between them related to the Project, the Property and the pending Bankruptcy Case and Adversary Proceeding.

## AGREEMENT

1.     Salpare and Harbor agree that the Judgments are valid, final, non-appealable state court judgments.  The Parties agree that the Judgment amounts for each Judgment Creditor (including interest through March 31, 2011) are accurately reflected on Exhibit "A," attached.  On entry of a non-appealable order approving this Agreement by the Bankruptcy Court, Salpare will dismiss the Adversary Proceeding with prejudice and without fees or costs.

2.     Not later than five business days after Harbor is notified that this Settlement Agreement has been approved by the Court, (i) Harbor shall pay $40,000 to Salpare; (ii) concurrent with such payment Harbor and Salpare will execute and deliver counterparts of an Assignment of Limited Liability Company Interest in the form attached hereto as Exhibit "B," pursuant to which the current members of Harbor will assign all of the membership interests in Harbor to Salpare; and (iii) concurrent with such payment, Salpare shall dismiss the Arbitration Service of Portland proceeding that Salpare has filed against Harbor regarding the Harbor Claim referenced in Recital M, with prejudice and without attorney fees, costs or disbursements.  In connection therewith, Salpare acknowledges that because this is a settlement of disputed claims and there is consideration given and received by the parties, and because the value of consideration given by the current members of Harbor in settlement equals or exceeds the value of the Harbor Claim, no 1099's or equivalent will be issued as part of this settlement or in connection with the Assignment of Membership Interests.

3.     All Judgment Creditors agree to an 11.74% discount of their judgment amounts, inclusive of principal, fees, costs, and interest (at the judgment rates) through the date of Plan confirmation (the "Discounted Judgment Amount").  The Discounted Judgment Amount for each Judgment Creditor shall be the total of their judgment, inclusive of principal, fees, costs and interest calculated as of the date of Plan confirmation reduced by 11.74%.  Interest shall continue to accrue for each Judgment Creditor on principal, fees and costs (at an 11.74% discount) at the rate of 3.25% simple interest per annum from the date of Plan confirmation until paid in full.

**SETTLEMENT AGREEMENT - Page 3 of 12**          **{3408.021-00637556; 2}**

Exhibit 2
Page 3 of 29

4.      Debtor shall make the following payments, on the following dates to the Judgment Creditors:

    a. <u>Phase 1 (as defined in the Site Plan attached to the Disclosure Statement dated April 8, 2011) Payment Deadline</u>: June 30, 2012, in an amount equal to 40% of the Discounted Judgment Amount (exclusive of accrued interest);

    b. <u>Marina (as defined in the Site Plan attached to the Disclosure Statement dated April 8, 2011) Re-fi Payment Deadline</u>:  October 31, 2012, in an amount equal to 40% of the Discounted Judgment Amount (exclusive of accrued interest) ; and

    c. <u>Phase 2 (as defined in the Site Plan attached to the Disclosure Statement dated April 8, 2011) Payment Deadline</u>:  June 30, 2013, in an amount equal to the remainder of the Discounted Judgment Amount, plus all accrued interest through June 30, 2013 (or such other date as the payment is made per Section 5, below) at the rate set forth in Section 3, above.

5.      Payment Deadlines set forth in Section 4, above shall not be further extended for any reason absent circumstances beyond Salpare's control.  In such event, Judge Hogan has the discretion to grant one (1) grace period of a maximum of 30 days per Payment Deadline.

6.      The Judgment Creditors will release their liens to the applicable portion of the Property upon receipt of payment as follows:

    a. On receipt of the Phase 1 Payment, release of liens as against the Phase 1 property, reserving a reciprocal right of access to the Marina and Phase 2 property through the Phase 1 property.
    b. On receipt of the Marina Re-fi Payment, release of liens against the Marina. It is specifically agreed that any release of any lien interest in the Marina is conditioned upon a complete grant of access to the Marina.
    c. On receipt of the Phase 2 Payment, release of liens as to the remainder of the Property.

Salpare shall prepare appropriate documents to effectuate these releases and rights of reciprocal access which are reasonably acceptable to Judgment Creditors.

7.      The Judgment Creditors will not object to Debtor seeking approval from the Court of a priming loan in the maximum amount of up to $ 500,000.00, subject to all of the following conditions (the "Priming Loan"):

    a. Salpare will provide notice of any work to be performed or contract to be entered (and the amount of the proposed work or contract), and Judgment

**SETTLEMENT AGREEMENT - Page 4 of 12**          {3408.021-00637556; 2}

Exhibit 2
Page 4 of 29

Creditors will have a right to object within 7-business days. Any objections will be resolved by Judge Hogan.

b. On completion of the work, each payment requested by Debtor from the loan would be subject to review and approval for that expense by Judge Hogan. The Priming Loan proceeds may be used for professional fees, including, but not limited to, the fees associated with the partition of the Property, application and other permitting costs payable to local governments related to the Property, the costs of paving the parking lot, and loan costs and fees associated with obtaining the financing necessary to make the payments referenced in paragraph 4 above. To the extent that any Judgment Creditor believes a requested payment is impermissible or unreasonable, such party can lodge an objection with Judge Hogan.

c. The Judgment Creditors will be provided a priority lien on the DIP account into which the proceeds from the Marina operations flow and a super priority under Section 507(b) as a replacement lien. The Priming Loan lender will be provided a priority lien on the DIP account into which the Priming Loan proceeds flow and a super priority under Section 507(b) as a replacement lien.

d. Debtor shall not voluntarily allow the filing of any construction liens against any portion of the Property as long as the Priming Loan remains unpaid.

e. Under no circumstances will the Judgment Creditors consent to a Priming Loan where the lender is Michael DeFrees or his wife, or any party or entity related to, owned, managed or otherwise tied to Michael DeFrees or his wife.

f. Any work to be self-performed by Michael DeFrees or his wife, or any party or entity related to, owned, managed or otherwise tied to Michael DeFrees or his wife is to be performed at zero profit and such parties or entities shall not file a construction lien against any portion of the Property (see Section 11 below).

g. No work shall be performed on the Marina or Phase 2, other than related work for partitioning the Property, site work related to the parking improvements, permit applications and permitting with governmental agencies.

h. Debtor agrees that $250,000 of the Priming Loan will be repaid on or before June 30, 2012.

i. Judgment Creditors, in their discretion, may consider approval of up to an additional $250,000 Priming Loan upon receipt of a fully executed commitment letter from a bank or other financial institution agreeing to loan to Salpare the funds necessary to construct Phase 1 of the Project. Judgment

**SETTLEMENT AGREEMENT - Page 5 of 12**        {3408.021-00637556; 2}

Exhibit 2
Page 5 of 29

Creditors may conduct such due diligence as they reasonably believe necessary to satisfy themselves that the construction funds will be loaned to Salpare, that the payment due Judgment Creditors will be made on or before June 30, 2012, that any additional Priming Loan will not be used to pay for any work self-performed by Michael DeFrees or his wife, or any party or entity related to, owned, managed or otherwise tied to Michael DeFrees or his wife, that no construction liens have been filed against any portion of the Property and that $250,000 of any Priming Loan will be paid off on or before June 30, 2012.

8.    a. Salpare shall deliver a Statutory Bargain and Sale Deed to the Property (the "Deed") (free and clear of all liens and including the reciprocal access provided in Section 6, above), except those permitted under the Plan and this Agreement, conveying the Property to Dunn to Judge Hogan to be held in trust for the benefit of the Judgment Creditors within five (5) business days of the entry of the Bankruptcy Court's Order confirming the Plan becomes nonappealable or Harbor's delivery of the Assignment described in Section 2, above, whichever is later. If the Deed is not delivered as required, or if any Plan Payment Deadline as set forth in Section 4, above is missed, the Deed shall be immediately provided to Dunn for recording.

b. Even if Debtor makes one or more of the payments provided in Section 4, above, a subsequent default will result in the delivery of the Deed to Dunn, which Deed will not include those parcels upon which the Judgment Creditors have already released their lien rights.

c. Should the legal description of the Property change as a result of the partition of the Property (as defined in the Site Plan attached to the Disclosure Statement dated April 8, 2011), Salpare shall immediately deliver to Judge Hogan a new Deed with the new legal description of the Property (the "Subsequent Deed"). Should the legal description of any phase substantially change from the Site Plan attached to the Disclosure Statement dated April 8, 2011, Salpare shall notify, in writing, the Judgment Creditors and the Judgment Creditors shall have 7-business days to object to the proposed partition.

d. After each payment referenced in Section 4 above, Salpare shall immediately deliver to Judge Hogan a new Subsequent Deed (free and clear of all liens and including the reciprocal access provided in Section 6, above) for the portion(s) of the Property that remain as collateral for Salpare's payment obligations to the Judgment Creditors.

9.    If Dunn receives the Deed or a Subsequent Deed as a result of any default, Dunn agrees to "buy" out each Judgment Creditor's interest at the Discounted Judgment Amount set forth in Section 3, above (i.e., 88.26% of each Judgment Creditor's total judgment amount, less a pro rata share of any outstanding priming loan, inclusive of all interest as described herein incurred as of the default date, less any payments made by Debtor against any amounts to be paid by Dunn). Such payment to be made by Dunn

**SETTLEMENT AGREEMENT - Page 6 of 12**          {3408.021-00637556; 2}

Exhibit 2
Page 6 of 29

within 30-days following Dunn's receipt of the Deed or Subsequent Deed. On payment by Dunn, each Judgment Creditor shall release all further liens or interests in the Property and provide Satisfaction in Full of the Judgments.

10.     With respect to any work performed or materials supplied by any entity on the Project, a lien waiver/release must be received by Debtor from such entity before any payment is made.

11.     To the extent Debtor employs any party and/or entity related to, owned, managed or otherwise tied to Michael DeFrees or his wife to perform work on the Project, Debtor agrees to include in any contract to such party and/or entity a provision which prohibits such party and/or entity from filing a lien against the Project or the Property, or otherwise to impair the security interests of the Judgment Creditors.

12.     Debtor shall not sell or enter into any lease for greater than one year for any individual boat slips at the Marina or enter into any contract for greater than one year affecting the possible proceeds from the Marina pending completion of its payment obligations under this Agreement.

13.     Salpare shall file with the Bankruptcy Court an amended Disclosure Statement and Plan consistent with the terms of this Agreement and the Judgment Creditors shall consent to confirmation of that Plan.

14.     So long as there are any amounts outstanding on the Priming Loan, Salpare agrees to provide Judgment Creditors with monthly financial reports substantially similar to those required under LR 2015-1(b).

15.     Salpare shall submit this Agreement to the Bankruptcy Court for approval and on approval, the terms of this Agreement shall be incorporated into any Plan submitted to the Bankruptcy Court for confirmation. The terms of this Agreement shall not be effective until the Bankruptcy Court enters an order approving this Agreement, and no appeal has been taken from the order approving this Agreement.

16.     The parties to the Tolling Agreement agree that (1) to the extent their rights have not lapsed as of the date of this Agreement, to extend the Tolling Agreement during the term of this Agreement; and (2) all payment and other claims reserved by and among them in the Tolling Agreement will be fully satisfied and released effective upon completion of Debtor's Plan, or upon final payoff in connection with Sections 4 or 9, above, whichever occurs first.

<u>CZAR CLAUSE</u>

17.     <u>Continuing Jurisdiction</u>. The Parties hereby agree that Judge Hogan, who acted as mediator, shall have the exclusive authority to decide any dispute which may arise between the Parties regarding this Agreement, including any dispute regarding the validity, performance, violation, interpretation, administration, enforcement, specific

**SETTLEMENT AGREEMENT - Page 7 of 12**          **{3408.021-00637556; 2}**

Exhibit 2
Page 7 of 29

performance, or enforceability. In this role, Judge Hogan will, to the fullest extent possible, help the Parties resolve any disputes and if the Parties are unable to reach an agreement, decide any disputes about what the settlement terms are, any disputes on the execution of the settlement, and/or any disputes over papering the settlement on procedures that Judge Hogan deems appropriate. Judge Hogan will be the person to see that the terms and conditions of this Agreement are complied with. Such determination(s) of Judge Hogan shall be made without personal liability to Judge Hogan, and shall be binding on the Parties and enforceable in the Court, without the possibility of appeal. Should Judge Hogan become unavailable or unable to perform his duties hereunder, Judge Lyle Velure shall take over the duties of Judge Hogan under this Agreement. Should Judge Velure also become unavailable or unable to perform his duties hereunder, a person appointed by the United States Bankruptcy Court shall take over such duties.

## GENERAL PROVISIONS

18.    Parties Exercised Own Judgment. The Parties, and each of them, represent and warrant that in executing this Agreement they relied solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel and tax advisors, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof, and that they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any party or by any person representing any party to this Agreement. Each Party assumes the risk of mistake as to facts or law.

