UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                                     )    Case No. _____
                                                          )
                                                          )    NOTICE OF *PRELIMINARY*
                                                          )    HEARING ON MOTION
                                                          )        FOR USE OF CASH COLLATERAL
                                                          )        TO OBTAIN CREDIT
Debtor(s)                                                 )    *(Check One)*

YOU ARE NOTIFIED THAT:

1.    The undersigned moving party, _____, filed a
Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached;
and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

    a.  The immediate and irreparable harm that will come to the estate pending a final hearing is
_____.

    b.  The amount of    cash collateral    credit *(check one)* necessary to avoid the harm detailed
above prior to the final hearing is _____.

2.    The name and service address of the moving party's attorney (or moving party, if no attorney) are:
_____.

3.    A *PRELIMINARY* HEARING on the motion WILL BE HELD ON _____ AT _____
IN _____.
Testimony will be received if offered and admissible.

4.    If you WISH TO OBJECT to the motion, YOU MUST DO ONE OR BOTH OF THE FOLLOWING:
(1) ATTEND the preliminary hearing; AND/OR (2) FILE with the Clerk of Court (i.e., if the 5-digit portion
of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it
begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), BOTH:  (a) a written response,
which states the facts upon which you will rely, AND (b) a certificate showing a COPY of the response
was given DIRECTLY TO the Judge, and served on the U.S. Trustee and the party named in pt. 2 above.
See Local Form #541.51 for details.

5.    On _____ copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on
the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee
elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all
creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S.
Trustee; and all affected lien holders whose names and addresses used for service are as follows:

_____
Signature

_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (2/13/09)    **LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER**

1 | Tara J. Schleicher, OSB #954021
TSchleicher@fwwlaw.com
2 | Farleigh Wada Witt
121 SW Morrison Street, Suite 600
3 | Portland, Oregon 97204-3136
Telephone: (503) 228-6044
4 | Fax: (503) 228-1741

5 |      Attorneys for Debtor

6

7

8 |     IN THE UNITED STATES BANKRUPTCY COURT

9 |     FOR THE DISTRICT OF OREGON

10 | In re            Case No. 10-35333-tmb11

11 | Salpare Bay, LLC,       DEBTOR'S MOTION TO OBTAIN
POST-PETITION CREDIT SECURED
12 |         Debtor.      BY PRIMING LIEN

13 |                **EXPEDITED CONSIDERATION
REQUESTED**

14

15 |     Pursuant to 11 USC § 364(d), Salpare Bay, LLC (the "Debtor"), the debtor-in-

16 | possession in the above-captioned bankruptcy proceeding, hereby moves this court for an order

17 | authorizing it to obtain post-petition credit from Access Business Finance LLC ("Access") in the

18 | amount of up to $750,000 (the "DIP Loan") to be secured by a first lien against the Debtor's real

19 | property (a "Priming Lien"). Pursuant to LBF 541.7, the Debtor states that this motion contains

20 | a provision or finding of fact that Access' lien is a "first priority lien" on the Debtor's real

21 | property. Other than that provision, the motion to obtain credit does not contain any other the

22 | other provisions set forth in LBF 541.7. In support of this Motion, Debtor has filed the

23 | Declaration of Michael J. DeFrees.

24 |                  **JURISDICTION**

25 |     The court has jurisdiction over this Motion pursuant to 28 USC § 157 and 1334.

26 | This matter is a core proceeding pursuant to 28 USC § 157(b)(2).

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Venue is proper pursuant to 28 USC § 1408 and 1409.

2    The statutory bases for the relief requested by the motion are Section 364 of the

3   Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of the Bankruptcy Procedure

4   (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001-1 for the United States Bankruptcy

5   Court for the District of Oregon (the "Local Rules").

6                                    **RELIEF REQUESTED**

7    By this motion, the Debtor requests authority: (a) to obtain credit (the "DIP

8   Loan") pursuant to Section 364 of the Bankruptcy Code on the terms set forth herein; (b) to

9   perform its obligations under and to utilize loan proceeds according to the DIP Loan and the

10   Settlement Agreement approved by this Court by Order entered June 13, 2011 (the "Settlement

11   Agreement") (Docket No. 237), including but not limited to loan costs and fees associated with

12   the FHA loan as contemplated in the Settlement Agreement and the Debtor's proposed Plan (the

13   "FHA Loan"); (c) pursuant to Section 364(d) of the Bankruptcy Code, to grant a Priming Lien to

14   Access to secure all obligations of the Debtor under the DIP Loan; and (d) a finding by the Court

15   that Access has acted in good faith and is entitled to the protections of §364(e) of the Bankruptcy

16   Code.

17                                    **BACKGROUND**

18    In support of this motion, Debtor hereby represents as follows:

19    On June 7, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under

20   Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

21    Pursuant to Sections 1107 and 1108, the Debtor continues to operate its business

22   and manage its property as a debtor-in-possession.  No trustee or examiner has been requested or

23   appointed in this case.

24    The Debtor and Harbor Investors, LLC ("Harbor") are the owners of real property

25   on Hayden Island, Portland, Oregon, that was to be developed into a luxury riverfront planned

26   community of 204 high-end residential water view condominium units commonly known as

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    Salpare Bay (the "Project").  The Debtor and Harbor own the Project with an undivided 85% and

2    15% interest, respectively, pursuant to a Tenants in Common Agreement.

