Christine A. Kosydar, OSB No. 814035
Ian R. Crawford, OSB No. 072075
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR  97204
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480

    Attorneys for Creditor Stoel Rives LLP

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>SALPARE BAY, LLC,<br><br>              Debtor. | Case No. 10-35333-tmb11<br><br>STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION |

      Stoel Rives LLP ("Stoel Rives"), an unsecured creditor in this case, objects to debtor's Third Amended Chapter 11 Plan of Reorganization (the "Plan") for the reasons and on the grounds that the Plan violates the absolute priority rule and fails to provide for interest on deferred payments to Stoel Rives, rendering the Plan unconfirmable on its face.

**I.**    **BACKGROUND:**

    **A.**    **Basic Plan Terms and Treatment of Unsecured Creditors**.

      Under the Plan, debtor will obtain financing to pay the secured construction lien claimants and to develop its property into apartments in two phases.  Debtor does not propose to sell or refinance the property that is already improved with an operating and income-producing marina and improved with apartments, but rather intends to hold the property indefinitely for debtor's benefit.  As for the unsecured creditor Stoel Rives, debtor's Plan calls for payment of

100 percent of its claim, but only to the extent, if any, debtor has annual net excess cash of $500,000 during years two through six of the Plan. There is no other provision for payment to Stoel Rives, if debtor claims its cash does not exceed $500,000.[1] The remaining unsecured creditors fare even worse. They are projected to receive only 10 percent to 29 percent of their claims, and only after Stoel Rives has been paid, and only if there is net cash in excess of $500,000 during years two through six.[2] As with Stoel Rives' claim, debtor's Plan makes no provision for payment to the other unsecured creditors if debtor claims it is unable to meet the conditions in the Plan.

      B.      **No New Value**.

Debtor's Plan does not provide for its equity holders to contribute any new value. Debtor's insider Michael DeFrees assumes that subordination of a purported debt due to him suffices for new value.

      C.      **Valuation**.

The actual value of the property, including the existing operating marina, is considerably more than the secured claims against it, indicating that there is substantial equity with which to pay the unsecured creditors. First, Debtor's Schedule A reflects a value of $12 million. In addition, Powell Valuation provided an appraisal to debtor and testified that the value is $12.5 million in its "as-is" state. Second, the Court in choosing between debtor's and certain other creditors' appraisals, found a value of $9.715 million for the property, indicating an average value between the two valuations. Third, debtor represents that it has obtained a financing commitment for nearly $20 million to construct multi-residential improvements on a portion of the property. Given current FHA finance industry standards for loan-to-value ratios of approximately 80 percent for completed improvements and stabilized income, existing

---

[1] Dkt. 242, Debtor's Third Amended Disclosure Statement, p. 6, ll. 1-4.

[2] Dkt. 242, Debtor's Third Amended Disclosure Statement, p. 6., ll. 9-14.

Page 2  -  STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

valuations of the property upon which the financing is based must be well in excess of $7 million, the amount of the construction liens on the property. Otherwise, debtor would not be able to obtain financing that comports with current industry standards.

All of this suggests that the current fair market value of the property is between $9.835 and $12.5 million, and clearly in excess of the $7 million in liens against it. Given this, debtor has considerable equity in its property.

### C. Stoel Rives' Role.

It is undisputed that Stoel Rives' successful legal work and strategies resulted in this equity that debtor and its insiders enjoy making possible debtor's reorganization. Stoel Rives was responsible for obtaining a complete discharge of debtor's $20 million construction loan and related guarantees. Further, it was Stoel Rives' strategy and uncompensated pre- and post-petition efforts that led to debtor's claims against the construction lien claimants, which in turn were settled to the considerable advantage of debtor, creating yet even more equity for debtor in the property.[3] And it was Stoel Rives that facilitated and assisted debtor in the filing of this bankruptcy case. But for Stoel Rives, debtor would not be here with considerable equity reflecting on a balance sheet test that it is solvent and able to reorganize.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

---

[3] Although Stoel Rives attempted to resign from representing debtor in the pre-petition state court proceedings, debtor objected, and the state court compelled Stoel Rives to continue with debtor's representation. Stoel Rives at its own considerable expense continued with debtor's representation, including providing assistance to debtor's bankruptcy professionals to obtain a timely filing of this case and in the prosecution of the claims against the construction lien holders. Stoel Rives never shirked on its efforts, a considerable amount of which was never recorded as billable time, but rather it considered its work an investment in debtor's bankruptcy that would pay the unsecured creditors, including Stoel Rives, in full.