19.    Authority to Act. Each person and entity executing this Agreement on behalf of any other person or entity does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Agreement on behalf of, and fully bind, each principal and/or each entity which such person represents or purports to represent.

20.    Have Read Agreement. The Parties, and each of them, warrant and represent to each other that he, she or it has carefully read the contents of this Agreement, and this Agreement is signed freely by each person executing this Agreement on behalf of each of the Parties. The Parties, and each of them, further represent and warrant to each other that he, she or it has made such investigation of the facts pertaining to the settlement, this Agreement and all of the matters pertaining thereto, as it deems necessary.

21.    Governing Law. All claims and controversies arising out of or relating to this Agreement shall be governed by the substantive law of the State of Oregon without regard to Oregon conflict of law principles.

**SETTLEMENT AGREEMENT - Page 8 of 12**          **{3408.021-00637556; 2}**

Exhibit 2
Page 8 of 29

22.    Headings. Section headings are for convenience only and shall not be construed to change or affect the text of this Agreement.

23.    Survival of Representations and Warranties. All representations and warranties set forth in this Agreement shall be deemed continuing.

24.    Further Assurances. The Parties agree to execute such other documents and take such actions as may reasonably be necessary to further the purpose, terms and spirit of this Agreement, including but not limited to a Deed.

25.    No Benefit to Non-Settling Parties. Except as expressly provided herein, this Agreement shall not confer any right or benefit upon, or release from liability any individual or entity who is not a party to this Agreement or who is not specifically referenced herein.

26.    No Admissions. None of the Parties have made, nor shall they be deemed to have made, any admission of any kind by their negotiation of or entry into this Agreement.  Neither this Agreement nor any provision contained herein shall be construed by any person as an admission by the Parties of any liability for, related to or arising out of any of the released claims or claims of any other nature.  The Parties reached the settlement contained herein following several rounds of litigation and adversarial mediation.  The Parties are entering into this Agreement for the purpose of resolving disputed issues between them and to avoid the costs and risks of further litigation.

27.    Counterpart Originals. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute one agreement.  Facsimile or e-mailed signatures shall be considered the same as originals.

28.    Binding Effect. This Agreement binds and inures to the benefit of the Parties, their assigns, heirs, administrators, executors, representatives, beneficiaries and successors, and each of them.

29.    Modification. This Agreement cannot be modified or amended except by written agreement signed on behalf of the Parties.

30.    Waiver. No portion of this Agreement may be waived except by written instrument signed on behalf of affected Parties on behalf of whom the waived provision is designed to benefit.  A waiver of one provision is not a waiver of any other.  Failure to enforce any provision of this Agreement shall not waive that provision or any other.

31.    Construction. Any rule of construction to the effect that ambiguities in a writing are to be construed against the drafting party does not apply in the interpretation of this Agreement, or any portion hereof, which has actively been negotiated and drafted by counsel for each of the Parties, and all of them.

**SETTLEMENT AGREEMENT - Page 9 of 12**        **{3408.021-00637556; 2}**

Exhibit 2
Page 9 of 29

32.    <u>Attorney Fees</u>. Except as otherwise provided herein, the Parties shall each bear their respective costs and attorney fees incurred in with respect to the Settlement, and with respect to this Agreement.

33.    <u>Materiality of Covenants, Warranties and Representations</u>. All covenants, warranties and representations made in this Agreement shall be deemed material.

34.    <u>Severability</u>. In the event that any portion of this Agreement shall be determined to be invalid or unenforceable to any extent, the same shall to that extent be deemed severable from this Agreement and the invalidity or unenforceability thereof shall not affect the validity and enforceability of the remaining portion of this Agreement.

35.    <u>Declarations</u>. BY SIGNING THIS AGREEMENT, EACH PARTY ACKNOWLEDGES AND DECLARES:  (A) THAT THE PARTY HAS FULLY AND CAREFULLY READ THE AGREEMENT; (B) THAT THE PARTY CLEARLY UNDERSTANDS THAT THE AGREEMENT IS A COMPLETE AND FINAL SETTLEMENT; (C) THAT THE PARTY CLEARLY UNDERSTANDS THE MEANING, PURPOSE, AND INTENT OF EACH PROVISION OF THE AGREEMENT, AND THAT EACH PROVISION IS CLEAR AND DEFINITE; (D) THAT THE PARTIES HAVE NOT RELIED UPON ANY REPRESENTATION OF THE OTHER IN AGREEING TO THE TERMS OF THIS AGREEMENT; AND (E) THAT THE PARTY HAS BEEN REPRESENTED BY COMPETENT LEGAL COUNSEL WITH RESPECT TO NEGOTIATING, EXPLAINING, AND ENTERING INTO THIS AGREEMENT.

36.    <u>Only Agreement</u>. Each party acknowledges that it has signed this Agreement of its own volition, without coercion or duress, after consulting with counsel of its choice. The Parties further acknowledge that this Agreement contains the entire understanding between the Parties with respect to the transaction contemplated herein, that there is no representation, agreement, or obligation regarding the settlement which is not expressly set forth in this Agreement, and that no representation, inducement, promise, or agreement not expressly set forth in the text of this Agreement shall be of any force or effect.

J.E. Dunn Construction Company                    Marion Construction Company

By: _James T. Smithwraits_                         By: _____
Its: _Vice President_                               Its: _____

**SETTLEMENT AGREEMENT - Page 10 of 12**        **{3408.021-00637556; 2}**

Exhibit 2
Page 10 of 29

32.  <u>Attorney Fees</u>. Except as otherwise provided herein, the Parties shall each bear their respective costs and attorney fees incurred in with respect to the Settlement, and with respect to this Agreement.

33.  <u>Materiality of Covenants, Warranties and Representations</u>. All covenants, warranties and representations made in this Agreement shall be deemed material.

34.  <u>Severability</u>. In the event that any portion of this Agreement shall be determined to be invalid or unenforceable to any extent, the same shall to that extent be deemed severable from this Agreement and the invalidity or unenforceability thereof shall not affect the validity and enforceability of the remaining portion of this Agreement.

35.  <u>Declarations</u>. BY SIGNING THIS AGREEMENT, EACH PARTY ACKNOWLEDGES AND DECLARES:  (A) THAT THE PARTY HAS FULLY AND CAREFULLY READ THE AGREEMENT; (B) THAT THE PARTY CLEARLY UNDERSTANDS THAT THE AGREEMENT IS A COMPLETE AND FINAL SETTLEMENT; (C) THAT THE PARTY CLEARLY UNDERSTANDS THE MEANING, PURPOSE, AND INTENT OF EACH PROVISION OF THE AGREEMENT, AND THAT EACH PROVISION IS CLEAR AND DEFINITE; (D) THAT THE PARTIES HAVE NOT RELIED UPON ANY REPRESENTATION OF THE OTHER IN AGREEING TO THE TERMS OF THIS AGREEMENT; AND (E) THAT THE PARTY HAS BEEN REPRESENTED BY COMPETENT LEGAL COUNSEL WITH RESPECT TO NEGOTIATING, EXPLAINING, AND ENTERING INTO THIS AGREEMENT.

36.  <u>Only Agreement</u>. Each party acknowledges that it has signed this Agreement of its own volition, without coercion or duress, after consulting with counsel of its choice. The Parties further acknowledge that this Agreement contains the entire understanding between the Parties with respect to the transaction contemplated herein, that there is no representation, agreement, or obligation regarding the settlement which is not expressly set forth in this Agreement, and that no representation, inducement, promise, or agreement not expressly set forth in the text of this Agreement shall be of any force or effect.

J.E. Dunn Construction Company             Marion Construction Company

By:_____             By:_____
Its:_____             Its: _U. P._____


**SETTLEMENT AGREEMENT - Page 10 of 12**          {3408.021-00637556; 2}

Exhibit 2
Page 11 of 29

Masons Supply Company

By: _Pat Murrano_____
Its: _Secretary_____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By: _____
Its: _____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By: _____
Its: _____

Morse Bros., Inc.

By: _____
Its: _____

Industrial Concrete, LLC

By: _____
Its: _____

R2M2 Rebar and Stressing, Inc.

By: _____
Its: _____

Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its: _____

City of Portland

By: _____
Its: _____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____

Bellingham Marine Industries, Inc.

By: _____
Its: _____

Myhre Group Architects, Inc.

By: _____
Its: _____

Salpare Bay, LLC

By: _____
Its: _____

**SETTLEMENT AGREEMENT - Page 11 of 12**      {3408.021-00637556; 1}

Exhibit 2
Page 12 of 29

Masons Supply Company

By:_____
Its:_____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its: _CREDIT MANAGER._

Morse Bros., Inc.

By:_____
Its:_____

Industrial Concrete, LLC

By:_____
Its:_____

R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____

Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____

City of Portland

By: _____
Its: _____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____

Bellingham Marine Industries, Inc.

By: _____
Its: _____

Myhre Group Architects, Inc.

By: _____
Its: _____

Salpare Bay, LLC

By: _____
Its: _____

**SETTLEMENT AGREEMENT – Page 11 of 12**          {3408.021-00637556; 2}



Exhibit 2
Page 13 of 29

Masons Supply Company

By:_____
Its:_____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____

Morse Bros., Inc.

By:_____
Its:_____

Industrial Concrete, LLC

By:_____
Its: MEMBER_____

R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____

Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____

City of Portland

By: _____
Its: _____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____

Bellingham Marine Industries, Inc.

By: _____
Its: _____

Myhre Group Architects, Inc.

By: _____
Its: _____

Salpare Bay, LLC

By: _____
Its: _____

**SETTLEMENT AGREEMENT - Page 11 of 12**        {3408.021-00637556; 1}

Exhibit 2
Page 14 of 29

Masons Supply Company

By:_____
Its:_____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____

Morse Bros., Inc.

By:_____
Its:_____

Industrial Concrete, LLC

By:_____
Its:_____

R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____

Ray's Plumbing of Brush Prairie, Inc.

By: _~signature~_____
Its: _PRESIDENT_____

City of Portland

By: _____
Its: _____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____

Bellingham Marine Industries, Inc.

By: _____
Its: _____

Myhre Group Architects, Inc.

By: _____
Its: _____

Salpare Bay, LLC

By: _____
Its: _____

**SETTLEMENT AGREEMENT - Page 11 of 12**       {3408.021-00637556; 1}

Exhibit 2
Page 15 of 29

Masons Supply Company

By:_____
Its:_____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____

Morse Bros., Inc.

By:_____
Its:_____

Industrial Concrete, LLC

By:_____
Its:_____

R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____

Ray's Plumbing of Brush Prairie, Inc.

By:_____
Its:_____

City of Portland

By:_____
Its:_____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _*(signature)*_
Its: _Credit Manager_

Bellingham Marine Industries, Inc.

By:_____
Its:_____

Myhre Group Architects, Inc.

By:_____
Its:_____

Salpare Bay, LLC

By:_____
Its:_____

**SETTLEMENT AGREEMENT – Page 11 of 12**          {3408.021-00637556; 1}

Exhibit 2
Page 16 of 29

Masons Supply Company

By:_____
Its:_____


Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____


Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____


Morse Bros., Inc.

By:_____
Its:_____


Industrial Concrete, LLC

By:_____
Its:_____


R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____


Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____


City of Portland

By: _____
Its: _____


Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____


Bellingham Marine Industries, Inc.

By: _____
Its: _____


Myhre Group Architects, Inc.

By: _____
Its: _____PRESIDENT_____


Salpare Bay, LLC

By: _____
Its: _____


**SETTLEMENT AGREEMENT - Page 11 of 12**          {3408.021-00637556; 1}

Exhibit 2
Page 17 of 29

Masons Supply Company

By:_____

Its:_____


Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____


Industrial Concrete, LLC


By:_____
Its:_____


Ray's Plumbing of Brush Prairie, Inc.


By: _____
Its:_____


Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____


Myhre Group Architects, Inc.


By: _____
Its: _____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By: _Marvin J Price_____
    Marvin Price
Its:_President_____


Morse Bros., Inc.


By:_____
Its:_____


R2M2 Rebar and Stressing, Inc.


By:_____
Its:_____


City of Portland


By: _____
Its: _____


Bellingham Marine Industries, Inc.


By: _____
Its: _____


Salpare Bay, LLC


By: _____
Its: _____


**SETTLEMENT AGREEMENT - Page 11 of 12**          {3408.021-00637556; 1}

Exhibit 2
Page 18 of 29

Masons Supply Company

By:_____
Its:_____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____

Morse Bros., Inc.

By: _Stephen Frey_ 4/14/2011
Its:_____
       STEPHEN FREY
      ASSISTANT SECRETARY

Industrial Concrete, LLC

By:_____
Its:_____

R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____

Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____

City of Portland

By: _____
Its: _____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____

Bellingham Marine Industries, Inc.

By: _____
Its: _____

Myhre Group Architects, Inc.