3              The Debtor began construction in approximately 2005 on the related marina and

4    other horizontal improvements.  The Project presently includes 24.5 acres of land, a marina, 200

5    feet of beach on the Columbia River, 14 acres of water, 204 slips to accommodate large crafts

6    and amenities, and facilities such as wireless internet, cable television, laundry, showers, and

7    dump station facilities.

8              The contractor on the Project, J.E. Dunn Northwest, Inc. ("Dunn"), and other

9    subcontractors (collectively the "Construction Claimants") had performed a substantial amount

10   of work for which the Debtor could not pay them because of its lender's failure to fund the

11   construction loan; thus, the Construction Claimants filed construction liens against the Property.

12   Ultimately, the Construction Claimants filed an action on their construction claims (the

13   "Construction Claims") in that case known as *J.E. Dunn Northwest, Inc. v. Salpare Bay, LLC, et*

14   *al.* in the Circuit Court of the State of Oregon, Multnomah County, Case No. 0710-12536 (the

15   "Dunn Action").  Thereafter, the Project deteriorated.  The sales agents and team quit, purchasers

16   of the presold units cancelled their purchases and withdrew their deposits, and development

17   came to a halt in all respects by the end of 2007.

18             The only secured claims against the Property are those held by the Construction

19   Claimants and real property taxing authorities, all totaling approximately $7,100,000.   The

20   Debtor filed this bankruptcy case because Dunn had scheduled a foreclosure sale on the

21   judgment lien it obtained from the Dunn Action, which sale was to be held in early June 2010.

22             The Debtor currently operates a high-end marina business with 204 slips on the

23   Property (the "Marina").  The Marina was completed in 2007 and became operational in the

24   spring of 2007.  Due to the changes in the overall economic climate since 2005, the Debtor now

25   plans to construct approximately 371 apartment units on Phase I and Phase II of the Property.

26   / / /

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1        Through a mediation held on various dates with The Honorable Michael R.

2 Hogan ("Judge Hogan") between the Debtor, Dunn, the Construction Claimants, Harbor, and the

3 City of Portland (collectively, the "Parties"), the Parties reached a settlement regarding their

4 disputes, the claims between them related to the Project, and the pending bankruptcy

5 proceedings.  Pursuant to the Settlement Agreement, the Parties consent to confirmation of the

6 Debtor's Plan or Reorganization, which has been filed as an exhibit to the Debtor's First

7 Amended Chapter 11 Disclosure Statement (April 8, 2011) (Docket No. 215).

8        As part of the Settlement Agreement, Harbor is to assign its membership interests

9 to the Debtor, which will ultimately result in the Debtor being the sole owner of the Property.

10 Under the Settlement Agreement, Harbor shall assign those interests to the Debtor within five (5)

11 days of approval of the Settlement Agreement, which took place on June 13, 2011.

12        Pursuant to the Settlement Agreement, the Parties agreed that the Debtor will

13 commence development of the Property by first obtaining the DIP Loan with the maximum

14 amount of $500,000 (with leave to seek an additional $250,000) to prepare the Property for the

15 development of a multifamily residential project in two phases around the Marina, and second

16 through an FHA loan to commence construction on Phase I.  The Debtor will develop the

17 Property with three distinct sections, and to the extent necessary, will partition the Property into

18 three separate portions:  (1) the Marina; (2) Phase I[1]; and (3) Phase II.

19        The Parties have agreed that the Debtor shall obtain the DIP Loan, which shall be

20 secured with a first lien trust deed to which the Construction Claimants will subordinate their

21 liens, to put in a parking lot for the Marina, possibly partition the Property as set forth above, to

22 develop the Property sufficient to obtain the FHA Loan on Phase I (surveying, engineering, and

23 other related costs/expenses), and to pay professional fees associated with this bankruptcy case.

24

---

25 [1] The Debtor intends to develop the first phase of the multifamily residential project with approximately
166 apartment units and ancillary improvements where Building C currently sits on the Property and to
26 the East.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1 The Construction Claimants may consider an additional $250,000 advance under the priming

2 DIP Loan upon receipt of a fully executed commitment letter from a bank or other financial

3 institution agreeing to loan the Debtor the funds necessary to construct Phase I of the Project.

4 **THE DIP LOAN TERMS**

5 The following is a summary of the DIP Loan terms:

6 1. Access will make the DIP Loan to the Debtor in the principal amount of

7 $500,000, with an additional $250,000 advance if approved as set forth above and approval of

8 the Court after notice and hearing which advance shall have the same security, lien priority, and

9 §364(e) protections as the DIP Loan and be pursuant to a Final Order in form and substance

10 acceptable to Access. The DIP Loan credit agreement is attached hereto as Exhibit 1.

11 2. The Debtor will use the proceeds of the DIP Loan to pay for construction

12 costs to complete parking for the Marina, soft and construction costs related to the conversion of

13 the condominium project to apartments, and for professional fees incurred by the Debtor in the

14 bankruptcy case, plus an additional $250,000 advanced if authorized under the Settlement

15 Agreement.

16 3. The term of the loan shall be two (2) years with interest only monthly

17 payments.