Page 3   -   STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED
              CHAPTER 11 PLAN OF REORGANIZATION

**II.  ARGUMENT:**

**A.     The Plan Violates the Absolute Priority Rule on Its Face.**

**1.     The Absolute Priority Rule Does Not Allow for Conditional Payments.**

In order for a plan to be confirmed over the objection of a class of creditors, the court must find that the plan is, among other things, fair and equitable with respect to that class.  If the objecting class is unsecured, the court must find that either

> (i)  the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property***.

11 U.S.C. §1129(b)(2)(B).

Importantly, the Code states that unsecured creditors *receive*—not "may receive" — property of a value equal to the allowed amount of their claim.  The text of the absolute priority rule in the Code does not allow confirmation of a plan that conditions payment of unsecured creditors while allowing equity holders to retain their interest in the debtor.  *See, e.g., In re Made in Detriot, Inc.,* 299 B.R. 170, 181 (E.D. Mich. 2003).

Further, a fundamental corollary to the rule is that where a plan proposes to pay the unsecured creditors less than 100 percent of their claims, equity holders may not retain their interest in the debtor without contributing new value.  *See* 11 USC § 1129(b)(2)(B); *In re Ambanc La Mesa Ltd. P'ship*, 115 F3d 650, 654 (9th Cir 1997); *In re Bonner Mall P'ship*, 2 F3d 899, 906-07 (9th Cir 1993).

Pertinent to the present case, debtor's insiders do not propose to contribute any new value.  Therefore the absolute priority rule requires the Plan to provide for the repayment in full of all claims senior to those of the equity holders if they are to retain their equity interest in the

debtor. However, debtor's Plan provides conditions to payment, rendering it unlikely that Stoel Rives will be paid in full, much less anything.

**2.    The Plan Impermissibly Conditions Payment to Stoel Rives.**

Notably the Plan proposes that payments will be made to Stoel Rives "*only so long as the Debtor has ending cash balances in excess of $500,000*" during years two through six. The Plan at 15, emphasis added. There is no other provision for payment of Stoel Rives if debtor claims its ending cash balances are inadequate.

The Plan's conditions on payment to Stoel Rives render that payment so uncertain that it violates the absolute priority rule. Indeed, the court in *In re Made in Detroit* held that a plan proposing payment of unsecured creditors with funds from the future sale of lots, while allowing debtor's shareholders to retain their equity interest, violated the rule, specifically objecting to the "speculative nature of the payment of the unsecured claims" proposed in the plan. *Id.* at 182.

*In re Made in Detroit* is consistent with the clear language of the Code: if unsecured creditors do not receive value equal to their claim before junior claims or interests do, the plan is not confirmable. Stoel Rives has found no authority contrary to the clear language of the Code, nor has debtor cited any authority allowing it to condition payment to unsecured creditors.

**3.    The Plan Is Too Ambiguous, Speculative, and Vulnerable to Manipulation to Comply with the Code.**

Moreover, the Plan is too ambiguous, speculative, and susceptible to manipulation to pass the test of the absolute priority rule. The Plan conditions payment of Stoel Rives upon "ending cash balances in excess of $500,000," Plan at 15, but it is not clear what excess cash balance means. Stoel Rives should not have to guess.

Moreover, the evidence will show that the $500,000 number is not required by any loan or lender, but is merely a number that debtor and its advisor, both of whom have no experience in FHA financing, chose based on their guess of what capital improvement and other reserves may be required. However, debtor's and its advisor's selection of a $500,000 number does not

Page 5    -    STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED
              CHAPTER 11 PLAN OF REORGANIZATION

comport with the actual evidence provided by a lender on reserves that may be required, which are considerably less than this amount, perhaps less than $100,000 for new construction.