By: _____
Its: _____

Salpare Bay, LLC

By: _____
Its: _____

**SETTLEMENT AGREEMENT - Page 11 of 12**   {3408.021-00637556; 1}

Exhibit 2
Page 19 of 29

Masons Supply Company

By:_____
Its:_____


Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____


Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____


Morse Bros., Inc.

By:_____
Its:_____


Industrial Concrete, LLC

By:_____
Its:_____


R2M2 Rebar and Stressing, Inc.

By: _Mark Jensen_____
Its: _Pres_____


Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____


City of Portland

By: _____
Its: _____


Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____


Bellingham Marine Industries, Inc.

By: _____
Its: _____


Myhre Group Architects, Inc.

By: _____
Its: _____


Salpare Bay, LLC

By: _____
Its: _____


**SETTLEMENT AGREEMENT - Page 11 of 12**          **{3408.021-00637556; 1}**

Exhibit 2
Page 20 of 29

Masons Supply Company

By:_____
Its:_____

Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____

Industrial Concrete, LLC

By:_____
Its:_____

Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____

Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____

Myhre Group Architects, Inc.

By: _____
Its: _____

Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____

Morse Bros., Inc.

By:_____
Its:_____

R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____

City of Portland

By: _____
Its: _____
Deputy City Attorney
7/29/11

Bellingham Marine Industries, Inc.

By: _____
Its: _____

Salpare Bay, LLC

By: _____
Its: _____

**SETTLEMENT AGREEMENT - Page 11 of 12**          {3408.021-00637556; 2}

Exhibit 2
Page 21 of 29

Masons Supply Company

By:_____
Its:_____


Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____


Industrial Concrete, LLC

By:_____
Its:_____


Ray's Plumbing of Brush Prairie, Inc.

By: _____
Its:_____


Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By: _____
Its: _____


Myhre Group Architects, Inc.

By: _____
Its: _____


Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____


Morse Bros., Inc.

By:_____
Its:_____


R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____


City of Portland

By: _____
Its: _____


Bellingham Marine Industries, Inc.

By: ~~Anna M Dutpocont~~
Its: ~~Vice ford Adminl~~


Salpare Bay, LLC

By: _____
Its: _____


**SETTLEMENT AGREEMENT - Page 11 of 12**          {3408.021-00637556; 1}

Exhibit 2
Page 22 of 29

Masons Supply Company

By:_____
Its:_____


Associated Masonry Restoration, Inc.,
d/b/a Pardue Restoration, Inc.

By:_____
Its:_____


Harris Rebar Seattle, Inc., d/b/a Harris
Rebar Portland

By:_____
Its:_____


Morse Bros., Inc.

By:_____
Its:_____


Industrial Concrete, LLC

By:_____
Its:_____


R2M2 Rebar and Stressing, Inc.

By:_____
Its:_____


Ray's Plumbing of Brush Prairie, Inc.

By:_____
Its:_____


City of Portland

By:_____
Its:_____


Safway Services, LLC f/k/a ThyssenKrupp
Safway, Inc.

By:_____
Its:_____


Bellingham Marine Industries, Inc.

By:_____
Its:_____


Myhre Group Architects, Inc.

By:_____
Its:_____


Salpare Bay, LLC

Digitally signed by Michael J. DeFrees
DN: cn=Michael J. DeFrees, o, ou,
email=mike@crccorporation.com, c=US
Date: 2011.05.02 13:55:20 -07'00'

By:_____
Its: Manager, Columbia Rim Corporation
    Michael J. DeFrees President


**SETTLEMENT AGREEMENT - Page 11 of 12**          {3408.021-00637556; 2}

Exhibit 2
Page 23 of 29

Harbor Investors, LLC

By _____

Its: _____

**SETTLEMENT AGREEMENT - Page 12 of 12**        {3408.021-00637556; 2}

Exhibit 2
Page 24 of 29

EXHIBIT A TO SETTLEMENT AGREEMENT

| | 1 | | 2 | | | | | | | | | | | 3 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Contractor | Principal Amount Owed | Agreed Pre-Judgment Interest Rate | Daily Interest Rate | Pre-Judgment Interest Per Day | Pre-Judgment Interest Accrue Date | Days Unpaid | Total Pre-Judgment Interest Accrued Thru 12/29/09 | Post-Judgment Interest Rate | Daily Interest Rate | Post-Judgment Interest Per Day | Days Unpaid | Post-Judgment Interest | Total Principal Interest from 12/30/09 through 3/31/11 |
| JE Dunn | $1,086,788.00 | 10.00% | 0.000273973 | $297.75 | 9/15/2007 | 836 | $248,919.11 | 10.00% | 0.000273973 | $297.75 | 457 | $136,071.81 | $384,990.93 |
| Pardue | $49,800.00 | 9.00% | 0.000246575 | $12.28 | 9/15/2007 | 836 | $10,265.62 | 9.00% | 0.000246575 | $12.28 | 457 | $5,611.71 | $15,877.33 |
| Ray's | $104,347.56 | 10.00% | 0.000273973 | $28.59 | 9/15/2007 | 836 | $23,899.88 | 10.00% | 0.000273973 | $28.59 | 457 | $13,064.89 | $36,964.77 |
| MCC | $1,375,549.00 | 10.00% | 0.000273973 | $376.86 | 9/15/2007 | 836 | $315,057.25 | 10.00% | 0.000273973 | $376.86 | 457 | $172,226.27 | $487,283.52 |
| MBI | $39,778.00 | stipulated to pre-judgment interest | | | | | $3,923.00 | 10.00% | 0.000273973 | $10.90 | 457 | $4,980.17 | $8,903.17 |
| Industrial | $15,675.00 | stipulated to pre-judgment interest | | | | | $1,661.00 | 10.00% | 0.000273973 | $4.29 | 457 | $1,962.60 | $3,623.60 |
| R2M2 | $264,165.00 | stipulated to pre-judgment interest | | | | | $18,000.00 | 10.00% | 0.000273973 | $72.37 | 457 | $33,074.91 | $51,074.91 |
| Harris | $605,835.00 | stipulated to pre-judgment interest | | | | | $10,000.00 | 10.00% | 0.000273973 | $165.98 | 457 | $75,853.86 | $85,853.86 |
| MASCO* | $202,248.44 | 9.00% | STIP: $16,250.87 | $44.18 | 4/1/2009 | 273 | $28,312.01 | 9.00% | 0.000246575 | $49.87 | 457 | $22,790.35 | $51,102.36 |
| | $22,462.53 | | | | | | | | | | | | $2,531.19 |
| Totals | $3,766,646.53 | | | | | | $660,037.88 | | | | | $465,636.67 | $1,128,205.63 |

| | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Myhre (architect) | $ 46,944.00 n/a | | | | | | $0.00 | 9.00% | 0.000246575 | $11.58 | 457 | $5,289.88 | $5,289.88 |
| Thyssen Krupp | $ 58,742.50 n/a | | | | | | $0.00 | 10.00% | 0.000273973 | $16.09 | 457 | $7,354.88 | $7,354.88 |
| Totals | $ 105,686.50 | | | | | | | | | | | | $12,644.76 |

| | | | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| City | $ 148,441.71 n/a | | | | | | $0.00 | 9.00% | 0.000246575 | $36.60 | 457 | $16,727.14 | $16,727.14 |
| BMI (marina) | $ 209,242.00 | 9.00% | 0.000246575 | $51.59 | 7/1/2008 | 546 | $28,170.28 | 9.00% | 0.000246575 | $51.59 | 457 | $23,578.42 | $51,748.70 |
| Subtotal: | $ 357,683.71 | | | | | | | | | | | | $68,476.84 |

TOTAL OF ALL LIENS

*$16,250.87 - pre-judgment interest through 3/31/09 per Limited Judgment and is included in the $28,312.01 (pre-judgment thru 12/29/09 column)

Exhibit 2
Page 25 of 29

{3408.021-00619855; 1}

EXHIBIT A TO SETTLEMENT AGREEMENT

| Attorney Fees | Costs | Post-Judgment Interest Rate | Daily Interest Rate | Post-Judgment Interest Per Day | Post-Judgment Interest Accrue Date | Days Unpaid | Atty fee post-judgment Interest Accrued From 12/30/09 Thru 3/31/11 | Supp Fees | Supp Costs | Post-Judgment Interest Rate | Days Unpaid | Suppl atty fee Post-Judgment Interest Accrued From 1/23/10 Thru 1/26/11 | Total atty fee and interest (4) | TOTAL lien, lien interest, atty fees and atty fees interest thru 3/31/11 (6) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $737,087.72 | $48,130.81 | 10.00% | 0.000273973 | $215.13 | 12/30/2009 | 457 | $98,313.66 | $144,900.05 | $4,715.13 | 10% | 433 | $17,748.87 | $1,050,896.24 | $2,522,675.17 |
| $29,772.07 | $617.00 | 9.00% | 0.000246575 | $7.49 | 12/30/2009 | 457 | $3,424.39 | | | | | | $33,813.46 | $66,490.79 |
| $11,530.50 | $1,108.00 | 10.00% | 0.000273973 | $3.46 | 12/30/2009 | 457 | $1,582.41 | | | | | | $14,220.91 | $155,533.24 |
| $147,304.50 | $12,453.05 | 10.00% | 0.000273973 | $43.77 | 12/30/2009 | 457 | $20,002.52 | | | | | | $179,760.07 | $2,042,592.59 |
| $18,208.00 | $632.88 | 10.00% | 0.000273973 | $5.16 | 12/30/2009 | 457 | $2,358.98 | | | | | | $21,199.86 | $69,879.03 |
| $8,499.00 | $479.00 | 10.00% | 0.000273973 | $2.46 | 12/30/2009 | 457 | $1,124.09 | | | | | | $10,102.09 | $29,400.69 |
| $9,470.00 | $2,130.00 | 10.00% | 0.000273973 | $3.18 | 12/30/2009 | 457 | $1,452.38 | | | | | | $13,052.38 | $328,292.29 |
| $48,002.50 | $557.22 | 10.00% | 0.000273973 | $13.30 | 12/30/2009 | 457 | $6,079.94 | | | | | | $54,639.66 | $746,328.52 |
| $59,099.50 | $1,514.03 | 9.00% | 0.000246575 | $14.95 | 12/30/2009 | 457 | $6,830.23 | | | | | | $67,443.76 | $320,794.56 |
| | | 9.00% | 0.000246575 | $5.54 | 12/30/2009 | 457 | | | | | | | $0.00 | $24,993.72 |
| $1,068,973.79 | $67,621.99 | | | | | | $141,168.82 | $144,900.05 | $4,715.13 | | | $17,748.87 | $1,445,128.45 | $6,339,980.61 |

| Attorney Fees | Costs | Post-Judgment Interest Rate | Daily Interest Rate | Post-Judgment Interest Per Day | Post-Judgment Interest Accrue Date | Days Unpaid | Atty fee post-judgment Interest | Suppl atty fee Interest | Total atty fee and interest | TOTAL lien |
|---|---|---|---|---|---|---|---|---|---|---|
| $28,047.50 | $861.20 | 9.00% | 0.000246575 | $7.13 | 12/30/2009 | 457 | $3,257.57 | | $32,166.27 | $84,400.16 |
| $0.00 | $0.00 | 10.00% | | $0.00 | 12/30/2009 | 457 | $0.00 | | $0.00 | $66,097.38 |
| $28,047.50 | $861.20 | | | | | | $3,257.57 | | $32,166.27 | $6,490,478.15 |

| Attorney Fees | Costs | Post-Judgment Interest Rate | Daily Interest Rate | Post-Judgment Interest Per Day | Post-Judgment Interest Accrue Date | Days Unpaid | Atty fee post-judgment Interest | Suppl atty fee Interest | Total atty fee and interest | TOTAL lien |
|---|---|---|---|---|---|---|---|---|---|---|
| $0.00 | $0.00 | 9.00% | 0.000246575 | $0.00 | 12/30/2009 | 457 | $0.00 | | $0.00 | $165,188.85 |
| $132,133.77 | $5,233.20 | 9.00% | 0.000246575 | $33.87 | 12/30/2009 | 457 | $15,479.19 | | $152,846.16 | $413,836.86 |
| $132,133.77 | $5,233.20 | | | | | | $15,479.19 | | $162,846.16 | $579,005.71 |

**TOTAL ALL LIENS** $7,069,483.86

Exhibit 2
Page 26 of 29

{3408.021-00619855; 1}

## ASSIGNMENT OF LIMITED LIABILITY COMPANY INTEREST AND RELEASE

This ASSIGNMENT OF LIMITED LIABILITY COMPANY INTEREST AND RELEASE ("Assignment") is made as of the ___ day of _____, 2011, by and between George H. Killian and Lance E. Killian (collectively, "Assignors") and Salpare Bay, LLC ("Assignee").