18 4. The DIP Loan shall bear interest at the rate of *The Wall Street Journal*

19 prime rate plus 10% floating daily.

20 5. An $8,000 application fee shall be paid to Access when the DIP Loan is

21 approved by the Bankruptcy Court, in addition to a $3,500 nonrefundable fee that has already

22 been paid by a principal of the Debtor. The entire $11,500 fee is nonrefundable and will be

23 applied toward, but is not limited to, the direct costs of reports, client review/visit by Access,

24 administration/setup, title fees, escrow and loan documentation legal costs. This fee will be

25 credited against the Debtor's costs at closing.

26 6. A loan fee of $37,500 is earned and payable upon loan closing.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1           7.    The DIP Loan shall be secured by an allowed Priming Lien, which shall

2    constitute a first deed of trust on the Property to which the Construction Claimants will

3    subordinate their liens and superior to all liens or interests in the Property except for real estate

4    taxes.

5           8.    Access will provide a partial release on its first deed of trust upon funding

6    of the FHA Loan to complete Phase I (as defined in footnote 1 above) of the apartment

7    construction and payment in full of all delinquent real estate taxes on all Access collateral under

8    the DIP Loan.  Such release shall not include the Marina or Phase II of the Project.  Access will

9    receive a super priority lien on client's accounts into which the advances under the loan flow.

10    The Construction Claimants will receive a super priority lien on the client's account in which the

11    Marina rents flow.  The Debtor shall be able to use the funds on deposit in either account to

12    make interest payments on this loan.  Access shall also receive an assignment of rents from the

13    Marina.  The Construction Claimants' super priority lien shall be subordinate to the Access

14    assignment of rents with regard to the payment of interest on the Access loan as and when

15    necessary and in the event of default of the DIP Loan, Access shall have a first claim superior to

16    all other claimants to the Marina rents.

17          9.    For avoidance of doubt, in the event of a conflict between the Settlement

18    Agreement and the terms and conditions of the order approving this motion, the order shall

19    prevail as to the rights of Access.

20         10.    The security interest and liens granted to Access shall be deemed validly

21    and properly perfected and enforceable against all other persons or entities upon entry of the

22    order approving the DIP Loan without the necessity of filing, recording, or serving any financing

23    statements, deeds, mortgages, account control agreements, or other documents which may

24    otherwise be required under federal or state law in any jurisdiction or the taking of any other

25    action to validate or perfect the security interest in liens granted to Access herein.

26    / / /

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**BASES FOR RELIEF**

Section 364(d)(1) of the Bankruptcy Code provides:

> The court, after notice and the hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if -
>
> (A) The trustee is unable to obtain such credit otherwise; and
>
> (B) There is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

**THE DIP LOAN SHOULD BE APPROVED**

Debtor requires use of the DIP Loan proceeds to develop the Property sufficient to obtain the FHA Loan to construct Phase I of the apartment project.  If the Debtor is unable to obtain the financing pursuant to the DIP Loan, its ability to continue its business and develop the Project pursuant to its proposed Plan of Reorganization will be jeopardized, which would risk reducing the value of the estate and jeopardizing creditors' recoveries.  To enable Debtor to maximize the value of its assets, the use of the DIP Loan is imperative.  Accordingly, pursuant to Section 364 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1, the court is authorized to grant the relief requested herein.

Debtor is unable to procure adequate post-petition financing in the form of unsecured credit or unsecured debt thus, the circumstances this case require the Debtor to obtain financing under Section 364(d) of the Bankruptcy Code.

The interest of the current lienholders (the Construction Claimants) on the Property will be adequately protected based upon the equity that currently exists in the Property. Under the Order Denying Dunn's Motion for Relief from Stay, this court found the value of the Property to be $9,715,000.00 as of August 10, 2010.  Moreover, based upon the consent of the Construction Claimants under the Settlement Agreement to the granting of a Priming Lien to Access for the DIP Loan, the court should find that the interests of the current lienholders are adequately protected.

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1    The terms of the DIP Loan are in the best interests of the estate pursuant to the

2    Debtor's business judgment, which is to be accorded deference so long as it does not run afoul of

3    the provisions of and policies underlying the Bankruptcy Code.  *See, e.g., Bray v. Shenandoah*

4    *Fed. Sav. & Loan Association (In re Snowshoe Co.)*, 789 F2d 1085, 1088 (4th Cir 1986)

5    (approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames*

6    *Department Stores, Inc.*, 115 BR 34, 40 (SDNY 1990) ("cases consistently reflect that the court

7    discretion under Section 364 is to be utilized on grounds that permit reasonable business

8    judgment to be exercised so long as the financing agreement does not contain terms that leverage

9    the bankruptcy process and powers or its purposes not so much to benefit the estate as to benefit

10   parties in interest").