The Plan is also too speculative in another respect. Nothing in the Plan explains whether, let alone when, debtor would expect to have ending cash balances in excess of $500,000. For all anyone knows, debtor may never have such balances. If debtor does not maintain adequate "ending cash balances" during years two through six, Stoel Rives will never be paid.

Finally, the Plan's conditions render it susceptible to manipulation. Because debtor has to pay Stoel Rives "only so long as" it has "ending cash balances in excess of $500,000," debtor has no incentive to contain expenses and lease up the property to generate excess cash balances. Indeed, debtor has every incentive to spend money, make distributions to insiders and to lease up the property to generate income just to the point of $500,000 of excess cash, whatever this means. By contrast, if the payment to Stoel Rives is unconditional, debtor will have a certain obligation and therefore a strong incentive to contain expenses, not make distributions to insiders and to lease up the property.

### 4. DeFrees' Purported Subordination of a Debt Allegedly Due to Him is Not New Value under the Absolute Priority Rule.

A plan that violates the absolute priority rule may nevertheless be confirmed if a debtor's equity holders contribute new value to the reorganization. This "new value" exception requires that equity holders offer value that is "(1) new, (2) substantial, (3) in money or money's worth, (4) necessary for successful reorganization, and (5) reasonably equivalent to the value or interest received." *In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 654 (9th Cir. 1997), *cert. denied*, 522 U.S. 1110 (1998). *See also In re Bonner Mall P'ship*, 2 F.3d 899, 908 (9th Cir. 1993); *In re Brotby*, 303 B.R. 177, 195 (B.A.P. 9th Cir. 2003).

Debtor submits that Mike DeFrees, the sole member of debtor, is contributing $10 million to debtor by subordinating a debt owed to him to all other creditors. Debtor erroneously believes this constitutes new value. It does not. New value is cash or property with present exchangeable value on the date of plan confirmation. Cancellation or subordination of

debt does not qualify. *In re Sun Valley Newspapers, Inc.*, 171 B.R. 71, 78 (B.A.P. 9th Cir. 1994) (insiders' "contributions through the cancellation of the alleged debt owed" to them does not constitute infusion of new funds "'essential to the success of the undertaking' contemplated by the new value exception.") (*quoting In re Snyder*, 967 F.2d 1126, 1131 (7th Cir. 1992)).

B.  **The Plan's Conditions Are Unnecessary and Mask the Workable Potential of the Plan.**

First, there is no reason to add any condition to payment of Stoel Rives' claim. When Stoel Rives asserted that the conditions in the Plan made repayment doubtful, debtor represented to this Court that Stoel Rives will be paid under the Plan. If that is the case, then the imposition of any condition on payment to Stoel Rives is unnecessary. If the imposition of conditions is necessary, then this suggests that debtor's plan has feasibility issues. Debtor cannot have it both ways. Either the Plan is feasible as projected and payments should be made to Stoel Rives unconditionally or the Plan is infeasible. If debtor is confident Stoel Rives will be paid, yet it continues to fail to provide reasons for the conditions on Stoel Rives' payment, then those conditions should be removed.

Second, with only minor revisions the Plan is confirmable. Notably, there is significant equity in the property and ample cash flow in the projections, reflecting sufficient cash to make payments to Stoel Rives. Debtor does not *need* to make payments conditioned on excess cash balances—it will have plenty of cash. Thus, if debtor removes the conditions, and adds interest as described below, the Plan is confirmable.

Alternatively, debtor can pay Stoel Rives in full with interest from the proceeds of the marina funding to occur in October 2012. That financing will result in $3.3 million in proceeds according to debtor's projections of which approximately $250,000 will be used to pay the remaining balance of a "Priming Loan" and $2.4 million to the Judgment Lien Creditors. This leaves $650,000 for payment to Stoel Rives, whose claim is $500,000, plus interest.