**Recitals:**

Assignors are all the members of Harbor Investors, LLC, an Oregon limited liability company (the "Company"). The Company owns a 15% tenancy-in-common interest ("Tenancy-In-Common Interest") in real property in Portland, Oregon ("Property"). The Property has been intended for a marina and vertical development project ("Project"). Assignors desire to assign to Assignee their membership interests in the Company (the "Membership Interests"), and Assignee desires to accept such assignment, on the terms of this Assignment. Assignee represents that it is familiar with the Project and the Company, is an accredited investor (or that Assignee is accredited as 100% of its equity owners are accredited investors) as defined in SEC Rule 501 of Regulation D, and is acquiring the Membership Interests for his own account and not for the purpose of resale.

**Agreements:**

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  <u>Assignment</u>. Effective on the effective date of this Assignment, Assignors assign to Assignee the Membership Interests. Assignee hereby accepts such assignment.

2.  <u>Representations</u>. Assignors represent and warrant to Assignee the following. Assignors are the lawful owners of the Membership Interests, free and clear of all security interests, liens, and encumbrances. The Company is an Oregon limited liability company in good standing. The only asset of the Company is the Tenancy-In-Common Interest. The only business of the Company is and has been its investment in the Project, the Company has no contractual obligations other than those under the Tenancy-In-Common Agreement, if any, and the Company does not have, and has never had, any employees. Assignors have filed income tax returns based on the accounting information provided by Assignee through and including tax year 2009 and have paid the taxes owed, if any, under those returns. Assignors shall file the tax returns for the Company for tax year 2010 within the time allowed by law, and shall provide a copy of the filed 2010 tax return for the Company to Assignee. There are outstanding tax and construction liens against the Property. All representations and warranties contained in this Assignment will survive the assignment of the Membership Interest to Assignee.

3.  <u>Mutual Release</u>. With the exception of claims for loss or damage arising from breach of this Assignment or the Settlement Agreement executed contemporaneously herewith, Assignors hereby release, acquit and forever discharge Assignee and its member, Michael DeFrees, from any and all known claims for all acts and omissions occurring to and including the date hereof under any legal theory. With the exception of claims for loss or damage arising from the breach of the representations and warranties set forth in paragraph 2, above, Assignee and Michael DeFrees (on his own behalf and on behalf of any of his affiliates) do hereby release, acquits and forever discharges Assignors from any and all known claims for all acts and omissions occurring to and including the date hereof under any legal theory. Assignee confirms that it has no knowledge of any claim arising from breach any such representation or warranty as of the date hereof.

4.    __As Is.__ Except as provided above, Assignors make no representation or warranty whatsoever regarding the Membership Interests. Assignee recognizes that the Membership Interests may have little or no value.

5.    __Payment by Harbor.__ In consideration hereof (as provided in Section 2 of the Settlement Agreement), and subject to Section 10, Assignors directly or through Harbor shall pay Assignee the sum of $40,000, as provided in the Settlement Agreement.

6.    __Indemnity.__    Assignee agrees to indemnify, defend, protect and hold harmless Assignors from and against any and all claims, demands, fees, liens, damages, losses, liabilities, costs and expenses (including reasonable attorneys' fees) arising out of or in any way connected with Harbor's execution of the Settlement Agreement, Assignee's or Harbor's actual or alleged nonperformance or breach of the Settlement Agreement, or the Judgments (as defined in the Settlement Agreement).

7.    __Attorneys Fees.__    The prevailing party in any action to enforce or interpret this Assignment, including on appeal, shall be entitled to recover its costs and reasonable attorney's fees to be determined by the court.  The prevailing party may also recover reasonable attorney's fees, and other fees, costs, and expenses of every kind, incurred in any appeal, petition for review, and proceeding brought under the United States Bankruptcy Code. This Assignment shall be governed by and construed in accordance with the laws of the State of Oregon without regard to choice of law principles.

8.    __Possession.__ Assignee shall be entitled to possession of the Membership Interests (if certificated) and all books and records of and related to the Company within a reasonable time after the effective date of this Assignment.  Such books and records to do not include privileged communications.  Assignors may retain copies of the foregoing and shall be afforded access to the originals for any reasonable business purpose.

9.    __Entire Agreement.__ This Assignment, and the Settlement Agreement executed contemporaneously herewith, sets forth the entire understanding of the parties with respect to the assignment of the Membership Interests in Company. This Assignment supersedes any and all prior negotiations, discussions, agreements, and understandings between the parties regarding the same. This Assignment may not be modified or amended except by a written agreement executed by both parties.

10.    __Counterparts.__ This Assignment may be executed in any number of counterparts, all of which together shall constitute one and the same agreement. Facsimile signatures shall be considered original.

11.    __Effective Date:__ This Assignment shall require, and is expressly conditioned upon, the approval of the U.S. Bankruptcy Court for the District of Oregon.  This Assignment shall be effective upon receipt of that approval. Assignee shall diligently prosecute such approval and shall deliver a copy of such approval to Assignor on receipt.  Assignee shall not prosecute any claims against Assignor pending such approval.  Assignor may rescind this Assignment at any time prior to receipt of such approval.

IN WITNESS WHEREOF, the parties have executed this Assignment.

Assignors:

_____

George H. Killian

_____

Lance E. Killian

Assignee:

SALPARE BAY, LLC

By: _____
    Michael J. DeFrees

Digitally signed by Michael J. DeFrees
DN: cn=Michael J. DeFrees, o, ou, email=mike@crccorporation.com, c=US
Date: 2011.04.28 11:58:27 -07'00'

Its: _____
    President

Digitally signed by Michael J. DeFrees
DN: cn=Michael J. DeFrees, o, ou, email=mike@crccorporation.com, c=US
Date: 2011.04.28 11:58:54 -07'00'

Agreed:

Digitally signed by Michael J. DeFrees
DN: cn=Michael J. DeFrees, o, ou, email=mike@crccorporation.com, c=US
Date: 2011.04.28 11:59:56 -07'00'

_____

Michael J. DeFrees

::ODMA\PCDOCS\PORTLAND\704284\13

Exhibit 2
Page 29 of 29



NORTHWEST
BUILDING

OFFICE, CLUBHOUSE
& EXERCISE ROOMS
ON 1ST FLOOR

SOUTHWEST
BUILDING

EAST
BUILDING

BUILDING C

PHASE 2
205 DWELLING UNITS
244 PARKING
SPACES

PHASE I
166 DWELLING UNITS
344 PARKING
SPACES

N

3 bedroom Units:  76
2 bedroom units: 175
1 bedroom units: 120
Total: 371

Total parking shown is
588 spaces (includes
12 accessible parking
spaces & 59 in parking
garage)

PHASE 1: (166 UNITS)
EAST BUILDING
3 BED:    20
2 BED:    40
1 BED:    20
TOTAL: 80

SOUTH (C) BUILDING:
3 BED:    16
2 BED:    30
1 BED:    40
TOTAL: 86

1  SITE PLAN

Sheet Title
SITE PLAN

A1.1

Salpare Bay Apartments
Tomahawk Island Drive
Portland, Oregon

Exhibit 3
Page 1 of 1

## SALPARE BAY, LLC
## Balance Sheet
### As of December 31, 2007

Accrual Basis

|  | Dec 31, 07 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| CASH IN BANK-WCB MARINA | 10,332.83 |
| **Total Checking/Savings** | 10,332.83 |
| **Accounts Receivable** | |
| ACCOUNTS RECEIVABLE | 4,901,778.81 |
| **Total Accounts Receivable** | 4,901,778.81 |
| **Other Current Assets** | |
| ACCOUNTS RECEIVABLE | 446.00 |
| WORK IN PROGRESS | |
| LAND BASIS | 3,057,954.28 |
| ENTITLEMENTS | |
| ENTITLEMENTS TO PURCHASE | 62,170.38 |
| EXHIBIT A | 1,297,022.66 |
| HUD STATEMENTS | 1,726,080.92 |
| TO PURCHASE PAID H.I. LLC | 1,895,500.01 |
| **Total ENTITLEMENTS** | 4,979,773.97 |
| IMPROVEMENTS 85% SALPARE | 24,771,986.32 |
| IMPROVEMENTS 15% H I LLC | 4,371,527.03 |
| **Total WORK IN PROGRESS** | 37,181,241.60 |
| PREPAID LOAN FEES | 480,533.51 |
| **Total Other Current Assets** | 37,662,221.11 |
| **Total Current Assets** | 42,574,332.75 |
| **Fixed Assets** | |
| SALES OFFICE FURNITURE | 58,600.23 |
| EQUIPMENT | 69,422.51 |
| SALES OFFICE | 467,599.48 |
| ACCUMULATED DEPRECIATION | -132,668.00 |
| **Total Fixed Assets** | 462,954.22 |
| **Other Assets** | |
| PROMOTIONAL AIDS | 115,985.43 |
| ACCUMULATED AMORTIZATION | -103,895.00 |
| **Total Other Assets** | 12,090.43 |
| **TOTAL ASSETS** | 43,049,377.40 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| ACCOUNTS PAYABLE - MD | 5,683,155.99 |
| **Total Accounts Payable** | 5,683,155.99 |
| **Total Current Liabilities** | 5,683,155.99 |
| **Long Term Liabilities** | |
| N/P-MIKE DEFREES - MD | 10,904,738.41 |
| N/P-MARSHALL FIRSTBANK - MD | 18,714,986.18 |
| **Total Long Term Liabilities** | 29,619,724.59 |
| **Total Liabilities** | 35,302,880.58 |
| **Equity** | |
| CAPITAL | 4,836,899.06 |
| RETAINED EARNINGS | -1,417,877.52 |
| EQUITY HARBOR INVESTORS | 4,901,778.81 |
| CAPITAL ADJUSTMENT-1031EXCHG | |
| NELMS ADJUSTMENT | 188,602.91 |
| ROBINSON ADJUSTMENT | 199,422.72 |

EXHIBIT 4
Page 1 of 14

### SALPARE BAY, LLC
### Balance Sheet
As of December 31, 2007

Accrual Basis

|  | Dec 31, 07 |
|---|---|
| STOTLER ADJUSTMENT | 94,534.23 |
| Total CAPITAL ADJUSTMENT-1031EXCHG | 482,569.86 |
| EQUITY CASH SWEEPS | 949,915.55 |
| Net Income | -2,005,778.04 |
| Total Equity | 7,746,496.62 |
| TOTAL LIABILITIES & EQUITY | 43,049,377.40 |

EXHIBIT 4
Page 2 of 14

**SALPARE BAY, LLC**
**Profit & Loss**
January through December 2007

Accrual Basis

|  | Jan - Dec 07 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **INCOME** | |
| RENTAL INCOME | 12,974.03 |
| **Total INCOME** | 12,974.03 |
| **Total Income** | 12,974.03 |
| **Cost of Goods Sold** | |
| **SUBCONTRACTOR** | |
| SUBCONTRACTOR DIRECT COSTS | 6,369,817.00 |
| SUBCONTRACTOR MANAGEMENT FEE | 137,494.00 |
| SUBCONTRACTOR SOFT COSTS | 2,572,607.32 |
| **Total SUBCONTRACTOR** | 9,079,918.32 |
| BEGINNING WORK IN PROGRESS | 28,101,323.28 |
| ENDING WORK IN PROGRESS | -37,181,241.60 |
| **Total COGS** | 0.00 |
| **Gross Profit** | 12,974.03 |
| **Expense** | |
| **PROFESSIONAL FEES** | |
| LEGAL FEES | 605.00 |
| **Total PROFESSIONAL FEES** | 605.00 |
| BANK CHARGES | 104.39 |
| LOAN INSPECTION FEES | 5,365.00 |
| REAL PROP TAXES | 27,265.92 |
| LICENSES & PERMITS | 420.00 |
| INTEREST EXPENSE | 1,091,178.67 |
| LOAN FEES | 612,680.24 |
| REPAIRS & MAINTENANCE | 190.77 |
| ADVERTISING | 1,335.35 |
| DEPRECIATION | 62,779.90 |
| AMORTIZATION | 15,210.76 |
| **Total Expense** | 1,807,146.00 |
| **Net Ordinary Income** | -1,794,171.97 |
| **Other Income/Expense** | |
| **Other Income** | |
| INTEREST INCOME | 103,830.72 |
| **Total Other Income** | 103,830.72 |
| **Other Expense** | |
| EXPENSE TO HARBOR INVESTORS | 316,437.69 |
| **Total Other Expense** | 316,437.69 |
| **Net Other Income** | -212,606.97 |
| **Net Income** | -2,006,778.94 |