11   The proposed DIP Loan is required to preserve and maintain Debtor's going

12   concern value and is, therefore, in the best interests of the Debtor's estate and creditors.  The

13   availability of credit under the DIP Loan is necessary to provide Debtor with the working capital

14   to make the improvements necessary to obtain the FHA Loan to commence construction on

15   Phase I of the apartment Project consistent with the Plan of Reorganization.  Accordingly, the

16   Debtor requests that this court authorize the Debtor to obtain post-petition financing from Access

17   pursuant to the terms of the DIP Loan and provide Access with a Priming Lien to secure that DIP

18   loan.

19   WHEREFORE, the Debtor requests entry of an Interim Order in the form

20   attached hereto as Exhibit 2 authorizing the Debtor (a) to obtain credit (the "DIP Loan") pursuant

21   to Section 364 of the Bankruptcy Code on the terms set forth herein; (b) to perform its

22   obligations under and to utilize loan proceeds according to the DIP Loan and the Settlement

23   Agreement approved by this Court by Order entered June 13, 2011 (the "Settlement Agreement")

24   (Docket No. 237), including but not limited to loan costs and fees associated with the FHA Loan;

25   (c) pursuant to Section 364(d) of the Bankruptcy Code, to grant a Priming Lien to Access to

26   secure all obligations of the Debtor under the DIP Loan; and (d) a finding by the Court that

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   Access has acted in good faith and is entitled to the protections of §364(e) of the Bankruptcy

2   Code.

3           DATED:  June 15, 2011.

4                                           FARLEIGH WADA WITT

5

6                                           By: /s/ Tara J. Schleicher
                                                Tara J. Schleicher, OSB #95402
7                                               Of Attorneys for Salpare Bay, LLC
                                                TSchleicher@fwwlaw.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

P:\DOCS\SALPAR\28606\PLDG\33K0789.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741



# ACCESS
## BUSINESS FINANCE

May 3, 2011

Via Email  c/o erose@obsidianfinance.com

Salpare Bay, LLC
c/o Mr. Ewan Rose
Obsidian Finance Group
10260 SW Greenburg Road, Suite 1150
Portland, OR  97223

Dear Mr. Rose:

Access Business Finance LLC ("Access") is pleased to present the following proposal for a credit accommodation to you ("Client"). This is not a final commitment to lend. This proposal is contingent upon the completion of final due diligence; the execution of formal agreements; and no material adverse changes in the financial condition of the Client and no material adverse changes in economic and market conditions. Access offers the following terms and conditions:

| | |
|---|---|
| Purpose: | Real estate loan |
| Loan Amount: | $750,000.00; with $500,000.00 upon Bankruptcy Court approval and $250,000.00 if authorized pursuant to settlement agreement between Client and construction lien claimants ("Settlement Agreement"). |
| Term: | Two Years, interest only (paid monthly). |
| Advances: | Upon DIP approval by Bankruptcy Court, up to $500,000 advanced for construction costs to complete parking for Salpare Bay Marina, soft and construction costs related to conversion of the condominium project to apartments, and for professional fees incurred by Client in bankruptcy case; plus additional $250,000 advanced if authorized under Settlement Agreement. |
| Interest Rate: | Wall Street Prime Rate plus 10% floating daily. |
| Application Fee: | $8,000.00 to be paid to Access when this proposal is approved by the Bankruptcy Court.  This amount is in addition to a $3,500 non-refundable fee that  has already been paid by a principal of Client. The entire $11,500 fee is non-refundable and will be applied towards, but is not limited to, the direct costs of reports, Client review/visit by Access, administration/set-up, title fees, escrow and loan documentation legal costs.  This fee will be credited against your costs at closing.  Should you elect not to close, the fee will be retained by Access. |
| Loan Fee: | $37,500.00.  The loan fee is earned and payable upon loan closing. |
| Collateral: | A first deed of trust as granted by the Bankruptcy Court on the Salpare Bay Marina and excess land located at 499 NE Tomahawk Island Drive, Portland, OR. |
| | Access will provide a partial release on the first deed of trust upon funding of a construction loan to complete Phase I of the apartment construction.   Such release shall not include the marina or Phase II of the apartment project. |
| | Access will receive a super priority lien on Client's account into which the advances under the loan flow.  The construction lien creditors will receive a super priority lien on the Client's account into which the Marina rents flow.  However, for avoidance of doubt, absent a default, Client shall be able to use the funds on |

propre.ltr
Rev. 1/7/03  jw
14205 S.E. 36TH ST.  SUITE 350  BELLEVUE, WA 98006  VOICE (425) 747-9090  FAX (425) 747-1404  www.accessbusinessfinance.com

EXHIBIT 1
Page 1 of 2

deposit in either account to make interest payments on this loan.  In no circumstances will the construction lien creditors have the ability to demand repayment of payments from Client to Access in respect of interest due on this loan except as based on a preference theory following a future bankruptcy filing of Client under 11 USC § 547 or on a fraudulent transfer theory.

Access also requires an assignment of rents from the Marina.  For avoidance of doubt, in the event of a default nothing shall prevent Access from exercising such assignment of rents and receiving all future rents from the Marina.

Early Termination
Premium:                        Waived.

Other Information:           Client to reimburse or pay for all normal costs of closing a real estate loan, including but not limited to, escrow fees, title insurance, transfer/recording fees, taxes, legal expenses, etc.  The  Application Fee will be applied towards these costs.