A final alternative is for debtor to pay less in profits and fees to its insiders from management and the construction of the apartments. Debtor's disclosure statement reflects

Page 7  -  STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED
              CHAPTER 11 PLAN OF REORGANIZATION

nearly $1.6 million in management and administrative fees to insiders over the life of the Plan. What is not reflected are other fees and profits that may be paid to insiders during construction.[4]

**C.   Unsecured Creditors Are Entitled to Interest on Deferred Payments Under §1129(b)(2)(B).**

Courts in the Ninth Circuit have repeatedly held that §1129(b)(2)(B) entitles unsecured creditors to the time value of money. *In re Ambanc*, 115 F.3d at 654 ("in order for [unsecured creditor] to be paid the full value of its claims the Plan must provide for payment of interest for the post-confirmation time-value of the amount of [creditor's] unsecured claim"); *In re Perez*, 30 F.3d 1209, 1214-15 (9th Cir. 1994) ("a cram-down may proceed only if the objecting class of creditors is paid full present value. In other words, such creditors must be paid interest for the post-confirmation time value of their money."); *In re Johnston*, 21 F.3d 323, 329 (9th Cir. 1994) ("§1129(b)(2)(B) clearly contemplates a present-value analysis"); *In re Carolina Tobacco Co.*, 2006 Bankr. LEXIS 335, *59 (D. Ore. 2006) ("§1129(b)(2) requires that interest commence from the date of confirmation.").

The Plan contemplates deferred payments to Stoel Rives, yet does not provide for interest on those payments, thus rendering the plan unconfirmable on its face. In order for Stoel Rives to receive property "of a value, as of the effective date of the plan, equal to the allowed amount of such claim," §1129(b)(2)(B)(ii), the Plan must provide for interest on deferred payments to Stoel Rives at a reasonable rate. The statutory rate of interest for unpaid accounts in Oregon is 9 percent per annum. ORS 82.010. This is a reasonable rate in light of the unsecured status of the obligation.

**III.  CONCLUSION:**

Given these circumstances, not only is the Plan unconfirmable because it violates the absolute priority rule and fails to pay interest on deferred payments, it would be patently unfair

---

[4] Dkt. 242-2, Debtor's Third Amended Disclosure Statement, Ex. 5, p. 1. .

to leave Stoel Rives empty-handed while putting millions of dollars in benefits that Stoel Rives created for debtor in the pockets of debtor's insiders.  Simply, the Plan is unconfirmable on its face because it impermissibly places conditions on payments to Stoel Rives.  Furthermore, the conditions themselves are ambiguous, speculative, and susceptible to manipulation.  Nevertheless, debtor's Plan could be confirmed with minor revisions.  If debtor simply agrees to remove the conditions burdening Stoel Rives' claims and otherwise provides for payment to Stoel Rives in full with interest, the Plan will comply with the absolute priority rule.

DATED:  August 4, 2011.

Respectfully submitted,

STOEL RIVES LLP


/s/ Christine A. Kosydar
Christine A. Kosydar, OSB No. 814035
cakosydar@stoel.com
Ian R. Crawford, OSB No. 072075
ircrawford@stoel.com
Telephone:  (503) 224-3380
Facsimile:  (503) 220-2480
Attorneys for Creditor Stoel Rives LLP

Page 9   -   STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED
              CHAPTER 11 PLAN OF REORGANIZATION

# CERTIFICATE OF SERVICE

I hereby certify that I served a copy of **STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION** on the following named person(s) on the date indicated below by notice of electronic filing using the Cm/ECF system:

- ANDREW J BEAN    abean@wtlegal.com, jroles@wtlegal.com
- CHRISTOPHER T CARSON    ccarson@kilmerlaw.com, llhommedieu@kilmerlaw.com
- DEBORAH A CRABBE    crabd@foster.com, ristj@foster.com;burrc@foster.com
- J DANIEL GRAGG    gragg@seifer-yeats.com
- ANDREW D HAHS    ahahs@bittner-hahs.com, bwood@bittner-hahs.com
- NICHOLAS J HENDERSON    nhenderson@portlaw.com, csturgeon@portlaw.com
- DAVID W JACOBSON    dj@mjhlawpc.com, lisamjhlaw@gmail.com
- LINDA S LAW    llaw@ci.portland.or.us, jlong@ci.portland.or.us
- JOE LOZANO    notice@bkcylaw.com
- MELISSA A MATELLA    mmatella@hershnerhunter.com, sstaats@hershnerhunter.com
- ALAN L MITCHELL    alan@mitchell-lawoffice.com
- THOMAS J MURPHY    tjm@scott-hookland.com, pkw@scott-hookland.com
- KIMBERLEY HANKS McGAIR    kmcgair@fwwlaw.com, bcargill@fwwlaw.com;lerwin@fwwlaw.com
- MARK J McGRANAGHAN    mmcgranaghan@bittner-hahs.com, bwood@bittner-hahs.com
- TARA J SCHLEICHER    tschleicher@fwwlaw.com, dfallon@fwwlaw.com;dhitti@fwwlaw.com
- JAN D SOKOL    jdsokol@lawssg.com
- RYAN W STERNOFF    rsternoff@ac-lawyers.com, kwalker@ac-lawyers.com
- JAMES RAY STREINZ    rays@mcewengisvold.com, kristab@mcewengisvold.com;docketing@mcewengisvold.com
- BRAD T SUMMERS    tsummers@balljanik.com, akimmel@balljanik.com
- US Trustee, Portland    USTPRegion18.PL.ECF@usdoj.gov
- JOSEPH M VANLEUVEN    joevanleuven@dwt.com, marciebutler@dwt.com
- PETER J VITEZNIK    pviteznik@kilmerlaw.com, sbatman@kilmerlaw.com;hhouston@kilmerlaw.com;jschaefer@kilmerlaw.com
- AMANDA M WALKUP    awalkup@hershnerhunter.com, lparrish@hershnerhunter.com
- JOSEPH A YAZBECK    jay@ycblaw.com, cva@ycblaw.com
- JENNIFER ^ASPAAS2    ecfor@rcflegal.com, ecfor@rcflegal.com

Additionally, a copy of **STOEL RIVES LLP'S OBJECTIONS TO DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION** was served on the following Non-ECF Participants on the date indicated below by U.S. Mail and addressed as follows:

Salpare Bay, LLC  
2501 NE 134th Street #300  
Vancouver, WA 98686

Campbell Crane  
8001 NE 14th Pl.  
Portland, OR 97211

Acme Construction Supply  
330 SE Salmon St.  
Portland, OR 97214

Portland General Electric  
PO Box 4404  
Portland, OR 97208

Page 1 -    CERTIFICATE OF SERVICE

| | |
|---|---|
| URS Corporation<br>PO Box 121028<br>Dept. 1028<br>Dallas, TX 75312 | Fusion Partners<br>1801 N. Lamar St.<br>Dallas, TX 75202 |
| Team Builder JLS<br>14205 SE 36th St., Ste. 200<br>Bellevue, WA 98006 | Jordan Schrader Attorneys<br>PO Box 230669<br>Portland, OR 97281 |
| Portland Monthly<br>234 SW Broadway<br>Portland, OR 97205 | Landerholm Memovich Lansverk<br>PO Box 1086<br>Vancouver, WA 98666-1086 |
| Professional Serv. Industries<br>6032 N. Cutter Circle #480<br>Portland, OR 97217 | Bee Consulting<br>170 W. Dayton St, #206<br>Edmonds, WA 98020 |
| City of Portland Water Bureau<br>1120 SW Fifth Ave., Rm. 600<br>Portland, OR 97204 | Paradigm Communications<br>PO Box 65229<br>Seattle, WA 98155 |
| Intelligent Community Services<br>3303 SW Bond Ave.<br>Portland, OR 97239-4501 | Interspace Airport Advertising<br>4635 Crackersport Rd.<br>Allentown, PA 18104 |
| Fountain Technologies<br>5673 SW Cheltenham Dr.<br>Portland, OR 97239 | Ford Graphics<br>1431 NW 17th Ave.<br>Portland, OR 97209 |
| W&H Pacific<br>9755 SW Barnes Rd. #300<br>Portland, OR 97225 | KPFF Consulting<br>111 SW Fifth Ave., Suite 2500<br>Portland, OR 97204 |

DATED: August 4, 2011.

STOEL RIVES LLP

/s/ Christine A. Kosydar
Christine A. Kosydar, OSB No. 814035
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
cakosydar@stoel.com
Attorneys for Creditor Stoel Rives LLP

Page 2 -   CERTIFICATE OF SERVICE