EXHIBIT 4
Page 3 of 14

# SALPARE BAY, LLC
## Balance Sheet
### As of December 31, 2008

Accrual Basis

|  | Dec 31, 08 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| CASH IN BANK-WCB MARINA | -204.24 |
| **Total Checking/Savings** | -204.24 |
| **Accounts Receivable** | |
| ACCOUNTS RECEIVABLE | 5,241,568.30 |
| **Total Accounts Receivable** | 5,241,568.30 |
| **Other Current Assets** | |
| ACCOUNTS RECEIVABLE | 121.40 |
| **WORK IN PROGRESS** | |
| LAND BASIS | 3,057,954.28 |
| **ENTITLEMENTS** | |
| ENTITLEMENTS TO PURCHASE | 62,170.38 |
| EXHIBIT A | 1,297,022.66 |
| HUD STATEMENTS | 1,725,080.92 |
| TO PURCHASE PAID H.I. LLC | 1,895,500.01 |
| **Total ENTITLEMENTS** | 4,979,773.97 |
| IMPROVEMENTS 85% SALPARE | 24,771,986.32 |
| IMPROVEMENTS 15% H I LLC | 4,371,527.03 |
| **Total WORK IN PROGRESS** | 37,181,241.60 |
| **Total Other Current Assets** | 37,181,363.00 |
| **Total Current Assets** | 42,422,727.06 |
| **Fixed Assets** | |
| SALES OFFICE FURNITURE | 56,600.23 |
| EQUIPMENT | 71,323.76 |
| SALES OFFICE | 467,599.48 |
| ACCUMULATED DEPRECIATION | -198,731.28 |
| **Total Fixed Assets** | 398,792.19 |
| **Other Assets** | |
| PROMOTIONAL AIDS | 115,985.43 |
| ACCUMULATED AMORTIZATION | -115,984.43 |
| **Total Other Assets** | 1.00 |
| **TOTAL ASSETS** | 42,821,520.25 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| ACCOUNTS PAYABLE - MD | 6,720,179.95 |
| **Total Accounts Payable** | 6,720,179.95 |
| **Other Current Liabilities** | |
| Interco Pay -PNWIH | -8,300.00 |
| Interco Pay - ORC | -8,000.00 |
| ACCRUED LOAN INT PAY - MD | 701,812.00 |
| **Total Other Current Liabilities** | 685,512.00 |
| **Total Current Liabilities** | 7,405,691.95 |
| **Long Term Liabilities** | |
| N/P-MIKE DEFREES - MD | 11,193,338.41 |
| N/P-MARSHALL FIRSTBANK - MD | 18,714,986.18 |
| **Total Long Term Liabilities** | 29,908,324.59 |
| **Total Liabilities** | 37,314,016.54 |
| **Equity** | |
| CAPITAL | 4,836,899.06 |

EXHIBIT 4
Page 4 of 14

**SALPARE BAY, LLC**
**Balance Sheet**
As of December 31, 2008

Accrual Basis

| | Dec 31, 08 |
|---|---|
| RETAINED EARNINGS | -3,424,656.46 |
| EQUITY HARBOR INVESTORS | 5,235,312.41 |
| CAPITAL ADJUSTMENT-1031EXCHG | |
| NELMS ADJUSTMENT | 188,602.91 |
| ROBINSON ADJUSTMENT | 199,422.72 |
| STOTLER ADJUSTMENT | 94,534.23 |
| Total CAPITAL ADJUSTMENT-1031EXCHG | 482,559.86 |
| EQUITY CASH SWEEPS | 609,612.95 |
| Net Income | -2,230,224.11 |
| Total Equity | 6,597,503.71 |
| TOTAL LIABILITIES & EQUITY | 42,821,520.25 |

Page 2

EXHIBIT 4
Page 5 of 14

**SALPARE BAY, LLC**
**Profit & Loss**
**January through December 2008**

Accrual Basis

|  | Jan - Dec 08 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **INCOME** | |
| RENTAL INCOME | 111,746.23 |
| UTILITY PASS THROUGH INCOME | 4,633.30 |
| MISCELLANEOUS | 160.06 |
| CUSTOMER REFUNDS | -180.00 |
| **Total INCOME** | 116,359.59 |
| **Total Income** | 116,359.59 |
| **Cost of Goods Sold** | |
| **SUBCONTRACTOR** | |
| SUBCONTRACTOR DIRECT COSTS | 399,950.47 |
| SUBCONTRACTOR SOFT COSTS | 3,553.86 |
| SUBCONTRACTOR - Other | -41,342.28 |
| **Total SUBCONTRACTOR** | 362,162.05 |
| **Total COGS** | 362,162.05 |
| **Gross Profit** | -245,802.46 |
| **Expense** | |
| PRINTING & REPRODUCTION | 127.50 |
| **PROFESSIONAL FEES** | |
| ACCOUNTING | 5,670.68 |
| LEGAL FEES | 548,473.81 |
| PROFESSIONAL FEES - Other | -70,371.67 |
| **Total PROFESSIONAL FEES** | 483,772.82 |
| POSTAGE | 236.49 |
| OFFICE SUPPLIES | 781.68 |
| BANK CHARGES | 177.02 |
| TELEPHONE | 623.78 |
| UTILITIES | 15,962.69 |
| SANITATION | 1,234.99 |
| EQUIPMENT RENT | 347.65 |
| LOAN INSPECTION FEES | 0.00 |
| BOND EXPENSE | 925.65 |
| INSURANCE | 1,154.30 |
| REAL PROP TAXES | 27,265.94 |
| LICENSES & PERMITS | 1,466.46 |
| OUTSIDE SERVICES | 293.25 |
| CLEANING SUPPLIES | 38.35 |
| INTEREST EXPENSE | 598,287.13 |
| LOAN FEES | 408,453.48 |
| REPAIRS & MAINTENANCE | 20,182.00 |
| PROMOTION | 4,030.27 |
| ADVERTISING | 12,664.18 |
| VEHICLE EXPENSE | 18.89 |
| DEPRECIATION | 55,163.79 |
| AMORTIZATION | 10,278.02 |
| MISCELLANEOUS | 80.75 |
| LANDSCAPING | 6,310.97 |
| **Total Expense** | 1,649,888.05 |
| **Net Ordinary Income** | -1,895,690.51 |
| **Other Income/Expense** | |
| **Other Expense** | |
| EXPENSE TO HARBOR INVESTORS | 334,533.60 |
| **Total Other Expense** | 334,533.60 |
| **Net Other Income** | -334,533.60 |
| **Net Income** | -2,230,224.11 |

EXHIBIT 4
Page 6 of 14

### SALPARE BAY, LLC
### Profit & Loss
### January through December 2009

Accrual Basis

| | Jan - Dec 09 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| **INCOME** | |
| RENTAL INCOME | 305,672.26 |
| UTILITY PASS THROUGH INCOME | 132.90 |
| MISCELLANEOUS | 6,910.11 |
| **Total INCOME** | 312,715.27 |
| **Total Income** | 312,715.27 |
| **Cost of Goods Sold** | |
| SUBCONTRACTOR | 608.21 |
| BUILDING PERMITS | 377.08 |
| **Total COGS** | 985.29 |
| **Gross Profit** | 311,729.98 |
| **Expense** | |
| PAYROLL EXPENSE OTHER | 75,431.71 |
| **PROFESSIONAL FEES** | |
| ACCOUNTING | 925.00 |
| LEGAL FEES | 1,001,920.61 |
| PROFESSIONAL FEES - Other | -149,579.88 |
| **Total PROFESSIONAL FEES** | 853,265.73 |
| OFFICE SUPPLIES | 526.80 |
| BANK CHARGES | 1,668.71 |
| TELEPHONE | 1,998.63 |
| UTILITIES | 33,349.76 |
| SANITATION | 3,386.12 |
| SECURITY | 203.83 |
| EQUIPMENT RENT | 4,264.93 |
| LOAN INSPECTION FEES | 5,440.00 |
| BOND EXPENSE | 943.50 |
| INSURANCE | 719.10 |
| TAXES | 1,847.85 |
| REAL PROP TAXES | 62,281.66 |
| PERS PROP TAXES | 19,214.84 |
| LICENSES & PERMITS | 2,255.05 |
| CLEANING SUPPLIES | 97.51 |
| INTEREST EXPENSE | 1,351,899.79 |
| REPAIRS & MAINTENANCE | 10,850.51 |
| PROMOTION | 422.41 |
| ADVERTISING | 4,675.18 |
| VEHICLE EXPENSE | 41.05 |
| DEPRECIATION | 55,153.79 |
| AMORTIZATION | 0.85 |
| MISCELLANEOUS | 78.50 |
| LANDSCAPING | 2,602.70 |
| Management Fee | 51,000.00 |
| **Total Expense** | 2,544,417.54 |
| **Net Ordinary Income** | -2,232,687.56 |
| **Other Income/Expense** | |
| **Other Expense** | |
| EXPENSE TO HARBOR INVESTORS | 394,007.26 |
| **Total Other Expense** | 394,007.26 |
| **Net Other Income** | -394,007.26 |
| **Net Income** | -2,626,694.82 |

EXHIBIT 4
Page 7 of 14

Accrual Basis

**SALPARE BAY, LLC**
**Balance Sheet**
**As of December 31, 2009**

|  | Dec 31, 09 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| CASH IN BANK-WEST COAST BANK | -47.50 |
| CASH IN BANK-MARINA-1ST INDEP | 1,468.00 |
| CASH IN BANK-WCB MARINA | 6,945.76 |
| PETTY CASH | 80.00 |
| **Total Checking/Savings** | 8,446.26 |
| | |
| **Accounts Receivable** | |
| ACCOUNTS RECEIVABLE | 5,623,798.42 |
| **Total Accounts Receivable** | 5,623,798.42 |
| | |
| **Other Current Assets** | |
| ACCOUNTS RECEIVABLE | 1,928.50 |
| **WORK IN PROGRESS** | |
| LAND BASIS | 3,057,954.28 |
| ENTITLEMENTS | |
| ENTITLEMENTS TO PURCHASE | 62,170.38 |
| EXHIBIT A | 1,297,022.66 |
| HUD STATEMENTS | 1,725,080.92 |
| TO PURCHASE PAID H.I. LLC | 1,895,500.01 |
| **Total ENTITLEMENTS** | 4,979,773.97 |
| | |
| IMPROVEMENTS 85% SALPARE | 24,771,986.32 |
| IMPROVEMENTS 15% H I LLC | 4,371,527.03 |
| **Total WORK IN PROGRESS** | 37,181,241.60 |
| | |
| PREPAID EXPENSES | 33,579.00 |
| **Total Other Current Assets** | 37,216,749.10 |
| | |
| **Total Current Assets** | 42,848,993.78 |
| | |
| **Fixed Assets** | |
| SALES OFFICE FURNITURE | 58,600.23 |
| EQUIPMENT | 71,323.76 |
| SALES OFFICE | 467,599.48 |
| ACCUMULATED DEPRECIATION | -264,794.56 |
| **Total Fixed Assets** | 332,728.91 |
| | |
| **Other Assets** | |
| PROMOTIONAL AIDS | 115,985.43 |
| ACCUMULATED AMORTIZATION | -115,985.43 |
| **Total Other Assets** | 0.00 |

EXHIBIT 4
Page 8 of 14

Accrual Basis

**SALPARE BAY, LLC**
**Balance Sheet**
**As of December 31, 2009**

Dec 31, 09

| | |
|---|---:|
| TOTAL ASSETS | 43,181,722.69 |

**LIABILITIES & EQUITY**

   **Liabilities**

      **Current Liabilities**

| | |
|---|---:|
|    Accounts Payable | |
|       ACCOUNTS PAYABLE - MD | 7,332,575.82 |
|    Total Accounts Payable | 7,332,575.82 |
| | |
|    Other Current Liabilities | |
|       ACCOUNTS PAYABLE - HI | 1,293,983.97 |
|       ACCRUED LOAN INT PAY - MD | 1,215,450.64 |
|       ACCRUED LOAN INT PAY - HI | 214,491.29 |
|       INTERCO PAY - MD GROUP - MD | 151,300.89 |
|       INTERCO PAY - MD GROUP - HI | 26,700.16 |
|    Total Other Current Liabilities | 2,901,926.95 |
| | |
|   Total Current Liabilities | 10,234,502.77 |
| | |
|    Long Term Liabilities | |
|       N/P-MIKE DEFREES - MD | 9,269,027.65 |
|       N/P-MIKE DEFREES - HI | 1,635,710.76 |
|       N/P-MARSHALL FIRSTBANK - MD | 15,907,738.25 |
|       N/P-MARSHALL FIRSTBANK - HI | 2,807,247.93 |
|    Total Long Term Liabilities | 29,619,724.59 |
| | |
|   Total Liabilities | 39,854,227.36 |
| | |
|   **Equity** | |
|    CAPITAL | 4,836,899.06 |
|    RETAINED EARNINGS | -5,654,880.57 |
|    EQUITY HARBOR INVESTORS | 5,630,319.67 |
|    CAPITAL ADJUSTMENT-1031EXCHG | |
|       NELMS ADJUSTMENT | 188,602.91 |
|       ROBINSON ADJUSTMENT | 199,422.72 |
|       STOTLER ADJUSTMENT | 94,534.23 |
|    Total CAPITAL ADJUSTMENT-1031EXCHG | 482,559.86 |
| | |
|    EQUITY CASH SWEEPS | 659,292.13 |
|    Net Income | -2,626,694.82 |
|   Total Equity | 3,327,495.33 |
| | |
|   TOTAL LIABILITIES & EQUITY | 43,181,722.69 |