Access' intent is to use filing documents prepared by Client's counsel with Access' counsel reviewing such documents to minimize legal expense.

We appreciate the opportunity to submit this proposal.  All others terms and conditions not covered above will be expressed in detail in the Note and Deed of Trust and/or other documents.

Upon your acceptance of the above and after Bankruptcy Court approval, please return by fax or mail, a signed copy of this letter along with a check for $8,000 (the remaining unpaid Application Fee). This proposal is valid until 45 days after the date of this proposal.

| |
|---|
| **Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.** |

Please call me with any questions.  I look forward to working with you.

Very truly yours,

Access Business Finance

Douglas L.  McDonald
Manager

                                Salpare Bay, LLC

                                Accepted this date _____, _____

                                By:        _____
                                Print Name: _____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 10-35333-tmb11 |
| Salpare Bay, LLC, | ORDER APPROVING DEBTOR'S MOTION TO OBTAIN POST-PETITION CREDIT |
| Debtor. | SECURED BY PRIMING LIEN |

      This matter came before this Court upon Debtor Salpare Bay, LLC's ("Debtor")

Motion to Obtain Post-Petition Credit Secured by Priming Lien (the "Motion") (Docket No. __)

seeking authority to:   (a) obtain post-petition credit from Access Business Finance LLC

("Access") in the amount of up to $750,000 (the "DIP Loan") pursuant to Section 364 of the

Bankruptcy Code on the terms set forth in the Motion and herein; (b) perform its obligations

under and to utilize loan proceeds according to the DIP Loan and the Settlement Agreement

approved by this Court by Order entered June 13, 2011 (the "Settlement Agreement") (Docket

No. 237), including but not limited to paying loan costs and fees associated with the FHA loan as

contemplated by the Settlement Agreement and the Debtor's proposed Plan (the "FHA Loan");

(c) grant a Priming Lien to Access to secure all obligations of the Debtor under the DIP Loan

pursuant to Section 364(d) of the Bankruptcy Code; and (d) requesting a finding by the Court

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 2
Page 1 of 4

that Access has acted in good faith and is entitled to the protections of §364(e) of the Bankruptcy Code.

A hearing on the Motion having been held, and based upon all of the pleadings filed with this Court, and it appearing that the relief requested in the Motion is in the best interests of the Debtor and its estate, and after due deliberation and consideration, and sufficient cause appearing therefor,

IT IS HEREBY FOUND as follows:

1.    Petition Date. On June 7, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to Sections 1107 and 1108, the Debtor continues to operate its business and manage its property as a debtor-in-possession. No trustee or examiner has been requested or appointed in this case.

2.    Jurisdiction and Venue. The Court has jurisdiction over this matter pursuant to 28 USC § 157 and 1334. This matter is a core proceeding pursuant to 28 USC § 157(b)(2). Venue is proper pursuant to 28 USC § 1408 and 1409.

3.    Notice. Sufficient and adequate notice of the hearing on this matter and the entry of this Order have been given in accordance with Bankruptcy Rule 4001, and no other or further notice need be given for entry of this Order.

4.    Purpose and Necessity of Financing. The Debtor requires the use of the DIP Loan proceeds to develop the Property sufficient to obtain the FHA Loan to construct Phase I of the apartment project. If the Debtor is unable to obtain the financing pursuant to the DIP Loan, its ability to continue its business and develop the Project pursuant to its proposed Plan of Reorganization will be jeopardized, which would risk reducing the value of the estate and jeopardizing creditors' recoveries. Debtor is unable to procure adequate post-petition financing in the form of unsecured credit or unsecured debt thus, the circumstances of this case require the Debtor to obtain financing under Section 364(d) of the Bankruptcy Code. Moreover, the Court

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 2
Page 2 of 4

entered an Order approving the Settlement Agreement between the Debtor and all of its secured creditors that requires the DIP Loan (Docket No. 237).

        5.     <u>Good Faith</u>.  The DIP Loan has been negotiated in good faith by the Debtor and Access.

        Based upon the foregoing, and after due consideration and good cause appearing therefor,

        IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

        1.     The Motion is granted.  This Order shall immediately become effective upon its entry.  The terms and provisions of the DIP Loan are approved.

        2.     The Debtor is hereby authorized to immediately obtain the DIP Loan in the amount of up to $750,000, with $500,000 being the initial maximum amount and the possibility of an additional advance of $250,000 under the terms of the Settlement Agreement.

        3.     The Debtor is granted authority to perform its obligations under and to utilize loan proceeds according to the DIP Loan and the Settlement Agreement, including but not limited to loan costs and fees associated with the FHA Loan.