EXHIBIT 4
Page 9 of 14

Accrual Basis

# SALPARE BAY, LLC
## Balance Sheet
### As of December 31, 2010

| | Dec 31, 10 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| CASH IN BANK - US BANK | 10,149.85 |
| PETTY CASH | 80.00 |
| **Total Checking/Savings** | 10,229.85 |
| | |
| **Accounts Receivable** | |
| ACCOUNTS RECEIVABLE | 2,643,136.90 |
| **Total Accounts Receivable** | 2,643,136.90 |
| | |
| **Other Current Assets** | |
| ACCOUNTS RECEIVABLE | 6,904.87 |
| **WORK IN PROGRESS** | |
| LAND BASIS | 3,057,954.28 |
| **ENTITLEMENTS** | |
| ENTITLEMENTS TO PURCHASE | 62,170.38 |
| EXHIBIT A | 1,297,022.66 |
| HUD STATEMENTS | 1,725,080.92 |
| TO PURCHASE PAID H.I. LLC | 1,895,500.01 |
| **Total ENTITLEMENTS** | 4,979,773.97 |
| | |
| IMPROVEMENTS 85% SALPARE | 9,959,625.26 |
| IMPROVEMENTS 15%  H I LLC | 1,757,580.96 |
| **Total WORK IN PROGRESS** | 19,754,934.47 |
| | |
| PREPAID EXPENSES | 46,620.00 |
| **Total Other Current Assets** | 19,808,459.34 |
| | |
| **Total Current Assets** | 22,461,826.09 |
| | |
| **Fixed Assets** | |
| SALES OFFICE FURNITURE | 58,600.23 |
| EQUIPMENT | 71,323.76 |
| SALES OFFICE | 467,599.48 |
| ACCUMULATED DEPRECIATION | -330,857.81 |
| **Total Fixed Assets** | 266,665.66 |
| | |
| **Other Assets** | |
| PROMOTIONAL AIDS | 115,985.43 |
| ACCUMULATED AMORTIZATION | -115,985.43 |
| **Total Other Assets** | 0.00 |
| | |
| **TOTAL ASSETS** | 22,728,491.75 |
| | |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| ACCOUNTS PAYABLE - MD | 8,068,056.18 |

Accrual Basis

# SALPARE BAY, LLC
# Balance Sheet
## As of December 31, 2010

|  | Dec 31, 10 |
|---|---|
| **Total Accounts Payable** | 8,068,056.18 |
|  |  |
| **Other Current Liabilities** |  |
| ACCOUNTS PAYABLE - HI | 1,336,701.60 |
| Advance Rents | 110.00 |
| Accrued Expenses | 75,872.06 |
| **Total Other Current Liabilities** | 1,412,683.66 |
|  |  |
| **Total Current Liabilities** | 9,480,739.84 |
|  |  |
| **Long Term Liabilities** |  |
| N/P-MIKE DEFREES - MD | 9,269,027.65 |
| N/P-MIKE DEFREES - HI | 1,635,710.76 |
| **Total Long Term Liabilities** | 10,904,738.41 |
|  |  |
| **Total Liabilities** | 20,385,478.25 |
|  |  |
| **Equity** |  |
| CAPITAL | 4,836,899.06 |
| CAPITAL ADDITIONS | 724,945.27 |
| RETAINED EARNINGS | -8,281,575.39 |
| EQUITY HARBOR INVESTORS | 5,699,726.18 |
| CAPITAL ADJUSTMENT-1031EXCHG |  |
| NELMS ADJUSTMENT | 188,602.91 |
| ROBINSON ADJUSTMENT | 199,422.72 |
| STOTLER ADJUSTMENT | 94,534.23 |
| **Total CAPITAL ADJUSTMENT-1031EXCHG** | 482,559.86 |
|  |  |
| Net Income | -1,119,541.48 |
| **Total Equity** | 2,343,013.50 |
|  |  |
| **TOTAL LIABILITIES & EQUITY** | 22,728,491.75 |

Accrual Basis

# SALPARE BAY, LLC
## Profit & Loss
### January through December 2010

| | Jan - Dec 10 |
|---|---|
| **Ordinary Income/Expense** | |
|   **Income** | |
|     **INCOME** | |
|       RENTAL INCOME | 366,629.59 |
|       UTILITY PASS THROUGH INCOME | 37,832.91 |
|       MISCELLANEOUS | 4,916.95 |
|       CUSTOMER REFUNDS | -228.00 |
|     **Total INCOME** | 409,151.45 |
| | |
|   **Total Income** | 409,151.45 |
| | |
|   **Cost of Goods Sold** | |
|     SUBCONTRACTOR | 0.00 |
|     ENGINEERING/UTILITIES | 779.79 |
|     CONSULTANTS | 2,000.00 |
|     BUILDING PERMITS | 170.00 |
|   **Total COGS** | 2,949.79 |
| | |
| **Gross Profit** | 406,201.66 |
| | |
|   **Expense** | |
|     REFUND | 100.00 |
|     PAYROLL EXPENSE OTHER | 27,600.00 |
|     ARCHITECTURE FEES | 24,300.00 |
|     PRINTING & REPRODUCTION | 902.39 |
|     PROFESSIONAL FEES | |
|       ACCOUNTING | 535.00 |
|       LEGAL FEES | 185,266.40 |
|       PROFESSIONAL FEES - Other | -16,586.15 |
|     **Total PROFESSIONAL FEES** | 169,215.25 |
| | |
|     POSTAGE | 89.59 |
|     OFFICE SUPPLIES | 1,048.37 |
|     BANK CHARGES | 1,345.03 |
|     TELEPHONE | 5,749.42 |
|     UTILITIES | |
|       ELECTRICITY | 2,920.21 |
|       WATER & SEWER | 602.00 |
|       UTILITIES - Other | 55,504.94 |
|     **Total UTILITIES** | 59,027.15 |
| | |
|     SANITATION | 1,854.75 |
|     SECURITY | 177.08 |
|     EQUIPMENT RENT | 2,150.42 |
|     LOAN INSPECTION FEES | 0.00 |
|     BOND EXPENSE | 200.00 |
|     INSURANCE | 4,515.54 |
|     TAXES | 0.00 |
|     REAL PROP TAXES | 83,749.43 |

Accrual Basis

# SALPARE BAY, LLC
# Profit & Loss
## January through December 2010

| | Jan - Dec 10 |
|---|---|
| PERS PROP TAXES | 18,169.00 |
| LICENSES & PERMITS | 9,756.35 |
| CLEANING SUPPLIES | 0.00 |
| INTEREST EXPENSE | 867,243.61 |
| REPAIRS & MAINTENANCE | 12,532.38 |
| ENGINEERING | 3,378.78 |
| PROMOTION | 1,219.53 |
| ADVERTISING | 2,559.96 |
| VEHICLE EXPENSE | 0.00 |
| DEPRECIATION | 63,585.88 |
| AMORTIZATION | 0.00 |
| MISCELLANEOUS | 0.00 |
| LANDSCAPING | 1,310.14 |
| MANAGEMENT FEE | 57,741.67 |
| STAFFING FEES | 36,814.91 |
| **Total Expense** | 1,456,336.63 |
| | |
| **Net Ordinary Income** | -1,050,134.97 |
| | |
| Other Income/Expense | |
| Other Expense | |
| EXPENSE TO HARBOR INVESTORS | 69,406.51 |
| **Total Other Expense** | 69,406.51 |
| | |
| **Net Other Income** | -69,406.51 |
| | |
| **Net Income** | **-1,119,541.48** |

# SALPARE BAY, LLC
## Profit & Loss
### June 8 - 30, 2010

Accrual Basis

|  | Jun 8 - 30, 10 |
|---|---|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| **INCOME** |  |
| RENTAL INCOME | 10,065.84 |
| UTILITY PASS THROUGH INCOME | 1,118.43 |
| MISCELLANEOUS | 0.00 |
| **Total INCOME** | 11,184.27 |
| **Total Income** | 11,184.27 |
| **Gross Profit** | 11,184.27 |
| **Expense** |  |
| **PROFESSIONAL FEES** |  |
| LEGAL FEES | 5,000.00 |
| **Total PROFESSIONAL FEES** | 5,000.00 |
| OFFICE SUPPLIES | 102.94 |
| BANK CHARGES | 7.00 |
| UTILITIES | 923.59 |
| INSURANCE | 342.45 |
| REAL PROP TAXES | 3,320.00 |
| PERS PROP TAXES - | 1,020.00 |
| REPAIRS & MAINTENANCE | 358.98 |
| DEPRECIATION | 4,220.71 |
| MANAGEMENT FEE | 3,666.67 |
| STAFFING FEES | 3,098.87 |
| **Total Expense** | 22,061.21 |
| **Net Ordinary Income** | -10,876.94 |
| **Net Income** | -10,876.94 |

EXHIBIT 4
Page 14 of 14

EXHIBIT 5
Page 1 of 2

## Salpare Bay Marina and Apartment - 7 Year Plan

| | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|
| **Marina** | | | | | | | | |
| Revenue | $ 385,500 | $ 532,219 | $ 765,823 | $ 765,823 | $ 790,404 | $ 814,116 | $ 838,539 | $ 863,695 |
| Expenses | $ 310,742 | $ 320,065 | $ 322,228 | $ 323,238 | $ 329,696 | $ 334,436 | $ 344,470 | $ 354,804 |
| NOI | $ 74,757 | $ 212,155 | $ 443,585 | $ 442,585 | $ 460,708 | $ 479,679 | $ 494,070 | $ 508,892 |
| DIP Monthly Payments- Loan Balance $750,000 -13.25% Interest Only | | $ 57,969 | $ 71,771 | | | | | |
| Mortgage Payment - Starting Nov 2012 -   Monthly Payment $ 23,324 | | | $ 46,647 | $ 279,885 | $ 279,885 | $ 279,885 | $ 279,885 | $ 279,885 |
| **Net Income** | $ 74,757 | $ 212,165 | $ 396,937 | $ 162,700 | $ 180,823 | $ 199,795 | $ 214,185 | $ 229,007 |
| | | | | | | | | |
| Slips Leased /Feet | 1,019 | 1,403 | 1,964 | 1,964 | 1,964 | 1,964 | 1,964 | 1,964 |
| Harbor Investors LLC Settlement Interest Assignment to Salpare | | $ 40,000 | | | | | | |
| Operating Capital DIP Loan & Refinance of Marina- Net Proceeds at Closing | | $ 750,000 | $ 3,300,000 | | | | | |

### APT - PHASE 1 - 166 Units Loan Facility

| | Totals | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|
| **Phase 1** | | | | | | | | | |
| Site Work Costs | $ 2,811,845 | | $ 100,877 | $ 1,177,434 | $ 1,533,734 | | | | |
| Direct Building Costs | $ 10,267,522 | | | $ 4,687,055 | $ 5,600,466 | | | | |
| Indirect Building Costs | $ 4,192,924 | | $ 646,613 | $ 1,239,244 | $ 2,307,068 | | | | |
| Excess Proceeds from Borrowings | $ 2,400,000 | | | $ 2,600,000 | | | | | |
| | $ 2,600,000 | | | | | | | | |
| Loan Facility FHA | $ 19,672,291 | $ 36,700 | $ 747,290 | $ 9,483,734 | $ 9,441,268 | | | | |
| | | $ 36,700 | $ 747,290 | $ 9,483,734 | | | | | |
| | | | | | | | | | |
| **Operating Expenses - Phase 1** | | | | | | | | | |
| Real Estate Taxes | $ (1,845,194) | | | | $ 175,633 | $ 351,265 | $ 361,803 | $ 372,657 | $ 383,837 |
| Insurance | $ (165,649) | | | | $ 17,684 | $ 35,368 | $ 36,429 | $ 37,522 | $ 38,647 |
| License, Dues and Fees | $ (31,373) | | | | $ 3,349 | $ 6,698 | $ 6,899 | $ 7,106 | $ 7,320 |
| On-Site Management/Administration | $ (332,553) | | | | $ 35,502 | $ 71,003 | $ 73,133 | $ 75,327 | $ 77,587 |
| Off-Site Professional Management | $ (376,475) | | | | $ 40,191 | $ 80,381 | $ 82,792 | $ 85,276 | $ 87,835 |
| Repairs & Maintenance | $ (613,654) | | | | $ 65,511 | $ 131,021 | $ 134,952 | $ 139,000 | $ 143,170 |
| Landscaping/Grounds | $ (229,650) | | | | $ 24,516 | $ 49,032 | $ 50,503 | $ 52,018 | $ 53,579 |
| Utilities | $ (641,262) | | | | $ 68,458 | $ 136,916 | $ 141,023 | $ 145,254 | $ 149,611 |
| Marketing/Advertising | $ (122,992) | | | | $ 13,129 | $ 26,258 | $ 27,046 | $ 27,857 | $ 28,693 |
| Administration | $ (184,473) | | | | $ 19,693 | $ 39,387 | $ 40,568 | $ 41,785 | $ 43,039 |
| Turn over expenses | $ (229,650) | | | | $ 24,516 | $ 49,032 | $ 50,503 | $ 52,018 | $ 53,579 |
| Capital reserves | $ (188,237) | | | | $ 20,095 | $ 40,191 | $ 41,366 | $ 42,638 | $ 43,917 |
| | $ (4,761,591) | $ - | $ - | $ - | $ 508,276 | $ 1,016,552 | $ 1,047,046 | $ 1,078,460 | $ 1,110,814 |