        4.     The Debtor is authorized to grant a Priming Lien to Access, which shall constitute a first trust deed on the Property to which the Construction Claimants will subordinate their liens, which shall be superior to all liens or interests in the Property except for the real estate taxes.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 2
Page 3 of 4

     5.      Access has acted in good faith and is entitled to the protections of §364(e) of the Bankruptcy Code.

# # #

**PRESENTED BY:**

FARLEIGH WADA WITT

By: /s/ Tara J. Schleicher
    Tara J. Schleicher, OSB #954021
    tschleicher@fwwlaw.com
    Of Attorneys for Debtor

cc:  Interested Parties

**Page 4 of 4** –ORDER APPROVING DEBTOR'S MOTION TO OBTAIN POST-PETITION CREDIT
SECURED BY PRIMING LIEN
P:\DOCS\SALPAR\28606\PLDG\33K0964.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

Exhibit 2
Page 4 of 4

1 Tara J. Schleicher, OSB #954021
 TSchleicher@fwwlaw.com
2 Farleigh Wada Witt
 121 SW Morrison Street, Suite 600
3 Portland, Oregon 97204-3136
 Telephone: (503) 228-6044
4 Fax: (503) 228-1741

5       Attorneys for Debtor

6

7

8           IN THE UNITED STATES BANKRUPTCY COURT

9              FOR THE DISTRICT OF OREGON

10 In re                                    Case No. 10-35333-tmb11

11 Salpare Bay, LLC,                        DECLARATION OF MICHAEL J.
                                            DEFREES IN SUPPORT OF DEBTOR'S
12                                          MOTION TO OBTAIN POST-PETITION
                    Debtor.                 CREDIT SECURED BY PRIMING LIEN
13

14       I, Michael J. DeFrees, declare as follows:

15       1.      I am the President of Columbia Rim Corporation, the Manager of Salpare

16 Bay, LLC ("Debtor"). I am also the sole Member of Salpare. I make this declaration based upon

17 my own personal knowledge and in support of Debtor's Motion to Obtain Post-Petition Credit

18 Secured by Priming Lien (the "Motion") authorizing the Debtor to obtain post-petition credit

19 from Access Business Finance LLC ("Access") in the amount of up to $750,000 (the "DIP

20 Loan") to be secured by a first lien against the Debtor's real property (a "Priming Lien").

21       2.      On June 7, 2010 (the "Petition Date"), the Debtor filed a voluntary petition

22 under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor

23 continues to operate its business and manage its property as a debtor-in-possession. No trustee

24 or examiner has been requested or appointed in this case.

25       3.      Debtor and Harbor Investors, LLC ("Harbor") are the owners of real

26 property on Hayden Island, Portland, Oregon, that was to be developed into a luxury riverfront

Page 1 of 6 -  DECLARATION OF MICHAEL J. DEFREES IN SUPPORT OF DEBTOR'S
           MOTION TO OBTAIN POST-PETITION CREDIT SECURED BY PRIMING LIEN
           P:\DOCS\SALPAR\28606\PLDG\33K2336.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1 planned community of 204 high-end residential water view condominium units commonly

2 known as Salpare Bay (the "Project"). The Debtor and Harbor own the Project with an

3 undivided 85% and 15% interest, respectively, pursuant to a Tenants in Common Agreement.

4          4.    The Debtor began construction in approximately 2005 on the related

5 marina and other horizontal improvements. The Project presently includes 24.5 acres of land, a

6 marina, 200 feet of beach on the Columbia River, 14 acres of water, 204 slips to accommodate

7 large crafts and amenities, and facilities such as wireless internet, cable television, laundry,

8 showers, and dump station facilities.

9          5.    The contractor on the Project, J.E. Dunn Northwest, Inc. ("Dunn"), and

10 other subcontractors (collectively the "Construction Claimants") had performed a substantial

11 amount of work for which the Debtor could not pay them because of its lender's failure to fund

12 the construction loan; thus, the Construction Claimants filed construction liens against the

13 Property. Ultimately, the Construction Claimants filed an action on their construction claims

14 (the "Construction Claims") in that case known as *J.E. Dunn Northwest, Inc. v. Salpare Bay,*

15 *LLC, et al.* in the Circuit Court of the State of Oregon, Multnomah County, Case No. 0710-

16 12536 (the "Dunn Action"). Thereafter, the Project deteriorated. The sales agents and team quit,

17 purchasers of the presold units cancelled their purchases and withdrew their deposits, and

18 development came to a halt in all respects by the end of 2007.

19          6.    The only secured claims against the Property are those held by the

20 Construction Claimants and real property taxing authorities, all totaling approximately

21 $7,100,000. The Debtor filed this bankruptcy case because Dunn had scheduled a foreclosure

22 sale on the judgment lien it obtained from the Dunn Action, which sale was to be held in early

23 June 2010.

24          7.    The Debtor currently operates a high-end marina business with 204 slips

25 on the Property (the "Marina"). The Marina was completed in 2007 and became operational in

26 the spring of 2007. Due to the changes in the overall economic climate since 2005, the Debtor

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  now plans to construct approximately 371 apartment units on Phase I and Phase II of the

2  Property.

3        8.        Through a mediation held on various dates with The Honorable Michael

4  R. Hogan ("Judge Hogan") between the Debtor, Dunn, the Construction Claimants, Harbor, and

5  the City of Portland (collectively, the "Parties"), the Parties reached a settlement regarding their

6  disputes, the claims between them related to the Project, and the pending bankruptcy

7  proceedings.  Pursuant to the Settlement Agreement, the Parties consent to confirmation of the

8  Debtor's Plan or Reorganization, which has been filed as an exhibit to the Debtor's First

9  Amended Chapter 11 Disclosure Statement (April 8, 2011) (Docket No. 215).

10        9.        As part of the Settlement Agreement, Harbor is to assign its membership

11  interests to the Debtor, which will ultimately result in the Debtor being the sole owner of the

12  Property. Under the Settlement Agreement, Harbor shall assign those interests to the Debtor

13  within five (5) days of approval of the Settlement Agreement, which took place on June 13,

14  2011.