### APT - PHASE 2 - 205 Units Loan Facility

| | Totals | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|---|---|---|
| **Phase 2** | | | | | | | | | |
| Site Work Costs | $ 3,428,704 | | | | $ 2,180,630 | $ 1,246,074 | | | |
| Direct Building Costs | $ 12,256,845 | | | | $ 7,799,811 | $ 4,457,035 | | | |
| Indirect Building Costs | $ 5,025,773 | | | | $ 3,264,033 | $ 1,761,740 | | | |
| Excess Proceeds from Borrowings | $ 3,000,000 | | | | $ 3,000,000 | | | | |
| Loan Facility FHA | $ 23,709,322 | | | | $ 16,244,473 | $ 7,464,849 | | | |
| | | | | | | | | | |
| **Operating Expenses - Phase 2** | | | | | | | | | |
| Real Estate Taxes | $ 1,548,134 | | | | | $ 215,564 | $ 431,127 | $ 444,061 | $ 457,383 |
| Insurance | $ 155,876 | | | | | $ 21,704 | $ 43,409 | $ 44,711 | $ 46,052 |
| License, Dues and Fees | $ 29,522 | | | | | $ 4,111 | $ 8,221 | $ 8,468 | $ 8,722 |
| On-Site Management/Administration | $ 312,933 | | | | | $ 43,573 | $ 87,146 | $ 89,761 | $ 92,453 |
| Off-Site Professional Management | $ 354,264 | | | | | $ 49,328 | $ 98,656 | $ 101,616 | $ 104,664 |
| Repairs & Maintenance | $ 577,450 | | | | | $ 80,405 | $ 160,809 | $ 165,634 | $ 170,603 |
| Landscaping/Grounds | $ 216,101 | | | | | $ 30,090 | $ 60,180 | $ 61,986 | $ 63,845 |
| Utilities | $ 603,430 | | | | | $ 84,022 | $ 168,044 | $ 173,086 | $ 178,278 |

EXHIBIT 5
Page 2 of 2

| Line Item | | | | | | | | |
|---|--:|--:|--:|--:|--:|--:|--:|--:|
| Marketing/Advertising | $ 115,726 | $ - | $ - | $ - | $ 16,114 | $ 32,228 | $ 33,194 | $ 34,190 |
| Administration | 173,569 | - | - | - | 24,171 | 48,341 | 49,792 | 51,285 |
| Turn over expenses | 216,101 | - | - | - | 30,090 | 60,180 | 61,986 | 63,845 |
| Capital reserves | 177,132 | - | - | - | 24,664 | 49,328 | 50,808 | 52,332 |
| | $ 4,480,260 | $ - | $ - | $ - | $ 623,835 | $ 1,247,670 | $ 1,285,101 | $ 1,323,654 |
| **Net Income Calculation** | | | | | | | | |
| Marina Revenue | $ 5,756,119 | $ 385,500 | $ 765,823 | $ 532,219 | $ 790,404 | $ 814,116 | $ 838,539 | $ 863,695 |
| Apartment Revenue - Phase 1 & 2 | 19,852,172 | | 372,307 | | 2,841,606 | 5,050,204 | 5,806,924 | 5,981,131 |
| Total APT & MARINA Revenue | $ 25,608,291 | $ 385,500 | $ 1,138,130 | $ 532,219 | $ 3,432,010 | $ 5,864,319 | $ 6,645,463 | $ 6,844,827 |
| Marina Expenses | $ 2,639,689 | $ 310,742 | $ 323,238 | $ 322,238 | $ 329,696 | $ 334,436 | $ 344,470 | $ 354,804 |
| Apartment Expenses - Phase 1 | 5,545,140 | 36,700 | 508,276 | 747,290 | 1,016,552 | 1,047,048 | 1,078,460 | 1,110,814 |
| Apartment Expenses - Phase 2 | 4,480,260 | | 623,835 | | | 1,247,670 | 1,285,101 | 1,323,654 |
| Total APT & MARINA Expenses | $ 12,665,088 | $ 347,442 | $ 831,514 | $ 1,067,364 | $ 1,970,083 | $ 2,629,155 | $ 2,708,030 | $ 2,789,271 |
| Apartments & Marina NOI | $ 12,943,202 | $ 38,057 | $ 306,616 | $ (535,135) | $ 1,461,927 | $ 3,235,164 | $ 3,937,433 | $ 4,055,556 |
| Mortgage Payment - Marina | 1,517,841 | | 118,418 | | 279,885 | 279,885 | 279,885 | 279,885 |
| Mortgage Payment Apt - Phase 1 | 5,963,516 | | 458,732 | | 1,376,196 | 1,376,196 | 1,376,196 | 1,376,196 |
| Mortgage Payment Apt - Phase 2 | 5,630,160 | | 563,016 | | | 1,689,048 | 1,689,048 | 1,689,048 |
| Net Income Marina and Apartments | $ (168,315) | $ 38,057 | $ 325,166 | $ (535,135) | $ (432,001) | $ (109,965) | $ 592,304 | $ 710,427 |
| Stabilization-Absorption/Apartment Units | 0 | 0 | 84 | 0 | 250 | 371 | 371 | 371 |
| Net Income Marina and Apartments | $ (168,315) | $ 38,057 | $ 325,166 | $ (535,135) | $ (432,001) | $ (109,965) | $ 592,304 | $ 710,427 |
| US Trustee Chapter 11 Fees | (5,850) | (1,950) | | (3,900) | | | | |
| Administrative Expense Claims | (177,895) | (22,895) | (55,000) | (100,000) | | | | |
| Modified Net Income Calculation Payment of Unsecured Creditors | $ (352,060) | $ 13,212 | $ 270,166 | $ (639,035) | $ (432,001) | $ (109,965) | $ 592,304 | $ 710,427 |
| **Distributions** | | | | | | | | |
| Net Operating Income | $ (352,060) | $ 13,212 | $ 270,166 | $ (639,035) | $ (432,001) | $ (757,170) | $ 592,304 | $ 710,427 |
| Excess Proceeds from Borrowings DIP Loan - HUD Financing | 9,490,000 | | 5,700,000 | 790,000 | 3,000,000 | | | |
| DIP Loan Repayment ($250,000 Repay 6-30-11 & $500,000 10-31-11) | (750,000) | | (750,000) | | | | | |
| City of PDX - Priority Prin | (147,749) | | (118,199) | | (29,550) | | | |
| City of PDX - Priority Int | (6,850) | | (6,850) | | | | | |
| JE Dunn - Secured Prin | (5,671,974) | | (4,537,579) | | (1,134,395) | | | |
| JE Dunn - Secured Int | (209,098) | | (47,363) | | (209,098) | | | |
| TKS - Secured Prin | (59,204) | | | | (11,841) | | | |
| TKS - Secured Int | (2,695) | | | | (2,695) | | | |
| BMI - Secured Prin | (369,854) | | (285,883) | | (73,971) | | | |
| BMI - Secured Int | (15,455) | | | | (15,455) | | | |
| Myhre - Secured Prin | (75,499) | | (60,399) | | (15,100) | | | |
| Myhre - Secured Int | (3,500) | | | | (3,500) | | | |
| Small Unsecured General Claims | (31,000) | | (7,750) | | (23,250) | | | |
| Unsecured Class 9 Claims | (510,109) | | | | | | | |
| Gen Unsecured 30% of MN-$1.7 Mill Claims ($500K Floor Cash Reserves) | (449,232) | | (25,000) | | (105,508) | | | (177,691) | (332,418) |
| Multnomah County Real and Pers Prop Taxes (Final Payment 6-7-201?) | (341,525) | | | | | (105,508) | | (449,232) |
| Cash Flow | $ 494,198 | $ 13,212 | $ 150,965 | $ 127,993 | $ 936,788 | $ (215,473) | $ 414,613 | $ (71,223) |
| Beginning Cash | 5,802 | | 19,014 | 169,979 | 297,972 | 1,234,761 | 372,083 | 156,610 | 571,223 |
| Change in Cash | | 13,212 | 150,965 | 127,993 | 936,788 | (862,678) | (215,473) | 414,613 | (71,223) |
| Ending Cash | | 19,014 | 169,979 | 297,972 | 1,234,761 | 372,083 | 156,610 | 571,223 | 500,000 |

In re Salpare Bay, LLC
Case No. 10-35333-tmb11

## List of Assumed Non-Residential Real Property Leases and Executory Contracts

1. Property Management Agreement with Gateway National Corporation.

2. Lease Agreement with Royal Marine Sales, Inc.

3. Slip leases identified as follows:

| Lease Slip # | Current Slip # (if different) | Name | Start Date | Expiration Date | Month-to-Month |
|---|---|---|---|---|---|
| A27 | A10 | Stewart | 5/27/10 | Open | Yes |
| A11 | | Bynum | 2/1/10 | None | Yes |
| A15 | | Steffen | 8/1/10 | None | Yes |
| A17 | A13 | Nelson | 7/8/09 | TBD | Yes |
| A4 | A18 | Gardner | 7/1/10 | None | Yes |
| A20 | | Dearing | 9/7/09 | None | Yes |
| A27 | | Perrizo | 8/1/10 | 1/30/11 | |
| B5 | | Elieff | 3/11/10 | Open | Yes |
| B33 | | Hanson/Kelly | 6/18/10 | 12/31/10 | |
| C5 | | Goodwin | 6/1/10 | Open | Yes |
| C5 | C19 | Cole/Heinen | 2/3/10 | Open | Yes |
| C24 | C7 | Phillips | 6/5/09 | None | Yes |
| C27 | | Buckingham | 7/1/10 | 2/1/11 | |
| D7 | | Latimer | 4/24/10 | Open | Yes |
| F5 | D9 | Gunderson | 3/1/09 | None | Yes |
| D27 | | Russell | 4/17/10 | Open | Yes |
| E4 | | Kirby | 5/9/09 | None | Yes |
| E14 | | Peterson | 11/24/09 | Open | Yes |
| E15 | | Thompson | 7/1/10 | Open | Yes |
| D7 | F5 | Kepler | 8/1/09 | Open | Yes |
| H8 | | Nestell/Peck | 6/1/09 | None | Yes |

**Salpare Bay, LLC**
**Liquidation Valuation**

| | Book/2015 Value February 28, 2011 | Liquidation Value February 28, 2011 | | Notes/Assumptions |
|---|---|---|---|---|
| **ASSETS** | | | | |
| **Current Assets** | | | | |
| Cash | 11,006 | 11,006 | | |
| Accounts Receivable | | | | |
| Accounts Receivable (Related Party) | 2,652,769 | 40,000 | A | |
| Land and Improvements | 19,754,934 | 6,557,625 | B | |
| Prepaid expenses | 63,708 | 63,708 | | 10/11 Prop Tax -  Ready buyer willing to pay face value. |
| **Total Current Assets** | 22,482,417 | 6,672,339 | | |
| **Fixed Assets** | | | | |
| Sales Office Furniture | 58,600 | 3,000 | | Estimated auction value. |
| Equipment | 71,324 | 10,000 | | Estimated auction value. |
| Sales Office Furniture | 467,599 | 40,000 | | Estimated auction value. |
| **Total Fixed Assets** | 597,523 | 53,000 | | |
| **TOTAL ASSETS** | 23,079,940 | 6,725,339 | | |
| **LIABILITIES** | | | | |
| Secured Claims | 6,715,078 | 6,715,078 | | Secured debt pre-petition per 2015 plus accrued interest. |
| Priority and Administrative Claims | 234,101 | 10,261 | | |
| Book Value/Available for Unsecured Creditors | 13,041,710 | - | | |

A    Pursuant to the Settlement Agreement dated May 5, 2011 by and between the Debtor and Harbor Investors, LLC et al, Harbor Investors, LLC
has agreed to pay $40,000 to the Debtor in respect of this receivable.