15        10.        Pursuant to the Settlement Agreement, the Parties agreed that the Debtor

16  will commence development of the Property by first obtaining the DIP Loan with the maximum

17  amount of $500,000 (with leave to seek an additional $250,000) to prepare the Property for the

18  development of a multifamily residential project in two phases around the Marina, and second

19  through an FHA loan to commence construction on Phase I.  The Debtor will develop the

20  Property with three distinct sections, and to the extent necessary, will partition the Property into

21  three separate portions:  (1) the Marina; (2) Phase I[1]; and (3) Phase II.

22        11.        The Parties have agreed that the Debtor shall obtain the DIP Loan, which

23  shall be secured with a first lien trust deed to which the Construction Claimants will subordinate

24

25  [1] The Debtor intends to develop the first phase of the multifamily residential project with approximately
166 apartment units and ancillary improvements where Building C currently sits on the Property and to
26  the East.

Page 3 of 6 -  DECLARATION OF MICHAEL J. DEFREES IN SUPPORT OF DEBTOR'S
MOTION TO OBTAIN POST-PETITION CREDIT SECURED BY PRIMING LIEN
P:\DOCS\SALPAR\28606\PLDG\33K2336.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   their liens, to put in a parking lot for the Marina, possibly partition the Property as set forth

2   above, to develop the Property sufficient to obtain the FHA loan on Phase I (surveying,

3   engineering, and other related costs/expenses), and to pay professional fees associated with this

4   bankruptcy case.  The Construction Claimants may consider an additional $250,000 advance

5   under the priming DIP Loan upon receipt of a fully executed commitment letter from a bank or

6   other financial institution agreeing to loan the Debtor the funds necessary to construct Phase I of

7   the Project.

8          12.    The following is a summary of the DIP Loan terms:

9          (a)    Access will make the DIP Loan to the Debtor in the principal

10  amount of $500,000, with an additional $250,000 advance if approved as set forth above and

11  approval of the Court after notice and hearing which advance shall have the same security, lien

12  priority, and §364(e) protections as the DIP Loan and be pursuant to a Final Order in form and

13  substance acceptable to Access.

14         (b)    The Debtor will use the proceeds of the DIP Loan to pay for

15  construction costs to complete parking for the Marina, soft and construction costs related to the

16  conversion of the condominium project to apartments, and for professional fees incurred by the

17  Debtor in the bankruptcy case, plus an additional $250,000 advanced if authorized under the

18  Settlement Agreement.

19         (c)    The term of the loan shall be two (2) years with interest only

20  monthly payments.

21         (d)    The DIP Loan shall bear interest at the rate of *The Wall Street

22  Journal* prime rate plus 10% floating daily.

23         (e)    An $8,000 application fee shall be paid to Access when the DIP

24  Loan is approved by the Bankruptcy Court, in addition to a $3,500 nonrefundable fee that has

25  already been paid by a principal of the Debtor.  The entire $11,500 fee is nonrefundable and will

26  be applied toward, but is not limited to, the direct costs of reports, client review/visit by Access,

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1   administration/setup, title fees, escrow and loan documentation legal costs.  This fee will be

2   credited against the Debtor's costs at closing.

3          (f)     A loan fee of $37,500 is earned and payable upon loan closing.

4          (g)    The DIP Loan shall be secured by an allowed Priming Lien, which

5   shall constitute a first deed of trust on the Property to which the Construction Claimants will

6   subordinate their liens and superior to all liens or interests in the collateral except for real estate

7   taxes.

8          (h)    Access will provide a partial release on its first deed of trust upon

9   funding of the FHA loan to complete Phase I (as defined in footnote 1 above) of the apartment

10  construction and payment in full of all delinquent real estate taxes on all Access collateral under

11  the DIP Loan.  Such release shall not include the Marina or Phase II of the Project.  Access will

12  receive a super priority lien on client's accounts into which the advances under the loan flow.

13  The Construction Claimants will receive a super priority lien on the client's account in which the

14  Marina rents flow.  The Debtor shall be able to use the funds on deposit in either account to

15  make interest payments on this loan.  Access shall also receive an assignment of rents from the

16  Marina.  The Construction Claimants' super priority lien shall be subordinate to the Access

17  assignment of rents with regard to the payment of interest on the Access loan as and when

18  necessary and in the event of default of the DIP Loan, Access shall have a first claim superior to

19  all other claimants to the Marina rents.

20         (i)     For avoidance of doubt, in the event of a conflict between the

21  Settlement Agreement and the terms and conditions of the order approving this motion, the order

22  shall prevail as to the rights of Access.