B    For purposes of this Liquidation Analysis, the Debtor used the value listed in the Bankruptcy Court's order denying JE Dunn's
motion for relief from stay of $9,715,000, less a 25% forced liquidation discount of $2,428,750 and less 10% cost of sales of $728,625.  The use of
this number is not a concession on the Debtor's part that the value of the Property is less than the value presented at the hearing on JE Dunn's motion for

EXHIBIT 7
Page 1 of 1

## TAX CONSIDERATIONS
## TO PLAN AND DISCLOSURE STATEMENT

### A.     GENERAL TAX CONSIDERATIONS.

The f ollowing di scussion is a s ummary o f c ertain material f ederal inc ome ta x consequences e xpected t o r esult f rom t he consummation of t he P lan. T his di scussion i s f or general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of an Allowed Claim or equity i nterest. T his di scussion doe s not pur port t o be a c omplete a nalysis or lis ting of all potential tax considerations. This discussion does not address aspects of federal income taxation that ma y be r elevant to a pa rticular hol der of an Allowed Claim s ubject to special tr eatment under f ederal i ncome t ax l aws ( such a s f oreign t axpayers, br oker-dealers, ba nks, t hrifts, insurance c ompanies, f inancial ins titutions, regulated inve stment companies, real estate investment trusts and pension plans, and other tax-exempt investors), and does not di scuss any aspects of state, local or foreign tax laws. F urthermore, this summary doe s not a ddress federal taxes other than income taxes.

This di scussion i s ba sed on e xisting pr ovisions of the Internal Revenue Code of 1986, a s a mended ( the " IRC"), e xisting a nd pr oposed T reasury R egulations pr omulgated thereunder, a nd c urrent a dministrative r ulings and c ourt de cisions. Legislative, j udicial or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the discussion set forth below with respect to federal income tax consequences of the Plan. Any such changes or interpretations may be retroactive and could significantly affect the federal income tax consequences of the Plan. No ruling has been requested or obtained from the Internal Revenue Service (the "IRS") with respect to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect thereto. T his discussion i s not binding on the IRS or the courts and no a ssurance can be given that the IRS will not assert, or that a court will not sustain, a di fferent position than any position discussed herein. No representations or assurances are being made to the holders of Allowed Claims or equity interests with respect to the federal income tax consequences described herein.

Accordingly, the following summary of certain federal income tax consequences of the Plan is for informational purposes only and is not a substitute for careful tax planning or advice based upon t he individual circumstances pertaining to a particular holder of an Allowed Claim or an equity interest. Each holder of an Allowed Claim or an equity interests is strongly urged to consult with its own tax advisors regarding the federal, state, local, foreign and other tax consequences of the Plan.

Any di scussion of f ederal ta x is sues s et f orth in thi s D isclosure S tatement w as written solely in connection with the confirmation of the Plan to which the transactions described in this Disclosure Statement are ancillary. Such discussion is not intended or written to be legal or tax advice to any person and is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any federal tax penalties that may be imposed on such person. Each hol der o f an A llowed C laim or e quity i nterest s hould s eek a dvice ba sed on i ts particular circumstances form an independent tax advisor.

## B.   FEDERAL INCOME TAX CONSEQUENCES TO DEBTORS

### 1.   IN GENERAL

The D ebtor is a limite d lia bility company a nd, thus, is a pa ss-through entity for both federal and state income tax purposes. As such, the Debtor is not itself subject to federal i ncome t ax. I nstead, t he D ebtor's s ole m ember i s r equired t o i nclude on hi s pe rsonal income tax return the income, gain, loss and deduction recognized by the Debtor. A ccordingly, it is unlikely that there will be any direct federal income tax liability at the Debtor's entity level.

### 2.   CANCELLATION OF INDEBTEDNESS INCOME

Under t he IRC, a t axpayer generally will r ecognize canc ellation of de bt income ("COD Income") upon satisfaction of its outstanding indebtedness for consideration less than the amount of such indebtedness. The amount of COD Income, in general, is the excess of (a) the adjusted issue price of the indebtedness (in most cases, the amount the debtor received on incurring the obl igation, with c ertain a djustments) s atisfied, over (b) the sum of the amount of Cash pa id a nd t he f air market va lue of any ne w c onsideration given i n s atisfaction of t he indebtedness.

However, IRS Section 108(a) provides an exclusion from gross income for COD income if certain requirements are met. S ection 108(a) provides an exclusion commonly referred to as the "Bankruptcy Exception," where a taxpayer is in bankruptcy and the discharge is granted, or is effected, pursuant to a plan approved by the bankruptcy court. In the case of an entity ta xable a s a corporation, eligibility for th e B ankruptcy E xception is de termined at the corporate l evel. If t he Bankruptcy E xception a pplies ( with t he e ffect t hat t he t axpayer m ay exclude i ts C OD I ncome f rom i ts g ross i ncome), t he t axpayer i s r equired, unde r IRS S ection 108(b), to reduce certain of its tax attributes by the amount of COD Income excluded from gross income pursuant to the Bankruptcy Exception. T he attributes of the taxpayer that are reduced include any net ope ration l oss c arryovers from prior years, general bus iness and m inimum tax credit carryforwards, capital loss carryforwards, the basis of the taxpayer's assets and foreign tax credit tax carryforwards. In the limited liability company context, the reduction in the basis of assets is most important. However, a special rule can also require a reduction in certain losses to be passed through to members of limited liability companies.

### C.   FEDERAL INCOME TAX CO NSEQUENCES TO TH E H OLDERS OF AN ALLOWED CLAIM

### 1.   SMALL UNSECURED CREDITOR CLAIMS

In a ccordance w ith t he Plan, t he de bt ow ed b y the D ebtor t o e ach hol der of a Small U nsecured C laim will be satisfied by a payment of Cash in an amount equal to 100% of such C laim. In general, the am ount received by ea ch holder of a S mall U nsecured Claim i s treated as an am ount r eceived in exchange for the s atisfied debt, and each such hol der w ill recognized taxable g ain or l oss equa l to the am ount r eceived less the hol der's tax ba sis in the Claim. A ny gain or lo ss r ecognized will be long -term or s hort-term c apital ga in or lo s s or ordinary i ncome or l oss, de pending upon f actors s pecific to e ach hol der of a S mall U nsecured Claim, including but not limited to: (i) whether the Claim (or a portion thereof) is attributable to

principal or interest; (ii) the origin of the Claim; (iii) whether the holder of the Claim reports income on the accrual or cash basis method; and (iv) whether the holder of the Claim has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

## 2.    GENERAL UNSECURED CREDITOR CLAIMS

In accordance with the Plan, the debt owed by the Debtor to each holder of a General Unsecured Claim will be adjusted so that each General Unsecured Creditor will be entitled to a Pro Rata share of 30% of the Net Income generated by the Reorganized Debtor through December 31, 2017. If this adjustment is considered significant, each such holder will recognize taxable gain or loss equal to the difference between the fair market value of the obligation as adjusted and the holder's adjusted basis in the original debt. It may be difficult to place a value on the obligation as adjusted, but gain may nevertheless be recognized. The character and amount of such taxable gain or loss will be determined based on factors specific to each holder of a Claim, as discussed above with respect to Small Unsecured Claims.

## 3.    OREGON CONSTRUCTION LIEN CREDITOR CLAIMS

In accordance with the Plan, the debt owed by the Debtor to each holder of an Allowed Construction Lien Claim will be restructured. If the modification to the debt is "significant," as such term is defined in the applicable Treasury Regulations, the restructured debt will be treated as received by such holder in a deemed taxable exchange of the underlying debt pursuant to IRC Section 1001.

With respect to a deemed taxable exchange, a holder of an Allowed Construction Lien Claim will generally recognize gain or loss in connection with the exchange if the holder's adjusted tax basis in the old debt does not equal the issue price of the modified debt. If the issue price of the modified debt is greater than the holder's adjusted tax basis in the debt, the holder will recognize taxable income as a result of the deemed exchange. Since each modified debt will have a principal amount equal to its corresponding old debt, and each modified debt will have adequate stated interest, a holder of an Allowed Construction Lien Claim generally should not recognize any gain or loss on a deemed taxable exchange of such debt unless the tax basis in the debt is different from the issue price of the modified debt. The character and amount of any taxable gain or loss will be determined based on factors specific to each holder of a Claim, as discussed above with respect to Small Unsecured Claims.

The principal amount of certain restructured debt may include accrued but unpaid interest. A holder of an Allowed Construction Lien Claim not previously required to include in its taxable income any accrued but unpaid interest on such Claim may be treated as receiving taxable interest to the extent the modified debt received is allocable to such accrued by unpaid interest.

## D.    CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS

Pursuant to the Plan, all of the currently outstanding membership interests of the Debtor shall be deemed cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and there shall be no distribution with respect to such shares. The IRS may assert that the COD Income discussed above is not subject to the

Bankruptcy Exception because, in the case of an entity taxed as a partnership, the exclusions of Section 108( a) are determined in relation to the members' situations, not the situation of the entity that realizes the COD Income. If this result obtains, a member may have to include such COD Income in gross income, and this inclusion would increase his, her or its basis in the membership interests. Moreover, upon extinguishment of the member's interests in the Debtor, the member may be deemed to receive a distribution equal to the Debtor's liabilities, which reduces the member's basis. If the reduction in liabilities exceeds basis, the member would realize gain. If the member has an unrecovered basis at the time of extinguishment of his interests, he may be able to claim a loss, which the IRS is likely to characterize as capital rather than ordinary. To the extent that that sole member of the Debtor invests additional monies in the Debtor, this should created basis in the new membership interests to be issued by the Debtor.

## E.    INFORMATION REPORTING BACKUP WITHHOLDING

Certain payments, including the payments with respect to Claims pursuant to the Plan, are generally subject to information reporting by the payor to the IRS. Moreover, under certain circumstances, a holder of a Claim may be subject to "backup withholding" with respect to payments made pursuant to the Plan, unless such holder either (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact, or (ii) provides a correct United States taxpayer identification number and certified under penalty of perjury that the holder is a United States person, the taxpayer identification is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against the holder's United States federal income tax liability, and the holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

1

## CERTIFICATE OF SERVICE

2

3          I h ereby certify t hat on June 13, 2011 , I s erved a cop y o f t he **DEBTOR'S**

4  **THIRD AM ENDED CH APTER 11    PLAN O F RE ORGANIZATION an d DE BTOR'**

5  **THIRD AMENDED CHAPTER 11 DISCLOSURE STATEMENT (JUNE 13, 2011)** on the

6  parties listed below as "Non-ECF Participants" by mailing a copy thereof in a sealed, first-class

7  postage pr epaid envelope, addressed to each pa rty's l ast-known a ddress and de positing i n t he

8  U.S. mail at Portland Oregon.

9  **NON-ECF PARTICIPANTS**

10

11      Salpare Bay, LLC                         Campbell Crane
        2501 NE 134th Street #300                 8001 NE 14th Pl.
12      Vancouver, WA  98686                      Portland, OR 97211

13      Stoel Rives                               Portland General Electric
        900 SW Fifth Ave.                         PO Box 4404
14      Portland, OR 97204-1268                   Portland, OR  97208

15

16      URS Corporation                           Fusion Partners
        PO Box 121028                             1801 N. Lamar St.
17      Dept. 1028                                Dallas, TX 75202
        Dallas, TX 75312

18      Team Builder JLS                          Jordan Schrader Attorneys
        14205 SE 36th St.                         PO Box 230669
19      Ste. 200                                  Portland, OR 97281
        Bellevue, WA 98006
20

21      Portland Monthly                          Landerholm Memovich Lansverk
        234 SW Broadway                           PO Box 1086
22      Portland, OR 97205                        Vancouver, WA 98666-1086

23                                                Bee Consulting
                                                  1638 NW Riverscape St.
24      Professional Serv. Industries             Portland, OR 97209-1834
        6032 N. Cutter Circle #480
25      Portland, OR 97217

26

**Page 1 of 2** – CERTIFICATE OF SERVICE
P:\DOCS\SALPAR\28600\PLDG\33J9285.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1

2    City of Portland
City Attorney's Office
Attn: Linda Law
3    1221 SW 4th Ave., Rm. 430
Portland, OR 97204

4

5    Intelligent Community Services
3303 SW Bond Ave.
6    Portland, OR 97239-4501

7    Fountain Technologies
5673 SW Cheltenham Dr.
8    Portland, OR 97239

9    W&H Pacific
9755 SW Barnes Rd. #300
10    Portland, OR 97225

11    Acme Construction Supply
330 SE Salmon St.
12    Portland, OR 97214

13

14

15            Dated:  June 13, 2011.

16                                            FARLEIGH WADA WITT

17

18                                            By:/s/ Tara J. Schleicher
Tara J. Schleicher, OSB #954021
19                                            tschleicher@fwwlaw.com
Of Attorneys for Debtor

20

21

22

23

24

25

26

Paradigm Communications
PO Box 65229
Seattle, WA 98155

Interspace Airport Advertising
4635 Crackersport Rd.
Allentown, PA 18104

Ford Graphics
1431 NW 17th Ave.
Portland, OR 97209

KPFF Consulting
111 SW Fifth Ave.
Suite 2500
Portland, OR 97204

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741