23         (j)     The security interest and liens granted to Access shall be deemed

24  validly and properly perfected and enforceable against all other persons or entities upon entry of

25  the order approving the DIP Loan without the necessity of filing, recording, or serving any

26  financing statements, deeds, mortgages, account control agreements, or other documents which

Page 5 of 6 -  DECLARATION OF MICHAEL J. DEFREES IN SUPPORT OF DEBTOR'S
      MOTION TO OBTAIN POST-PETITION CREDIT SECURED BY PRIMING LIEN
    P:\DOCS\SALPAR\28606\PLDG\33K2336.DOC

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

1  may otherwise be required under federal or state law in any jurisdiction or the taking of any other

2  action to validate or perfect the security interest in liens granted to Access herein.

3          DATED:  June 15, 2011.

4

5                                  /s/ Michael J. DeFrees
                                   Michael J. DeFrees

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*FARLEIGH WADA WITT*
Attorneys at Law
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
Telephone: (503) 228-6044
Facsimile: (503) 228-1741

**List of Interested Parties**
**In re Salpare Bay, LLC, Case No. 10-35333-tmb11**

**SECURED CREDITORS (served via ECF):**

Jan D. Sokol
jdsokol@lawssg.com
    Of Attorneys for J.E. Dunn
Northwest, Inc.

Amanda M. Walkup
awalkup@hershnerhunter.com
mmatella@hershnerhunter.com
sstaats@hershnerhunter.com
    Of Attorneys for FDIC as
Receiver for BankFirst, Inc.

J. Daniel Gragg
gragg@seifer-yeats.com
    Of Attorneys for Masons Supply
Co.

Andrew D. Hahs
ahahs@bittner-hahs.com
mmcgranaghan@bittner-hahs.com
bwood@bittner-hahs.com
    Of Attorneys for Myhre Group
Architects, Inc.

Peter J Viteznik
pviteznik@kilmerlaw.com
dsmith@kilmerlaw.com
hhouston@kilmerlaw.com
jschaefer@kilmerlaw.com

James Ray Streinz
rays@mcewengisvold.com
ranicel@mcewengisvold.com
barbaram@mcewengisvold.com
    Of Attorneys for Marion
Construction Co.

Ryan W. Sternoff
rsternoff@ac-lawyers.com,
kwalker@ac-lawyers.com
    Of Attorneys for Harris Rebar
Seattle Inc

Joseph A. Yazbeck
jay@yazbeckhanson.com
cva@yazbeckhanson.com
    Of Attorneys for Ray's Plumbing
of Brush Prairie, Inc.

Jeffrey S. Young
jsy@scott-hookland.com
skm@scott-hookland.com
    Of Attorneys for Associated
Masonry Restoration Inc.

Joseph M. Vanleuven
joevanleuven@dwt.com
    Of Attorneys for Bellingham
Marine Industries, Inc.

Linda S. Law
llaw@ci.portland.or.us
    Of Attorneys for City of Portland

Andrew J. Bean
abean@wtlegal.com
    Of Attorneys for Knife River
Corporation

Alan L. Mitchell
alan@mitchell-lawoffice.com
    Of Attorneys for R2M2 Rebar and
Stressing, Inc.

Nicholas J. Henderson
nhenderson@portlaw.com
    Of Attorneys for ThyssenKrupp
Safeway, Inc.

David W. Jacobson
dj@mjlawpc.com
    Of Attorneys for Industrial
Concrete, LLC

Brad T. Summers
tsummers@balljanik.com,
akimmel@balljanik.com
    Of Attorneys for Harbor
Investors, LLC

**NON-ECF PARTICIPANTS (served by First Class Mail)**

Salpare Bay, LLC
2501 NE 134th Street #300
Vancouver, WA  98686

Campbell Crane
8001 NE 14th Pl.
Portland, OR 97211

Stoel Rives
900 SW Fifth Ave.
Portland, OR 97204-1268

Portland General Electric
PO Box 4404
Portland, OR  97208

URS Corporation
PO Box 121028
Dept. 1028
Dallas, TX 75312

Fusion Partners
1801 N. Lamar St.
Dallas, TX 75202

Team Builder JLS
14205 SE 36th St., Ste. 200
Bellevue, WA 98006

Jordan Schrader Attorneys
PO Box 230669
Portland, OR 97281

Portland Monthly
234 SW Broadway
Portland, OR 97205

Landerholm Memovich Lansverk
PO Box 1086
Vancouver, WA 98666-1086

Professional Serv. Industries
6032 N. Cutter Circle #480
Portland, OR 97217

Bee Consulting
1638 NW Riverscape St.
Portland, OR 97209-1834

City of Portland
City Attorney's Office
Attn: Linda Law
1221 SW 4th Ave., Rm. 430
Portland, OR 97204

Paradigm Communications
PO Box 65229
Seattle, WA 98155

Intelligent Community Services
3303 SW Bond Ave.
Portland, OR 97239-4501

Interspace Airport Advertising
4635 Crackersport Rd.
Allentown, PA 18104

Fountain Technologies
5673 SW Cheltenham Dr.
Portland, OR 97239

Ford Graphics
1431 NW 17th Ave.
Portland, OR 97209

W&H Pacific
9755 SW Barnes Rd. #300
Portland, OR 97225

KPFF Consulting
111 SW Fifth Ave., Suite 2500
Portland, OR 97204

Acme Construction Supply
330 SE Salmon St.
Portland, OR 97214